IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO, *et al.*,<br>        *Plaintiffs*,<br><br>v.<br><br>THOMAS HODGSON, *et. al.*,<br>        *Defendants*. | No. 20-cv-10617-WGY |

**DECLARATION OF *AMICUS CURIAE* CORRECTIONS EXPERT RICK RAEMISCH**

I, Rick F. Raemisch, state as follows:

1. I believe that the unprecedented health crisis created by the COVID-19 pandemic makes it imperative for those of us with experience in prison system management to volunteer our expertise to help.

2. I have decades of experience in criminal justice. In 2013, I was appointed to be the Executive Director of the Colorado Department of Corrections. I worked on an array of projects that required a deep understanding of the system as a whole.

3. As part of that work, I identified ways to make substantial changes in the use of restrictive housing, in which individuals were kept for 22 hours or more each day for weeks and months on end. By 2016, the Department had reformed its practices and no person was held for more than fifteen days in such confinement.

4. Before becoming the head of the Colorado Department, I had served from 2007 to 2011 as the Secretary of the Wisconsin Department of Corrections. Again, I was charged with managing the entire system, and again I brought about significant reforms, including ways to reduce population density.

5. In addition, I have significant experience in law enforcement. I served as the elected sheriff of Dane County, Wisconsin from 1990 to 1997.

6. I hold a J.D. awarded cum laude by the University of Wisconsin School of Law. I have worked as a prosecutor, both as an Assistant United States Attorney for the Western District of Wisconsin and as an Assistant District Attorney in Dane County, Wisconsin.

7. In light of my experience, I have been asked to contribute my expertise in many venues. In 2014, I testified on corrections matters before a United States Senate Subcommittee.

8. Soon thereafter, I served as a member of the United States Delegation to the United Nations convenings in Cape Town and Vienna tasked with revising the hundreds of standards for the treatment of prisoners that were adopted by the United Nations in 2015 and are known as the Nelson Mandela Rules.

9. Because of my work, I have been invited to participate in numerous forums on corrections law and policy, including at Yale Law School, New York University Law School, the John Jay College of Criminal Justice, and the Ninth Circuit.

10. My colleagues in corrections have recognized my work. I have received the 2018 International Corrections and Prisons Association (ICPA) Head of State Award, the 2017 Association of State Correctional Administrators Tom Clements Award, and the 2016 National Alliance on Mental Illness Sam Cochran Award, among others. In addition, in 2018, Governing (which is an organization that speaks for state and local officials) named me as one of the top ten public officials in the country. I am grateful for this recognition and, as I understand it, I am the only American to have received the ICPA Head of State Award. Attached as Exhibit 1 is a copy of my resume.

11. I consider myself a strong advocate of law and order. I am submitting this amicus curiae statement due to my grave concern about the lack of attention many governors and state legislators are paying to the effects of the virus. COVID-19 will have terrible impacts if officials do not release those prisoners who will not jeopardize the safety of their communities. Officials can identify significant numbers of prisoners for release to allow for social distancing.

12. My concern is about the well-being of inmates, of staff, and the communities to which they return. While elected officials and public health experts are pleading for citizens to stay home and "flatten the curve," the changes underway thus far in prisons are hardly sufficient to make that flattening possible. My concerns are so serious that I feel that it is incumbent upon me to volunteer my knowledge as a correctional expert. I understand that the Plaintiffs' Emergency Motion to Modify Population Reduction Order is currently pending. I believe that my expertise can assist in reaching a resolution that will protect the health and safety of all of us.

13. Based on my experience in correctional administration, I firmly believe that rather than waiting for the adjudication of time-consuming lawsuits raising constitutional claims of medical deliberate indifference, and rather than waiting for corrections professionals to attempt to deal with this viral pandemic on their own by trying to contain infections through lockdowns, governors and state legislators must work today to assist corrections in releasing non-violent inmates.

14. Only by immediately releasing non-violent inmates can governors and state legislators prevent the devastating consequences to corrections staff, inmates, and the communities where prisons are located that will result when – not if – infections enter these facilities. Due to the rapid spread of this deadly virus, it is too late to debate and too late to

litigate. Indeed, it may be too late for some states to develop a release plan. For most states, however, there is a short window in which to act.

15.   In most states and the federal system, given current population levels, social distancing in detention and prisons facilities is not feasible. Large dining rooms, dormitories, and cells with multiple bunks are all settings in which distancing is extremely difficult if not impossible. Even in super-maximum-security prisons, where inmates are isolated, staff has body-to-body contact with them when they are moved, including when they are taken to receive medical treatment.

16.   Many state correctional systems also have significant shortages of correctional officers and medical staff, whose ability to respond to the urgent needs of inmates is taxed even at the best of times, without a deadly virus tearing through the facility and sickening both inmates and staff (and reducing staffing levels further). Staff and training may also be problems in the federal system, depending on the facility.

17.   Crowded conditions, staff shortages, and a rapidly spreading virus are a recipe for disaster.

18.   Many prisons across the nation are located in small communities with small health care facilities that are not equipped to handle large-scale public health crises. In addition to the interests of the inmates, it is vital for public officials to consider the impact that outbreaks in prisons will have on correctional staff and these communities from which they come. Staff will become infected, transmit the virus to their families, and spread it within these small communities.

19.   If governors and state legislators are serious about "flattening the curve," inmates need to be released to allow for social distancing in prisons, ensure that medical staff have fewer

inmates to treat in the event of an outbreak, and create the space to effectively quarantine those who do become infected.

20. Provisions of law already authorize these releases in many states. In circumstances such as this, many governors have the authority to grant reprieves.

21. In some states, for example North Dakota, directors of corrections have the authority to determine placement of inmates and can provide placements in appropriate instances in community or other facilities.

22. If necessary, "prison without walls" statutes could quickly be passed with bipartisan support; these provisions would allow corrections officials to release non-violent offenders on monitors.

23. Executive orders or legislation may also enable parole and pardon boards to act more quickly and identify people to move outside of prison.

24. Many inmates can be supervised safely in the community. When I led the Department of Corrections in Wisconsin, I asked the warden of a medium-security facility, "With proper supervision, how many of these inmates could be released?" She immediately replied, "All of them." Of course, there will be exceptions, including those inmates for whom a residential placement is not available.

25. Public safety is always the first priority in the corrections business, but public safety also includes protecting staff and our communities from a deadly virus by doing everything we can to keep our prisons medically safe and prevent them from becoming incubators of infection.

26. The most medically vulnerable inmates should be prioritized for release, including those who are elderly and those with health issues that put them at higher risk of

serious illness or death from COVID-19.  But more inmates than these must be released, so that appropriate social distancing can be implemented.

27.   If populations in prisons and other detention facilities are rapidly reduced, it will become possible to transfer the inmates who remain incarcerated between facilities to reduce density.  For example, most states have minimum security facilities that house those inmates who have little remaining time on their sentences and generally pose little risk to the community.  If they are released, the space in these prisons can be used to house higher-security inmates at a greater distance.

28.   Full prisons are factories of disease by their very nature.  This virus will consume prisons across the country unless immediate steps are taken by governors and state legislators to assist corrections officials in releasing inmates.  The results of outbreaks in full prisons – to prison staff, inmates, and the communities they are housed in – will be devastating.

29.   I declare that this statement is my best understanding of how to respond in this difficult and challenging time.  I have not been retained by anyone to make this statement nor have I received any compensation to do so.  If I can be of further service to this Court or to the parties involved, I am willing to do so.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 31, 2020.

Rick Raemisch
Waunakee, Wisconsin

# Exhibit 1

# RICK F. RAEMISCH

## EDUCATION

*Legal* - Juris Doctorate/Cum Laude; University of Wisconsin Law School, 1984-1988.

*Undergraduate* - Bachelor of Science in Political Science, Minor in Public Administration; University of Wisconsin-Stevens Point, 1971-1975.

## EXPERIENCE

**Independent Corrections Consultant** *2019 - Present*

### *Colorado Department of Corrections, Colorado Springs CO*
**Executive Director** *July 2013 - 2019*
Oversee, for the Governor of the State of Colorado, the largest Cabinet agency responsible for over 20,000 inmates and 10,000 parolees. The Colorado Department of Corrections has approximately 6000 employees and a budget of 808 million dollars.

### *Madison College, Madison WI*
**Dean-School of Human and Protective Services** *2011 - 2013*
Provide leadership, design, organization, delivery, supervision, assessment and fiscal management for the programs within the School of Human and Protective Services. This includes overseeing the programs in Emergency Medical Services, Criminal Justice, Fire, Human Services, and Early Childcare Education.

### *Wisconsin Department of Corrections, Madison WI*
**Secretary** *2007 - 2011*
Oversee, for the Governor of Wisconsin, the largest Cabinet agency responsible for over 22,000 inmates, over 73,000 probation and/or parolees, and approximately 1000 juveniles in institutions or on supervision.

**Deputy Secretary** *2005 - 2007*
Manage a workforce of 10,000 employees with oversight of an approximate one billion dollar budget.

**Division Administrator** *2003 - 2004*
Manage a work force of over 1800 employees with oversight of 68,000 probation and parolees.

### *Wisconsin Tax Appeals Commission, Madison WI*
**Commissioner** *2002 - 2003*
Decide tax appeal issues before the Tax Appeals Commission.

### *KNK Holdings, LLC, Cambridge WI*
**General Counsel**                                                                                                    *2000 - 2002*
Provided general counsel for commercial developers, including; land acquisitions, drafting developer agreements, operating agreements, working with governmental units for various permits, and giving routine legal advice on a day to day basis.

### *Martin Security, Inc., Madison WI*
**Vice President**                                                                                                          *1997 - 2000*
Manage a security workforce of over 150 employees with operations in three states. Duties also included performing legal work for the business, consultations in the area of security, employee policies, and consulting for the Gunta Law Office (Milwaukee) in the area of sexual harassment and law enforcement related issues.

### *Dane County Wisconsin, Madison WI*
**Sheriff**                                                                                                                        *1990 - 1997*
Manage a workforce of over 400 employees with a budget of approximately 30 million dollars. Elected for four terms.

### *U.S. Attorney's Office, Madison WI*
**Assistant U.S. Attorney**                                                                                       *1989 - 1990*
Assigned as a federal drug prosecutor to investigate and prosecute complex federal controlled substance violations cases.

### *Dane County District Attorney's Office, Madison WI*
**Assistant District Attorney**                                                                                 *1988 - 1989*
Assigned to the Misdemeanor and Traffic Unit with a caseload of over 400.

### *Circuit Court Branch I, Madison WI*
**Judicial Internship**                                                                                                        *1987*
Legal research, primarily in civil cases, drafting court orders, and decisions.

### *Dane County Sheriff's Office, Madison WI*
**Detective**                                                                                                                 *1981 - 1988*
Investigation of narcotic and vice offenses, including extensive undercover work, organizing and directing complex controlled substance violations, directing drug related homicide investigations, and other drug-related violent crimes, drafting search warrants, criminal complaints and warrants, and civil forfeitures, assisting the District Attorney's Office in preparing cases for trial, and assisting the prosecutor during trial.

**Deputy Sheriff**                                                                                                          *1976 - 1980*
Enforcement of the Wisconsin State Statutes, primarily in the area of criminal law.

# AWARDS

- International Corrections and Prison Association Head of State Award: *awarded for both national and international progressive corrections reforms*, 2018
- Named one of top ten public officials in the nation by *Governing*, 2018.
- Association of State Correctional Administrators Tom Clements Award: *awarded annually to a member who displays innovation and achievement as a leader in the corrections profession*, 2017.
- National Alliance on Mental Illness Sam Chochran Award: *outstanding work in implementing widespread reforms in the use of solitary confinement in Colorado prisons,* 2016.
- Luan Gilbert Award: *outstanding contributions in domestic violence intervention and prevention,* 1995.
- Attorney General's Wisconsin Law Enforcement Executive of the Year, 1996.
- Voted one of Madison's most 25 influential people by Madison Magazine, 1994.
- International Narcotics Officers Association Commendation: *outstanding service in the field of narcotics enforcement,* 1989.
- Madison South Beltline Optimist Club - Law Enforcement Officer of the Year, 1988.
- Madison Police Department Commendation: *outstanding service to the community,* 1988.
- University of Wisconsin Law School - George Young Memorial Award: *outstanding contribution to the law school community,* 1988.
- Dane County Humane Society Commendation: *initiating and directing an investigation which led to Wisconsin's first felony dog fighting conviction,* 1983.
- Dane County Board of Supervisors - Outstanding Service Award: *arranging and purchasing a large quantity of cocaine from a defendant and apprehending the defendant in the State of Florida after he had escaped from the Dane County Jail,* 1981.

# MEMBERSHIPS

## *CURRENT*
- Retired Member, Wisconsin State Bar, 1988 - present.
- Association of State Correctional Administrators
  - Co-chair, Racial Disparity Committee, 2013 - present.
  - Co-chair, Tom Clements Award Committee, 2015 - present.
  - Member, Information Sharing Committee, 2015 - present.
  - Member, Mental Health Subcommittee, 2014 - present.
  - Member, Policy, Resolutions, Legislation and Legal Issues Committee, 2013 - present.
  - Member, Prison Rape Elimination Act (PREA) Committee, 2013 - present.
  - Member, Program and Training Committee, 2015 - present.
  - Member, Restrictive Housing Committee, 2013 - present.
  - Member, Reentry and Community Corrections Committee, 2013 - present.
  - Member, Research and Best Practices Committee, 2013 - present.

## *PREVIOUS*
- Member, Governor's Advisory Council on Community Corrections, 2013 - 2019.
- Member, Governor's Executive Clemency Advisory Board, 2013 - 2019.
- Member, Colorado Criminal and Juvenile Justice Commission, 2013 - 2019.
- Member, Executive Board - Colorado's Integrated Criminal Justice Information System, 2013 - 2019.

- Member, Vera Institute of Justice - Advisory Council to the Safe Alternative to Segregation Initiative, 2015.
- Co-Chair, American Correctional Association Restrictive Housing Ad-hoc Subcommittee, 2014 - present.
- Association of State Correctional Administrators
    - Co-chair, Racial Disparity Committee, 2008-2011.
    - Member, Program and Training Committee, 2008-2011.
    - Member, Legal Issues Committee, 2007-2011.
    - Member, Reentry Committee, 2007-2011.
- Member, Governor's State Advisory Council on Early Childhood Education and Care, 2008-2011.
- Member, Governor's Council on Workforce Investment, 2007-2011.
- Member, Educational Approval Board, 2003-2011.
- Member, Dane County Drug Treatment Court, 1996-1997.
- Member, Judicial Courtroom Security Committee, 1990-1997.
- Member, Dane County Domestic Abuse Task Force, 1990 to 1997.
- Member, Attorney General's Advisory Committee on Juvenile Justice, 1994.
- Member, Commission on Sensitive Crimes Coordinated Community Response Task Force, 1992-1997.
- Member, Governor's Gang Violence Prevention Council, 1995.
- Member, Governor's Council on Domestic Abuse, 1992-1995.
- Past President, Badger State Sheriff's Association, 1994-1995.

## PUBLICATIONS

- *Restrictive Housing: Taking the Lead,* Corrections Today Guest Editorial March/April 2015.
- *Opening the Steel Door*, Corrections Managers' Report, April/May 2014.
- *My Night in Solitary Confinement,* New York Times Op-Ed Contributor, February 2014.
- *Cops in Court,* copyright 1992, a training manual used throughout Wisconsin to prepare police officers for courtroom testimony.