UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____
)
MARIA ALEJANDRA CELIMEN SAVINO    )
and JULIO CESAR MEDEIROS NEVES,   )
                                  )
Petitioners-Plaintiffs,           )
                                  )    20-cv-10617 WGY
v.                                )
                                  )
THOMAS HODGSON, et al.,           )
                                  )
Respondents-Defendants.           )
_____)


**DEFENDANTS' INPUT REGARDING APRIL 8 LIST**

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020.  It is ICE's position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

**Safety of Detainees:**  While Plaintiffs update the Court with the ever-increasing number of cases of COVID-19 in the Commonwealth of Massachusetts, they conspicuously fail to mention that the number of cases of the virus at BCHOC *still stands at zero*.  Thus, Plaintiffs chart actually supports the position of Defendants that the detainees are demonstrably safer within BCHOC than they are outside the facility- even before taking into account the medical care they are receiving.  Plaintiffs also fail to address how the detainees with medical conditions will receive medical care outside of BCHOC in any meaningful way.

Defendants intend to take up the Court's invitation for further briefing on the issue of whether appropriate social distancing can be maintained at BCHOC. Defendants believe it can, and have taken significant steps to reconfigure the sleeping arrangements so as to greatly increase the distance between occupied beds. This will be addressed in short order.

**Safety of the Community:** The Court, over Defendants' objection, has ordered the release of a number of detainees with significant criminal backgrounds, including violent crime, drug trafficking as well as fraud and identity-type crimes. The Court has also released detainees who have shown complete disregard for conditions on their prior release by ICE and/or a willingness to use false identities and many of whom have few ties to the community. These released detainees pose a significant risk of flight. Almost every one of the detainees on today's list has a significant criminal history that would place them in either category 4 or 5 of the Court's original sub-classification. This underscores two things: first, the people being detained at BCHOC are there for good reasons, and, second, the Court's approach is problematic given the high percentage of persons with significant criminal history being considered for release.

**Motion for reconsideration**: Defendants will file a motion for reconsideration of detainee Paul Schnaider.[1] Owing to a mistake by undersigned counsel, the record of Mr. Schnaider was listed under the name of Hugo Candelario-Echegoyen. Mr. Candelario-Echegoyen is the individual recommended for release by Defendants.

Paul Schnaider is a significant risk to the community. As stated in Exhibit 1 to the Defendants' briefing on the first list of 10 for April 7, 2020 is the following:

---

[1] ICE has referred to this individual as "Paul Schnaidery," and the Court has listed him as "Paul Schanider." We will determine which is correct.

Mr. Schnaidery has been arraigned in Massachusetts on 48 occasions and has had one protective order issued against him. His criminal history consists of the following: On June 7, 2005 he received continuances without findings for larceny and conspiracy to commit larceny over $250. On July 9, 2007, he was arraigned on intimidation, assault and battery with a dangerous weapon, and threatening charges, which were subsequently dismissed. On August 29, 2007, he was arraigned on malicious destruction of property and assault and battery charges, which were subsequently dismissed. On February 11, 2008, he was arraigned on larceny, breaking and entering in the nighttime with the intent to commit a felony, resisting arrest, and disorderly conduct charges. He received a probationary sentence for these offenses. On August 19, 2008, he was convicted of intimidation and received a one-year suspended sentence. On February 26, 2009, he was convicted by jury trial of: assault and battery on a police officer, for which received a sentence of 90 days; resisting arrest and disorderly conduct, for which he received 30 day sentences; and trespassing for which he received a 10 day sentence. He also pleaded guilty to other counts of disorderly conduct, disturbing the peace, resisting arrest, and trespassing on that day, and the charges relating to assault with a deadly weapon were dismissed. On December 5, 2013, he received a continuance without a finding for possession of a class B substance. He later violated the terms of his probationary sentence for this offense and was sentenced to serve 90 days. On March 21, 2013, he was charged with possession of a class B substance, and possession with intent to distribute class A and class B substances, such charges were later dismissed. On January 24, 2014, he was charged with possession of a class B substance, and possession with intent to distribute a class B substance, such charges were subsequently dismissed. On October 9, 2014, he was arraigned on conspiracy to violate the drug laws, and distribution of a class B substance charges, which were later dismissed. On March 2, 2015, he pled guilty to operating a vehicle under a suspended license. On May 11, 2015, he was convicted for distribution of cocaine and conspiracy to violate the drug laws, for which he was ordered to serve a term of imprisonment eighteen months. On February 26, 2015, he was charged with assault and battery, larceny from a person, and conspiracy, such charges were later dismissed. On July 30, 2018, he pled guilty to possession with intent to distribute a class B substance, and distribution of a class B substance, for which he received 6-month sentences. The other charges of possession of a controlled substance in a school zone and conspiracy to violate the drug laws were dismissed. On July 30, 2019 he plead guilty to 3 counts of trespassing and one count of breaking and entering, for which he received a 28-day sentence.

Clearly, this person is a threat to the safety of the community.  In the Court's original

categorization, he would be in category 4, as to which the Court indicated release was unlikely.[2] Defendants request a brief stay of the Court's order of release of Mr. Schnaider until resolution of a motion for reconsideration, with proposed substitute detainee, is filed later today.

**Individuals Who Must Not Be Released on the April 8 List:** Attached hereto is a detailed analysis of the risk factors for release of the list of ten for April 8, 2020. Recognizing that the Court will order the release of some detainees, Defendants suggest that of the second group of ten, the following individuals **cannot** be safely released into the community:

**(3) PEGUERO-VASQUEZ, Victor Manuel** : Because Mr. Peguero-Vazquez has passport fraud, illegal reentry and drug trafficking convictions, he is both a risk to the community as well as a risk of flight. After being convicted of passport fraud, he was removed in 2011 but re-entered the United States illegally at an unknown date, time and place. He is therefore subject to a reinstated order of removal and mandatory detention under 8 U.S.C. § 1231(c). Peguero-Vasquez was convicted for illegal re-entry in July of 2019 in the U.S. District Court for the District of Rhode Island. Mr. Peguero-Vasquez's criminal history also includes convictions for conspiracy to commit and possession of a stolen vehicle and driving under the influence of liquor or drugs. As of August 8, 2018, Peguero-Vasquez has outstanding drug trafficking charges.

**(4) VARGAS, Cesar:** Mr. Vargas presents a significant risk to the community and

---

[2] Notably, Plaintiffs understate the extent and degree of Mr. Schnaider's criminal history. *See* Exhibit 10 to Plaintiffs' April 7 briefing. Plaintiffs state that since 2015, Mr. Schnaider has pled guilty to "only non-violent" crimes. Defendants do not understand the Court to be uninterested in significant threats to the community posed by repeated trafficking in hard core drugs, or breaking and entering.

risk of flight due to his convictions for illegal reentry, domestic violence, aggravated assault with a weapon, extortion and drug trafficking. He also has a pending domestic violence charge. He is subject to mandatory detention under 8 U.S.C. §1226(c) due to his criminal record.

**(6) FERREIRA, Pamlar**: Ferreira is being held in mandatory detention under 8 U.S.C. §1226(c) due to her criminal record. She has an extensive criminal record including convictions as recently as 2019 or false statements, false claim to United States citizenship, and false representation of a social security number. She was also convicted in the U.S. District Court for the Southern District of New York for access device fraud, device fraud, bank fraud. Ms. Ferreira belongs to the Court's Category 5, which includes detainees with significant criminal records in the last five years. ICE believes Ferreira should remain in custody as she is subject to mandatory detention and a danger to property and a flight risk based on her convictions and order of removal. The Court indicated that it was unlikely to release individuals in this category, and public safety requires that it not do so.

**(7) JARAMILLO-Quiroz, Hector:** Jaramillo-Quiroz was arrested in September of 2019 and has pending charges of assault dangerous weapon-knife and assault and battery with a dangerous weapon. The police report indicates that Jaramillo-Quiroz threatened a co-worker with a knife and hit the co-worker with other kitchen implements. Mr. Jaramillo-Quiroz is a threat to public safety based upon his pending criminal charges and therefore should remain detained.

**(8) HUSSIEN, Hussien:** Mr. Hussein is being held in mandatory detention under 8 U.S.C. §1226(c) due to his criminal convictions. Hussein entered the United States on

August 27, 2004 under a false name. He subsequently obtained lawful permanent residence and naturalized to become a United States citizen using his false alias. On September 11, 2019, Hussein was convicted in the U.S. District Court for the District of Maine for the offense of personage of another in a naturalization proceeding, procuring naturalization and making a false statement on a passport application. Hussein received 2 months sentence to on each count, to be served concurrently and his U.S. citizenship was revoked. Hussein also has fraudulently claimed to be the father of four United States citizen children. He is a flight risk due to his lack of family and community ties and his criminal history that demonstrates a complete disregard to the immigration laws of the United States.

**(9) MOTA, Osvaldo**: Mr. Mota is currently detained subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) due to his criminal record. On October 24, 2017, he was convicted of trafficking in fentanyl and received a sentence of two and half years imprisonment. While in ICE custody Mota was removed from his unit for conduct which disrupts during a group demonstration. ICE asserts that that Mota should remain in ICE custody. Mota is a threat to public safety due to his criminal conviction for trafficking in an incredibly dangerous substance.

The Court is directed to Exhibit 1, attached hereto, for the particulars regarding each of the ten listed detainees. Defendants do *not* represent that the others on the initial list of ten pose no risk to the community or no risk of flight. In fact, ICE has previously determined the opposite. Defendants' statements herein are intended merely as guidance for the Court in its expressed goal of reducing detainee population density at HCBOC. Defendants do urge the Court *not* to release the six persons specifically referenced herein, although Defendants believe

that the Court would be justified in declining to release others on the list on account of their propensity to operate motor vehicles while under the influence of alcohol or drug trafficking, for example.

### **Notice of Intent to Remove from the District**

The Defendants further inform the Court, in accordance with its order, that Nita Alexandru-Nicusor will be transported out of the District of Massachusetts by ICE within a period of not less than 48 hours.  Mr. Alexandru-Nicursor will be transferred to Strafford County HOC in New Hampshire on Friday morning in order to prepare for his removal scheduled for the week of April 12, 2020.

                Respectfully submitted,

                ANDREW E. LELLING,
                United States Attorney

By:   */s/ Thomas E. Kanwit*
      Thomas E. Kanwit
      Michael Sady
      Assistant U.S. Attorneys
      U.S. Attorney's Office
      John J. Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA  02210
      (617) 748-3100
      thomas.kanwit@usdoj.gov
      michael.sady@usdoj.gov

April 8, 2020

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                */s/ Thomas E. Kanwit*
Dated:   April 8, 2020            Thomas E. Kanwit