UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____
)
MARIA ALEJANDRA CELIMEN SAVINO )
and JULIO CESAR MEDEIROS NEVES, )
)
Petitioners-Plaintiffs, )
) 20-cv-10617 WGY
v. )
)
THOMAS HODGSON, et al., )
)
Respondents-Defendants. )
_____)

## DEFENDANTS' INPUT REGARDING APRIL 9 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020. It is ICE's position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

**Presumption of Innocence Does Not Apply in the Immigration Bond Setting**

Plaintiffs' counsel have argued previously that the Court should not consider any pending charges against detainees for two reasons: first, there is a presumption of innocence in the criminal system and, second, the detainees' ability to fight these charges has, at least in some instances, been hampered by their detention.

Counsel is incorrect about the scope of the application to which the presumption of innocence applies. Immigration Judges routinely, and appropriately, consider pending charges in

making a determination of a detainee's dangerousness and risk of flight. Moreover, a judge in a criminal case may take pending charges into account in making the same determinations. Indeed, the Court in this case has indicated in its definition of five sub-classes of detainees that pending criminal charges is relevant; this is what separates category four detainees from the first three categories.

**Safety of the Community:** The Court, over Defendants' objection, has ordered the release of a number of detainees with significant criminal backgrounds, including violent crime, drug trafficking as well as fraud and identity-type crimes. The Court has also released detainees who have shown complete disregard for conditions on their prior release by ICE and/or a willingness to use false identities and many of whom have few ties to the community. These released detainees pose a significant risk of flight. Almost every one of the detainees on today's list has a significant criminal history that would place them in either category 4 or 5 of the Court's original sub-classification. This underscores two things: first, the people being detained at BCHOC are there for good reasons, and, second, the Court's approach is problematic given the high percentage of persons with significant criminal history being considered for release.

**Motion for modification**: Defendants will file a motion for modification of the conditions of release so as to allow ICE to require (and to install with its own resources) electronic monitoring of any released detainee at ICE's discretion. If allowed, this additional condition would go a long way towards reducing the risks of flight and new crimes by the detainees. Moreover, electronic monitoring would not impede in any way the Court's goal of reducing detainee population density at BCHOC.[1]

---

[1] It appears from comments made by the Court that the Court was concerned with protecting the resources of the Probation Department. However, electronic monitoring of aliens

**Individuals Who Must Not Be Released on the April 9 List:** Attached hereto is a detailed analysis of the risk factors for release of the list of ten for April 9, 2020. Recognizing that the Court will order the release of some detainees, Defendants suggest that of the second group of ten, the following individuals **cannot** be safely released into the community:

   **1. Bengu Blocker, Thembelihle:** Thembelihle Bengu Blocker is subject to mandatory detention under 8 U.S.C. § 1231 pursuant to a final order of removal. Release of Ms. Bengu Blocker is unnecessary because there is no overcrowding, or inability to social distance, in the women's unit at BCHOC. This is described more fully in the declarations which Defendants will be filing today.

   Moreover, even if there was a need to reduce the female detainee population density, which there is not, Bengu Blocker should not be released due to her criminal history of violence. On October 26, 2018, the New Milford Police Department, New Milford, CT arrested Bengu Blocker for 2nd degree assault and disorderly conduct. The police reports reflect that she stabbed her ex-boyfriend with a steak knife. The report also indicates she swung a vase at her ex-boyfriend and tried to grab a pot of water to throw at him as well. These charges are still pending. A protective order was also issued against Bengu Blocker after this arrest.

   Bengu Blocker is also a flight risk. Upon her arrest by ICE, Bengu Blocker provided the ICE officers with a false name. She eventually provided her true identity after ICE obtained fingerprints from her.

---

released under conditions is the responsibility of ICE, not Probation, and ICE is willing to take this on. Given that Plaintiffs are *solely* concerned about the risk of COVID-19 allegedly arising from their detention, they cannot have any objection to this condition.

There is no medical basis for releasing Bengu Blocker. At the time of her arrest by ICE, she claimed to have no medical conditions and to be in good health.

Defendants assert that Ms. Bengu Blocker should remain in ICE custody. She is a risk to public safety as demonstrated by her pending charges for assault and disorderly conduct, as well as a flight risk due to her lack of family ties in the United States, her final order of removal and her Failure to Comply status. ICE does not believe she would comply with any court ordered or ICE issued conditions of release.

**2. Masimula, Thandokuhle Zawa:** Thandokuhle Zawa Masimula is currently detained subject to 8 U.S.C. § 1231 pursuant to a final order of removal. Release of Ms. Masimula is unnecessary because there is no overcrowding, or inability to social distance, in the women's unit at BCHOC.

Moreover, Masimula presents a danger to the community if released owing to her violent criminal history. She has pending charges of stalking-domestic (two incidents), simple assault-domestic (also two incidents), intimidation, and breach of bail.

Defendants assert that Ms. Masimula should remain in ICE custody. She is a risk to public safety as demonstrated by her pending charges for stalking, simple assault, and intimidation. Defendants also believe her to be a flight risk based upon her final order of removal.

**3. Arreaga, Marvin:** Marvin Arreaga should not be released owing to his criminal history of violence. On June 5, 1995, Arreaga was convicted of assault with a dangerous weapon. On February 15, 2013, Arreaga was convicted of disorderly conduct and carrying a dangerous weapon. This charge stemmed from threating an individual with a knife outside of a store. The gap of 18 years between these incidents is evidence of a

deep-seated propensity for violence that cannot be presumed to have abated.

Perhaps of greatest concern, on February 26, 2019, the Lynn Police Department arrested Arreaga for **enticing a child** under the age of sixteen and assault and battery. These charges remain pending.

Moreover, there are not health issues requiring Arreaga's release. At his immigration hearing, he testified that he had no health issues aside from taking Tylenol due to a fight he had in the past.

Defendants believe Arreaga should remain in ICE custody. He is a risk to public safety as demonstrated by his pending charges for enticing a child under sixteen and assault and battery as well as his previous weapon convictions.

**4. Beltran-Araujo, Jose Alejandro:** On September 15, 2019, the Stamford Police Department arrested Beltran-Araujo for three counts of **risk of injury to a child** and one count of 2nd degree assault. According to the police report, Beltran-Araujo's girlfriend sought medical treatment at Stamford Hospital after he struck her in the head with a glass bottle, causing her to lose consciousness. She stated that he was jealous of her and that this was not the first time he has hit her. She stated that "out of nowhere" he struck her in the head with a bottle from behind. The police report notes that the officers observed a bump on her head, scratches on her face, and a swollen bottom lip. Beltran-Araujo admitted striking the victim in the head with a glass beer bottle in the police report. Additional statements in the police report from witnesses indicate Beltran-Araujo continued to hit the victim and had to be physically restrained. The victim's three minor children were present during this attack. These criminal charges are still pending at this time.

Beltran-Araujo does not have any comorbidities which would make him more susceptible to COVID-19 infection. At the time of his arrest by ICE, he claimed to be in good health and not to take any medications.

Defendants believe that Mr. Beltran-Araujo should remain in ICE custody. He is a risk to public safety as demonstrated by his pending charges for risk of injury to a child and assault. Additionally, Defendants believe he will not comply with conditions of release as he has previously ignored an order to report to ICE.

**5. Carangui, Carlos Enrique:** On February 24, 2020, Carangui was arrested by Danbury Police Department for stalking and breach of peace. The incident report details a woman reporting to the police that Carangui repeatedly watches her as she leaves her apartment complex and then follows her to work. The woman does not know Carangui. She stated that she has tried to take different routes to work but Carangui follows her every time. A plastic rose was left on her car on Valentines Day and she believed Carangui left it for her. The police officers performed a surveillance operation and witnessed Carangui follow the woman after she left her apartment complex on two occasions. Both charges are currently pending.

Carangui was arrested by ICE on March 18, 2020. Carangui's next immigration court appearance is scheduled for April 9, 2020 at which time he can seek a bond hearing with the immigration judge.

It is recommended that Mr. Carangui remain in ICE custody. He is a risk to public safety as demonstrated by his pending charges for stalking and breach of peace. ICE also believes him to be a flight risk as he has illegally entered the United States on multiple occasions, most recently after receiving voluntary departure from the immigration judge.

ICE is also in possession of his valid passport for expeditious removal should he be ordered removed.

      **8. Portillo, Gerardo:** Portillo is currently subject to mandatory detention under 8 U.S.C. § 1226(c) on account of his July 9, 2014, conviction for Possession of a Firearm with Defaced Number, in violation of Massachusetts General Law Chapter 269, Section 11C. Mr. Portillo has an extensive criminal history here in the United States and has amassed **30 arraignments** in Massachusetts since 2007. In addition, Mr. Portillo has had two civil restraining orders issued against him by different females alleging domestic violence. Mr. Portillo has been convicted of assault and battery on a child, assault and battery, possession of a firearm with defaced number, firearm identification card, and disorderly conduct. Mr. Portillo also has numerous pending and dismissed charges.

      Mr. Portillo's assault and battery on a child and possession of a firearm with a defaced number convictions stem from an incident in in which police responded to a 911 call for injury to a child. While testifying in Immigration Court, the Mr. Portillo admitted to throwing a chair across the room while he was in an argument with his father. The chair struck his 7-year-old sister in the head. The police report reflects that while officers were speaking to the Petitioner, they noticed a firearm laying in plain view on Mr. Portillo's bedroom floor, loaded with a live round in the chamber. The police also found a single piece of ammunition on his dresser drawer.

      In addition, various police reports from Mr. Portillo's numerous arrests and applications for restraining orders set forth allegations of a pattern of violent and aggressive behavior, especially towards women and children. For instance, a police report reflects that Mr. Portillo's girlfriend and mother of his child filed a restraining order

against him, which was extended for a year after a hearing in which Mr. Portillo was present. In her affidavit, the victim alleged that Mr. Portillo would choke her, beat her, threaten to kill her and was afraid for their son. Mr. Portillo had smashed a window to get into the house and punched walls in the apartment where he and the victim were residing together with their infant son. Years later, another woman requested a restraining order, notating that Mr. Portillo had been violent with her, as well. She noted he would choke and beat her and show up at her school when unwanted. She was afraid Mr. Portillo would harm her or her child. A third female victim was identified when police officers responded to a disturbing the peace call. Mr. Portillo was verbally abusing the victim with foul language when the officers arrived, and when instructed by the officers to leave, Mr. Portillo refused police demands, and followed after the victim when she attempted to leave and retrieve her purse. The report noted that Mr. Portillo was extremely aggressive and noncompliant.

Mr. Portillo was first brought into ICE custody on April 4, 2017, due to an assault and battery and assault and battery with a dangerous weapon arrest. He was released after posting bond on June 6, 2017. ICE canceled this bond and rearrested Mr. Portillo on January 14, 2019, after he was arraigned on assault and battery on family/household member, intimidation, and malicious destruction of property charges. Upon his arrest by ICE, Mr. Portillo only reported a condition of asthma.

On March 10, 2020, an immigration judge granted Mr. Portillo's application for adjustment of status to a lawful permanent resident with a waiver for his convictions. The Department of Homeland Security filed an appeal of this decision with the Board of Immigration Appeals on April 3, 2020. Such appeal remains pending. As such, Mr.

Portillo's removal proceedings are still ongoing and he remains subject to mandatory detention pursuant to Section 1226(c).

Defendants believe that Mr. Portillo poses a significant threat to the public based on his extensive and violent criminal history.

**9. Corleto, Kevin Eduardo**: Mr. Corleto is subject to mandatory detention under 8 U.S.C. § 1226(c) on account of his July 31, 2019 convictions for two counts of trafficking in cocaine, for which he received a 10-year sentence, 42 months to serve and 78 months suspended. In August of 2017, Mr. Corleto was also convicted of willful trespass and disorderly conduct.

The police report from his drug trafficking arrest indicates that the Newport, Rhode Island Police Department executed a search warrant at Mr. Corleto's residence on August 28, 2018. As a result of that warrant, the police seized sixty-eight individual plastic bags of cocaine, totaling 26.4 grams; 7 individually packaged ounces of cocaine; a digital scale; $1,328.00 in cash; and additional items known to be used in narcotics trafficking. The total street value of the cocaine seized amounted to $28,000.00.

At the time ICE arrested Mr. Corleto, he reported that he was in good health and was not taking any medications.

Mr. Corleto is a risk to public safety, as demonstrated by his convictions for drug trafficking, willful trespass, and disorderly conduct. In addition, he poses a significant risk of flight given the limited relief available to him on account of his drug trafficking convictions.

The Court is directed to Exhibit 1, attached hereto, for the particulars regarding each of

the ten listed detainees. Defendants do *not* represent that the others on the initial list of ten pose no risk to the community or no risk of flight. In fact, ICE has previously determined the opposite. Defendants' statements herein are intended merely as guidance for the Court in its expressed goal of reducing detainee population density at HCBOC. Defendants do urge the Court *not* to release the seven persons specifically referenced herein, although Defendants believe that the Court would be justified in declining to release others on the list on account of their propensity to operate motor vehicles while under the influence of alcohol or drug trafficking, for example.

                        Respectfully submitted,

                        ANDREW E. LELLING,
                        United States Attorney

By:   */s/ Thomas E. Kanwit*
       Thomas E. Kanwit
       Michael Sady
       Assistant U.S. Attorneys
       U.S. Attorney's Office
       John J. Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA  02210
       (617) 748-3100
       thomas.kanwit@usdoj.gov
       michael.sady@usdoj.gov

April 9, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                        */s/ Thomas E. Kanwit*
Dated:   April 9, 2020          Thomas E. Kanwit