UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )

**MARIA ALEJANDRA CELIMEN SAVINO** )
**and JULIO CESAR MEDEIROS NEVES,** )
                                                          )
**Petitioners-Plaintiffs,** )
                                                          )     **20-cv-10617 WGY**
      **v.** )
                                                          )
**THOMAS HODGSON, et al.,** )
                                                          )
**Respondents-Defendants.** )
_____)

## DEFENDANTS' INPUT REGARDING APRIL 16 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020. It is Defendants' position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

**Appropriate Detainee Population Density Has Been Achieved**

Defendants believe that the prior release of detainees, by Court order and by ICE voluntarily, along with the transfer of an additional six detainees in preparation for removal, and with the likely release of at least six additional detainees on Friday's list, has resulted in a level of detainee population sufficiently low so as to allow appropriate CDC-recommended social distancing at BCHOC.

Defendants filed a Motion to Stay Further Releases and a Memorandum in Support yesterday. In those filings, Defendants show that the BCHOC detainee population has been

reduced from 148 at the outset of this litigation to 91 now, an almost thirty-eight percent (38%) cut. This has resulted in sufficient space for the remaining detainees to practice social distancing at all times, including while sleeping. Defendants urge the Court to stay further releases as there has been no finding by the Court, nor proof by Plaintiffs, that further releases are required to establish appropriate detainee density at BCHOC.

**Individuals Who Must Not Be Released on the April 16 List:** As stated, the Defendants do not believe any additional detainees need to be released to protect the remaining detainees from an outbreak of COVID-19, and Defendants are seeking a stay of any further orders of release.

Nonetheless, as per the Court's order, attached hereto is a detailed analysis of the risk factors for release of the list of ten for April 16, 2020. Defendants suggest that of the second group of ten in the second list of fifty, the following six individuals **cannot** be safely released into the community and/or should not be released in light of their imminent removal:

1. **HASSAN, Ahmed:** Hassan is a citizen and national of Pakistan. He is currently detained subject to 8 U.S.C. § 1231(a).

On February 6, 2018, Hassan was convicted in Connecticut for criminal mischief, interfering with an officer, and breach of the peace. He was sentenced to one year jail, one year suspended, and three years' probation.

On October 26, 2019 the Derby Police Department (Connecticut) arrested and charged Hassan with a felony, a violation of a protective order. The State of Connecticut released him on a $20,000.00 bond prior to ICE enforcement action.

On November 21, 2019, ICE arrested and served Hassan Form I-862, Notice to Appear. At the time of his arrest by ICE, he claimed to have no medical conditions and to

be in good health. At the time of his arrest by ICE, NCIC database inquiries reflected that Hassan had an active order of protection issued against him.

On December 10, 2019, an immigration judge denied Hassan's request for release on bond and issued him a removal order to Pakistan. Hassan waived the 30-day appeal period. This is a final order of removal. A travel document was issued, but Hassan's scheduled removal was cancelled. Hassan will be rescheduled for removal.

Hassan must remain in ICE custody pending his removal as he represents a danger to the community and a flight risk. Hassan is expected to be removed shortly after May 1, 2020.

**2. TEJADA-ALARCON, Eduardo:** Tejada-Alarcon is a citizen and national of El Salvador. Tejada-Alarcon reentered the United States after a prior removal on an unknown place and time without inspection. He is currently detained subject to 8 U.S.C. § 1231 due to his illegal re-entry after a prior order of removal. On May 29, 2015, Tejada-Alarcon entered the U.S. without inspection. On May 30, 2015, US Border Patrol (USBP) encountered and arrested Tejada-Alarcon. USBP determined that Tejada-Alarcon had unlawfully entered the United States from Mexico and issued him Form I-860, Notice and Order of Expedited Removal. On June 22, 2015, he was removed from the U.S. to El Salvador. Tejada-Alarcon re-entered the United States at an unknown time and place

Restraining orders have been issued against Tejada-Alarcon, the first in 2009 and the second in 2011.

On or about April 30, 2012, Tejada-Alarcon was arrested for Operating Under Influence of Liquor (OUI), and he was convicted on May 21, 2012. He was sentenced to

six months in the house of correction suspended for two years. During the pendency of his probation, a warrant issued for him and he was found in violation of his probation. He did not complete probation until February 18, 2020.

On or about December 12, 2011, Tejada-Alarcon was arrested for Assault and Battery, and he was convicted on May 21, 2012. He received the same sentence as the 2012 OUI. On or about November 1, 2010, Tejada-Alarcon was arrested for Driving Under Influence Liquor, and he was convicted on January 3, 2011. On or about March 16, 2009, Tejada-Alarcon was charged with Assault and Battery, an offense that was later dismissed. On or about November 3, 2008, Tejada-Alarcon was charged with Negligent Operation, for which was fined. On or about October 2, 2006, Tejada-Alarcon was charged with Assault and Battery with a Dangerous Weapon, an offense that was later dismissed.

Tejada-Alarcon has no known health issues or concerns aside from anxiety, but it is not prescribed any daily medications.

**3. CASTANEDA-LOMELI, Juan:** Castaneda-Lomeli is a citizen and national of Mexico. He entered the US on an unknown date and time without inspection. He is currently detained subject to 8 U.S.C. § 1231.

On May 4, 2004, Castaneda-Lomeli was arrested by US Border Patrol and voluntarily returned to Mexico. On May 6, 2004, Castaneda-Lomeli was again arrested by U.S Border Patrol and voluntarily returned to Mexico. On May 14, 2004, Castaneda-Lomeli attempted to enter the United States at Nogales, AZ and was voluntarily returned to Mexico. On May 15, 2004, Castaneda-Lomeli attempted to enter the United States and was voluntarily returned to Mexico. On December 6, 2006, Castaneda-Lomeli was

arrested by U.S. Border Patrol in Naco, AZ and granted voluntary return to Mexico. Castaneda-Lomeli has illegally entered the United States on at least **five** occasions and shows no interest in complying with United States law.

On July 15, 2019, Castaneda-Lomeli was arrested and charged with a misdemeanor cocaine possession and driving under the influence of liquor. At the time of arrest by East Windsor, CT Police, Castaneda-Lomeli had a blood alcohol level of 0.2402 (**three** times the legal limit) and was passed out in a running vehicle. Both charges are still pending.

At the time of his arrest by ICE, he claimed to have no medical conditions and to be in good health. Castaneda-Lomeli should remain in ICE custody pending his effectuation of voluntary departure from the United States.

**4. GUALLAN-Tixi, Diego Armando:** Guallan-Tixi is a citizen and national of Ecuador. Guallan-Tixi is being held under 8 U.S.C. §1231 due to a final order of removal.
On August 27, 2015, a Border Patrol Agent encountered Guallan-Tixi in the Rio Grande Valley, Texas.

On February 2, 2016, an immigration judge granted bond in the amount of $7,500. On February 4, 2016, he was released on bond. On September 19, 2018, Guallan-Tixi was booked into the Essex County House of Corrections following his arrest for assault and battery causing serious bodily injury and kidnapping.

On or about September 18, 2018, Guallan-Tixi was charged with aggravated assault and battery and kidnapping. It was alleged that he made sexual advances on a

woman. When she refused the advances, Guallan-Tixi punched her in the face. The victim reportedly lost consciousness and suffered a broken nose. On September 6, 2019, Guallan-Tixi was convicted of Assault and Battery and sentenced to 364 days in the house of correction, six months to be served, balance suspended until September 4, 2020. The kidnapping charge was dismissed.

On May 29, 2019, Guallan-Tixi was arrested by ICE. He is next scheduled to appear before an immigration judge on May 13, 2020. Guallan-Tixi has no known health issues or medical concerns.  Guallan-Tixi must remain in ICE custody as a flight risk and risk to public safety based on his criminal history.

**5. Rafael Perdomo Vizcaino, Raphael:** Vizcaino is a citizen and national of the Dominican Republic. He is currently subject to mandatory detention under 8 USC § 1226(c).

Vizcaino has a lengthy criminal history in Massachusetts including arrests for possession with intent to distribute a cocaine, forgery, obstructing a criminal investigation, and operating a motor vehicle with a suspended license. His criminal record includes an April 18, 2019 conviction for possession with intent to distribute a Class B substance, forgery, obstructing a criminal investigation, and operating a motor vehicle with a suspended license. His record also includes an October 18, 2017 conviction for possession with intent to distribute fentanyl.

On November 4, 2019, ICE arrested Vizcaino and served him with a Notice to Appear.  On February 28, 2020, an immigration judge ordered Vizcaino removed to the Dominican Republic. Vizcaino reserved the right to appeal. On March 30, 2020, Vizcaino filed an appeal with the Board of Immigration Appeals. The appeal is pending.

It is recommended that Mr. Perdomo Vizcaino remains in ICE custody. He is a risk to public safety as demonstrated by his multiple criminal convictions involving drugs and illicit behavior. Additionally he is a flight risk as he has been ordered removed by an immigration judge.

**6. Ali, Liban Abdi:** Ali is a citizen and national of Somalia. He is currently subject to mandatory detention under 8 USC § 1226(c) on account of his November 27, 2017 conviction for trafficking cocaine.

Ali's criminal history includes crimes involving drug trafficking, possession of illegal firearms, and assault. On November 27, 2017, Ali was convicted of trafficking cocaine, two counts of possessing a large capacity firearm, illegal possession of a firearm, receiving stolen property, conspiracy, and unlicensed carrying a loaded firearm while under influence. He received a sentence of three (3) years, six (6) months, and one-day of imprisonment. On April 13, 2018, Ali was convicted robbery, assault, and assault with a dangerous weapon. He has also been arrested for unlicensed possession of a firearm, witness intimidation, possession of controlled substance, possession of a controlled substance with intent to distribute near a school, resisting arrest, and conspiracy.

Ali entered the United States illegally on an unknown date at an unknown location. On March 3, 2020, Ali was taken into ICE custody and served with a Notice to Appear. At the time of his arrest, Ali reported that he was in good health and was not taking any medications. Ali is currently pending removal proceedings before the immigration court. His next immigration court appearance is scheduled for May 18, 2020.

Ali must remain in ICE custody. He is subject to mandatory detention based upon

his criminal convictions. He is also a risk to public safety as demonstrated by his multiple criminal convictions involving drugs, firearms, and assault.

**7. Shaban, Hamzah Ahmad Hassan:** Shaban is a national and citizen of Jordan. He entered the United States on July 19, 2012, as an F-1 student visa holder. Shaban is currently detained under 8 USC § 1226(a).

Shaban was criminally charged with committing a sexual assault in 2017 in Massachusetts. Shaban was alleged to have molested a vulnerable young woman while employed for the Lyft car service, transporting members of the public. Shaban pleaded guilty to a lesser charge of assault and battery on March 12, 2019 and was sentenced to one-year of probation.

On May 9, 2019, ICE arrested and served Shaban with a Notice to Appear. On July 9, 2019 and again on April 15, 2020, an immigration judge denied Shaban release on bond. On November 4, 2019, an immigration judge denied Shaban's application for relief but granted Shaban voluntary departure. The judge's written decision provided a thirty-day appeal period. The respondent appealed to the Board of Immigration Appeals (BIA). His appeal is currently pending.

It is recommended that Shaban remain in ICE custody. He is a risk to public safety as his criminal conviction was directly correlated to his job transporting the public and he was denied bond twice by an Immigration Judge. He lacks community ties and poses a risk of flight if he were to be released.

**8. Tabia, Guillaume:** Mr. Tabia is a citizen and national of the Ivory Coast. He is currently subject to mandatory detention under 8 U.S.C. § 1231, as he is being held pursuant to a final order of removal.

Mr. Tabia has extensive criminal history, including 45 adult arraignments in the state of Massachusetts. Indeed, he has been arrested almost every year since 2001. In addition, he has defaulted in almost every case and violated probation. On September 5, 2017, the Fitchburg District Court convicted Mr. Tabia for violation of the abuse prevention act. On May 23, 2017, the Haverhill District Court convicted Mr. Tabia of assault and battery and threatening to commit a crime. The police report for that offense indicates that the Mr. Tabia was arrested after he body slammed a female victim, breaking her leg and requiring her to be in a cast for several months.

On February 16, 2011, the Lawrence District Court convicted Mr. Tabia of assault and battery on a police officer and resisting arrest. On February 17, 2010, the Lawrence District Court convicted Mr. Tabia of operating under the influence of liquor. In addition, to these convictions, he has multiple arrests for assault and battery and malicious destruction of property. He has also had eight restraining orders issued against him.

ICE arrested Mr. Tabia on March 27, 2018. An immigration judge ordered Mr. Tabia's removal on July 31, 2018. Mr. Tabia filed an appeal of that decision to the Board of Immigration Appeals (BIA) on August 21, 2018. On January 22, 2019, the BIA remanded the case back to the immigration judge and Mr. Tabia was again ordered removed on June 6, 2019. Mr. Tabia filed another appeal to the BIA on July 8, 2019. On November 22, 2019, the BIA dismissed the appeal, rendering Mr. Tabia's removal order administratively final. Mr. Tabia filed a motion to stay removal, however that motion was denied by the First Circuit on December 31, 2019.

Mr. Tabia must remain in custody as he is a risk to public safety, as evidenced by arrests and convictions for assault and battery, threatening, and violation of the abuse

prevention act. In addition, Mr. Tania is an extreme flight risk, as he is subject to a final order of removal and has a history of defaulting on his criminal proceedings.

**9. Villalta-Cruz, Edwin:** Mr. Villalta-Cruz is a national and citizen of El Salvador. He is currently detained under 8 U.S.C. § 1231, pursuant to a final order of removal. Mr. Villalta-Cruz last entered the United States on an unknown date at an unknown location, without inspection by an immigration officer.

Mr. Villalta-Cruz is a known and self-identified former member of MS-13, a well-known and extremely violent gang. He has an extensive history of criminal and federal immigration violations dating back to 2001. While living in Los Angeles, California he was arrested and subsequently convicted for domestic violence with injury in 2001; driving under the influence in 2006; and carrying a loaded firearm and possession of a controlled substance while armed in 2013. Additionally, Mr. Villalta-Cruz was also convicted for illegal re-entry into the United States on November 28, 2015, and again on March 14, 2018.

On January 16, 2013, Mr. Villalta-Cruz applied for admission into the United States from Mexico through the pedestrian primary lanes of the San Ysidro Port of Entry. Mr. Villalta-Cruz presented a copy of a U.S. passport card, bearing the name James Mark Gilmore. The primary inspector suspected that Mr. Villalta-Cruz was an impostor and referred him to the pedestrian secondary office for further inspection. A secondary inspection revealed that Mr. Villalta-Cruz had made a false claim to U.S citizenship. Mr. Villalta-Cruz was subsequently turned over to the San Ysidro Port of Entry Admissibility Enforcement Unit for further disposition. On the same date, Mr. Villalta-Cruz was served a Notice to Appear and placed into removal proceedings. On February 11, 2013, an

immigration judge ordered Mr. Villalta-Cruz removed to El Salvador. On February 26, 2013, he was removed to El Salvador.

Since that time, Mr. Villalta-Cruz has unlawfully re-entered the United States on multiple occasions, in violation of the U.S immigration laws. On July 16, 2013, after his unlawful entry, he was taken into ICE custody and removed on August 8, 2013. He unlawfully re-entered the United States again on September 9, 2014 and was removed on October 22, 2014. He came back into ICE custody on April 5, 2016, and was removed on June 10, 2016. On June 15, 2017, Mr. Villalta-Cruz unlawfully entered the United States again and was prosecuted for unlawful reentry.

On June 4, 2019, Mr. Vallarta-Cruz came back into ICE custody. He did not claim any medical issues at that time. On November 7, 2019, an immigration judge denied Mr. Villalta-Cruz's applications for relief from removal. On December 17, 2019, Villarlta-Cruz filed an appeal of that decision with the Board of Immigration Appeals. Such appeal is currently pending. Because an immigration judge ordered Mr. Vallarta-Cruz removed on February 11, 2013, he remains subject to that administratively final order of removal and remains detained under 8 U.S.C. § 1231, despite his pending appeal.

It would pose a grave danger to the community if Mr. Villalta-Cruz is released. He is a public safety risk based on his criminal history and gang affiliation, and an extreme flight risk due to his multitude of illegal re-entries into the United States.[1]

---

[1] Indeed, the appearance of Mr. Villalta-Cruz on the Court's list of detainees to be considered for release raises again the question as to the basis of by which the Court listed detainees for consideration.

**10. ROJAS VARGAS, Karina:** Ms. Rojas Vargas is a citizen and national of Colombia. She is currently subject to mandatory detention under 8 U.S.C. § 1226(c), based on her multiple theft convictions. Ms. Rojas Vargas was admitted to the United States in New York, NY, on a B2 tourist visa, with authorization to remain in the United States until December 5, 1999. Ms. Rojas Vargas failed to depart upon the expiration of her tourist visa.

Ms. Rojas Vargas was convicted of larceny on December 1, 2010, April 9, 2015, and August 27, 2015. She was also convicted of obstructing police on August 27, 2015. On April 15, 2019, Ms. Rojas Vargas was convicted of felony – receipt of stolen property. In addition, Ms. Rojas Vargas currently has two counts of receiving stolen property; one count of fraud-impersonating; and one count of misdemeanor larceny pending against her.

On June 5, 2014, ICE served Ms. Rojas Vargas with a Notice to Appear, thereby initiating her removal proceedings. On the same date, Ms. Rojas Vargas was released on an Order of Release of Recognizance. Ms. Rojas Vargas came back into ICE custody on August 28, 2015 for violating her Order of Release of Recognizance, after she was convicted of larceny. On October 1, 2015, an immigration judge issued an order granting Ms. Rojas Vargas' release from custody upon the posting of a bond in the amount of $6,000. On the same date, she posted bond and was released from custody. On May 2, 2019, Rojas Vargas was arrested by Rhode Island State Police for receiving stolen goods, thus violating her bond conditions again.

On September 22, 2019, Ms. Rojas Vargas came back into ICE custody. On January 27, 2020, the immigration judge granted her application for relief from removal.

On February 26, 2020, ICE filed an appeal of that decision with the Board of Immigration Appeals (BIA). Such appeal remains pending with the BIA.

ICE requests that Ms. Rojas Vargas remain in ICE custody, as she is a danger to public safety based of her criminal history and a flight risk as she has twice failed to comply with the terms and conditions of release from custody due to continuing to accrue criminal arrests. Moreover, there is no issue as to social distancing with the female ICE detainees, so her release is wholly unnecessary and unjustifiable under the Court's rubric. The Court is directed to Exhibit 1, attached hereto, for the particulars regarding each of the ten listed detainees.

Respectfully submitted,

ANDREW E. LELLING,
United States Attorney

By: */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Michael Sady
Assistant U.S. Attorneys
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
thomas.kanwit@usdoj.gov
April 15, 2020                                                  michael.sady@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  April 15, 2020

*/s/ Thomas E. Kanwit*
Thomas E. Kanwit