UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
MARIA ALEJANDRA CELIMEN SAVINO )
and JULIO CESAR MEDEIROS NEVES, )
)
Petitioners-Plaintiffs, )
) 20-cv-10617 WGY
v. )
)
THOMAS HODGSON, et al., )
)
Respondents-Defendants. )
_____)

# DEFENDANTS' INPUT REGARDING APRIL 21 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020. It is Defendants' position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

## Appropriate Detainee Population Density Has Been Achieved

Defendants believe that the prior release of detainees, by Court order and by ICE voluntarily, along with the transfer of an additional six detainees in preparation for removal, has resulted in a level of detainee population sufficiently low so as to allow appropriate CDC-recommended social distancing at BCHOC.

Defendants filed a Motion to Stay Further Releases and a Memorandum in Support yesterday. In those filings, Defendants show that the BCHOC detainee population has been reduced from 148 at the outset of this litigation to **87** now, an over **forty percent** (**40%**) cut.

This has resulted in sufficient space for the remaining detainees to practice social distancing at all times, including while sleeping. Defendants continue to urge the Court to stay further releases and will seek a hearing on the merits at the first opportunity.[1]

**All Ten Individuals on the April 21 List Are Significant Risks to the Public and/or Risks of Flight:** As stated, the Defendants do not believe any additional detainees need to be released to protect the remaining detainees from an outbreak of COVID-19.

Nonetheless, as per the Court's order, attached hereto is a detailed analysis of the risk factors for release of the list of ten for April 21, 2020. While Defendants are mindful of the Court's goal of reducing the detainee population so as to allow social distancing at BCHOC, all of the individuals on today's list present significant risks to the community. This group includes rapists, child molesters, spouse beaters, drug dealers, violent assaulters, gang members and weapons possessors. Some individuals on today's list comprise all, or nearly all, of the above. Their individual risk of contracting COVID-19 cannot outweigh the danger to the community, *especially as there are still no confirmed cases of COVID-19 at BCHOC*.

   **1. Alarcon , Santos Mercedes :** Santos Mercedes Alarcon is a citizen and national of El Salvador. He is currently detained pursuant to 8 USC § 1226(a). On May 1, 2004, U.S. Border Patrol arrested Alarcon who falsely claimed to be a citizen of Mexico. Alarcon was granted voluntary return and was returned to Mexico. Alarcon then unlawfully re-entered the United States at an unknown place and time.

---

[1] Plaintiffs continue to submit statistics on the number of COVID-19 cases and deaths in the Commonwealth of Massachusetts. Given that there are still no confirmed cases within BCHOC, these statistics indicate that the detainees are more likely to be exposed to the coronavirus upon release then if they remain detained.

His criminal history includes arrests on or about: (1) October 21, 2019; (2) July 5, 2016; and (3) September 5, 2007. As to the most recent incident, Alarcon was arrested for assault and battery with a dangerous weapon, and assault and battery on a family or household member, which Plaintiffs have identified as his wife. Incredibly, Plaintiffs propose that Alarcon be released to his wife's home despite his history of abuse and violence to her. The charges are still pending in state court. As to the 2016 arrest, the respondent was convicted of photographing an unsuspecting person in the nude. As to the 2007 incident, the respondent was arrested and charged with assault.

Alarcon should remain in ICE custody as a risk to public safety. He fits into the Court's original category four, individuals with pending criminal charges for violent crimes, as to which the Court has previously indicated that it would be unlikely to release detainees. *See* docket # 64 at n. 8.

**2. Cruz Castillo-Martinez, Jairon:** Jairon Castillo-Martinez is a citizen and national of Nicaragua who entered the United States without inspection at an unknown time and place. Castillo Martinez is currently subject to mandatory detention pursuant to 8 USC § 1226(c) based upon a conviction for sexual assault.

On December 27, 2009, ICE was notified that Castillo-Martinez was arrested in California for felony burglary.

On August 29, 2010, Castillo-Martinez was arrested in Florida for driving under the influence. ICE was notified and a Form I-247 Immigration Detainer was lodged. On August 31, 2010, Castillo-Martinez was arrested by ICE.

On November 19, 2010, Castillo-Martinez was released from ICE custody and placed in the Alternative to Detention (ATD) Program with GPS monitoring. While enrolled in

the ATD program, Castillo-Martinez was arrested in Florida on April 5, 2011 and charged with failure to appear and driving with a suspended license. Thereafter, on June 8, 2011, Castillo-Martinez became an ATD absconder.

On January 16, 2013, Castillo-Martinez was arrested in Connecticut and charged with Larceny 6th. Then, on June 6, 2017, Castillo-Martinez was arrested in Connecticut and charged with sexual assault. ICE lodged a Form I-247 Immigration Detainer as a result of this arrest.

On September 9, 2019, Castillo-Martinez pled guilty to sexual assault in the second degree and was sentenced to a term of 10 years of incarceration, execution suspended after 823 Days, with 20 years of probation.[2] On September 10, 2019, upon the completion of his term of imprisonment, ICE took Castillo-Martinez into custody.

Castillo-Martinez must remain in custody because he presents a high degree of danger to the public based upon his sexual offense history. Plaintiff's claim that he does not present a danger to the community does not take into account this conviction. Castillo-Martinez has also demonstrated that he either cannot, or will not, comply with conditions of release as he previously violated his conditions and absconded from the ATD program. Plaintiffs do not address how Castillo-Martinez can be trusted to comply with the conditions of his release in light of his past failures to do so.[3] Moreover, Castillo-

---

[2] Plaintiffs' counsel state that Castillo-Martinez is seeking to vacate his state sexual assault conviction. This does not alter that he is before the Court as a convicted man based upon his plea and entry of judgment against him.

[3] Plaintiffs' counsel argues that Castillo-Martinez's heart condition and his PTSD make him more vulnerable to COVID-19. The Centers for Disease Control do not agree regarding PTSD; the nature of the heart condition is not explained in Plaintiffs' filing. Of course, according to Plaintiffs, any stress is a sufficient medical ground for release notwithstanding CDC

Martinez is to be released to home confinement in the home of "a friend." This does not provide sufficient security.

**3. Daskalov, Dimitar Rumenov:** Dimitar Rumenov Daskalov is a citizen and national of Bulgaria who entered the U.S. as a J-1 non-immigrant on June 19, 2013 and was subsequently granted a change of status to that of a B-2 visitor with permission to remain in the United States until September 25, 2014. He is currently held under 8 USC § 1226(a).

On November 26, 2019, Daskalov was arrested in Massachusetts for strangulation, assault and battery on a child with injury, reckless endangerment of a child, assault and battery by means of a dangerous weapon, assault and battery on a pregnant victim, intimidation of a witness, and cruelty to an animal. The charges are currently pending in state court. The alleged victims include the pregnant mother of Daskalov's two children, her two daughters, an infant, and the family dog. Based upon an extensive police investigation that included victim interviews, documenting of the victims' injuries, and a viewing of a nanny camera, the respondent is alleged to have beaten and strangled the infant while changing his diaper, striking the stepdaughter in the head with a video game controller, assaulting his pregnant girlfriend, and repeatedly kicking the family dog to punish her.

---

guidance.  Dr. Perrin's declaration is irrelevant to the Court's determination of whether Castillo-Martinez should be released as it does not state a medical opinion regarding the effects of PTSD on COVID-19 susceptibility.  All it does is recite what Castillo-Martinez told Dr. Perrin and then conclude, essentially, that his story could be true because he appears to have suffered a beating at some point.  The declaration of Guisela Pinto Caballero, LICSW, is similarly irrelevant and was apparently obtained in support of Castillo-Martinez's immigration proceedings, and, specifically his attempt to avoid return to his home country based upon the Convention Against Torture.  This is not a matter before this Court.

Astoundingly, Plaintiffs' counsel attempts to minimize these serious charges by stating that "Mr. Daskalov does not pose a danger to the community. He has never been convicted of a crime and his only pending charges are related to a child custody dispute." Daskalov is in fact facing charges for strangulation, assault and battery on a child with injury, reckless endangerment of a child, assault and battery by means of a dangerous weapon, assault and battery on a pregnant victim, intimidation of a witness, and cruelty to an animal, and nothing in the Exhibit 3A disputed that.  At most, Exhibit 3B raises a preservation of evidence argument and may—or may not – be the basis for impeachment of the complaining victim.  Plaintiffs' counsel's description of these charges as relating to "a child custody dispute" is misleading.

Plaintiffs have identified Daskalov as in a higher risk medical category for COVID-19.  The fact that Daskalov was a heavy smoker is not enough to place him in that group; the CDC discusses chronic lung disease as the most relevant condition, and neither Daskalov (according to Plaintiffs) nor all smokers have that.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed April 12, 2020).  While morbid obesity is a risk factor, it is unclear if Daskalov is morbidly obese, with a body mass index of 40 or more, or not.  *Id.*

Daskalov must remain in ICE custody. Daskalov is a an exceptionally high risk to public safety: while the charges remain pending, there is strong evidence that Daskalov is a woman beater, a child abuser, is cruel to animals and brutally attacked an infant.  The Court cannot justify his release.  He fits into the Court's original category four, individuals with pending criminal charges for violent crimes, as to which the Court has previously indicated that it would be unlikely to release detainees.  *See* docket # 64 at n. 8.

**4. Fernandes, Joao Lima:** Joao Lima Fernandes is a citizen and national of Cape Verde who was admitted into the United States as a lawful permanent resident on October 30, 1990. He is currently subject to mandatory detention pursuant to 8 USC § 1226(c) due to a conviction for possession of a firearm.

On January 20, 2004, Fernandes was convicted of possession of a firearm, assault and battery with a dangerous weapon, and assault with a dangerous weapon. In addition to his 2004 conviction, Fernandes has been arrested for homicide, assault, possession with intent to distribute a Class B substance, conspiracy to violate drug dependency laws, trespassing, receiving stolen property, unlicensed carrying of a firearm, interfering with police, disorderly conduct, and disturbing the peace.

On November 14, 2014, Fernandes was convicted of possessing of a large capacity firearm, possession of ammunition, possession of a loaded firearm, and possession of a firearm-rifle. He was sentenced to serve six to ten years. He served nine years and was turned over to ICE.  He therefore fits into the Court's original category five, individuals with criminal convictions for violent crimes, as to which the Court has previously indicated that it would be unlikely to release detainees. *See* docket # 64 at n. 8.

On November 8, 2019, Fernandes was issued a Form I-862, Notice to Appear, and was brought into ICE custody upon completion of his state sentence.  His next scheduled hearing with EOIR is April 21, 2020.

Fernandes, too, must remain in ICE custody pending the outcome of his removal proceedings because he has a very dangerous criminal history with weapons charges, violence and a pending homicide charge.   Moreover, Plaintiffs concede Fernandes has no underlying medical conditions.

**5. Battistotti, Marco:** Marco Battistotti is a citizen and national of Italy. Battistotti entered the United States on or about July 8, 1996, as a Visa Waiver Program Visitor with authorization to remain in the United States until October 7, 1996. He is currently detained pursuant to 8 USC § 1226(a).

Battistotti's foreign criminal history includes convictions for three counts of fraudulent bankruptcy, false accusations, failure to pay social security, theft, and fraud. Plaintiffs claim that he has no criminal convictions whatsoever; this is not accurate.

On December 4, 2019, Battistotti was arrested in Connecticut and charged with multiple counts of criminal violation of a restraining order, and multiple counts of harassment. Battistotti has three cases pending before the Connecticut Superior Court for multiple charges including criminal violation of a restraining order, felony violation of a protective order, and harassment. Plaintiffs claim that Battistotti "has no pending cases of any kind."[4] *See* Exhibit 5. The protective order had been issued by a Connecticut Superior Court for the protection of the mother of Battistotti's child. The women, a citizen of the United States, had been admitted to the Connecticut Safe at Home Program, an address confidentiality program. The parents of the protected woman have also expressing a fear of Battistotti and worries for their daughter's safety.[5]

On November 19, 2015, prior to his arrest in Connecticut, ICE had arrested Battistotti

---

[4] The gap between what Plaintiffs' counsel represents regarding the suitability of particular detainees and the actual facts regarding their criminal history is very unsettling. Exhibit 5 itself shows that Battistotti has pending criminal charges, both felony and misdemeanor.

[5] In contrast, Plaintiffs submit a complaint Battistotti made against his child's mother for daring to text him the date of an upcoming custody court hearing, allegedly in violation of a restraining order he obtained against her. This is hardly the same kind of thing.

and served him with a Form I-862, Notice to Appear, charging him with a violation of 8 USC § 1227(a)(1)(B) (overstay). On December 8, 2015, Battistotti posted a $1,500.00 bond and was released from ICE custody.

Following his Connecticut arrest and release from state custody, Battistotti was arrested by ICE on March 5, 2020. At the time, Battistotti claimed to be in good health with the exception of a preexisting knee injury. Now Plaintiffs are claiming he suffers from asthma and PTSD but he denied any such conditions just a little over one month ago. Moreover, Plaintiffs' plan is to have Battistotti transported to New York City, the very worst location in the entire country in terms of COVID-19 risk. He is at a much lower risk of infection at BCHOC than he would be there.

It is recommended that Battistotti remain in ICE custody. He is a risk to public safety as demonstrated by his criminal history, his multiple arrests for crimes that show his general disregard for the law, and his arrest while released, on bond, from ICE custody.[6]

**6. Lewis, Conroy Desmond:** Conroy Desmond Lewis is a citizen and national of Jamaica who entered the U.S. as a lawful permanent resident on December 20, 2004. He is currently held as mandatory detention under 8 USC § 1226(c).

Lewis has multiple convictions in Connecticut for controlled substance violations. On April 4, 2018, Lewis was convicted of possession with intent to sell a controlled substance and sentenced to five years of imprisonment. On July 17, 2017, Lewis was convicted of possession with intent to sell a controlled substance and sentenced to three

---

[6] Battistotti is one of the organizers of the group protesting conditions at BCHOC who wrote at least two letters to the press. These letters were filled with multiple false statements. His statement attached to Plaintiffs' filing as Exhibit 5D is another example of his hyperbole and misinformation. Defendants believe that this individual's reporting is wholly unreliable.

years of imprisonment. On May 20, 2009, Lewis was convicted of three counts of possession of a controlled substance and sentenced to one year of imprisonment for each count.

Lewis also has convictions for criminal trespassing, carrying a dangerous weapon, reckless endangerment, threatening, and disorderly conduct. He has also been arrested, and has pending charges for disorderly conduct, threatening, disturbing the public peace, traffic offenses, and failure to appear. Although Lewis claims to have no gang association, he: (1) has tattoos similar to those of known gang members; (2) consistently wears attire consistent with known gang members; (3) shows gang hand symbols; and (4) associates with individuals displaying known gang symbols.

Lewis must remain in ICE custody. He is subject to mandatory detention based upon his criminal convictions and he poses a threat to public safety as evidenced by his multiple drug convictions and arrests.[7]

**7. Martins, Edson:** Edson Martins is a citizen and national of Cape Verde who was admitted into the United States as a B-2 nonimmigrant on May 3, 2018, with authorization to remain for a temporary period not to exceed November 2, 2018. Martins remained in

---

[7] Although Plaintiffs' counsel state that Lewis has PTSD and high blood pressure, neither are listed as conditions increasing the risk of complications from COVID-19 by the CDC. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (*accessed* April 12, 2020). While asthma has been listed as a concern, a recent New York Times article brings that into question. *See Asthma Is Absent Among Top Covid-19 Risk Factors, Early Data Shows*, New York Times, April 16, 2020, available at https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html (last accessed April 21, 2020)("But this month, when New York State, the epicenter of the outbreak in the United States, began releasing data on the top 10 chronic health problems suffered by people who died from coronavirus, asthma was notably absent from the list. State officials said only about five percent of Covid-19 deaths in New York were of people who were known to also have asthma, a relatively modest amount.").

the United States beyond November 2, 2018 without authorization. Martins is detained subject to 8 USC § 1226(a).

Martins has three arrests for operating under the influence on November 13, 2018, December 24, 2018, and October 26, 2019. The charges are currently pending in state court. As to October arrest, Martins was also arrested for assault with a dangerous weapon, negligent operation of a motor vehicle, threatening, and disturbing the peace. The charges, which are also pending, arose from an on-site arrest following an emergency call. The caller reported a male threatening to have a gun and trying to run people over with his vehicle. At the scene, police interviewed witnesses who identified Martins as having argued with another person and said: "I'm getting my gun and killing you and everyone here." Martins then allegedly drove his vehicle erratically in the vicinity of bystanders.

ICE arrested Martins on February 17, 2020. It is recommended that Mr. Martins remain in ICE custody. He is a risk to public safety as demonstrated by his violent behavior and his multiple arrests for operating a motor vehicle under the influence. Mr. Martins has no medical conditions which are recognized as risk factors by the CDC for the coronavirus.

**8. Ofosuhene, Jerry**: Jerry Ofosuhene is a native and citizen of Ghana. He was admitted to the United States on or about September 15, 1998 as a B-2 visitor with authorization to remain in the United States for a temporary period not to exceed 180 days. Ofosuhene is detained as a final order pursuant to 8 USC § 1231.

Ofosuhene's Massachusetts criminal history includes: (1) an arrest on November 25, 2008 for possession with intent to distribute a Class D substance within 1000 feet of a school and operating a motor vehicle with a suspended license; (2) an arrest on December

10, 2018 for assault and battery of a family or household member; and (3) an arrest on March 19, 2019 for a violation of a protective order. His 2018 and 2019 arrests involve the physical abuse of his United States citizen wife, and violating a protective order that was issued by a Massachusetts court to protect her.

On April 24, 2019, was taken into ICE and served with a Form I-862 Notice to Appear charging him with a violation of 8 USC § 1227 (a)(1)(B)(overstay). On July 29, 2019, following a hearing, the Immigration Judge ordered Ofosuhene removed. The respondent appealed to the Board of Immigration Appeals (BIA). The BIA dismissed the appeal on January 8, 2020.[8]

Ofosuhene should remain in ICE custody due to his violence against his family. He has a final order of removal and poses a risk to public safety due to his arrests and convictions. He does not have underlying medical conditions recognized as risk factors for COVID-19 by the CDC, with the exception of asthma—a condition which is being reevaluated as a much lower risk factor than previously considered. *See* note 7 *supra*. Moreover, as indicated in Exhibit 8A, Ofosuhene's asthma is very mild. In addition, the release condition to his wife's home is problematic, not only because of the violence against his family, but also because by his wife's admission they have not lived together since 2018. *See* Exhibit 8C.

**9. Andrade Prado, Flavio Junior:** Andrade Prado is a citizen and national of Brazil who admittedly entered the United States illegally. He is currently detained pursuant to 8

---

[8] Plaintiffs make the statement that Ofosuhene has been in ICE custody for almost a year. They do not indicate that most of the delay has been the result of his appeal. Moreover, this is wholly irrelevant, as Plaintiffs' counsel know, because the *length* of his detention is not an issue before this Court.

USC § 1226(a).

In February of 2019, the Petitioner came to the attention of the ICE Homeland Security Investigation's Attaché in Brasilia based upon information received from a Civil Police Agent in Rio de Janeiro, Brazil in reference to an arrest warrant issued for a Brazilian national identified as Flavio Andrade Prado Junior, date of birth, October XX, 1978. *See* Declaration of David Wesling, Supervisory Detention and Deportation Officer, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations ("Wesling Decl."), attached hereto as Exhibit 2, at ¶ 6. The arrest warrant was issued on July 13, 2012, by the City of Poco Fundo, State of Minas Gerais. The warrant is valid until May 6, 2024. The warrant was issued for the "recapture" of Andrade Prado.

Andrade Prado's foreign criminal history includes an arrest: (1) on December 22, 2004, for rape; (2) on July 17, 2003, for theft; (3) on April 25, 2002, for rape (4) on March 10, 1999 for vehicle theft; and (5) on March 22, 1998 for vehicle theft. **Andrade Prado was convicted in Brazil for the crime of rape** in 2006. *Id.*, at ¶ 9. Although Plaintiffs' counsel claim that the rape conviction is somehow tainted, this argument was presented to an Immigration Judge and rejected. As stated by the government in it Opposition to Andrade Prado's individual habeas petition:

> He claims that his Brazilian rape conviction was somehow flawed and unjust. He cites a purported letter from the victim in which she recants her allegations.
>
> Petitioner ignores that a second Immigration Judge rejected these very same arguments, however. The Immigration Judge noted that the victim's letter was circumspect, coming as it did some ten years after Petitioner's conviction. See Exhibit 2 at 13. In addition, the letter was dated May 7, 2019 and Petitioner's attorney in Brazil filed a motion to

>reopen his case the next day, May 8, 2019. Given that Petitioner says this was an unsolicited letter, prompted by the victim seeing Petitioner on Brazilian television in connection with his immigration case here, it is unclear how it could have been received so quickly that the attorney acted on it a day after it was written. Moreover, Petitioner does not have the original letter and claims that a digital copy was emailed to his wife. He did not explain how the victim had his wife's email address or provide any other evidence of the letter's authenticity. The Immigration Judge concluded that Petitioner had been convicted of a serious crime and imprisoned in Brazil before he escaped or fled and came to the United States.

Opposition to Petition for a Writ of Habeas Corpus, *Andrade Prado v. Hodgson*, C.A. No. 20-10191-PBS, at pp. 7-8. In short, Andrade Prado's claim that the accuser wished to withdraw her charge of rape, ten years later, was found to be highly suspicious.

Brazilian records further indicate that the Andrade Prado escaped prison in Brazil on May 8, 2008. *Id.*, at ¶ 10.

American criminal records also indicate that the Andrade Prado was arrested and charged with driving without a license in September of 2012 and that Andrade Prado used his brother's name when arrested. *Id.* at ¶ 11. Petitioner also misused his brother's identity in 2008 when he traveled from Brazil to the United States using his brother's passport. *Id.*

Andrade Prado must remain in ICE custody. He has been convicted of rape and there is an outstanding warrant from Brazil against him. He is a risk to public safety due to his arrests and conviction in Brazil. He is also a flight risk given the outstanding warrant, his escape from a Brazilian prison and his use of false identity on at least two occasions.[9]

---

[9] Prado Junior filed a habeas corpus petition with Judge Saris as a purported member of the post-*Brito* class (*Brito v. Barr*, No. 19-CV-11314-PBS, 2019 WL 6333093 (D. Mass. Nov.

**10. De Jesus Concepcion, Angela:** Angela De Jesus Concepcion is a citizen and national of Dominican Republic.  She is currently detained subject to 8 USC § 1231 pursuant to a final order of removal.

On or about August 16, 1996, US Immigration and Naturalization encountered Concepcion at or near San Juan, and served her with an Order to Show Cause charging her with a violation of 8 USC § 1251(a)(1)(B) (entry without inspection). On September 18, 1996, Concepcion was released from custody. On February 11, 1997, an immigration judge in Miami ordered Concepcion removed in absentia.

On February 6, 2008, Concepcion was convicted in New Jersey for the offense of shoplifting. She was sentenced to 80 hours community service and ordered to pay restitution in the amount of $255. On February 18, 2014, Concepcion was arrested and charged in New Jersey with using the identification information of another. The case was dismissed on April 20, 2015.

On March 18, 2012, Concepcion arrived in the United States at the Newark Liberty Airport, in  Newark, New Jersey and presented herself as a United States Citizen with a U.S. Passport bearing the name Isis Carolin Pichardo, which is not her name.

On April 24, 2012, Concepcion filed a motion to reopen with the immigration court. On May 14, 2012, an immigration judge in Miami granted Concepcion's Motion to Reopen.

---

27, 2019)) put in place by Judge Saris (and which the government is appealing).  Judge Saris denied his petition for a new bond hearing, finding that Prado Junior's criminal history was so bad that there was no chance that a new bond hearing, with the burden of proof on the government, would have a different outcome.  *See  Flavio Andrade Prado v. Thomas Hodgson*, C.A. No. 20-10191-PBS.

On October 7, 2014, the United States District Court, District of New Jersey, sentenced Concepcion to a term of imprisonment of thirty-six (36) months for the following convictions: (1) False Representation of U.S. Citizenship in violation of 18 USC § 911; (2) False Statement in Application and Use of a Passport in violation of 18 USC § 1542; and (3) Aggravated Identity Theft in violation of 18 USC § 1028A(a)(1).

On April 8, 2019, upon the completion of her federal sentence, Concepcion was taken into ICE custody. Although Plaintiffs' counsel point out that Concepcion "paid her debt to society," this is wholly irrelevant. The question before the Court is whether she presents a risk to society if released, a danger of flight and, on the other pan of the scale, whether conditions at BCHOC are so threatening for infection with COVID-19 that she must be released. Because the numbers of female detainees at BCHOC are so low, there is no need to release any female detainees in order to achieve the CDC recommendations for social distancing. Moreover, Concepcion's family history of heart disease and diabetes does not make *her* at greater risk of either coming down with COVID-19 infection nor of having a worse outcome if she did. Plaintiffs are confusing whether Concepcion actually has a heart condition or diabetes (she does not) with whether she is at some risk for developing either condition. The argument that her acid reflux is a coronavirus comorbidity is speculative to an extreme. In short, she does not have any risk factors for COVID-19 that are recognized by the CDC.

It is recommended that Concepcion remain in ICE custody. There is ample room for female ICE detainees to practice social distancing, as previously argued to the Court in the largely-ignored Motion to Stay filed by Defendants. Her removal order is final, she is a risk to public safety as demonstrated by her lengthy criminal history, and she is a flight

risk based on her prior in absentia order, her convictions for fraud, and her use of aliases. Moreover, the plan for her release does not address (as none of the plans put forward by Plaintiffs' counsel do) who else resides at the proposed residence, whether those people will self-quarantine, whether they are working outside the home, how many people live there, what the physical layout is of the proposed residence. Plaintiffs go on at great length about the purported shortcomings of BCHOC but have utterly failed to inform the Court of how *any* of the proposed arrangements for the released detainees will protect the detainees – other than the conclusory statements that the home "is sufficient to allow [the detainee] to properly quarantine." The Court should know how many bathrooms are there, how many people are sharing the bathroom, how big the kitchen is, how many people use it, how narrow are the hallways, etc. All of the questions raised about BCHOC have been left wholly unanswered by Plaintiffs' submissions as though release is a magical talisman against infection and confinement an inevitable conduit to contracting the virus.[10]

---

[10] Although Ms. Concepcion's care for her adult son is wholly irrelevant to the issue before the Court, it is worth noting that Plaintiffs' submissions regarding that issue are inconsistent. Exhibit 10 states that "[h]er only child, Miguel, counts on her for support to manage a congenital blood disorder, " while Exhibit 10A contains a letter from a friend that says "Angela has an 18 yr. old son named Angel Dejesus, who was born and raised in The United States of America. Angel resides with his aunt and uncle, They have not seen each other in over 4 yrs." These two statements appear irreconcilable.

The Court is directed to Exhibit 1, attached hereto, for additional particulars regarding each of the ten listed detainees.

Respectfully submitted,

ANDREW E. LELLING,
United States Attorney

By: */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Michael Sady
Assistant U.S. Attorneys
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
thomas.kanwit@usdoj.gov
April 21, 2020                          michael.sady@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Thomas E. Kanwit*
Dated:   April 21, 2020                          Thomas E. Kanwit