UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA  02203


Law Offices of Jason Giannetti, Esq.
Giannetti, Jason
1318 Beacon Street
Suite 14A
Brookline, MA  02446


In the matter of          File A ████-399     DATE: Dec 11, 2019
PRADO JUNIOR, FLAVIO ANDRADE

___ Unable to forward - No address provided.
_X_ Attached is a copy of the decision of the Immigration Judge. This decision
is final unless an appeal is filed with the Board of Immigration Appeals
within 30 calendar days of the date of the mailing of this written decision.
See the enclosed forms and instructions for properly preparing your appeal.
Your notice of appeal, attached documents, and fee or fee waiver request
must be mailed to:     Board of Immigration Appeals
                       Office of the Clerk
                       5107 Leesburg Pike, Suite 2000
                       Falls Church, VA 22041
___ Attached is a copy of the decision of the immigration judge as the result
of your Failure to Appear at your scheduled deportation or removal hearing.
This decision is final unless a Motion to Reopen is filed in accordance
with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
motion must be filed with this court:
                       IMMIGRATION COURT
                       JFK FEDERAL BLDG., ROOM 320
                       BOSTON, MA  02203
___ Attached is a copy of the decision of the immigration judge relating to a
Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
1208.31(g)(1), no administrative appeal is available. However, you may file
a petition for review within 30 days with the appropriate Circuit Court of
Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

___ Attached is a copy of the decision of the immigration judge relating to a
Credible Fear Review. This is a final order. No appeal is available.

___ Other: _____

_____

                              COURT CLERK
                              IMMIGRATION COURT                     FF

      cc: MENENDEZ, BERNARD
          JFK BLDG, ROOM 425
          BOSTON, MA,  022030000

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**
**BOSTON, MASSACHUSETTS**

**IN THE MATTER OF:**

| | | |
|---|---|---|
| **PRADO JUNIOR, Flavio Andrade** | ) | |
| A ███████ -399 | ) | **In Removal Proceedings** |
| | ) | **DETAINED** |
| __Respondent__ | ) | |

**CHARGE:**  Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA" or "Act"): Alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

**APPLICATIONS:**  Asylum, pursuant to INA § 208

Withholding of Removal, pursuant to INA § 241(b)(3)

Protection under the Convention Against Torture

Cancellation of Removal, pursuant to INA § 240A(b)(1)

Voluntary Departure, pursuant to pursuant to INA § 240B(b) of the Act

**ON BEHALF OF THE RESPONDENT**
Jason Giannetti, Esq.
Law Offices of Jason Giannetti
1318 Beacon Street, Suite 15
Brookline, Massachusetts 02446

**ON BEHALF OF DHS**
Yul-mi Cho, Esq.
Assistant Chief Counsel
Office of the Chief Counsel
15 New Sudbury Street, Room 425
Boston, Massachusetts 02203

**DECISION OF THE IMMIGRATION JUDGE**

**I.  PROCEDURAL HISTORY**

On May 1, 2019, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against the Respondent, Flavio Andrade Prado Junior, with the filing of a Notice to Appear ("NTA") with the Boston Immigration Court ("Court"). Exh. 1. The NTA alleges that the Respondent: (1) is not a citizen or national of the United States; (2) is a native and citizen of Brazil; (3) arrived in the United States at or near an unknown place, on or about an unknown date; and (4) was not then admitted or paroled after inspection by an Immigration Officer. *Id.* The NTA charges the Respondent as being removable pursuant to section 212(a)(6)(A)(i) of the Act. *Id.*

At a master calendar hearing convened on June 4, 2019, the Respondent appeared, with counsel. At that time, the Respondent filed written pleadings, in which he admitted allegations one through three and denied allegation four listed in the NTA, and conceded the charge of removability. Exh. 3. The Respondent indicated that he would seek relief in the form of asylum, withholding of removal, protection under the Convention Against Torture, cancellation of removal, voluntary departure, and based on a Form I-130. *Id.* Based on the Respondent's admissions, the Court sustained the charge of removability and directed Brazil as the country of removal.

On June 24, 2019, counsel for the Respondent filed a motion to withdraw, which the Court granted. *See* Resp't Mot. to Withdraw (June 24, 2019); Order of the Immigration Judge (July 12, 2019). On July 16, 2019, the Respondent filed a Form I-589, Application for Asylum and for Withholding of Removal. Exh. 4. On July 23, 2019, the Court convened a master calendar hearing, at which time the Respondent appeared, with new counsel. Counsel for the Respondent filed a motion to amend the Respondent's written pleadings, admitting allegations one through four listed in the NTA. The Court granted the motion and reconfirmed the finding of removability.

On August 16, 2019, the Court convened a hearing solely to address the legal issues surrounding the Respondent's criminal convictions in Brazil. On September 26, 2019, the Court convened an individual merits hearing, at which time the Respondent appeared, with counsel, and testified in support of his applications for relief. The Court reconvened on October 22, 2019, at which time the Respondent's wife testified. The Court has considered the Respondent's testimony, the testimony of the Respondent's wife, and all of the other evidence in the record of proceeding, whether or not specifically summarized or referenced herein.

## II.   DOCUMENTARY EVIDENCE

**Exhibit 1:**    Notice to Appear (filed May 1, 2019);

**Exhibit 2:**    Form I-213, Record of Deportable or Inadmissible Alien (filed May 21, 2019);

**Exhibit 3:**    Respondent's Written Pleadings (filed June 4, 2019);

**Exhibit 4:**    Respondent's Form I-589, Application for Asylum and for Withholding of Removal, with Supporting Documents (filed July 16, 2019);

**Exhibit 5:**    Respondent's Form EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents (marked into evidence July 23, 2019);

**Exhibit 6:**    Respondent's Supplemental Submission (marked into evidence July 23, 2019);

**Exhibit 7:**    DHS's Submission of Respondent's Brazilian Criminal Records (marked into evidence July 23, 2019);

**Exhibit 8:**   Respondent's Memorandum of Law in Support of Application for Cancellation of Removal, and Supporting Documents (marked into evidence Sept. 26, 2019);

**Exhibit 9:**   Respondent's Brazilian Criminal Records with Translation (marked into evidence Sept. 26, 2019);

**Exhibit 10:**   Respondent's Supplemental Submission (marked into evidence Oct. 22, 2019).

## III.   STANDARDS OF LAW

### A. Credibility and Corroboration

In all applications for asylum and withholding of removal, the Court must make a threshold determination of the alien's credibility. *See Matter of O-D-*, 21 I&N Dec. 1079 (BIA 1998); *Matter of Pula*, 19 I&N Dec. 467 (BIA 1987). The provisions of the REAL ID Act of 2005 apply to the Court's credibility analysis in asylum applications filed on or after May 11, 2005. Pub. L. No. 109-13, 119 Stat. 302 (2005), codified at section 208(b)(1)(B)(iii) of the Act. Considering the totality of the circumstances and all relevant factors, the Court may base a credibility determination on:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

REAL ID Act § 101(d)(2); INA § 208(b)(1)(B)(iii). Accordingly, inconsistencies between statements in an asylum application and testimony during the asylum proceedings may lead to a finding that the applicant is not credible. *Phal v. Mukasey*, 524 F.3d 85, 89 (1st Cir. 2008).

An applicant's testimony alone will only be sufficient to sustain the applicant's burden of proving eligibility for asylum without corroboration if the Court is satisfied that the testimony is credible, persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. INA § 208(b)(1)(B)(ii); 8 C.F.R. § 1208.13(a) (2019); *see Guta-Tolossa v. Holder*, 674 F.3d 57, 62 (1st Cir. 2012). Credibility determinations must be "reasonable" and "take into consideration the individual circumstances of the applicant." *Lin v. Mukasey*, 521 F.3d 22, 28 n.3

(1st Cir. 2008). The Court must provide "specific and cogent reasons why an inconsistency, or a series of inconsistencies, renders the alien's testimony not credible." *Jabri v. Holder*, 675 F.3d 20, 24 (1st Cir. 2012) (quoting *Kartasheva v. Holder*, 582 F.3d 96, 105 (1st Cir.2009)).

Unreasonable demands are not placed on an applicant to present evidence to corroborate particular experiences. *Soeung v. Holder*, 677 F.3d 484, 488 (1st Cir. 2012). However, where it is reasonable to expect corroborating evidence for certain alleged facts, such evidence should be provided. *Id.* at 487-88; *see* INA § 208(b)(1)(B)(ii). If such evidence is unavailable, the applicant must explain its unavailability, and the Court must ensure that the applicant's explanation is included in the record. *Soeung,* 677 F.3d at 488. The absence of such corroboration can lead to a finding that an applicant has failed to meet his burden of proof. *Id.*; *Guta-Tolossa*, 674 F.3d at 62 ("[A]n Immigration Judge can require corroboration whether or not she makes an explicit credibility finding."); *see Matter of S-M-J-*, 21 I&N Dec. 722, 725 (BIA 1997).

## B. Bars to Relief

### 1. Aggravated Felony and Particularly Serious Crime

An alien who has been convicted of an aggravated felony, as defined by section 101(a)(43) of the Act, is ineligible for asylum. INA § 208(b)(2)(A)(ii), (b)(2)(B)(i). An alien who has been convicted of an aggravated felony for which he was sentenced to at least five years of imprisonment is ineligible for withholding of removal and for withholding of removal under the Convention Against Torture. *Id.* § 241(b)(3)(B); 8 C.F.R. § 1208.16(d)(2).

Moreover, an alien is ineligible for asylum if he has been convicted of a particularly serious crime, and if there are serious reasons for believing that the he has committed a serious nonpolitical crime outside the United States prior to his arrival in the United States. INA § 208(b)(2)(A)(ii); (iii). All aggravated felony convictions are *per se* convictions for particularly serious crimes for the purpose of asylum applications. *Id.* § 208(b)(2)(B)(i). Similarly, an alien is ineligible for withholding of removal if he has been convicted of a particularly serious crime. *Id.* § 241(b)(3)(B)(ii). However, for purposes of withholding of removal, an aggravated felony is categorically a particularly serious crime only if the alien was sentenced to at least five years' imprisonment. *Id.*

The Court may determine that convictions that are not *per se* particularly serious also qualify as particularly serious crimes to bar asylum or withholding of removal. *Matter of M-H-*, 26 I&N Dec. 46, 50 (BIA 2012). A crime is particularly serious if it involves a significant danger to the community. *Matter of G-G-S-*, 26 I&N Dec. 339, 343 (BIA 2014). To determine whether a conviction is sufficiently dangerous, the Court must first look to the elements of the statute of conviction. *Matter of N-A-M-*, 24 I&N Dec. 336, 337-38 (BIA 2007). "If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of [relief]." *Id.* at 342.

On the other hand, if the elements of the crime suggest that it may be particularly serious, the Court will proceed to evaluate "the nature of the conviction, the type of sentence imposed, and

the circumstances and underlying facts of the conviction." *Matter of G-G-S-*, 26 I&N Dec. at 343 (quoting *Matter of N-A-M-*, 24 I&N Dec. at 342).[1]  When performing such an analysis, the Court may consider conviction records, sentencing information, and other relevant evidence. *Id.*  The applicant bears the burden to prove by a preponderance of the evidence that the crime is not particularly serious. 8 C.F.R. § 1208.16(c)(2)(ii), (d)(2).

## 2. Serious Nonpolitical Crime

An applicant is also statutorily ineligible for asylum and withholding of removal if there are reasonable grounds to believe that he committed a serious nonpolitical crime outside of the U.S. prior to his arrival in the United States.  INA § 208(b)(2)(A)(iii); INA § 241(b)(3)(B)(iii). Determining whether an offense is a serious nonpolitical crime involves consideration of whether the political aspect of the offense outweighs its common-law character. *See Matter of E-A-*, 26 I&N Dec. 1 (BIA 2012) (holding that an applicant who burned passenger buses and cars, threw stones, and disrupted economic activity, while pretending to be from the opposition party, reached the level of serious criminal conduct that, when weighed against its political nature, constituted a serious nonpolitical crime).  "This would not be the case if the crime is grossly out of proportion to the political objective or if it involves acts of an atrocious nature." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 429 (1999) (quoting *Matter of McMullen*, 19 I&N Dec. 90, 97-98 (BIA 1984)).

The Immigration Judge ("IJ") is not required to balance the "criminal acts against the risk of persecution [the applicant] would face if returned[.]" *Aguirre-Aguirre*, 526 U.S. at 425-28. Additionally, where it has been determined that the acts were not political based on the lack of proportion with the objectives, the IJ need not engage in a detailed analysis of the "political necessity and success" of the applicant's methods. *Id.* at 431-32.

The IJ also need not determine whether a crime has actually been committed. It is "enough to find that there are serious reasons for considering that [the applicant] has committed such a crime." *Matter of Ballester-Garcia*, 17 I&N Dec. 592, 595 (BIA 1980) (internal quotation marks omitted).  The "serious reasons for believing" standard is equivalent to probable cause. *Id.* at 3. The applicant's own testimony is sufficient to meet this standard. *Id.*  Once DHS establishes that there are serious reasons to believe the applicant has committed a serious nonpolitical crime, the burden shifts to the applicant to demonstrate by a preponderance of the evidence that the bar does not apply. 8 C.F.R. § 208.16(d)(2); 8 C.F.R. § 1240.8(d); *Aguirre-Aguirre*, 526 U.S. at 432. When there is no doubt a crime has been committed, the Court must "look to the facts, as [the Court finds] them to be accurate, to determine whether there are serious reasons to consider that the crime committed was a 'serious' one." *Id.* (finding a serious nonpolitical crime when the petitioner had broken into a building, taken a large sum of money, and was sentenced to fifteen years' imprisonment). In close cases, the Court can consider "the alien's description of the crime, the turpitudinous nature of the crime according to our precedents, the value of any property involved, the length of sentence imposed and served, and the usual punishments imposed for comparable offenses in the United States." *Id.*

---

[1] The sentence imposed, however, "is not the most accurate or salient factor to consider in determining the seriousness of an offense," and thus is not a "dominant" consideration in the particularly serious crime analysis. *Matter of N-A-M-*, 24 I&N Dec. at 343.

### C. Asylum Pursuant to Section 208 of the Act

#### 1.    Statutory Eligibility

The Court may grant asylum to an applicant who proves that he is unwilling or unable to return to his country of nationality because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A)-(B); 8 C.F.R. § 1208.13(a) (2017); *see also Jutus v. Holder*, 723 F.3d 105, 110 (1st Cir. 2013).

#### 2.    Timeliness of Application

An asylum applicant must prove by clear and convincing evidence that his application was filed within one year of his arrival in the United States, or by April 1, 1997, whichever is later. INA § 208(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(i)(A). An applicant who cannot meet this burden must prove to the satisfaction of the Court that a changed or extraordinary circumstance excuses his late filing. INA § 208(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)-(5).

To prove extraordinary circumstances, the applicant must establish that: (1) he did not intentionally create the circumstances through his own action or inaction; (2) those circumstances were directly related to his failure to file the application within the one year period; and (3) the delay was reasonable under the circumstances. *Matter of Y-C-*, 23 I&N Dec. 286, 287 (BIA 2002). Possible examples of extraordinary circumstances include serious illness; mental, physical, or legal disability; ineffective assistance of counsel; maintenance of other lawful immigration status; or the death or serious illness of the applicant's representative or immediate family member. 8 C.F.R. § 1208.4(a)(5).

#### 3.    Persecution on Account of a Protected Ground

#### i.    Past Persecution

Persecution is "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987). To qualify as persecution, a person's experiences must rise above unpleasantness, harassment, and even basic suffering and consist of systemic mistreatment rather than a series of isolated events. *See Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000). Importantly, persecution does not encompass generally harsh conditions shared by many others in a country, or the harm an individual may experience as a result of civil strife. *Matter of Sanchez and Escobar*, 19 I&N Dec. 276, 284 (BIA 1985); *see also Maryam v. Gonzales*, 421 F.3d 60, 63 (1st Cir. 2005). Factors such as the severity, duration, and frequency of physical harm along with the need for medical attention are all relevant to this inquiry. *Topalli v. Gonzales*, 417 F.3d 128, 133 (1st Cir. 2005).

Persecutory acts must be committed "on account" of a statutorily-protected ground: race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A). While the applicant need not prove that the alleged persecutors targeted him

solely because of a protected characteristic, he must provide some evidence, direct or circumstantial, establishing that the protected ground was "at least one central reason" for the persecution. *Id.* § 208(b)(1)(B)(i); *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 214 (BIA 2007).

### ii. Well-Founded Fear of Future Persecution

An applicant who has suffered past persecution on account of a protected ground is presumed to have a well-founded fear of future persecution on account of that same ground. 8 C.F.R. § 1208.13(b)(1). This presumption may only be rebutted if DHS establishes by a preponderance of the evidence that (1) the applicant can reasonably relocate within his country of origin or (2) there has been a "fundamental change in circumstances" in the country at issue, such that the applicant's fear is no longer well-founded. *Id.*

An applicant who has not suffered past persecution must demonstrate a subjectively genuine and objectively reasonable fear of future persecution. *Id.* § 1208.13(b)(2)(i); *see also Sunarto Ang v. Holder*, 723 F.3d 6, 10 (1st Cir. 2013). Generally, an individual's credible testimony that he fears persecution satisfies the subjective component of this inquiry. *See Cordero-Trejo v. INS*, 40 F.3d 482, 491 (1st Cir. 1994). An applicant satisfies the objectively reasonable component by either (1) producing "credible, direct, and specific evidence" supporting a fear of *individualized* persecution in the future," or (2) "demonstrating 'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of' a protected ground." *Decky v. Holder*, 587 F.3d 104, 112 (1st Cir. 2009) (quoting *Guzmán v. INS*, 327 F.3d 11, 16 (1st Cir. 2003) & 8 C.F.R. § 1208.13(b)(2)(iii)(A)).

An applicant seeking asylum based on a well-founded fear of persecution by a non-government actor must also demonstrate that he could not avoid persecution by relocating to another part of his country of nationality. 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)(i). An applicant may meet this burden by showing either that he is unable to relocate safely or that, under all the circumstances, it would not be reasonable to expect him to do so. *Matter of M-Z-M-R-*, 26 I&N Dec. 28, 33-36 (BIA 2012); *see also* 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)(i).

### 4. Government Action

The applicant must also show that the persecution he faced or fears is a direct result of government action, government-supported action, or the government's unwillingness or inability to control private conduct. *Mendez-Barrera v. Holder*, 602 F.3d 21, 27 (1st Cir. 2010). "[V]iolence by private citizens . . . absent proof that the government is unwilling or unable to address it, is not persecution." *Butt v. Keisler*, 506 F.3d 86, 92 (1st Cir. 2007). "'[A]n applicant seeking to establish persecution by a government based on violent conduct of a private actor must show more than "difficulty . . . controlling" private behavior.'" *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 42 (1st Cir. 2007) (quoting *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005)); *see also Matter of McMullen*, 17 I&N Dec. 542, 546 (BIA 1980).

**5. Discretion**

Statutory and regulatory eligibility for asylum, whether based on past persecution or a well-founded fear of future persecution, does not compel a grant of asylum. 8 C.F.R. § 208.14(a). An applicant for asylum has the burden of establishing that a favorable exercise of discretion is warranted. *Matter of F-P-R-*, 24 I&N Dec. 681, 685-86 (BIA 2008) (citing *Matter of Pula*, 19 I&N Dec. 467, 473-74 (BIA 1987), *superseded by regulation on other grounds*). Factors that fall short of the grounds for mandatory denial may constitute discretionary considerations. *Pula*, 19 I&N Dec. at 473-74.

**D. Withholding of Removal Pursuant to Section 241(b)(3) of the Act**

Section 241(b)(3) of the Act is a non-discretionary provision requiring the Court to withhold removal of an individual if his life or freedom would be threatened in that country on account of one of the five protected grounds. 8 C.F.R. § 1208.16(b). To be eligible for withholding of removal, an applicant must establish either (1) that he has experienced past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (2) that it is "more likely than not" that the applicant's life or freedom would be threatened in the future on account of a protected ground. INA § 241(b)(3); 8 C.F.R. § 1208.16(b)(1)-(2).

**E. Protection Under the Convention Against Torture**

Under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, as implemented by sections 1208.16-1208.18 of Title 8 of the Code of Federal Regulations, an applicant is eligible for withholding or deferral of removal if he establishes that it is "more likely than not" that he would be tortured in the proposed country of removal by, or at the instigation of, or with the consent or acquiescence of a public official. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see also* Convention Against Torture, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988). "Torture" is defined, in part, as the intentional infliction of severe pain or suffering. 8 C.F.R. § 1208.18(a)(1).

To establish a *prima facie* claim under the Convention Against Torture, the U.S. Court of Appeals for the First Circuit requires that the applicant offer specific objective evidence showing that he will be subject to: "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Mazariegos v. Lynch*, 790 F.3d 280, 287 (1st Cir. 2015) (quoting *Romilus v. Ashcroft*, 385 F.3d 1, 8 (1st Cir. 2004)). The Court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant previously suffered torture; evidence that the applicant could relocate within the country of removal to avoid torture; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant country conditions information. 8 C.F.R. § 1208.16(c)(3). However, a pattern of human rights violations in the proposed country of removal is not sufficient to show that a particular person would be tortured upon his return; specific grounds must exist to indicate that the applicant will be personally at risk of torture. *Settenda v. Ashcroft*, 377 F.3d 89, 95-96 (1st Cir. 2004); *Matter of J-E-*, 23 I&N Dec. 291, 303 (BIA 2002).

An applicant who establishes that he is entitled to protection under the Convention Against Torture shall be granted withholding of removal unless he is subject to mandatory denial of that relief, in which case he shall be granted deferral of removal. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a).  An applicant is subject to mandatory denial of withholding of removal under the Convention Against Torture if he participated in the persecution of others, if he was convicted of a particularly serious crime, if there are serious reasons to believe he committed a serious nonpolitical crime outside of the United States, or if there are reasonable grounds to believe he is a danger to the security of the United States. 8 C.F.R. § 1208.16(d)(2); *see also* INA § 241(b)(3)(B).  An alien's criminal convictions, no matter how serious, are not a bar to deferral of removal under the Convention Against Torture. *See* 8 C.F.R. § 1208.17(a); *Matter of G-A-*, 23 I&N Dec. 366, 368 (BIA 2002).  An alien who is barred from withholding of removal under the Convention Against Torture but who demonstrates that he is entitled to protection under the Convention Against Torture shall be ordered removed, but his removal shall be deferred until such time as the deferral is terminated under 8 C.F.R. § 1208.17.

## F.  Cancellation of Removal Pursuant to Section 240A(b)(1) of the Act

An alien applying for relief from removal has the burden of proof to establish that he is eligible for the relief sought and warrants a favorable exercise of discretion. INA § 240(c)(4)(A).  Section 240A(b)(1) of the Act permits cancellation of removal for a non-permanent resident alien, if the alien can establish that he: (1) has been physically present in the United States for ten years immediately preceding the date of the application for cancellation; (2) has been a person of good moral character during that ten-year period; and (3) has not been convicted of an offense that would render him inadmissible under section 212(a)(2) of the Act or removable under sections 237(a)(2), (a)(3), or (a)(4) of the Act.  An individual's physical presence terminates when he is served with the NTA, or when the individual is found to have committed an offense under sections 212(a)(2), 237(a)(2), or 237(a)(4) of the Act, thus triggering the "stop-time" rule. *See* INA §§ 240A(b)(1), 240A(d)(1).

To establish good moral character, an inquiry into the applicant's moral character must satisfy both the statutory and discretionary components. INA § 240A(b)(1)(B); *Matter of Gomez-Beltran*, 26 I&N Dec. 765, 767 (BIA 2016).  A finding that an applicant lacks good moral character is statutorily required only in specific circumstances. INA § 101(f) (noting that individuals may be barred from a finding of good moral character if he, among other things, has been convicted of a crime involving moral turpitude, is a habitual drunkard, is someone whose income is primarily derived from gambling, has been convicted of two or more gambling offenses, has been confined to a penal institution for more than 180 days, has an aggravated felony conviction, or has engaged in prostitution or smuggling.).  If a person "has given false testimony for the purpose of obtaining any benefits" under the Act he is statutorily barred from establishing good moral character. INA § 101(f)(6).  However, the 'false testimony' bar to a finding of good moral character "is limited to oral statements made under oath, and specifically, only those misrepresentations made with the subjective intent of obtaining immigration benefits." *Restrepo v. Holder*, 676 F.3d 10, 16 (1st Cir. 2012) (quoting *Kungys v. United States*, 485 U.S. 759, 780 (1988)) (internal quotations omitted).

An applicant for cancellation of removal also must establish that his removal would result in exceptional and extremely unusual hardship to a qualifying relative, that is, a spouse, parent, or

child who is a citizen or lawful permanent resident of the United States. INA § 240A(b)(1)(D). To determine hardship, the Court should consider: (1) the ages, health, and circumstances of qualifying family members; (2) family ties in the United States and abroad; (3) length of residence in this country; (4) the health of the respondent and the family members; (5) economic and political conditions in the country of return; (6) the possibility of other means of adjusting status; (7) the respondent's involvement in the community; (8) and his immigration history. *Matter of Monreal-Aguinaga*, 23 I&N Dec. 56, 63 (BIA 2001) (en banc) (citing *Matter of Anderson*, 16 I&N Dec. 596, 597 (BIA 1978)); *see also Alvarado v. Holder*, 743 F.3d 271, 276 (1st Cir. 2014) (discussing hardship factors set forth in *Matter of Monreal*). "Factors relating to the applicant himself or herself can only be considered insofar as they may affect the hardship to the qualifying relative." *Matter of Monreal*, *supra*.

If the applicant will be returning to his country along with United States citizen children, the Court also considers the children's comfort and familiarity with the language and way of life in the country of removal and the availability of childcare in that country. *Matter of Gonzalez-Recinas*, 23 I&N Dec. 467, 470 (BIA 2002). The Court also considers the economic stake the applicant has gained in the United States. *Id.* at 471. When weighing these factors, the hardship suffered must be "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves the country," yet does not have to be so extreme as to have an unconscionable effect on the qualifying family member. *Matter of Monreal*, 23 I&N Dec. at 60-62.

In addition to establishing statutory eligibility for cancellation of removal, the applicant also bears the burden of demonstrating that he merits a favorable exercise of discretion. INA § 240(c)(4)(A); 8 C.F.R § 1240.8(d); *see also Matter of Monreal*, 23 I&N Dec. at 58. In making discretionary determinations, the Court must weigh favorable and adverse factors to determine whether a favorable exercise of discretion is warranted. *Matter of A-M-*, 25 I&N Dec. 66, 76 (BIA 2009); *see also Matter of C-V-T-*, 22 I&N Dec. 7, 11 (BIA 1998) (setting forth favorable and adverse factors to consider in discretionary analysis for cancellation of removal for lawful permanent residents).

An alien's arrest record, even when his arrest did not, or has not yet, resulted in a conviction, is a relevant consideration to an Immigration Judge's determination regarding discretionary relief. *See Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015); *Henry v. INS*, 74 F.3d 1, 3, 6 (1st Cir. 1996). Although an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, may have probative value to assessing an alien's character and his suitability for a favorable exercise of discretion. *See Henry*, 74 F.3d at 6 (internal quotations and citations omitted). In considering such documents, an Immigration Judge should determine their reliability, take into account the nature and stage of any resultant criminal proceedings, and be satisfied that reliance thereon will not be fundamentally unfair to the alien. *Id.*

## G. Voluntary Departure Pursuant to Section 240B(b) of the Act

The Court may permit an individual to voluntarily depart the United States if, at the conclusion of proceedings, the Court is satisfied that the individual: (1) was physically present in the United States for at least one year immediately preceding the service of the NTA; (2) is of good

moral character, as defined by section 101(f) of the Act, for at least the five year period immediately preceding the application for voluntary departure; (3) is not deportable as an aggravated felon or a terrorist under sections 237(a)(2)(A)(iii) and 237(a)(4) of the Act; and (4) has established by clear and convincing evidence that he has the means to depart the United States and intends to do so. INA § 240B(b)(1); 8 C.F.R. § 1240.26(c)(1). The individual must also possess a valid travel document. 8 C.F.R. § 1240.26(c)(2). If the alien is statutorily eligible and has established that he warrants a favorable exercise of discretion, the Court may grant voluntary departure for a period of up to sixty days. INA § 240B(b)(2). To determine whether a favorable exercise of discretion is warranted as to a request for voluntary departure, the Court must weigh the relevant adverse and positive factors, including the alien's prior immigration history; criminal history, if any; length of residence in the United States; and extent of family, business, and societal ties in the United States. *Matter of Gamboa*, 14 I&N Dec. 244, 248 (BIA 1972); *see also Matter of Thomas*, 21 I&N Dec. 20, 22 (BIA 1995); *Matter of Arguelles*, 22 I&N Dec. 811, 817 (BIA 1999).

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Credibility and Corroboration

As the Respondent filed his applications for relief after May 11, 2005, the REAL ID Act applies to his case. *See* Exhs. 4-5. Applying the standards set forth in the REAL ID Act, the Court finds that the Respondent testified credibly and consistently with his affidavit regarding his experience in Brazil and his fear of return, as well as the hardship his children would experience upon his removal from the United States. *See* INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *see also* Exh. 4 at 15-20. However, the Court does not credit the Respondent's testimony regarding his criminal arrest and conviction for the rape of ▇▇▇▇▇▇▇▇▇▇▇. The Court gives greater weight to the Respondent's recorded criminal conviction and the criminal documents included in the record than the Respondent's denial that he committed the rape. *See* Exh. 7; Exh. 9. The Court also finds that the Respondent's wife, Allison ▇▇▇▇▇▇▇▇▇ testified credibly. The Respondent's wife answered all questions asked of her, and nothing in her demeanor called her candor into question.

### B. Bars to Relief

#### 1.   Respondent's Foreign Criminal Conviction

As an initial matter, the Court finds that the Respondent's conviction in Brazil for rape constitutes a valid conviction for immigration purposes. *See* INA § 101(a)(48)(A); 8 U.S.C. § 1101(a)(48)(A). In 2006, the Respondent was convicted under the Brazilian Criminal Code for the rape of ▇▇▇▇▇▇▇▇▇. *See* Exh. 2; Exh. 7 at 10; Exh. 9. The Respondent argues that his foreign conviction should not be considered a valid conviction for immigration purposes because he was convicted *in absentia*, and because the conviction did not adequately comply with the standards of due process. The Court finds that both of the Respondent's arguments fail. First, the Court finds that there is insufficient evidence in the record that the Respondent was convicted *in absentia*. The Respondent argues that the Form I-213 specifically indicates that he was convicted in Brazil for rape *in absentia*. *See* Exh. 2 at 3. In addition, the Respondent testified that

he only appeared once in court after his arrest and that he was only notified of his conviction through a letter he received while he was in prison. However, DHS acknowledged before the Court that, although the Form I-213 on its face indicates that the Respondent was convicted *in absentia*, this was an error based on a misreading of the Respondent's criminal records. *See id.*; Exh. 7. DHS informed the Court that it had communicated with its liaison in Brazil, who confirmed that the *in absentia* conviction listed on the Form I-213 was incorrect.[2] The Respondent argues that his case is analogous to *Doe v. Gonzales*, in which the court found that the applicant's Salvadoran conviction was not valid for immigration purposes because the trial conducted in El Salvador was a "parody of justice." *See Doe v. Gonzales*, 484 F.3d 445, 451 (7th Cir. 2007) (finding that the court could examine the validity of the foreign conviction for immigration purposes because the applicant's defense attorney had been on the payroll of the high command, had not presented any evidence on his behalf, and had not cross-examined the prosecution's witnesses during his criminal trial). Unlike the applicant in *Doe*, however, the Respondent testified that when he appeared in court in Brazil, he was represented by a court-appointed defense attorney, who had an opportunity to speak on his behalf. The Respondent also indicated that witnesses testified, and evidence was presented both on his behalf and against him at the hearing. The Respondent testified that he did not believe any subsequent hearings took place. Although the Respondent may not have been present in court after his initial hearing, the Respondent did have the opportunity appear and present evidence, was represented, and received adequate notice of his conviction. Accordingly, the Court finds that the evidence is insufficient to demonstrate that the Respondent was convicted *in absentia*. *See Matter of V-D-B-*, 8 I&N Dec. 608, 608 (BIA 1960) (finding that the applicant's conviction in the Netherlands was not a conviction *in absentia* when he had notice of the proceedings, appeared after the conclusion thereof, took no appeal, and paid the fine).

Moreover, the Court finds that there is insufficient evidence to find that the Respondent's conviction in Brazil did not adequately comply with due process. As discussed above, the Respondent was present in court on at least one occasion, and was represented by a court-appointed attorney who appeared on his behalf at the hearing. The Respondent also received notice of his conviction and sentence while detained. Additionally, the Respondent testified that he had the opportunity to appeal his conviction and was represented throughout the appeal process. The Respondent's conviction became final on July 13, 2007. *See* Exh. 9 at 67. The Respondent testified that he was presently working with an attorney in Brazil to reopen his original conviction. *See* Exh. 4 at 91-98. As such, the Court finds that the Respondent's conviction in Brazil constitutes a valid conviction for immigration purposes. The Court will proceed to address the applicable bars to relief.

## 2. Aggravated Felony and Particularly Serious Crime

The Court finds that the Respondent's conviction for rape in Brazil qualifies as an aggravated felony, pursuant to section 101(a)(43)(A) of the Act. INA § 101(a)(43)(A). The Respondent's rape conviction is therefore, *per se*, a particularly serious crime for the purpose of his asylum application. *Id.* § 208(b)(2)(B)(i). Because the Respondent was sentenced to over

---

[2] DHS posits that the transcribing officer misinterpreted the Respondent's Brazilian criminal record—which marks the Respondent's presence as "ABSENCE/MISSING" during permitted work-release—to mean that the Respondent was convicted *in absentia*. *See* Exh. 7 at 11.

seven years' imprisonment, his conviction also qualifies as a particularly serious crime for withholding of removal purposes. *Id.* § 241(b)(3)(B)(ii). Accordingly, the Court finds that the aggravated felony and particularly serious crime bars apply to the Respondent's asylum and withholding of removal applications. *Id.* §§ 208(b)(2)(A)(ii)-(B)(i), 241(b)(3)(B)(ii). The Court further finds that the aggravated felony bar applies to the Respondent's cancellation of removal application. *Id.* §§ 240A(b)(1)(C), 237(a)(2)(A)(iii).

### 3. Serious Nonpolitical Crime

The Court further finds that there are reasonable grounds to believe that the Respondent committed a serious nonpolitical crime outside of the United States prior to his arrival. INA §§ 208(b)(2)(A)(iii), 241(b)(3)(B)(iii). DHS provided evidence that the Respondent committed and was convicted for the crime of rape in Brazil. *See* Exh. 7. In response to DHS's evidence, the Respondent argues that his conviction was fabricated because of political bias and that he did not commit the underlying crime. The Respondent also submitted a letter from the victim, Ms. De Paiva, dated May 7, 2019, recanting the rape allegation and admitting to falsely testifying during the Respondent's trial. *See* Exh. 4 at 87.

Nonetheless, the Court finds that the evidence in the record provides serious reasons to believe that the Respondent committed the crime of rape. *Matter of Ballester-Garcia*, 17 I&N Dec. 592, 595 (BIA 1980) (finding that the IJ also need not determine whether a crime has actually been committed, but rather that there is enough to find there are serious reasons for considering that the respondent committed such a crime). As discussed above, the Court finds that the Respondent's conviction in Brazil is valid. Additionally, the Respondent detailed that the victim was present and testified during his rape trial. The Court acknowledges that the record includes the victim's letter recanting her allegation against the Respondent. However, the Court declines to give the letter significant weight. The Respondent did not provide an original copy of the letter, but rather indicated that a digital copy was emailed to his wife. The Respondent failed to provide any evidence to determine the authenticity of the letter, and the victim was not present to testify or be subject to cross examination about the contents of the letter. Moreover, the Court finds the circumstances and timing under which the Respondent received Ms. De Paiva's letter to be highly improbable. The Respondent contends that Ms. ██████████ saw a Brazilian broadcast about the Respondent's detention in the United States and decided immediately to write the letter, ten years after the Respondent's conviction. Furthermore, the letter is dated May 7, 2019 and Respondent's attorney in Brazil filed a document with the court in Brazil to reopen the Respondent's case the very next day on May 8, 2019. Exh. 4 at 87, 93. The record includes evidence that the Respondent was convicted and sentenced to serve seven years' imprisonment, and that he served a portion of that sentence before fleeing Brazil. *See* Exh. 2; Exh. 7; Exh. 9. The Respondent failed to provide sufficient evidence to demonstrate that the serious nonpolitical crime bar does not apply. *Aguirre-Aguirre*, 526 U.S. at 432. Thus, based on the record before it, the Court finds that there are serious reasons for believing that the Respondent has committed a serious nonpolitical crime in Brazil prior to his arrival in the United States. Therefore, the Respondent is statutorily ineligible for asylum and for withholding of removal. INA §§ 208(b)(2)(A)(iii), 241(b)(3)(B)(iii).

Based on the foregoing, the Court finds the Respondent is statutorily barred from relief in the forms of asylum, withholding of removal, and withholding of removal under the Convention

Against Torture. Even if the Respondent was not statutorily barred from these forms or relief, the Court would have denied the applications based on the following analysis.

### C. Asylum Pursuant to Section 208 of the Act

#### 1. Timeliness of Application

The Respondent testified that he entered the United States on August 1, 2008, and filed his asylum application on July 16, 2019, nearly eleven years after entering the United States. *See* Exh. 4 at 5-14, 18. The Respondent argues that an exception to the one-year deadline applies because the Brazilian president, Jair Bolsonaro, entered office in January 2019. INA § 208(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)-(5). The Respondent testified that he is a supporter of the Workers' Party, a Brazilian political party and the opposing party to Brazil's current administration. The Respondent testified that President Bolsonaro publicly threatened to imprison or exile his political opponents. The Respondent argues that, because he is a supporter of the opposing political party and his political opinion forms the basis of his asylum claim, Bolsonaro's election in October 2018 marks a changed circumstance and thus a qualifying exception to the one-year bar. The Court finds that the Respondent has demonstrated that Bolsonaro's presidential election qualifies as a sufficient changed circumstance and exception to the one-year filing deadline. Accordingly, the Court finds that the Respondent's asylum application is untimely, but that an exception applies. INA § 208(a)(2)(B), (D). Therefore, the Court will continue to consider the Respondent's application for asylum.

#### 2. Persecution on Account of a Protected Ground

##### i. Past Persecution

First, the Court finds that the Respondent has failed to demonstrate that the harm he suffered in Brazil rises to the requisite level of persecution. The Respondent testified that he was persecuted in Brazil and that he fears future persecution because of his political opinion.[3] First, the Respondent testified that he was persecuted in Brazil because he was falsely accused of rape and consequently the victim of a fabricated conviction before fleeing to the United States. The Respondent testified that the judge who presided over his criminal trial was the political opponent of the Respondent's cousin in a mayoral election. The Respondent testified that the judge convicted and sentenced the Respondent to a term of imprisonment because of his cousin's mayoral candidacy. *See* Exh. 4 at 17, ¶ 14. However, the record fails to demonstrate that the Respondent was falsely accused and convicted under a fabricated charge. As discussed above, the Court finds that the Respondent was validly convicted under the laws and processes of Brazil. Moreover, the record is insufficient to demonstrate that the presiding judge convicted the Respondent primarily based on his opposition to his cousin's candidacy, or that the mayoral election was a relevant factor in the Respondent's conviction. Rather, the record includes evidence of the Respondent's arrest, the testimony of the victim at the Respondent's hearing, and the

---

[3] At the individual merits hearing, the Respondent articulated two political opinions: 1) that he is a member of the political party opposed to President Bolsonaro's administration; and 2) that he was presumed to be in opposition to a mayoral candidate in a small town in Brazil where that candidate was also the judge in the Respondent's criminal case.

Respondent's legitimate conviction. *See* Exh. 2; Exh. 4 at 87; Exh. 7; Exh. 9. The Respondent's argument that the presiding judge convicted him because of political bias or animosity towards his cousin is speculative in nature. The Respondent failed to provide sufficient additional evidence to substantiate this theory. Ultimately, the record fails to provide sufficient direct or circumstantial evidence demonstrating that the judge targeted the Respondent on account of a protected ground, or that his political opinion was "at least one central reason" for his conviction in Brazil. *J-B-N- & S-M-*, 24 I&N Dec. at 215-17; *see also* INA § 208(b)(1)(B)(i).

The Respondent further argues that he is eligible for asylum based on his political opposition to President Bolsonaro and Brazil's current administration. The Respondent testified that he actively posted comments regarding his political opposition to President Bolsonaro on social media sites before he was detained by DHS. *See* Exh. 6 at 21-39. The Respondent also testified that a story about his DHS detention and criminal history in Brazil was recently televised by a well-known Brazilian news broadcast on Globo Network, which showed footage of the Respondent and his family. *See* Exh. 4 at 19, ¶ 33; Exh. 6 at 270-279. The Respondent argues that this broadcast heightened his notoriety in Brazil and made him highly visible to the public and current administration. The Respondent and his wife both testified that prior to the broadcast they observed vehicles parked outside their home in Massachusetts, and believed that their family was being watched by Brazilian officials. *See* Exh. 4 at 19, ¶ 31-31. The Respondent testified that he fears he will be targeted as a political opponent if he returns to Brazil. However, as President Bolsonaro was elected in 2018, ten years after the Respondent entered the United States, the record does not include any instances of past harm or persecution on account of the Respondent's political opposition to the current Brazilian government. Accordingly, the Court finds that the Respondent failed to demonstrate past persecution on account of a protected ground.

## ii. Well-founded Fear of Future Persecution

Furthermore, the Court finds that the Respondent has failed to establish that he has a well-founded fear of future persecution on account of a protected ground. Because the Respondent failed to prove that he has suffered past persecution, he is not presumed to have a well-founded fear of future persecution on account of that same protected ground. *See* 8 C.F.R. § 1208.13(b)(1). To independently establish a well-founded fear of future persecution, he must establish both a subjectively genuine and objectively reasonable fear of future persecution. *Id.* § 1208.13(b)(2)(i). An applicant satisfies the objective component of the well-founded fear inquiry by either (1) producing "credible, direct, and specific evidence" suggesting that he will be singled out for future persecution, or (2) demonstrating "'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant . . . .'" *Decky*, 587 F.3d at 112 (citation omitted).

The Respondent testified that he fears he will be persecuted if he returns to Brazil because he escaped from prison, and also because he is politically opposed to Bolsonaro's current administration. The Respondent argues that he will likely be imprisoned and tortured based on his fabricated rape conviction. The Respondent further testified that he actively posted his political opinions on social media while living in the United States, and that he will be considered a political opponent if he returns to Brazil. If he returns, the Respondent fears that Bolsonaro's administration will particularly seek him out given his heightened visibility from the Globo TV broadcast. The

Respondent further testified that his current attorney in Brazil, Zanone Manuel de Oliveira Junior, also represented an individual accused of stabbing Bolsonaro during a presidential campaign event. *See* Exh. 6 at 92-103, 109-117. The Respondent testified that his attorney's office was raided by police who confiscated case files, including the Respondent's. The Respondent contends that this is how the Brazilian government found his personal information, including his address in the United States. *See* Exh. 4 at 18-19, ¶ 26-30.

Despite these assertions during the Respondent's testimony, there is insufficient evidence to demonstrate that the Respondent would suffer persecution on account of a protected ground if he returns to Brazil. The Respondent submitted numerous articles and country conditions evidence detailing the Brazilian government's public call for the elimination of political rivals and its harsh stance on criminals. *See* Exh. 6 at 41-52, 64-66, 71-90. Although the Respondent may be arrested and imprisoned upon his return to Brazil, his detention would not be on account of any protected ground. Rather, his detention would be a legitimate action by Brazilian authorities given the Respondent's escape from prison which resulted in an outstanding arrest warrant and International Criminal Police Organization ("INTERPOL") red notice. *See* Exh. 6 at 284-285; Exh. 7. Moreover, the Respondent did not participate politically in Brazil prior to his departure, nor has he openly participated as a political rival to the Bolsonaro administration beyond posting on social media while in the United States. Ultimately, the Respondent's fear that he will be targeted by Bolsonaro's officials or that he is being watched by the Brazilian government is far too attenuated and merely speculative in nature.

Regardless of the Respondent's subjective fear, the Court is unable to find that the Respondent's fear of future persecution is objectively reasonable. The record includes a letter from the Respondent's cousin, corroborating that he was the mayor at the time of the Respondent's conviction. However, the letter does not mention that the Respondent would be harmed or that he fears for the Respondent's safety should he return to Brazil. *See* Exh. 4 at 70. Furthermore, the Respondent indicated that his extended family continues to reside in Brazil and that they have not suffered any harm. The letters submitted by the Respondent's friends and family members in Brazil do not indicate that the Respondent would be in any danger upon his return, beyond the risk of re-imprisonment. *See id.* at 61-69. Additionally, while the Respondent's social media activity demonstrates his opposition to the current Brazilian administration, his activity does not extend beyond merely displaying political posts shared by others. *See* Exh. 6 at 21-39. The Respondent has neither established that the persecution he fears would be on account of a protected ground, nor that the government of Brazil would participate or be unable or unwilling to protect him from such persecution. *Mendez-Barrera*, 602 F.3d at 27; *Ivanov v. Holder*, 736 F.3d 5, 12 (1st Cir. 2013). For these reasons, the Court concludes that the Respondent has not met his burden to prove that he has a well-founded fear of future persecution on account of a protected ground. Accordingly, as detailed in the foregoing, the Court finds that the Respondent has not demonstrated statutory eligibility for asylum.

### 3. Discretion

As the Respondent has not demonstrated statutory eligibility for asylum, the Court does not reach the issue of discretion. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (government agencies are not required to make findings on issues which are unnecessary to the result).

### D. Withholding of Removal Pursuant to Section 241(b)(3) of the Act

The Respondent's rape conviction in Brazil renders him statutorily ineligible for withholding of removal pursuant to section 241(b)(3) of the Act.  INA § 241(b)(3)(B)(ii)-(iii). However, even assuming that the Respondent was not statutorily barred from relief, the Court would still deny his application.  Because the Respondent failed to demonstrate eligibility for asylum under the "well-founded fear" standard, he necessarily fails to demonstrate eligibility for withholding of removal under the more stringent "more likely than not" standard.  *See* INA § 241(b)(3)(A); 8 C.F.R. § 1208.16(b); *see also Ye v. Lynch*, 845 F.3d 38, 46 (1st Cir. 2017). Accordingly, the Court finds that the Respondent has not established that it is "more likely than not" that his life or freedom would be threatened in the future on account of a statutorily protected ground if he returns to Brazil.  Thus, the Respondent's application for withholding of removal is also denied.

### E. Protection Under the Convention Against Torture

An applicant who establishes eligibility for Convention Against Torture protection shall be granted withholding of removal unless he is subject to mandatory denial of that relief, in which case he shall be granted deferral of removal. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a).  An applicant is subject to mandatory denial of withholding of removal under the Convention Against Torture if the applicant participated in the persecution of others, was convicted of a particularly serious crime, committed a serious nonpolitical crime outside of the United States, or if there are reasonable grounds to believe the applicant is a danger to the security of the United States.  8 C.F.R. § 1208.16(d)(2).  As discussed above, the Respondent's conviction precludes him from a grant of withholding of removal under the Convention Against Torture. However, he does remain eligible to apply for deferral of removal under the Convention Against Torture.  Moreover, the Respondent's ineligibility for asylum and withholding of removal is not determinative of his eligibility for relief under the Convention Against Torture.  Unlike asylum and withholding of removal, the Respondent need not prove that the torture he fears would be on account of any protected ground; he need only prove that it is more likely than not that he will suffer torture in Brazil. 8 C.F.R. § 1208.16(c)(2); *see also Rashad v. Mukasey*, 554 F.3d 1, 6 (1st Cir. 2009).

The Court finds that neither the Respondent's testimony nor the evidence in the record supports the conclusion that it is more likely than not that the Respondent would be singled out and tortured by, or with the acquiescence of, the Brazilian government, either by its active participation in torture, or by its acquiescence to the acts of private individuals. *Rashad*, 554 F.3d at 6 (quoting *Romilus*, 385 F.3d at 8).  "A public official's acquiescence to torture requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Matter of S-V-*, 22 I&N Dec. 1306, 1311 (BIA 2000) (internal quotations removed) (citing to 8 C.F.R. § 208.18(a)(7)).  The Respondent argues that he will be arrested upon his return to Brazil because he escaped from prison and fled to the United States.  The Respondent testified that he suffered

severe physical and psychological abuse while imprisoned at the hands of other inmates and prison guards. The Respondent also indicated that he faces a heightened likelihood of violence and torture because prisoners with convictions for sexually violent crimes are treated more harshly. *See* Exh. 4 at 17, ¶ 16-17. The Respondent further detailed the harsh prison conditions in which he fears he will suffer significant harm or be tortured. The Court recognizes that the Respondent likely suffered instances of harm while imprisoned in Brazil. The Court also acknowledges that the record includes evidence of the sub-standard prison conditions in Brazil, and that prisoners are often subjected to overcrowding, violence, and abuse by prison guards. *See* Exh. 6 at 54-56, 155-167, 197-245, 265-268. However, acts of torture do not include "pain or suffering arising only from, inherent in or incidental to lawful sanctions," and generally harsh prison conditions alone are insufficient to constitute torture. *Matter of J-E-*, 23 I&N Dec. at 297-99, 303. Rather, the Respondent's fear that he will be imprisoned if he returns to Brazil is based on his prior escape and his potential arrest by police pursuant to an outstanding arrest warrant. *See* Exh. 7; Exh. 9.

The Respondent additionally argues that he will be targeted and tortured as a political opponent to the current Brazilian administration. The Respondent submitted numerous country conditions evidence demonstrating the current administration's vehement opposition to political rivals. *See* Exh. 6 at 41-52, 64-66, 71-90. However, the Court finds that the evidence is insufficient to show that the Respondent specifically is likely to be tortured with the acquiescence of the government of Brazil. As discussed above, the Respondent's theory that he is currently being watched by the Brazilian government and will be targeted upon his return is too attenuated. Although the Respondent's criminal conviction was broadcast on Globo TV in Brazil, the Respondent failed to provide sufficient evidence to demonstrate that he specifically will be targeted by the Brazilian government upon his return. Eligibility for relief under the Convention Against Torture cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006). The Respondent has an "obligation to point to specific evidence indicating that he, personally, faces a risk of torture because of these alleged shortcomings." *Alvizures–Gomes v. Lynch*, 830 F.3d 49, 55 (1st Cir. 2016). Specific grounds must exist to show the Respondent will be personally at risk. *Settenda*, 377 F.3d at 95-96. Here, such specific grounds are not present and the Court is unable to conclude that the Respondent would be tortured because such a conclusion would necessarily rely on mere speculation and a series of suppositions.

Thus, there is insufficient evidence to indicate that the Respondent was tortured by government officials in the past, or would more likely than not be tortured in the future. The Respondent failed to introduce sufficient evidence to establish that, if returned to Brazil, it is more likely than not that members of the government will engage, instigate, consent, or acquiesce, in his torture. 8 C.F.R. § 1208.18(a)(1); *Rashad*, 554 F.3d at 6. Thus, the Respondent's application for deferral of removal under the Convention Against Torture will be denied.

## F. Cancellation of Removal Pursuant to 240A(b)(1)

### 1. Statutory Eligibility

The Court finds that the Respondent has been continuously and physically present in the United States for the ten year period prior to the May 1, 2019, service of the NTA. INA §§ 240A(b)(1)(A), 240A(d)(1); Exh. 1. The Respondent testified that he entered the United States on August 1, 2008, and there is no indication that he has left the country since that date. As analyzed above, the Respondent's rape conviction constitutes an aggravated felony and thus bars him from eligibility for cancellation of removal pursuant to section 240A(b)(1) of the Act. INA §§ 240A(b)(1)(C), 237(a)(2)(A)(iii), 101(a)(43)(A). The Court further finds that the Respondent's conviction constitutes a crime involving moral turpitude, which additionally bars him from eligibility for cancellation of removal. INA §§ 240A(b)(1)(C), 212(a)(2)(A)(i)(I).

Even assuming *arguendo* that the Respondent was not barred from relief, the Court would deny the Respondent's application because he failed to provide sufficient evidence to show that his removal would result in exceptional and extremely unusual hardship to his United States citizen children and wife. INA § 240A(b)(1)(D). The Respondent and his wife have two children together, G███ age seven, and S██, age six. *See* Exh. 4 at 74-75. The Respondent and his wife both testified that the family would likely return with the Respondent to Brazil upon his removal because the family would want to remain together and they would be unable to support themselves without the Respondent's financial contributions. As the Respondent would likely be returning to Brazil with his United States citizen wife and children, the Court also considers that possibility. *Matter of Gonzalez-Recinas*, 23 I&N Dec. at 470. The Respondent's wife testified that she does not believe her children would be safe in Brazil. The Respondent's wife also testified that G███ has recently been struggling in school and that he historically needs additional support in the classroom. G███ has participated in the Title I program in the past. The Respondent's wife testified that the Title I program is not a special education class, but a program which provides additional educational support for students who demonstrate heightened needs. *See* Exh. 4 at 28. The record does not include any documentation regarding G███'s participation in the Title I program. The Respondent's wife testified that G██ has recently needed to see a social worker as a result of the Respondent's detention. *See* Exh. 10. The Respondent's wife further testified that she and the Respondent own and operate a successful construction business together, but that she has had difficulty securing clients since the Respondent's detention. The Respondent's wife currently works as a Clinical Vendor Manager for the nonprofit, Boston Medical Center HealthNet Plan, but testified that the construction business serves as the family's secondary income. *See* Exh. 4 at 28. The Respondent's wife testified that they would unlikely be able to provide the same financial support to their family in Brazil, and that G███ would particularly struggle because educational resources comparable to those that he currently receives in the United States would not be available. *See id.*

The Court finds that the hardship the Respondent's wife and children, particularly G██, would suffer if they return to Brazil with the Respondent upon his removal does not reach the requisite level nature required by the statute. Although the additional changes that come with relocating to Brazil will undoubtedly be challenging for the Respondent's wife and children, these challenges do not approach the elevated level required by the statute. *See Matter of Andazola-Rivas*, 23 I&N Dec. 319, 324 (BIA 2002) ("while [the respondent's children] certainly will face some problems in adapting to life outside the United States, they will likely be able to make the necessary adjustments"); *Monreal*, 23 I&N Dec. at 63. The Respondent's children will have the additional benefit of the support of both parents and the Respondent's extended family members

19

who still reside in Brazil. In sum, the Court recognizes that the Respondent's wife and children would likely experience some hardship if they return to Brazil with the Respondent upon his removal. However, in the aggregate, the Court finds that the hardship the Respondent's wife and children would suffer does not rise to the level of exceptional and extremely unusual hardship required by the statute. INA § 240A(b)(1)(D). Therefore, the Court finds that the Respondent is statutorily ineligible for cancellation of removal pursuant to section 240A(b)(1) of the Act.

### 2. Discretion

Moreover, even if the Respondent had demonstrated statutory eligibility for cancellation of removal, the Court would still deny the Respondent's application in the exercise of discretion. INA § 240(c)(4)(A)(ii). Of particular concern to the Court is the Respondent's criminal conviction for rape in Brazil, as well as his numerous additional arrests and convictions in Brazil. *See* Exh. 7; Exh. 9. The Respondent's criminal records indicate that, in addition to his arrest for the rape charge, he was arrested in Brazil for vehicle theft twice between 1998 and 1999, and again for theft in 2003. *See* Exh. 7 at 20. The Court acknowledges the presence of positive factors in the Respondent's case. The Respondent has lived in the United States for over ten years. *See* Exh. 4 at 18. The Respondent is married to a United States citizen and has two young United States citizen children. *See id.* at 73-75. The Respondent and his wife together own a construction business, and the Respondent submitted numerous supporting affidavits indicating the Respondent's responsibility, kindness, and positive contributions to his family and community. *See id.* at 28-29, 35-59. Furthermore, the record does not indicate that the Respondent has any criminal history in the United States. Nonetheless, the record includes evidence of the Respondent's numerous arrests and criminal convictions in Brazil, as well as his current outstanding warrant in Brazil and INTERPOL red notice for his recapture from his 2008 escape. *See* Exh. 2; Exh. 6 at 284-285; Exh. 7; Exh. 9. Although the Respondent argues that his 2007 rape conviction was fabricated, the Court is still deeply troubled by the violent nature of the underlying charge, as well as the Respondent's numerous prior charges. Upon balancing of the favorable and adverse factors presented, the Court determines that the adverse factors outweigh the positive and finds that the Respondent has not demonstrated that he merits a favorable exercise of the Court's discretion. Accordingly, the Court will deny the Respondent's application for cancellation of removal pursuant to section 240A(b)(1) of the Act.

### G. Voluntary Departure Pursuant to Section 240B(b) of the Act

The Court further finds that the Respondent is statutorily ineligible for voluntary departure because he has been convicted of an aggravated felony under section 101(43)(A) of the Act. INA § 240B(b)(1)(C). Even assuming that the Respondent demonstrated statutory eligibility, the Court would deny the Respondent's application as a matter of discretion. The Court incorporates its foregoing discussion regarding discretion into this section. As such, the Respondent's application for voluntary departure will be denied.

Based on the foregoing, the following orders shall enter:

## ORDERS

**IT IS HEREBY ORDERED** that the Respondent's application for asylum, pursuant to INA § 208, be **DENIED;**

**IT IS FURTHER ORDERED** that the Respondent's application for withholding of removal, pursuant to INA § 241(b)(3), be **DENIED;**

**IT IS FURTHER ORDERED** that the Respondent's application for protection under the Convention Against Torture be **DENIED;**

**IT IS FURTHER ORDERED** that the Respondent's application for cancellation of removal, pursuant to INA § 240A(b)(1), be **DENIED;**

**IT IS FURTHER ORDERED** that the Respondent's application for voluntary departure, pursuant to INA § 240B(b), be **DENIED;**

**IT IS FURTHER ORDERED** that the Respondent be **REMOVED** to **BRAZIL**.

The Court has ordered you removed from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the United States, to present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $500 per day you are in violation. INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

If any party elects to appeal this decision, the Notice of Appeal must be received by the Board of Immigration Appeals within thirty (30) days of this decision.

12/10/19
_____
Date

_____
Todd A. Masters[4]
Immigration Judge[4]

---

[4] Pursuant to 8 C.F.R. § 1240.1(b), the undersigned Immigration Judge has familiarized himself with the record of proceeding.

21