UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                               )
MARIA ALEJANDRA CELIMEN SAVINO    )
and JULIO CESAR MEDEIROS NEVES,   )
                                               )
Petitioners-Plaintiffs,                        )
                                               )     20-cv-10617 WGY
     v.                                        )
                                               )
THOMAS HODGSON, et al.,                        )
                                               )
     Respondents-Defendants.                   )
_____)

### DEFENDANTS' INPUT REGARDING APRIL 22 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020. It is Defendants' position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

### Appropriate Detainee Population Density Has Been Achieved

Defendants believe that the prior release of detainees, by Court order and by ICE voluntarily, along with the transfer of an additional six detainees in preparation for removal, has resulted in a level of detainee population sufficiently low so as to allow appropriate CDC-recommended social distancing at BCHOC.

Defendants filed a Motion to Stay Further Releases and a Memorandum in Support yesterday. In those filings, Defendants show that the BCHOC detainee population has been reduced from 148 at the outset of this litigation to **87** now, with one more to be released today.

an almost **forty-two percent** (**42%**) cut.  This has resulted in sufficient space for the remaining detainees to practice social distancing at all times, including while sleeping.  Defendants urge the Court to stay further releases while it considers the Motion to Stay, and to grant the motion going forward.[1]

### One Individual on Today's List Has Already Been Released on Bond

ICE continues to proceed with bond hearings in the normal course, and one individual on today's list has been released on bond.  That is **JOSE EILTON DE SOUSA CALDAS** (#3 on the April 22, 2020 list).  He was released from ICE custody on April 16, 2020, upon the posting of a bond in the amount of $7,000 pursuant to an immigration judge's custody redetermination decision.

### The Nine Remaining Individuals on the April 21 List Are Significant Risks to the Public:

As stated, the Defendants do not believe any additional detainees need to be released to protect the remaining detainees from an outbreak of COVID-19.

Nonetheless, as per the Court's order, attached hereto is a detailed analysis of the risk factors for release of the nine remaining detained from the list of ten for April 22, 2020.  While Defendants are mindful of the Court's goal of reducing the detainee population so as to allow social distancing at BCHOC, all of the nine remaining individuals on today's list present significant risks to the community.  This group includes sexual aggressors, attempted child molesters, spouse beaters, drug dealers, violent assaulters, gang members and weapons possessors.  Their individual risk of contracting COVID-19 cannot outweigh the danger to the

---

[1] Plaintiffs continue to submit statistics on the number of COVID-19 cases and deaths in the Commonwealth of Massachusetts.  Given that there are still no confirmed cases within BCHOC, these statistics indicate that the detainees are more likely to be exposed to the coronavirus upon release then if they remain detained.

community, *especially as there are still no confirmed cases of COVID-19 at HCBOC*.

**1. AMADO, Joao:** Mr. Amado is a citizen and national of Cape Verde. On December 01, 1984, Mr. Amado was admitted to the U.S. as a legal resident permanent. He is currently subject to mandatory detention pursuant to 8 U.S.C. § 1236(c), on account of his 2018 carrying a firearm without a license conviction.

Mr. Amado has an extensive and violent criminal history involving the use of firearms. He has also been the subject of two restraining orders, issued in 2018 and 2012. On January 3, 1991, Mr. Amado was convicted of a felony robbery-street-gun and sentenced to ten years in prison. Mr. Amado also has felony burglary and receiving stolen property convictions, for which he was sentenced to one year in prison. On April 15, 1992, Mr. Amado was also convicted for aggravated assault with a firearm and was sentenced to five years in prison. In addition to these felonies, Mr. Amado has been convicted of multiple misdemeanors including: driving under the influence of alcohol (convicted April 27, 2015); two counts of possession of burglary tools (convicted December 17, 1991 and December 16, 1998); three counts of licensing violation (convicted September 27, 1991 and December 9, 1997); two counts of damaging property (convicted November 9, 1990 and January 3, 1992); larceny (convicted January 3, 1992) and receiving stolen property (convicted December 16, 1998). On May 30, 2018, Mr. Amado was convicted for assault and battery with a dangerous weapon; carrying a firearm without a license; carrying a loaded firearm without a license; witness intimidation; and unlawful possession of ammunition. These convictions show that Mr. Amado has a violent and dangerous criminal history that stretches over a more than 26-year period.  He received an 18-month sentence for the carrying a firearm without a license offense. Mr. Amado has also been


charged with a licensing violation, assault, disorderly conduct, and larceny-from auto. However, these charges were subsequently dismissed.

Mr. Amado must remain in ICE custody, as he is subject to mandatory detention and is a threat to public safety based on his violent and dangerous criminal history.

**2. CELIMEN SAVINO, Maria:** Ms. Celimen Savino is a citizen and national of Venezuela, who entered the United States at Atlanta, GA on July 2, 2008, as a nonimmigrant F-2, with authorization to remain in the United States for the duration of her first husband's F-1 status (a student visa). Ms. Celimen Savino stayed beyond the authorization of her visa. She is currently detained under 8 U.S.C. § 1226(a).

Ms. Celimen Savino is the subject of an open restraining order, and has had 4 other restraining orders issued against her, by two different victims. On June 28, 2018 and November 19, 2018, Ms. Celimen Savino was charged with 13 counts of violating an abuse prevention order and one count of threatening. On August 1, 2019, she received pretrial probation for one count of threatening and one count of violating an abuse prevention order and the remaining charges were dismissed by the Waltham District Court. In addition, she has been arrested and charged multiple times for: assault and battery; assault and battery with a dangerous weapon; assault and battery on a household member; violating an abuse prevention order; and larceny. On May 16, 2016, Ms. Celimen Savino received continuances without a finding (CWOF) for one count of assault and battery on household member, and one count of assault and battery with dangerous weapon.[2] The other charges against her were ultimately dismissed by the Waltham

---

[2] As the Court is aware a CWOF counts as a criminal conviction under the U.S. Sentencing Guidelines for purposes of calculating an individual's criminal history. This is not

District Court on February 21, 2017 (abuse prevention order violation and larceny); August 2, 2017 (abuse prevention order violation); and August 15, 2017 (abuse prevention order violation, assault and battery on a household member, and assault and battery with a dangerous weapon). On September 10, 2008, the Malden District Court also dismissed an assault and battery charge against Ms. Celimen Savino. This is a significant collection of violent and potentially violent charges, that cannot be simply wiped away because Ms. Celimen Savino reached a deal with the state.

On February 26, 2019, ICE arrested Ms. Celimen Savino and served her with a Form I-862, Notice to Appear. At the time of her arrest, Ms. Celimen Savino was verbally and physically non-compliant. Ms. Celimen Savino's attorney who was present at her arrest, explained to her that she had to go with ICE, and that they would re-schedule her court date. Ms. Celimen Savino continued to be disrespectful to the ICE officers, eventually causing her friend, who was also present to say: "Maria, stop being rude, they are not being rude to you, so stop." During transportation to the detention facility, Ms. Celimen Savino's disrespect and verbal non-compliance continued towards the ICE officers. At the time of her arrest, Ms. Celimen Savino refused to provide any information to the ICE officer regarding her medical history, stating: "I don't have to tell you anything."

At the time of processing, an ICE officer presented Ms. Celimen Savino with her cell phone to retrieve any numbers that she would need. The officer clearly instructed Ms. Celimen Savino that she was only to write down numbers, and that she could not use the cell phone to call or text anyone. The sheriff officer in detention then observed Ms.

---

controlling here, but underscores that Ms. Celimen Savino has criminal convictions and her history must be considered in evaluating whether it is safe to release her.

Celimen Savino using her cell phone to text. During the booking process, Ms. Celimen Savino also refused to comply with officers' instructions to look straight at the camera. Ms. Celimen Savino stated that she is married but getting a divorce, has no children, and lives in the United States alone. Thus, she has no community ties here in the United States. While in ICE custody, Ms. Celimen Savino has also been involved in a verbal altercation with another inmate.

Ms. Celimen Savino should remain in ICE custody. She is a risk to public safety, as demonstrated by her extensive criminal history of domestic violence and her continuous disregard of the abusive prevention orders issued against her. If released, ICE believes she poses an extreme risk of flight, given her failure to abide by the terms of her non-immigrant visa, her non-compliance at the time of her ICE arrest, and her lack of community ties to the United States. Given this behavior, it is extremely unlikely that Ms. Celimen Savino would obey an order to surrender herself to ICE for removal if and when it becomes necessary.

**4. GUILLERMO, Darlin Alberto:** Mr. Guillermo is a citizen and national of the Dominican Republic, who was admitted to the U.S. as a Lawful Permanent Resident, on February 17, 1992, in New York, NY. He is currently subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), for his 2016 conviction for possession with intent to distribute cocaine.

Since 1999, Mr. Guillermo has amassed 108 arraignments in Massachusetts. He has an extensive criminal history involving violence and drug trafficking and has been the subject of 14 retraining orders taken out by three different victims. On December 18, 2018, Mr. Guillermo was convicted in the Middlesex Superior Court, MA for two counts

of strangulation/suffocation, intimidation, and assault and battery on a family/household member. Although his counsel claims he is now challenging his plea, he has admitted the offenses and been convicted. For these offenses, he was sentenced to two years and six months confinement. Mr. Guillermo has also been convicted of, or received a continuance without finding for, two counts of possession of a class E controlled substance; two counts of possession of a class B controlled substance; possession with intent to distribute a class B controlled substance; assault and battery with a dangerous weapon (hand gun); and resisting arrest. In addition to these convictions, he has been charged multiple times for assault; assault and battery with a dangerous weapon; threatening; strangulation/suffocation; witness intimidation; and controlled substance violations. These charges were subsequently dismissed on various occasions by various courts in Massachusetts.

Mr. Guillermo came into the custody of ICE on January 22, 2020, after completing his sentence on the strangulation/suffocation, intimidation, and assault and battery on a family/household member convictions. He did not report any medical issues at the time of his arrest, nor is the fact that he had a bullet removed from his chest a factor that raises his COVID-19 risk.

Mr. Guillermo must remain in ICE custody. Mr. Guillermo poses an extreme risk to public safety as demonstrated by his significant criminal history, multiple restraining orders, and has shown violent and dangerous behavior on many occasions in the past. He is also a flight risk as an immigration judge has recently ordered his removal from the

United States.[3]

    **5. KAYITARE, Fred:** Mr. Kayitare is a citizen and national of Rwanda who entered the U.S. as a non-immigrant business visitor (B-1) on or about September 21, 2016, at San Francisco, CA. He stayed beyond the authorization of his visa and is currently being held pursuant to 8 U.S.C. § 1226(a).

    On June 26, 2019, Mr. Kayitare was convicted of two counts of assault and one count unlawful sexual touching. He was sentenced to 60 days on the assault charges and 30 days on the unwanted sexual touching charge. The police report related these charges reflects that Mr. Kayitare approached three different female victims on different occasions in August of 2018 and made aggressive and unwanted sexual advances against them. One of the incidents reflects that Mr. Kayitare approached a woman in a park and rubbed his genitals against her. On another occasion, Mr. Kayitare approached a woman at a supermarket and rubbed his erect penis against her leg, and then proceeded to violently simulate intercourse with her in such an aggressive manner that he bruised her abdomen with his belt buckle.

    On August 1, 2019, ICE arrested Mr. Kayitare and issued a Form I-862, Notice to Appear. He did not claim any medical issues at the time of his arrest. During his ICE arrest, Mr. Kayitare maintained that he is a citizen and native of the Democratic Republic of the Congo (DRC). He claimed that he was born in Goma, DRC. He claimed that his parents were also citizens of the DRC. However, his last entry to the U.S. was made with a

---

[3] Counsel makes note that the Dominican Republic has closed its borders to travelers; whether this is true as to governmental transfers is unclear, but it is irrelevant to this case because the present lawsuit does not challenge the *length* of the detainees' detention.

Rwandan passport. Mr. Kayitare has also previously applied for a work authorization card with U.S. Citizenship and Immigration Services and listed his country of birth and citizenship as Rwanda.

On December 16, 2019, an immigration judge denied his request for bond, finding that ICE had met its burden to show by clear and convincing evidence that he is a danger to the community. Mr. Kayitare did not appeal that decision to the Board of Immigration Appeals. His final hearing on his applications for relief from removal is scheduled on April 30, 2020.

Mr. Kayitare should remain in custody as he is a threat to the public as evidenced by his convictions for assault and sexual touching, and is a flight risk as his actual identity is currently unknown.[4] Moreover, the proposed housing arrangement does not appear suitable and significant details are absent, such as how many others will reside in the apartment, whether they will be working, etc.

**6. LOPEZ SALAZAR, Javier Ernesto:** Javier Lopez Salazar is a citizen and national of El Salvador who entered the United States without inspection at an unknown time and place. Lopez Salazar is currently being detained pursuant to 8 U.S.C. § 1226(a).

On March 24, 2020, Lopez Salazar was arrested in Massachusetts for a domestic violence incident. The charges are pending. Lopez Salazar was previously arrested in July of 2019 for assault. This charge has been dismissed.

According to the police report for the domestic incident, Lopez Salazar was charged

---

[4] As stated in previous filings by Defendants, neither PTSD nor depression are recognized as comorbidities for COVID-19 by the CDC. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (*accessed* April 12, 2020).

with assault, strangulation, threatening, and witness intimidation. The complainant was his girlfriend. Police responded to an apartment at around 2:00 a.m. Upon arrival, police observed marks on the complainant's neck. The complainant told the police that she and Lopez Salazar had been drinking. An argument ensued, during which Lopez Salazar grabbed her by the throat and dragged her to the bedroom. During the incident, Lopez Salazar threated the complainant that if she involved the police, saying that someone he knows from El Salvador would harm her and kill her mother. The complainant escaped and armed herself with a knife. Lopez Salazar then grabbed the complainant's wrist and choked her to unconsciousness. The owner of the apartment, a witness who identified herself as Lopez Salazar's cousin, cooperated with the police. The complainant was transported to the hospital and Lopez Salazar was transported to headquarters for booking. During booking, officers observed marks on Lopez Salazar. When police asked about the marks, Lopez Salazar said that he received them during a scuffle with his girlfriend.

On March 25, 2020, following his release on bond from state custody, Lopez Salazar was arrested by ICE. Lopez Salazar was issued a Form I-862, Notice to Appear. His next immigration hearing is scheduled for April 23, 2020.

Lopez Salazar must remain in ICE custody. He is a risk to public safety as generally demonstrated by his multiple arrests, and specifically by his most recent arrest for domestic violence.

**7. MENJIVAR ROJAS, Carlos Dalelio:** Carlos Dalelio Menjivar Rojas is a citizen and national of El Salvador. He is a convicted drug trafficker and has admitted to having been a member of the Suarenos gang. He is subject to mandatory detention and is currently detained pursuant to 8 U.S.C. § 1226(c).

On October 24, 1997, following his release from USINS custody, Menjivar Rojas was convicted in state court for various offenses. He was sentenced to two years and eight months of incarceration.

On September 3, 2009, Menjivar Rojas pleaded no contest in Montana to criminal possession of dangerous drugs and criminal possession of drug paraphernalia. He was sentenced to six months. Menjivar Rojas has also been convicted of multiple felonies including possession of amphetamine, armed robbery, robbery, and obstructing police, and misdemeanor drug offenses.

On July 11, 2011, Menjivar Rojas was arrested by ICE. On August 9, 2011, ICE served Menjivar Rojas with a Form I-261, charging him with an additional violation. He posted bond and was released from ICE custody.

On July 12, 2012, while out on bond, Menjivar Rojas was arrested by the Drug Enforcement Agency and charged with drug trafficking.

On June 26, 2013, Menjivar Rojas was sentenced in the United States District Court to a term of imprisonment of 168 months for the offense of Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A). On July 8, 2014, the sentence was reduced to 135 months.

On July 19, 2019, upon his release from federal custody, Menjivar Rojas was arrested by ICE. Menjivar Rojas stated at the time of his arrest that he suffers from asthma and uses an inhaler. Menjivar Rojas also claimed that he takes medication for anxiety as well.

Immigration proceedings were re-calendared and on November 1, 2019, the immigration court ordered Menjivar Rojas removed. Menjivar Rojas filed an appeal with the Board of Immigration appeals (BIA). The appeal is pending.

Menjivar Rojas must remain in ICE custody. He is subject to mandatory detention. In addition, he was twice released from ICE custody and, while released on bond, he was convicted of serious crimes. Menjivar Rojas has also admitted to being a member of the Suarenos Gang. Coupled with his lengthy criminal history, Menjivar Rojas is a danger to public safety.

**8. OKOLI, Cyril:** Cyril Okoli is a citizen and national of Nigeria. Okoli entered the United Sates on August 5, 2011, as a non-immigrant F1-student visa holder. He is currently detained pursuant to 8 U.S.C. § 1226(a).

On July 24, 2019, Okoli was arrested and charged with felony enticement of a minor for indecent purposes and resisting arrest. Okoli has also been charged with multiple traffic offenses, one of which has been dismissed. All of the other charges are pending in state court.

On July 26, 2019, ICE arrested and served Okoli with a Form I-862, Notice to Appear. At the time of his arrest, Okoli claimed to have no medical conditions and to be in good health.

Okoli's arrest for enticement of a minor and interfering with a police officer was the result of a joint, federal and state operation, identifying individuals seeking to engage in sex with minors. Pursuant to the operation, Okoli was encountered when he responded to an online advertisement and arrived at a surveilled hotel for the purpose of having sex with a fifteen-year-old child. During the encounter, Okoli attempted to flee. Okoli resisted but officers secured him after a struggle.

On March 14, 2020, the First Circuit Court of Appeals granted the Department of Homeland Security's motion to dismiss Okoli's Petition for Review. On March 19, 2020,

Okoli's temporary stay of removal expired.

It is recommended that Okoli remain in ICE custody. He has been ordered removed, his appeal is pending, and he is a danger to public safety as evidenced by his criminal arrest for enticing a minor, which he was taking active steps to complete.

**9. PROMOTOR-DOMINGUEZ, Abel:** Abel Promotor-Dominguez is a citizen and national of Mexico who re-entered the United States without inspection at an unknown place and time. In August of 2017, the United States Department of State denied Promotor-Dominguez' application for a visa. Thereafter, on December 23, 2017 Promotor-Dominguez was apprehended by the U.S. Border Patrol and removed to Mexico on December 25, 2017. Promotor-Dominguez is currently detained under 8 U.S.C. § 1231, pursuant to a final order of removal.

On December 17, 2019, Promotor-Dominguez was arrested in Connecticut for a domestic violence incident and charged with assault in the third degree and disorderly conduct. Both charges are pending in state court. Promotor-Dominguez's criminal history also includes operating a motor vehicle without a license.

On December 18, 2019, following his release from state custody, ICE arrested Promotor-Dominguez and served him with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. At the time of the arrest, Promotor-Dominguez claimed to be in good health.

It is recommended that Promotor-Dominguez remain in ICE custody. He is a risk to public safety as demonstrated by his pending charges involving domestic violence. He is also a flight risk due to his final order of removal and his illegal reentry.

**10. SSEKABAZI, Nathanael:** Nathanael Ssekabazi is a citizen and national of

Uganda who entered the United States as an F-1 non-immigrant student on August 31, 2017. Ssekabazi failed to attend school and his F-1 status was terminated on October 14, 2017. He is held under 8 U.S.C. § 1226(a).

Ssekabazi has a criminal conviction for operating under the influence of liquor and pending charges for operating under the influence of liquor (second offense), unlicensed operation of motor vehicle, marked lanes violation, failure to stop for police, reckless operation, assault with a dangerous weapon, alcohol in a motor vehicle, and speeding.

As to Ssekabazi's first conviction, he was arrested by the Massachusetts State Police (MSP) on or about September 23, 2017, and charged with operating under the influence, negligent operation of a motor vehicle, unlicensed operation of a motor vehicle, furnishing a false name, and a marked lanes violation. He was convicted of operating under the influence and sentenced to sixty days, time served.

According to the MSP application for a criminal complaint regarding this conviction, a Trooper was dispatched to the scene of a single car crash off the roadway. Upon arrival at the scene, the Trooper observed Ssekabazi exit the vehicle and walk toward him in an unsteady manner as he stumbled several times. The Trooper observed that Ssekabazi had "glassy/bloodshot eyes" and noted a strong odor of an alcoholic beverage.

Per the MSP application, when asked for his license and registration, Ssekabazi provided a registration under the name of Joseph Ssali and stated that his name was indeed Joseph Ssali. The Trooper conducted three field tests. Based on his observations of the Ssekabazi during these tests, the Trooper determined that the Ssekabazi had been operating his vehicle under the influence.

Upon arrival at the MSP barracks, the Trooper noted that Ssekabazi had vomited in

the rear of the cruiser and was unable to stand under his own power. Ssekabazi was unresponsive to orders and questions from the Trooper. The MSP thereafter transferred the Ssekabazi to Lawrence Memorial Hospital. Per the Trooper, Ssekabazi, once responsive, stated three more times that his name was Joseph Ssali.

On July 16, 2018, Ssekabazi was charged by the Burlington (MA) police department for a second motor vehicle-related offense, but this time **he was also charged with assault with a dangerous weapon**, operation under the influence (second offense), reckless operation of a motor vehicle, unlicensed operation of a motor vehicle, failure to stop for police, speeding, possession of open container of alcohol in a motor vehicle, and a marked lanes violation.

Per the Burlington police department arrest report, an Officer observed Ssekabazi at approximately 2:00 a.m. driving in an erratic manner, swerving left and right into adjacent traffic lanes, almost striking other vehicles on the roadway. The Officer activated his lights to conduct a traffic stop. Ssekabazi came to a stop and pulled to the shoulder of the road. However, Ssekabazi then accelerated rapidly to flee from the Officer.

Per the report, Ssekabazi performed an evasive maneuver and spun his vehicle 360 degrees so it was facing the Officer's cruiser. Ssekabazi then accelerated towards the Officer's cruiser "head on" which forced the Officer to swerve to avoid a collision. Ssekabazi then traveled the wrong way up an exit off-ramp and crossed over the median onto I-95 north where he accelerated rapidly to a speed of approximately 80-95 mph.

According to the report, Ssekabazi then exited the interstate and nearly crashed his vehicle. He then continued straight into the grassy median of the Woburn rotary, crashed, and rolled his vehicle over. When the Officer reached the scene of the wreckage, he found

Ssekabazi lying face up outside of his vehicle. While rendering medical aid to Ssekabazi, the Officers noted a strong odor of alcoholic beverage emanating from Ssekabazi.

Officers searched the crash site and found an opened half full 50 ml bottle of vodka in Ssekabazi's pocket.  Two different wallets were found on the scene with three Ugandan driving permits with three different names. Ssekabazi was then taken to the hospital as he was unconscious.

According to an additional report, an Officer spoke with an acquaintance of Ssekabazi while he was in the hospital. She stated that she had distanced herself from Ssekabazi due to his alcohol abuse, that he had been involved in a crash months before, and that he had drinking issues and had drank and driven before.

An Officer also obtained a search warrant for Ssekabazi's blood test results from the hospital.  Per the report, Ssekabazi's test result for blood alcohol content (BAC) was .261. In Massachusetts, the legal limit for BAC is .08. Ssekabazi's BAC was more than three times the legal limit.

On November 21, 2018, ICE arrested Ssekabazi and issued a Form I-862, Notice to Appear. On January 10, 2019, an immigration-bond hearing occurred, and an immigration judge denied bond. The judge found Ssekabazi was danger to public safety.

On July 24, 2019, an immigration judge ordered Ssekabazi removed. Ssekabazi appealed and, on March 6, 2020, the Board of Immigration Appeals (BIA) remanded his case back to immigration court.  Ssekabazi case remains pending before the Immigration Court. Throughout the proceedings, the respondent's purported lack of mental competency was addressed, he was found to be competent, and specific safeguards were ordered by the

immigration judge.

It is recommended that Ssekabazi remain in ICE custody. He is a risk to public safety as found by the immigration judge and demonstrated by his criminal conviction and pending criminal charges.  It is generally accepted that substance abusers have limited ability absent significant support and a deep personal commitment to recovery to abstain from further substance abuse.

The Court is directed to Exhibit 1, attached hereto, for additional particulars regarding each of the nine listed detainees.

Respectfully submitted,

ANDREW E. LELLING,
United States Attorney

By:  */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Michael Sady
Assistant U.S. Attorneys
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
thomas.kanwit@usdoj.gov
April 20, 2020                                                          michael.sady@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Thomas E. Kanwit*

Dated:   April 20, 2020                                        Thomas E. Kanwit