UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
**MARIA ALEJANDRA CELIMEN SAVINO**            )
**and JULIO CESAR MEDEIROS NEVES,**           )
                                              )
**Petitioners-Plaintiffs,**                   )
                                              )     20-cv-10617 WGY
      **v.**                                  )
                                              )
**THOMAS HODGSON, et al.,**                   )
                                              )
      **Respondents-Defendants.**             )
_____)

# DEFENDANTS' INPUT REGARDING APRIL 23 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020. It is Defendants' position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

## Appropriate Detainee Population Density Has Been Achieved

Defendants believe that the prior release of detainees, by Court order and by ICE voluntarily, along with the transfer of an additional six detainees in preparation for removal, has resulted in a level of detainee population sufficiently low so as to allow appropriate CDC-recommended social distancing at BCHOC.

Defendants filed a Motion to Stay Further Releases and a Memorandum in Support yesterday. In those filings, Defendants show that the BCHOC detainee population has been reduced from 148 at the outset of this litigation to **87** now, an over **forty percent** (**40%**) cut.

This has resulted in sufficient space for the remaining detainees to practice social distancing at all times, including while sleeping. Defendants continue to urge the Court to stay further releases and will seek a hearing on the merits at the first opportunity.[1]

**All Nine Individuals on the April 23 List Are Significant Risks to the Public and/or Risks of Flight:** As stated, the Defendants do not believe any additional detainees need to be released to protect the remaining detainees from an outbreak of COVID-19.

Nonetheless, as per the Court's order, attached hereto is a detailed analysis of the risk factors for release of the list of ten for April 21, 2020. While Defendants are mindful of the Court's goal of reducing the detainee population so as to allow social distancing at BCHOC, all of the individuals on today's list present significant risks to the community. This group includes rapists, child molesters, spouse beaters, drug dealers, violent assaulters, gang members and weapons possessors. Some individuals on today's list comprise all, or nearly all, of the above. Their individual risk of contracting COVID-19 cannot outweigh the danger to the community, *especially as there are still no confirmed cases of COVID-19 at BCHOC*.

   **1. BAEZ Guerrero, Altagracia:** Baez Guerrero is a citizen and national of the Dominican Republic. Baez Guerrero entered the United States at an unknown location through Texas on or about the year of 2015. She is currently detained under 8 U.S.C. § 1226(a).

   Baez Guerrero was convicted for identity theft- false representation of social security number. She was released from the Massachusetts Correctional system to ICE custody

---

[1] Plaintiffs continue to submit statistics on the number of COVID-19 cases and deaths in the Commonwealth of Massachusetts. Given that there are still no confirmed cases within BCHOC, these statistics indicate that the detainees are more likely to be exposed to the coronavirus upon release then if they remain detained.

after serving her time for these convictions.

She also has two pending charges for identity theft and cocaine trafficking. She had 11 default warrants issued on February 11, 2019 for numerous charges including distribution of a class B Substance (cocaine), conspiracy to violate the Controlled Substances Act, and true name violation.  Based upon an extensive investigation, Baez Guerrero was determined to be a drug runner for a sophisticated drug distribution group that distributed cocaine and heroin.

On November 4, 2018, Winchester, MA Police Department arrested Baez Guerrero for dispensing and distributing a class B substance (cocaine).  An officer made four controlled buys of 1 gram each of cocaine from Baez Guerrero. She also gave the officer a false Puerto Rican identity, which included a Massachusetts Driver's license and U.S. Passport.

As a female detainee, Baez Guerrero has adequate space to practice social distancing at BCHOC.  She does not have any current health risks for COVID-19.[2]  Moreover, Baez Guerreros' criminal history and convictions make her a danger to public safety, particularly where she sold cocaine to an undercover agent on four separate occasions. Additionally, her conviction for identity theft, her numerous defaults for her criminal court appearances, and limited relief from removal all make her a flight risk.

**2. FALL, Abdulaye:**  Abdulaye Fall is a citizen and national of Senegal. He entered the United States at Atlanta, GA on December 30, 2007, as a lawful permanent resident.

---

[2] She indicates she was tested for COVID-19 but not given the results; ICE is determining if this is accurate.  If she had tested positive, steps would have been taken to continue the isolation she was placed in.

Fall is subject to mandatory detention under 8 U.S.C. § 1231 pursuant to a final order of removal and his convictions.

On January 28, 2016, the Providence Superior Court convicted Fall for the offense of Robbery 1st degree and sentenced him to 15 years, 7 years of incarceration, 8 years suspended and 15 years of probation. This is a very lengthy sentence for robbery, and reflects aggravating circumstances. Fall was released on parole, which he promptly violated. He was arrested on December 5, 2018 for breaking and entering. Fall was sentenced for parole violations and incarcerated at the Adult Correctional Institute (ACI) in Cranston, RI.

On April 30, 2019, ICE arrested Fall upon his release from the ACI. On the same date, ICE served Fall a Notice to Appear for having been convicted of an aggravated felony after admission. On June 10, 2019, the immigration court ordered Fall removed from the United States to Senegal and Fall reserved appeal. On July 1, 2019, Fall filed an appeal with the Board of Immigration Appeals (BIA). On October 1, 2019, Fall was married to his fiancée at the ICE office. On November 21, 2019, the BIA dismissed Fall's appeal.

FALL had a removal date set for March 17, 2020 but it was cancelled and will be rescheduled likely for June 2020.

At the time of arrest, Fall claimed that he had tuberculous and that he took medication while incarcerated.

FALL is a flight risk because he does not have any available forms of relief from removal due to his final order of removal and he is a danger to public safety based on his recent and serious criminal history where he violated parole by committing a breaking and

entering offense after being committed to prison for 7 years for a conviction for 1st degree robbery. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**3. Domingo-Mendez, Jeremias Lucas:** Domingo-Mendez is a citizen and national of Guatemala. Mr. Domingo-Mendez illegally entered the United States sometime in 2008 by walking across the border from Mexico into Arizona. Mr. Domingo-Mendez is currently detained under 8 U.S.C. § 1226(a).

Domingo-Mendez has violent criminal charges that are pending out of Manchester, Connecticut; He was arrested on May 28, 2019, by the Manchester, Connecticut Police Department for disorderly conduct, risk of injury and assault in the third degree. The arrest report indicates that in a jealous rage, he admitted to police officers that he slapped his girlfriend, after drinking 25 Corona Light beers. The victim told officers that Domingo-Mendez pushed her down on the bed and slapped her in the face in front of their two young children. Officers observed a visible red mark on her cheek. The victim also reported that Domingo-Mendez has been physically abusive in the past on several occasions.

Domingo-Mendez came into ICE custody on March 16, 2020 and was served a Notice to Appear. Domingo-Mendez is currently pending removal proceedings before the immigration court. On April 16, 2020 the immigration court denied the respondent's bond, finding that ICE met its burden of proof to demonstrate that he was a danger due to a recent and serious domestic violence incident. His next immigration court appearance is scheduled for April 30, 2020.

Domingo-Mendez is a danger to public safety based on his criminal history for

domestic violence and should remain in custody. In addition, the home to which they propose Domingo-Mendez is where his girlfriend lives. This is inappropriate in light of his violence against her.[3] Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**4. Guzman-Figueroa, Metodio:** Guzman-Figueroa is a citizen and national of Mexico who was admitted into the United States on June 17, 2009. Guzman-Figueroa is currently detained subject to 8 U.S.C. § 1226(a).

On June 18, 2019, Guzman-Figueroa was arrested by the Massachusetts State Police for operating under the influence of liquor. The charge is currently pending. Per the arrest report, Guzman-Figueroa was observed by a police officer driving 110 miles per hour, crossing the median, swerving his vehicle in and out of lanes, crossing multiple traffic lanes then slamming on his breaks and narrowly avoiding striking the median barrier on June 15, 2019. Guzman-Figueroa was not wearing a seat belt and began to shout and laugh at the officer who effectuated the motor vehicle stop. The officer detected a strong odor of alcoholic beverage, slurred speech, glassy eyes, lethargic movements, and the inability of Guzman-Figueroa to stand on his own. The officers physically had to hold Guzman-Figueroa to prevent him from falling down, while he told the officer he only consumed two beers. His erratic, high-speed driving could easily have led to the death of others.

On February 27, 2020, ICE arrested and served Guzman-Figueroa Form with a Notice to Appear. On April 7, 2020, the immigration court denied Guzman-Figueroa's request for

---

[3] The fact that the girlfriend supports his release and return is not unusual; victims of domestic violence often recant or reunite with abusing partners. This does not mean it is a safe or appropriate location for the detainee.

a change in custody, finding that ICE had met its burden of proof to demonstrate that he was a danger.

His next immigration court appearance is scheduled for April 30, 2020.

Guzman-Figueroa is a risk to public safety. He did not merely drive under the influence, he drove 110 m.p.h. and repeatedly crossed the median going into oncoming traffic's right of way. In addition, his medical injuries do not fit within the CDC Guidelines for increased risk. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**5. Lucas-Cor, Gregorio:** Lucas-Cor is a citizen and national of Guatemala who entered the United States without inspection by an immigration officer at an unknown place and time. Lucas-Cor is currently detained subject to 8 U.S.C. § 1226(a).

On October 1, 2019, Lucas-Cor was arrested by the Norwich, CT Police Department for illegal operation of a motor vehicle under the influence of alcohol/drugs and illegal operation of a motor vehicle under suspension. Police found Lucas-Cor slumped over the wheel of his vehicle, with heavy front-end damage apparent. The front bumper itself was completely off the vehicle and the passenger side door and mirror also sustained damage. When Lucas-Cor was awakened by officers, they immediately detected a strong odor of alcoholic beverage. Lucas-Cor could not remember what happened that caused the front end damage, but admitted to officers that he had 10 Corona beers at a soccer match before driving home that evening. Officers observed an open Corona beer ¾ full inside the center console of his vehicle. Lucas-Cor fell backwards into his vehicle while trying to stabilize himself when exiting the vehicle. He completely failed his field sobriety tests and his BAC tests showed he was at .18 BAC – more than twice the legal limit. Lucas-Cor's criminal

history also includes arrests for failure to obey traffic control signals, illegal operation of a motor vehicle under suspension, improper rear/marker lamps, two counts of failure to appear in the 2nd degree, and two additional charges for illegal operation of a motor vehicle under suspension. All charges are currently pending.

On April 30, 2013, Lucas-Cor was apprehended by the U.S. Border Patrol and issued a notice to appear. Lucas-Cor was later released on an order of recognizance on June 11, 2013. On December 16, 2019, ICE arrested Lucas-Cor after he repeatedly violated the terms of his order of release. On January 29, 2020, Lucas-Cor's request for a change in custody was denied by the immigration judge who determined that ICE met its burden of proof to show that he was a danger to be a danger. His next immigration court appearance is scheduled for May 4, 2020.

At the time of arrest, Lucas-Cor claimed to be in good health and did not claim to take any medications.

Lucas-Cor is a risk to public safety as demonstrated by his recent pending charges for illegal operation of a motor vehicle under the influence of alcohol/drugs and should remain in custody. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**6. Mutare, Alois:** Alois Mutare is a citizen and national of Zimbabwe who was admitted into the United States on December 21, 1999 as a B-2 visitor with authorization to remain until June 20, 2000. Mutare is currently detained under 8 U.S.C. § 1226(a).

Mutare's criminal history includes multiple arrests: on February 3, 2011, for assault; on October 24, 2001, for recklessly operating a motor vehicle; and on February 27, 2018, October 2, 2017, and February 3, 2011 for operating a motor vehicle with a suspended

license.

Mutare's criminal convictions include a February 4, 2005 conviction for operating a motor vehicle under the influence of alcohol. He was sentenced to 364 days. Previously, on September 9, 2002, Mutare was convicted of recklessly operating a motor vehicle.

On December 29, 2019, Mutare was arrested by the Boston Police Department and charged with kidnapping, rape, and larceny over $1,200. He was indicted on all three charges and arraigned on February 27, 2020. Mutare currently has a default warrant for these charges.

Based upon the police report underlying the arrest, detectives responded to the hospital where they met the complainant. The complainant reported that on the previous night, she and her roommate went to a club. The last thing that she recalled was leaving. The next morning, she woke up at her house and believed that she was the victim of a sexual assault. Her vagina was sore, and she was not currently sexually active. She explained that she had a flash of memory of a male with a beanie style hat hovering over her in the backseat of a car. She also reported that, after waking, she discovered that multiple transactions on her bank card were made at two separate ATMs, Target, and a Dunkin' Donuts. Detectives left the hospital and began their investigation. During the investigation detectives reviewed security footage from various cameras. An investigation confirmed the reports by the complainant, including that Mutare put the victim in his car.

On March 4, 2020, ICE arrested Mutare and served him with a Form I-826, Notice to Appear.  At the time of arrest, Mutare appeared to be in good health, but he claimed to be taking prescription medication for diabetes.

Mutare must remain in ICE custody as a danger to public safety as demonstrated by

his criminal history and the circumstances underlying his pending charges. Moreover, if released from ICE detention he will be picked up on the state warrant. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**7. Pillco-Morocho, Mario Ivan:** Mario Pillco-Morocho is a citizen and national of Ecuador. He is currently detained under 8 U.S.C. § 1226(a).

On December 28, 2018, U.S. Border Patrol arrested Pillco-Morocho after he illegally entered the United States. Pillco-Morocho was served with a Form I-862, Notice to Appear. He was released on an order of recognizance.

On December 4, 2019, the Worcester Police Department arrested Pillco-Morocho for a domestic violence incident and charged him with assault and battery with a dangerous weapon, and assault and battery on a family/household member. The charges are pending.

Based upon the incident report, police responded to a hospital where they interviewed the complainant, Pillco-Morocho's wife. The complainant told the police that the couple had been married for ten-years, but they had been separated for the past four months. The complainant told the police that on the night of the incident she received a ride home from a male co-worker. When she arrived at her home, Pillco-Morocho was waiting. He accused her of sleeping with her co-worker and punched her in the face. The police observed injuries on her consistent with her statement. When the complainant fled, seeking the safety of her home, she tripped and fell. Pillco-Morocho repeatedly punched her in the back of the head and slammed her head against a set of stairs. The complainant stated that Pillco-Morocho then pulled out a knife and tried to stab her. Police subsequently located Pillco-Morocho at his apartment and arrested him.

On December 6, 2019, ICE arrested Pillco-Morocho. On February 13, 2020, following an immigration-bond hearing, an immigration judge denied bond and found that ICE met its burden to demonstrate that Pillco-Morocho is a danger to public safety. On April 17, 2020, an immigration judge ordered Pillco-Morocho removed. Pillco-Morocho reserved his right to appeal.

Pillco-Morocho must remain in ICE custody. He is a risk to public safety due to his violence, which charges are both recent and pending. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

**8. Rubio-Suares, Augustin:** Augustin Rubio-Suares is a native and citizen of Mexico. He is detained under 8 U.S.C. § 1226(a).

Rubio-Suares has multiple arrests and citations in the United States including operating a motor vehicle under suspension, operating without proper insurance, having an open container of alcohol in a motor vehicle, and providing a false name to authorities. Rubio-Suares also has a default warrant for operating a motor vehicle under the influence of alcohol on or about August 22, 2016. He also has a default warrant for a second charge of operating under the influence of alcohol.

As to the second offense, Rubio-Suares was arrested in Massachusetts on May 15, 2018. Based upon the incident report, Rubio-Suares admitted to drinking five, twenty-four-ounce Corona beers. Rubio-Suares consented to a breathalyzer test. The test needed to be restarted on seven occasions due to Rubio-Suares' uncontrollable vomiting. The breathalyzer registered Rubio-Suares' blood alcohol concentration at .12%. The legal limit in Massachusetts is .08%. Thus, Rubio-Suares was 50% over the legal limit.

Rubio-Suares was also arrested in Connecticut on May 19, 2019. He was charged

with assault in the third degree. Based upon the incident report, Rubio-Suares was involved in a fight outside of a sandwich shop. Rubio-Suares and other individuals repeatedly struck another man. The fight was quelled after police used pepper spray. The charge was disposed of on January 3, 2020 with the entry of a nolle prosequi.

On September 28, 2019, just four months later, Rubio-Suares was arrested for a domestic violence indecent and charged with assault on a family/household member. Based upon the incident report, police responded to a Stop & Shop where the complainant, Rubio-Suares' wife, described a physical altercation at the couple's home. She fled the home after the incident. Police returned to the home and apprehended Rubio-Suares. During the arrest, police noted a strong smell of alcohol and observed that Rubio-Suares was unsteady. Rubio-Suares' wife refused medical attention and she refused to have her injuries photographed. The case was dismissed on December 6, 2019.

On January 3, 2020, ICE arrested Rubio-Suares and served him with a Form I-862, Notice to Appear.  On March 4, 2020, an immigration judge denied Rubio-Suares bond and found that ICE met its burden of proof to demonstrate he was a danger to public safety. His next hearing immigration hearing is scheduled for May 5, 2020.

On or about March 11, 2020, Rubio-Suares filed a petition for a writ of habeas corpus in U.S. District Court wherein he challenged the bond decision and the findings that were made by the immigration judge. On April 17, 2020, Judge Saris dismissed the petition and determined that the petitioner failed to demonstrate that a due process violation occurred at the bond hearing.

It is recommended that Rubio-Suares remain in ICE custody. He is a risk to public safety; a finding that was made by an immigration judge and left undisturbed by a district

court judge. He is a risk to public safety because he abuses alcohol and becomes violent when under the influence. He also uses bad judgment, as demonstrated by his operating a motor vehicle under the influence. Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

9. **TEP, Samnang:** Samnang Tep is a citizen of Cambodia and national of Thailand. Tep entered the United States as a refugee on June 17, 1986. Tep is held under 8 U.S.C. § 1231 pursuant to a final order.

Tep was arrested by ICE on August 20, 2019, after serving a ten-year sentence in state custody. At the time of his arrest, Tep claimed to be in good health and not taking any medications.

Tep's sentence was imposed as a result of convictions for two counts of felony assault and one count of discharging a firearm during a violent crime. Tep appealed his convictions to the Rhode Island Supreme Court. The Court affirmed the convictions and described the incident as "a drug deal gone wrong." *State v. Tep*, 56 A.3d 942, 944 (R.I. 2012). According to the Court, the jury reasonably could have found that Tep and Yara Chum arrived at a house and approached the men on the porch. *Id.* Chum became angry with one of the men "for smiling at him, [and] told Tep to shoot the men on the porch. Tep took a gun out of the pocket of his hooded sweatshirt, pointed it, and shot once, hitting the porch and the door." *Id*.

Tep is a known gang member affiliated with the Young Bloods. The Young Bloods are a street gang listed in the 2011 National Gang Threat Assessment. The assessment examined threats that were posed by gangs to communities throughout the United States. The assessment is available on the Federal Bureau of Investigation's website.

On August 20, 2019, ICE served Tep with a Form I-862, Notice to Appear.  On November 22, 2019, an immigration judge ordered Tep removed. On December 17, 2019, Tep filed an appeal with the Board of Immigration Appeals (BIA). On March 30, 2020, the BIA dismissed the appeal.

Tep must remain in ICE custody. Tep is violent and a member of a violent criminal gang.  He is also a flight risk due to his final order of removal.  High cholesterol in and of itself is not a comorbidity for COVID-19.  Moreover, no further reduction in the detainee population at BCHOC is necessary to allow appropriate social distancing.

The Court is directed to Exhibit 1, attached hereto, for additional particulars regarding each of the nine listed detainees.

                Respectfully submitted,

                ANDREW E. LELLING,
                United States Attorney

By:   */s/ Thomas E. Kanwit*
       Thomas E. Kanwit
       Michael Sady
       Assistant U.S. Attorneys
       U.S. Attorney's Office
       John J. Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA  02210
       (617) 748-3100
       thomas.kanwit@usdoj.gov
April 23, 2020        michael.sady@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

| | |
|---|---|
| | */s/ Thomas E. Kanwit* |
| Dated:   April 23, 2020 | Thomas E. Kanwit |