UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**MARIA ALEJANDRA CELIMEN SAVINO**   )
**and JULIO CESAR MEDEIROS NEVES,**  )
                                    )
**Petitioners-Plaintiffs,**          )
                                    )     **20-cv-10617 WGY**
     **v.**                          )
                                    )
**THOMAS HODGSON, et al.,**          )
                                    )
     **Respondents-Defendants.**     )
_____)

## DEFENDANTS' INPUT REGARDING APRIL 27 LIST

Respondents-Defendants hereby provide the Court with additional information to assist the Court in making its determination of which civil detainees at the Bristol County House of Corrections ("BCHOC") may be safely released pursuant to the conditions set by the Court on April 3, 2020.  It is Defendants' position, for the record, that release of none of the listed individuals is required for either their safety or the safety of the remaining civil detainee population at BCHOC.

### Appropriate Detainee Population Density Has Been Achieved

Defendants believe that the prior release of detainees, by Court order and by ICE voluntarily, along with the transfer of an additional six detainees in preparation for removal, has resulted in a level of detainee population sufficiently low so as to allow appropriate CDC-recommended social distancing at BCHOC.

Defendants filed a Motion to Stay Further Releases and a Memorandum in Support.  In those filings, Defendants show that the BCHOC detainee population has been reduced from 148 at the outset of this litigation to **87** now,  an almost **forty-two percent** (**42%**) cut.  This has

resulted in sufficient space for the remaining detainees to practice social distancing at all times, including while sleeping. Defendants urge the Court to stay further releases while it considers the Motion to Stay, and to grant the motion going forward.[1]

**Update to Notice of Transfer**

ICE has informed counsel that **Juan Carlos Illicachi-Shigla** will not be transferred out of BCHOC as previously noticed.

**One Individual Has Been Released by the State into ICE Custody**

ICE informed government counsel that **Salazar-Martinez, Patricio** has been released from state criminal custody at BCHOC and taken into ICE civil detainment at BCHOC since the last report to the Court. As previously stated to the Court, ICE does not always get advance notice of the exact date of such a release, and ICE's detainer is automatically triggered. Such an individual comes into ICE custody automatically upon release. All transferees are screened for infection, however.[2]

**Plaintiffs' Repeated Claims That Individuals Cannot Be Deported Is Incorrect**

During the status conference on Friday, April 24, 2020, Plaintiffs' counsel claimed incorrectly that no one is being deported because countries have closed their borders to incoming

---

[1] Plaintiffs continue to submit statistics on the number of COVID-19 cases and deaths in the Commonwealth of Massachusetts. Given that there are still no confirmed cases within BCHOC, these statistics indicate that the detainees are more likely to be exposed to the coronavirus upon release then if they remain detained. Defendants are, frankly, baffled by the absence of any consideration of the details of the proposed released detainees' home situation given how there are so many cases of the virus outside of BCHOC and none inside the institution.

[2] Plaintiffs ask for notice within 24 hours of any transfer. This may not be possible in all cases, such as weekends, and is not necessary. Once a transfer occurs, whether notice is provided in 24 or 48 hours, or some other period, is not going to reverse the fact of the transfer. Defendants will endeavor to give prompt notice in any event.

flights. This is not true as a blanket statement. To date, at least three former detainees have been removed, two to the Dominican Republic and one to Honduras (as reported to the Court during the status conference).

Moreover, Plaintiffs' point is *irrelevant* as this litigation is solely about the risk of class members *at BCHOC* for infection with COVID-19. Early on, the Court stated that the means by which ICE reduces the population at BCHOC is not the Court's concern and the Court specifically mentioned transfers as one method for achieving a safe level of detainees at BCHOC.

**The Five Remaining Individuals on the April 27 List Are Significant Risks to the Public:** As stated, the Defendants do not believe any additional detainees need to be released to protect the remaining detainees from an outbreak of COVID-19.

Nonetheless, as per the Court's order, attached hereto is a detailed analysis of the risk factors for release of the nine remaining detained from the list of five for April 27, 2020. While Defendants are mindful of the Court's goal of reducing the detainee population so as to allow social distancing at BCHOC, all of the five remaining individuals on today's list present significant risks to the community. Their individual risk of contracting COVID-19 cannot outweigh the danger to the community, *especially as there are still no confirmed cases of COVID-19 at HCBOC*.

> **1. Lopez-Gonzalez, Emmanuel Ernest:** Ernest Lopez-Gonzalez is a citizen and national of Guatemala. Lopez-Gonzalez entered the United States at an unknown place and date without inspection. Lopez-Gonzalez is currently subject to mandatory detention under 8 USC § 1226(c) because of his February 24, 2020, conviction for assault and battery with a dangerous weapon.

Lopez-Gonzalez has a lengthy criminal history and is a self-proclaimed member of the SUR 13 gang. SUR 13 is a direct affiliate of the Los Surenos/Southern Mexican Mafia of California and the California Prison System.[3] Lopez-Gonzalez' criminal history includes a variety of crimes. On February 27, 2004, he was arraigned in Massachusetts for disturbing the peace. The case was continued without a finding. On April 22, 2014, he was arraigned in Massachusetts for the offense of operating a motor vehicle with a suspended license. He was sentenced to community service. On February 23, 2018, he was arraigned in Massachusetts for assault with a dangerous weapon and two counts of carrying dangerous weapon. After convictions, he was sentenced to eleven (11) months, six (6) months to be served with the balance suspended. He violated his probation and was sentenced to an additional five months of incarceration.

On November 8, 2017, ICE encountered Lopez-Gonzales at the Bristol County House of Corrections (BCHC) in North Dartmouth, Massachusetts. On April 1, 2020, BCHC released Lopez-Gonzalez to ICE custody pursuant to a detainer.

Lopez-Gonzalez must remain in custody as he is subject to mandatory detention and poses a threat to the community based upon his criminal history and gang involvement.[4]

---

[3] According to Wikipedia: "Sureños ([suˈɾe.ɲos]; Spanish: Southerners), Southern United Raza, Sur 13 or Sureños X3 are groups of loosely affiliated gangs that pay tribute to the Mexican Mafia while in U.S. state and federal correctional facilities. Many Sureño gangs have rivalries with one another, and the only time this rivalry is set aside is when they enter the prison system. Thus, fighting is common among different Sureño gangs even though they share the same common identity. Sureños have emerged as a national gang in the United States." https://en.wikipedia.org/wiki/Sure%C3%B1os (internal citations omitted)(last accessed April 26, 2020).

[4] Plaintiffs claim that Lopez-Gonzales has not had access to an asthma inhaler while at

**2. Javier De La Paz, Gabri Darlin:** Javier De La Paz is a citizen and national of the Dominican Republic. Javier De La Paz entered the United States on October 4, 2010 at New York, NY, as a lawful permanent resident. He is currently subject to mandatory detention under 8 USC § 1226(c) because of his June 18, 2019 federal conviction for possession with intent to distribute **fentanyl** in violation of 21 USC §§ 841(a)(1), (b)(1)(B)(vi).[5] He was sentenced to thirty-three (33) months, with three (3) years of supervised release.

In addition to his federal conviction, De La Paz was convicted on July 31, 1998, for leaving the scene of accident with property damage, and leaving the scene with a person injured. He was sentenced to time served and probation. On July 3, 2003, a violation of probation notice was served. On September 13, 2017, Javier De La Paz was arrested for possession with intent to distribute. The charge was nolle prosed. On January 15, 2020, Javier De La Paz was arrested by State Police for the offense of possession with intent to distribute a class B substance.

---

BCHOC. This is being investigated but it is highly unlikely that if he requested an inhaler that his request would have been denied. This is, simply, not how medical care at BCHOC works. *See* prior declarations of Dr. Rencricca and Deb Jezard.

[5] Fentanyl is an extremely dangerous opioid, as is familiar to the Court from its criminal docket. Trafficking in fentanyl puts members in the community at great risk of fatal overdose, and exposes law enforcement to significant risk as well. Moreover, Plaintiffs' counsel argues that De La Paz "paid his debt to society" for this crime and implies that it is therefore irrelevant to his release decision. That is completely misguided. ICE detention, as Plaintiffs have themselves argued, is not about punishment. What they do not recognize, at any point for any detainee, is that detention is about ensuring the safety of the community and that a detainee does not flee. A criminal history for trafficking in one of the deadliest drugs to ever hit the streets is thus absolutely relevant in deciding whether someone *who is lawfully detained pursuant to statutory authority granted by Congress* can be trusted with the privilege of liberty. This individual has forfeited the privilege of release while awaiting removal because of his crimes.

On April 16, 2020, ICE placed De La Paz in removal proceedings. At the time, Javier De La Paz stated that he has no medical concerns or issues. He should remain in custody as he is subject to mandatory detention and is a danger to public safety based on his criminal history and convictions.

**3. Blanco, Bacilio:** Bacilio Blanco is a citizen and national of Guatemala who entered the United States without inspection at an unknown place and time. He is currently detained pursuant to 8 USC § 1226(a).

Blanco's criminal history includes a domestic violence arrest on October 5, 2015 and an arrest for a violation of a protective order on October 12, 2015. He has also been arrested for threatening and intimidating a witness. These charges have since been dismissed.

On April 8, 2020, Blanco was arrested by the New Bedford Police Department in New Bedford, Massachusetts and charged with assault with a dangerous weapon and assault and battery on a family or household member. The charges remain pending.

Blanco was released to ICE custody on April 10, 2020, at BCHOC pursuant to a detainer, and he was placed in removal proceedings. Blanco is a risk to public safety as demonstrated by his multiple arrests for crimes of violence. He has no health issues that make him more susceptible to COVID-19, as Plaintiffs concede.

**4. Amador-Galindo, Diego Isael:** Diego Isael Amador-Galindo is a citizen and national of Honduras. He is currently held under 8 USC § 1231 and subject to a final order of removal.

Amador-Galindo sexually assaulted a woman, which led to a conviction and a one year sentence (four months served, the remainder suspended), with three (3) years of

probation. According to the police reports, Amador-Galindo grabbed a young woman in a parking garage, grabbed his crotch, and asked her to fellate him. On August 27, 2019, ICE arrested Amador-Galindo after completing his state sentence. According to Plaintiffs, sexual assault is not important and is no impediment to release.

On March 9, 2020, the Board of Immigration Appeals dismissed the appeal of his removal order, making him subject to a final order of removal. Amador-Galindo has twice refused to speak to the Honduran consulate to facilitate his removal, on April 6 and 13, which is a requirement for issuance of travel documents. If he complies with the efforts to obtain a travel document, he can be expeditiously removed.

ICE recommends maintaining custody of Amador-Galindo on the basis that he has a final order of removal and poses a threat to the public safety as based on his sexual assault conviction. Moreover, his refusal to cooperate with the requirement that he assist in obtaining travel documents cannot be rewarded. ICE's statutory remedy for such refusal is detention.[6]

**5. Cruz Soares, Geraldo:** Geraldo Cruz Soares is a citizen and national of Brazil who entered the United States without inspection at an unknown place and time, and is currently detained under to 8 USC § 1226(a).

On April 18, 2020, Cruz Soares was arrested by the New Bedford Police Department in New Bedford, MA for domestic assault and battery, including strangulation. These charges remain pending. According to the police report, Cruz Soares strangled his roommate because he had learned that his roommate was talking to

---

[6] Depression/mental illness is not one of the COVID-19 comorbidities listed in CDC guidance.

his girlfriend through a cellphone application. The police report further states that the following day, the roommate arrived at the police station and completed a request for a restraining order to protect him from Cruz Soares.

Cruz Soares was released to ICE custody at BCHOC on April 20, 2020 pursuant to a detainer, and he was placed in removal proceedings. Cruz Soares is a risk to public safety given his pending charge for assault and battery.

**6. Mohammed Bassyouni:** This individual was not released by the Court, and is not on today's list. However, Plaintiffs' counsel are renewing their request for release. The request should be denied because this individual presents significant a security threat. Bassyouni arrived at Logan Airport and was refused admission by CBP due to concerns regarding his intention for entry. He claimed to be travelling to the Andy Warhol museum in Pittsburgh, but had no accommodations reserved and insufficient funds for the period of time planned in the United States. CBP inspected his phone and found photos of individuals burning the American and Israel flags and of individuals in military attire. His phone also revealed numerous contacts with individuals on various United States terrorist databases. Additional information regarding this individual could possibly be provided to this Court in camera.

An immigration judge denied his applications for relief from removal and made an adverse credibility finding as to his testimony.. The immigration judge found of particular concern his "untruthfulness regarding his contacts with various potentially dangerous people." The immigration judge found his omissions and inconsistencies as to his relationships with a number of individuals to have undercut his credibility. He did

not appeal his removal order to the Board of Immigration Appeals and is therefore subject to a final order of removal.

He has no ties in the Boston region as he has never resided in the United States. ICE ERO has scheduled his removal for early June, 2020.  Bassyouni must be detained until then because he is a threat to the community and he is a high risk of flight given his final order of removal and no ties to the United States, much less to this region.

The Court is directed to Exhibit 1, attached hereto, for additional particulars regarding each of the nine listed detainees.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ANDREW E. LELLING,<br>United States Attorney |
| By: | */s/ Thomas E. Kanwit*<br>Thomas E. Kanwit<br>Michael Sady<br>Assistant U.S. Attorneys<br>U.S. Attorney's Office<br>John J. Moakley U.S. Courthouse<br>1 Courthouse Way, Suite 9200<br>Boston, MA  02210<br>(617) 748-3100<br>thomas.kanwit@usdoj.gov |
| April 20, 2020 | michael.sady@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Thomas E. Kanwit*

Dated:   April 20, 2020                                    Thomas E. Kanwit