# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

MARIA ALEJANDRA CELIMEN SAVINO )
and JULIO CESAR MEDEIROS NEVES, )

Petitioners-Plaintiffs,

v.                                          20-cv-10617 WGY

THOMAS HODGSON, et al.,

Respondents-Defendants.

———————————————————————————

## DEFENDANTS' MOTION TO COMPEL RESPONSES TO DISCOVERY

In preparation for the hearing to be held May 7, 2020, on the preliminary injunction, Plaintiffs served four deposition notices on Defendants, including a Rule 30(b)(6) notice with ten categories of information of a very broad nature, as well as document requests. Included in the document requests was a request for all medical records of all class members. The requests and deposition notices were emailed at 11:14 p.m. on Sunday, April 26, 2020.

Defendants worked hard to respond on a timely basis to these requests and engaged in extensive email discussion with lead counsel for Plaintiffs, Oren Sellstrom. At 9:46 a.m. on Monday, April 27, 2020, the discovery requests were forwarded to ICE and Bristol County House of Corrections ("BCHOC") attorneys and a conference call to discuss them was set up for that afternoon. At 10:01 a.m., undersigned counsel informed Attorney Sellstrom that the discovery had been forwarded to the Defendants' counsel and that a conference call had been set up for Defendants. Undersigned counsel requested that Attorney Sellstrom be available for a call at 4:30 that afternoon to discuss the requests. Government counsel informed Attorney Sellstrom that the proposed schedule in the deposition notices and document requests might not be

manageable given the short turnaround requested.  The schedule had not been discussed with

undersigned counsel.  In the meantime, government counsel worked on determining the logistics

of copying and producing hundreds, if not thousands, of pages of medical records.  The

government also informed Attorney Sellstrom that it would have some discovery requests as

well.

At approximately 4:30 on Monday, Attorney Sellstrom and AUSA Kanwit discussed the

logistics.  AUSA Kanwit proposed that Superintendent Steven Souza would be the Rule 30(b)(6)

deponent and that the parties should hold off on the noticed deposition of Sheriff Hodgson until

after Superintendent Souza's deposition was complete on the ground that there was not much

time available and Superintendent Souza was more knowledgeable on the running of BCHOC

anyway.

Discussions between the parties continued by email.  On Tuesday, AUSA Kanwit

updated Attorney Sellstrom on the medical records at 1:51 p.m.  At 5:04 p.m., AUSA Kanwit

sent a second update indicating that one of the major issues with the medical records had been

resolved.  A court order to satisfy any HIPAA or Privacy Act concerns was discussed and

resolved over the course of the next day.  On that day, Attorney Sellstrom provided Attorney

Kanwit with a prioritized list of detainees for whom the medical records were sought first.  This

list did not have the detainee dates of birth, which CPS (the medical contractor at BCHOC)

required.  Eventually, ICE agreed to supplement Plaintiffs list in an effort to accommodate them.

Also on Wednesday, just two days after the document requests were received, Defendants

produced several hundreds of pages of BCHOC documents.

Also on Wednesday, at 11:03 p.m., Defendants served a set of interrogatories on

Plaintiffs by email to Attorney Sellstrom.  Attorney Sellstrom, despite a pattern of frequent

emails back and forth, never acknowledged receiving them.  The interrogatories provided a response deadline of three days, which is more generous than the response time demanded by Plaintiffs.  Supplemental interrogatories, comprising just three interrogatories with a limited set of subparts, were served the following morning at 9:34 a.m.  On Thursday, April 30, 2020, Nelly Floriano was deposed by Plaintiffs. On Thursday evening around 7 p.m., Attorney Sellstrom emailed AUSA Kanwit to discuss several items.  No mention was made of having received, much less objecting to, the discovery promulgated by the Defendants.

On Friday, May 1, 2020, only five days after the requests were received and just **one** day after the dates of birth were added to the priority list (by ICE, not Plaintiffs), CPS produced all the medical records.  Also on Friday, Superintendent Steven Souza was deposed from 9:00 a.m. until approximately 5:30 p.m. with several breaks.  During the day, Attorney Sellstrom pushed AUSA Kanwit for a response as to whether Sheriff Hodgson would be made available for a deposition, continuing the discussions between the parties in which they had agreed to revisit the issue *after* Superintendent Souza's deposition was concluded.  Attorney Sellstrom made it clear that he wanted a definitive answer by the end of the day so he could file a motion to compel, thus demonstrating his awareness that the upcoming motion hearing made it important that the parties communicate their positions in a forthright and timely manner so as to allow follow up with the Court if necessary.

Having not heard anything regarding Plaintiffs' responses to Defendants' discovery, at 2:41 p.m., AUSA Kanwit asked for an estimated response time.  At 3:57 p.m., Attorney Sellstrom had not responded to a counter-proposal regarding the deposition of Sheriff Hodgson nor the inquiry regarding Defendants' discovery.  All the while AUSA Kanwit was defending the deposition of Superintendent Souza.  By late Friday, a tentative agreement was reached

regarding Sheriff Hodgson's deposition, which Plaintiffs backed out of after a group of their

clients rioted in Unit B.  Meanwhile, as of Sunday, May 3, 2020, Attorney Sellstrom had still not

responded to AUSA Kanwit's repeated requests for a timetable on Plaintiff's responses to

discovery.  So AUSA Kanwit emailed once again at 12:39 p.m.  Finally, at 3:28 p.m., Attorney

Sellstrom responded, saying:

> I believe you served your interrogatories and document requests
> late Wednesday evening, with a supplement to the interrogatories
> arriving Thursday morning, all with a 3 business day requested
> response time.  In light of that, we are planning to respond
> (including to the supplement) by Monday evening.

Notably absent from this reply, and from any oral communications, was the slightest hint

that Plaintiffs intended to object on both the interrogatories and document requests and provide

no responsive information (other than documents previously provided which were not

responsive).    On Monday, Attorney Sellstrom pushed AUSA Kanwit for a position regarding

whether Defendants would make Sheriff Hodgson available for 7 hours on Tuesday, and insisted

on an answer in the morning.  At 12:01 p.m., he filed a motion to compel, as the Court is aware.

The motion was denied.

All the while Attorney Sellstrom was pushing for answers on Plaintiffs' discovery, and

backing out of the tentative agreement negotiated for Sheriff Hodgson's deposition, he still had

not responded as to when the discovery would be forthcoming to Defendants.  At no point did he

indicate that, in fact, *no* substantive responses would be made, despite having repeatedly pushed

AUSA Kanwit for a response to various requests and negotiations so Plaintiffs could file a

motion to compel on a timely basis.

Finally, at 11:27 p.m. on Monday night, May 4, 2020, Attorney Sellstrom served

Plaintiffs' responses to Defendants' discovery.  In response to the document requests, not a

single document was produced that had not already been provided through filings with the Court.

In response to the interrogatories, not a single word in answer was written.

### The Interrogatories

### Interrogatory No. 1:

For each of the Class members that have been released as of this date describe:

a.  The type of dwelling they are living in (i.e., apartment, single family home, etc.);

b.  Whether they have a bedroom of their own;

c.  If they do not have their own bedroom, how many others sleep in the same room, the size of the room, the number of beds in it, the size of the beds, and how many sleep in each bed;

d.  The number of rooms in the dwelling;

e.  A listing of all persons living in the dwelling (if it is an apartment, in the apartment);

f.  The approximate age of each resident;

g.  Whether each resident is working or not, and, if so, the location of that work and the schedule.

h.  The occupation of the detainee;

i.  The name and address of the detainee's last place of employment;

j.  All sources of income the detainee has to support him/herself;

k.  What medical insurance is available to the detainee; and

l.  The medications required by the detainee and the expected source of medications.

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement at the Bristol County House of Correction and Facilities (BCHOC) violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No.

1 exclusively pertains to details about the lives and livelihoods of class members who are *no longer* in custody at BCHOC and their co-habitants. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Plaintiff class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioners also object on the grounds that this interrogatory seeks twelve discrete categories of information with respect to 48 class members who have been placed on bail, and therefore far exceeds the limits on the number of interrogatories that a party may serve.

**ARGUMENT**

While Plaintiffs may view the released detainees as no longer part of the litigation, that is not the case. The Court still has jurisdiction over them. The information sought is relevant because a fundamental premise of Plaintiffs' case is that being released is much safer than being confined at BCHOC, but this is an unsupported and, as things stand, untestable assumption.

Local Rule 26.1(c) states:

> (c) Discovery Event Limitations. Unless the judicial officer orders otherwise, the number of discovery events shall be limited for each side (or group of parties with a common interest) to 10 depositions, 25 interrogatories, 25 requests for admissions, and 2 separate sets of requests for production. For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.

This is exactly the situation at hand. Defendants' interrogatories have subparts which seek only additional particularized information with respect to the basic interrogatory. Therefore, the subparts do not count as additional interrogatories. The fact that Defendants have separated the information into subparts for clarity does not mean that the limit has been exceeded. The information could have been asked in a manner that incorporated all of the sought information without division (i.e., "describe the physical layout of the residence and all persons living there"). And the fact that this is a class action means that the same information

request requires a response from different class members does not trigger the Rule 33 limit. Were it otherwise, discovery regarding class members would never be possible.  *See generally W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 293 F.R.D. 68, 74 (D.P.R. 2013)(the default rule strikes a balance by correlating the potential number of interrogatories a party faces with the number of parties in the suit, which seems to be a reasonable proxy for the case's overall complexity).

In *Mezu v. Morgan State University*, 269 F.R.D. 565 (D. Md. 2010), it was held that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, but an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one.  Similarly, the court in  *In re Netbank, Inc. Securities Litigation,* 259 F.R.D. 656 (N.D. Ga. 2009), held that to the extent plaintiffs alleged that the subparts of defendants' interrogatories exceeded the numerical limit, they would be allowed. The subparts of the interrogatories were logically or factually subsumed within and necessarily related to the primary question, which centered on allegations set forth by confidential witnesses.  *Id.; accord Trevino v. ACB American, Inc.,* 232 F.R.D. 612 (N.D. Cal. 2006)(Interrogatory subparts are to be counted as one interrogatory for purposes of this rule if they are logically or factually subsumed within and necessarily related to the primary question), *cited in* § 2168.1 Number of Interrogatories, 8B Fed. Prac. & Proc. Civ.

Because all of the subparts of interrogatory number 1 flow from the main part and do not represent a new line of inquiry, interrogatory number 1 should be counted as one interrogatory and answered. Moreover, the interrogatory is proportional to the complexity of this class action lawsuit.

Respondent's Interrogatory No. 2:

Describe the dimensions of all rooms in the dwelling where any released detainee resides and provide a description of the room's function (i.e., kitchen, living room, etc.).

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement at BCHOC violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No. 2 exclusively pertains to details about the physical dimensions of the homes of class members who are *no longer* in custody at BCHOC. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Plaintiff class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioners also objects on the grounds that this interrogatory seeks discrete information about every room in any dwelling occupied by the 48 class members who have been placed on bail, and therefore exceeds the limits on the number of interrogatories that a party may serve.

**ARGUMENT**

The same arguments made in response to Plaintiffs' objections to interrogatory number 1 apply here.

Interrogatory No. 3:

For each detainee who has not been released to date or denied bail by the Court, please describe:

 a. The type of dwelling in which they will live if released (i.e., apartment, single family home, etc.);

 b. Whether they will have a bedroom of their own;

 c. If they will not have their own bedroom, how many others will sleep in the same room, the size of the room, the number of beds in it, the size of the beds, and how many will sleep in each bed;

 d. The number of rooms in the dwelling;

 e. A listing of all persons living in the dwelling (if it is an apartment, in the apartment);

 f. The approximate age of each resident;

 g. Whether each resident is working or not, and, if so, the location of that work and the schedule;

    h.   The occupation of the detainee to be released;

    i.   The name and address of the detainee's last place of employment;

    j.   All sources of income the detainee has to support him/herself if released;

    k.   What medical insurance would be available to the detainee; and

    l.   The medications required by the detainee and the expected source of medications if released.

**Petitioners' Response**: Petitioners object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement at BCHOC violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No. 3 exclusively pertains to speculative details about what the lives and livelihoods of class members *could* entail if they were, at some unspecified point in the future, *no longer* in custody at BCHOC and their potential co-habitants. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Petitioners' class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioner also objects on the grounds that this interrogatory seeks twelve discrete categories of information with respect to more than 100 class members, and therefore exceeds the limits on the number of interrogatories a party may serve.

Subject to and without waiving these objections, Petitioners refer Respondent to the Sealed Exhibits to Dkt. Nos. 52, 56, 65, 74, 78, 81, 84, 89, 92, 100, 104, 110, 115, 120, 121, 130, which contain information regarding individual Petitioners' release plans.

## ARGUMENT

The same arguments made in response to Plaintiffs' objections to interrogatory number 1 apply here.  In addition, the number (100 class members who have not yet been released) is both irrelevant (because the number of interrogatories in a class action are not limited numerically if the same information is sought from each class member) and incorrect.  There are not 100 class members still detained.  BCHOC has 81 immigration detainees presently, and not all of those are

eligible for bail under the Court's orders.  Finally, the information submitted to the Court,

referenced in the docket string cite, is not responsive to the interrogatory as none of the

information sought, with very few exceptions, is provided therein.  For some detainees, Plaintiffs

have provided information as to whether the detainee will have his or her own room.  Defendants

are not required to hunt through 16 docket entries to locate that information, especially when it is

not present for all detainees and it is only one part of the interrogatory.


Interrogatory No. 4:

Describe the dimensions of all rooms in the dwelling where any detainee for whom you are
seeking release will reside and provide a description of the room's function (i.e., kitchen, living
room, etc.).

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is
overbroad, unduly burdensome, and seeks information that is not "relevant to any party's claim
or defense and proportional to the needs of the case," as required by Federal Rule of Civil
Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement
at BCHOC violate Petitioners' constitutional and statutory rights. The information requested in
Respondent's Interrogatory No. 4 exclusively pertains to details about the physical dimensions of
the homes of class members where they would live if they were released, and thus *no longer* in
custody at BCHOC. The requested information bears no relationship to whether the practices or
conditions at BCHOC violate Petitioners' class members' constitutional or statutory rights nor
any applicable defense to those allegations.

Petitioner also objects on the grounds that this interrogatory seeks discrete information about
every room in any dwelling that might be occupied by more than 100 class members, and
therefore exceeds the limits on the number of interrogatories a party may serve.

**ARGUMENT**

  Defendants incorporate their arguments made with regard to interrogatories one and four.

Interrogatory No. 5:

Identify all communications written by any Class member concerning the conditions at BCHOC
and/or the situation at BCHOC with regard to COVID-19, excluding documents written to or
received from counsel.

**Petitioners' Response:** Petitioner objects to this interrogatory to the extent that it seeks
information protected from disclosure by the attorney-client privileged, the attorney work

product doctrine, or any other privilege or immunity.

Petitioner also objects on the grounds that Respondent's interrogatories exceed the number allowed by Fed. R. Civ. P. 33.

Subject to and without waiving the foregoing objections, Petitioner refers Respondent to Dkt. Nos. 1-4, 1-5, 12-4, 12-5, 12-8, 12-9, 12-10, 20-3, 33-2, 91-1, 91-2, 91-352, 56, 65, 74, 78, 81, 84, 89, 92, 100, 104, 110, 115, 120, 121, 130, and additional communications that are not in Petitioners' possession may be publicly available and accessible to Respondent. *See e.g.,* 'Living In Fear': ICE Detainees In Bristol County Release 3rd Letter Detailing Pandemic Concerns, WBUR Boston, https://www.wbur.org/news/2020/03/26/coronavirus-ice-detainees-immigration-letter. The burden of ascertaining the information sought by this interrogatory is substantially the same for Respondent as it is for Petitioner.

**ARGUMENT**

Defendants incorporate their arguments made with regard to interrogatories one and four.

Moreover, the interrogatory expressly excludes documents written to or received from counsel,

so the reference to the various docket entries is nonresponsive.  The burden argument is

misplaced, as the Plaintiffs surely have discrete files for each class member that they can readily

access.

Interrogatory No. 6:

Describe any criminal charges or convictions for any Class member that have *not* been previously presented to the Court by counsel, identifying the Class member by name, the charge and the jurisdiction for each charge.

**Petitioners' Response:** Petitioner objects on the grounds that Respondent's interrogatories exceed the number allowed by Fed. R. Civ. P. 33.

Subject to and without waiving the foregoing objections, Petitioners are not in possession of any information responsive to Interrogatory No. 6.

**ARGUMENT**

Defendants note that some courts have held that a party that chooses to answer an

interrogatory waives the objection that the interrogatories are too numerous, on the ground that it

is improper to allow a party to pick and choose which interrogatories they will answer when

making a numerosity objection.  *See, e.g., Allahverdi v. Regents of University of New Mexico,*

228 F.R.D. 696 (D.N.M. 2005).


Interrogatory No. 7:

For each of the Class members that have been released as of this date:

     a.  Has the detainee experienced any flu-like symptoms, difficulty breathing, loss of smell or other symptoms known to be associated with COVID-19;

     b.  Has the detainee sought medical care for those symptoms; and

     c.  Has the detainee been tested for COVID-19 and, if so, what were the results of any test and when were the results received?

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement at BCHOC violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No. 7 exclusively pertains to details about the health of class members who are *no longer* in custody at BCHOC. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Petitioners' class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioner also objects on the grounds that this interrogatory seeks three discrete categories of information about the 48 class members who have been placed on bail, and therefore exceeds the limits on the number of interrogatories a party may serve.

## ARGUMENT

Defendants incorporate their arguments made with regard to interrogatories one and four.


Interrogatory No. 8:

For each of the Class members that have been released as of this date:

     a.  Has anyone with whom the detainee is living with or been in contact with experienced any flu-like symptoms, difficulty breathing, loss of smell or other symptoms known to be associated with COVID-19;

     b.  Has that person sought medical care for those symptoms; and

c. Has the person been tested for COVID-19 and, if so, what were the results of any test and when were the results received?

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement at BCHOC violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No. 8 exclusively pertains to details about the health of *co-habitants* of class members who are *no longer* in custody at BCHOC. These individuals are not parties to the litigation, and this request for information from third-parties who should not be subject to the invasion of privacy, annoyance, embarrassment, oppression, or undue burden of disclosing personal medical information. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Petitioners' class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioner also objects on the grounds that this interrogatory seeks three discrete categories about every person cohabitating with the 48 class members who have been placed on bail, and therefore exceeds the limits on the number of interrogatories a party may serve.

## ARGUMENT

Defendants incorporate their arguments made with regard to interrogatories one and four.

Interrogatory No. 9:

For each of the Class members that have *not* been released as of this date:

a. Has anyone with whom the detainee would live, if released, experienced any flu-like symptoms, difficulty breathing, loss of smell or other symptoms known to be associated with COVID-19;

b. Has that person sought medical care for those symptoms; and

c. Has the person been tested for COVID-19 and, if so, what were the results of any test and when were the results received?

**Petitioners' Objections**: Petitioners object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). This litigation concerns whether the practices and conditions of confinement BCHOC violate Petitioners' constitutional and statutory rights. The information requested in Respondent's Interrogatory No. 9 exclusively pertains to speculative details about the health of *potential* co-habitants of class members outside of BCHOC. These individuals are not parties to the litigation, and this request for information from third-parties who should not be subject to the

invasion of privacy, annoyance, embarrassment, oppression, or undue burden of disclosing personal medical information. The requested information bears no relationship to whether the practices or conditions at BCHOC violate Petitioners' class members' constitutional or statutory rights nor any applicable defense to those allegations.

Petitioner also objects on the grounds that this interrogatory seeks three discrete categories about every person who more than 100 class members may cohabitate with if placed on bail, and therefore exceeds the limits on the number of interrogatories a party may serve.

**ARGUMENT**

Defendants incorporate their arguments made with regard to interrogatories one and four.

Moreover, to the extent that Plaintiffs are proposing release, the information regarding the health

and work situation of the family or roommates is made relevant by the request for release.

Plaintiffs did not contact Defendants to discuss any privacy concerns or how such concerns

might be addressed.  It would not be difficult to identify a particular detainee's cohabitants by

initials or some other means.  Or, as Defendants reasonably sought regarding the medical records

and negotiated with Plaintiffs' counsel, the information could be subject to the protective order

already entered.

### The Document Requests

Respondent's Request No. 2:

To the extent not provided in response to Request No. 1, please provide all documents authored by any Class member, including, but not limited to, any document sent to, or received from the media and any document sent or delivered by one Class member to another.

Petitioners' Response: Petitioners object to this Request because it is overbroad and not proportional to the needs of the case, in that it requests "all documents authored by any Class member," without any limitation as to time or subject matter.

**ARGUMENT**

Plaintiffs' objection is well-founded, but not well-intentioned.  The over-breadth could

have been resolved quickly and simply in one of the many, many emails between counsel –that

is, if Plaintiffs' counsel had the inclination.

**CONCLUSION**

The failure of Plaintiffs' counsel to confer regarding his objections to the interrogatories is perplexing.  He certainly knows how to get in touch when he wants something from the government, including an answer on a whether a deposition was going forward so he could file a motion to compel.  The Defendants bent over backwards to provide expedited discovery to Plaintiffs this week, making three witnesses available (one for an entire day) and producing thousands of pages of documents.  It is disappointing that the same courtesy was not reciprocated, particularly as Plaintiffs' objections are ill-founded on the law (the interrogatories do not exceed twenty-five) and the relevance (the safety of the home to which the detainees have been, or will be, released is clearly relevant).

<div style="margin-left:40%">

Respectfully submitted,

ANDREW E. LELLING,
United States Attorney

By:   */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Michael Sady
Assistant U.S. Attorneys
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
thomas.kanwit@usdoj.gov
michael.sady@usdoj.gov

</div>

May 6, 2020

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Thomas E. Kanwit

Dated:   May 6,, 2020                            Thomas E. Kanwit