**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO, JULIO CESAR MEDEIROS NEVES, and all those similarly situated,<br><br>         Petitioners-Plaintiffs,<br><br>         v.<br><br>STEVEN J. SOUZA,<br><br>Respondent-Defendant. | Case No. 1:20-cv-10617 WGY |

**PLAINTIFFS' FURTHER BRIEFING REGARDING CLASS MEMBERS TO BE IMMINENTLY TRANSFERRED**

Following Monday's hearing regarding Defendants' imminent transfer of class members Isaac Doe and Woodley Dodieu, the Court entered an order modifying the preliminary injunction regarding testing of detainees to be transferred and stating that "[f]urther briefing regarding outstanding issues raised by the plaintiff is welcomed." ECF 172.

This brief takes up several of those outstanding issues. As set forth below, the Court has the authority to stay transfers of class members in appropriate cases, including if transfer would violate a class member's Fifth Amendment right to reasonable safety. For any intended transfer, the Court should therefore require Defendants to provide, at a minimum, a reason for the transfer, a description of where the class members will be held following transfer, and a certification that the transfer is to a "less crowded facility." ECF 64 at 23. For Mr. Doe and Mr. Dodieu, who remain at BCHOC as of the time of this filing, the Court should require Defendants

1

to submit this information now; alternatively, Plaintiffs respectfully request that these two class members be admitted to bail.

Additionally, this Court has ordered COVID-19 testing for all class members, as well as for BCHOC staff.  Due to the central importance of that testing to the health and well-being of class members and staff, a regular reporting mechanism should be instituted, through which Defendants report to the Court and Plaintiffs on the progress of testing and the results obtained, as soon as that information becomes available.  A regular flow of timely, accurate information will create the transparency that is critical in a public health crisis, and will also allow any issues that arise to be identified and quickly addressed.

**I.     The Court Has Jurisdiction Over Class Members To Be Transferred.**

By definition, any ICE detainee whom Defendants propose to transfer out of BCHOC is a member of this habeas class action, and thus the Court has jurisdiction over that individual.  28 U.S.C.§ 2241.  This includes the authority to stop transfers in appropriate cases, particularly if the transfer would infringe on class members' Fifth Amendment rights or if transfer is intended to remove class members from the Court's purview.  It also includes the authority to stay a transfer pending receipt from Defendants of basic information regarding the transfer, so that the Court can be assured that any particular transfer does not transgress constitutional bounds.

This issue first arose when – within two hours of the May 7, 2020 hearing at which the Court issued its preliminary injunction – Defendants filed a Notice informing the Court of their intention to transfer class members Doe and Dodieu out of BCHOC.  ECF 167.  In contrast to past notices, this Notice provided no reason for the transfer, nor have Defendants provided any reason since, and there has been no representation that the transfer would be to a "less crowded facility." ECF 64 at 23.

When Plaintiffs filed a request for this Court to ask Defendants for basic information about the transfers, Defendants essentially asserted that the Court is powerless to make any inquiries about transfers, much less stop them.  Defendants claimed that the Court "does not have the authority to stay the transfer under these circumstances" because 8 U.S.C. § 1231(g)(1) grants authority to the Attorney General to determine where detainees will be housed.  ECF 170 (Defendants' Opposition To Motion For Information Or A Stay Of Transfer), at 1.[1]  Defendants' argument appears to be that judicial challenges to transfers are therefore foreclosed by the INA's channeling clause that strips jurisdiction over certain "specified" discretionary actions of the Attorney General.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii).  To support this proposition, Defendants cite *Aguilar v. Immigration and Customs Enforcement et al.*, 510 F.3d 1 (1st Cir. 2007).

In fact, however, *Aguilar* says exactly the reverse.  As the Court noted in its Preliminary Injunction decision, the *Aguilar* Court held that "section 1231(g) fails to 'specify' that individualized transfer decisions are in the Attorney General's discretion."  ECF 175 at 10 (citing *Aguilar*, 510 F.3d at 20).[2]  The *Aguilar* Court explained that the INA's channeling provision "cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien."  *Id*. at 10.  The Court cited to legislative history demonstrating that "Congress stated unequivocally that the channeling provisions of section

---

[1] That provision states: "The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. 1231(g)(1).

[2] The *Aguilar* case arose out of an ICE raid on a leather factory in New Bedford, MA.  ICE took more than 300 workers into custody, ultimately transferring many of them to detention facilities in Texas. *Id.* at 6.  The Guatemalan consulate (as next friend of detained individuals) filed a habeas petition and complaint for injunctive and declaratory relief in the District of Massachusetts, later amending the complaint to allege violations of numerous constitutional and statutory rights.  *Id.* at 7.  The district court dismissed the case, finding that it had no subject matter jurisdiction.  *Id*.  The First Circuit affirmed in most respects, finding that petitioners had not administratively exhausted their right-to-counsel claims.  *Id*. at 18.  As to the claim that transfers had disrupted petitioners' constitutional right to family integrity (by taking parents from their children), the Court ruled that the district court *did* have jurisdiction to hear that claim.  *Id*. at 19.  Ultimately, however, the Court dismissed that claim as well – not on jurisdictional grounds but because the Complaint did not allege conduct that "shocked the conscience."  *Id*. at 22.

1252(b)(9) should not be read to preclude 'habeas review over challenges to detention.'" *Id.* at 11; *see also Hernández v. Gonzales,* 424 F.3d 42, 42 (1st Cir.2005) (holding that detention claims are independent of removal proceedings and therefore not barred by section 1252(b)(9)). The channeling clause "exclude[s] claims that are independent of, or wholly collateral to, the removal process." *Aguilar*, 510 F.3d at 11.

Defendants' other citations are equally off point and rely on jurisprudence specifically rejected by the First Circuit. For example, Defendants include a long block quote from *Lway Mu v. Whitaker*, 2019 WL 2373883 (W.D.N.Y. June 4, 2019), a case brought by a *pro se* petitioner and which relies heavily on the Tenth Circuit's decision in *Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999). Yet the First Circuit has explicitly held that "we reject *Van Dinh*" and its holding that the INA "pretermits judicial review of the Attorney General's decision to transfer detainees." 510 F.3d at 20-21.[3]

In sum, this Court has jurisdiction over any class members whom Defendants intend to transfer out of BCHOC.

## II. To Protect Class Members' Rights, Defendants Should Provide Information Regarding Intended Transfers, So That The Court Can Act Accordingly.

The Court has ruled that Plaintiffs are likely to succeed on their claim that Defendants are deliberately indifferent to their health and well-being, in a manner that violates the Fifth Amendment. ECF 175. Particularly in light of this ruling, Defendants should be required to provide at least basic information about any intended transfers of class members.

---

[3] In the context of the specific facts in *Aguilar*, rejecting *Van Dinh* meant that the INA's channeling provision "does not strip the district courts of jurisdiction over substantive due process claims that are collateral to removal proceedings when those claims challenge decisions about the detention and transfer of aliens on family integrity grounds." *Id*. at 21. Similarly here, it does not strip this Court of jurisdiction over 5th Amendment claims that are independent of removal proceedings.

**A. <u>Defendants Should Be Required To State The Reason For Transfer.</u>**

That basic information should start with a requirement that Defendants state their reason for the transfer. As noted above, this information may be important to determining the Court's jurisdiction. Moreover, it allows both the Court and Plaintiffs to ensure that the transfer is not an attempt to defeat jurisdiction or otherwise improperly remove individuals from this Court's purview.

There is reason for concern. In instances where removal *has* been stated as the basis for transfer, the Court has asked Defendants for further information on such individuals, and yet no information has ever been forthcoming. At the April 9, 2020 hearing, the Court stated that it "believes that ICE understands that [detainees noticed for removal] are going to be removed physically from the United States within the next two weeks. *Should they not be removed, one, a report must be made to the Court* – and it is clear these are habeas [petitioners], their habeas petitions are alive…." Transcript of Hearing (April 9, 2020) at 38:6-12 (emphasis supplied). Despite this requirement, Defendants have never provided any such reports to the Court, although many class members whom Defendants have stated would be removed within two weeks in fact have not been. *See* ECF 115 (Plaintiffs' Briefing On Individual Applications For Bail (Thursday April 23, 2020)), Ex 12 (Plaintiffs' Spreadsheet of Individuals Intended To Be Removed).

Were the Court to now allow Defendants to transfer class members for no reason at all, even more class members will undoubtedly end up transferred out of the Court's ambit, with neither the Court nor Plaintiffs ever knowing even a stated reason for the transfer. Defendants should therefore be required to at least state their reasons for any intended transfer.

B. **Defendants Should Be Required To Provide At Least Basic Information About The Facility To Which Class Members Will Be Transferred.**

Additionally, Defendants should be required to provide at least basic information about the facility to which a class member is being transferred, in order to ensure that the class member's constitutional rights are protected. At a minimum, this information should include whether transferred individuals will be housed in single or congregate cells, as well as the number of confirmed positive COVID-19 cases at the facility and a certification that the new facility is less crowded than Bristol County. This would be aligned with the Court's class certification Order, which states that Defendants can reduce the BCHOC population in a number of different ways: "*Transfer to less crowded facility*, deportation, release on bond, or simply declining to contest lawful residence – any of these methods would effectively minimize the concentration of people in the facility." ECF 64 at 23 (emphasis supplied). The Court's statement recognizes that the density of the facility to which a detainee is being transferred is relevant to ensuring that the detainee's right to reasonable safety is not further compromised by transfer.

Were this basic level of information to be provided, the Court could then determine an appropriate course of action: allow the transfer to proceed, require the Defendants to provide further information, or admit the class member to bail.

C. **For Mr. Doe and Mr. Dodieu, This Additional Information Should Be Sought; In the Alternative, They Should be Admitted To Bail.**

In the case of the imminent transfer of Mr. Doe and Mr. Dodieu, Defendants have provided no reason for their transfer. In contrast to other Notices of Intent to Transfer that Defendants have previously filed in this case, *see*, *e.g*., ECF 113, the May 7 Notice does not indicate that these transfers are to effectuate removal. Indeed, it appears that at least one of the

individuals (Mr. Dodieu) is not presently removeable, since his case is still pending before the Board of Immigration Appeals.  ECF 81, Ex. 9.

As to the intended receiving facility, Plaintiffs have independently uncovered information about the Wyatt Detention facility that is alarming on its face: that the facility is on "lockdown" status due to a COVID-19 outbreak, and that two federal judges have recently ordered at least three ICE detainees released on this basis.  *See* ECF 169.  Defendants have made no representation that Wyatt is less crowded than BCHOC.  This Court has already found that Mr. Doe and Mr. Dodieu and the rest of the class are likely to succeed in showing that Defendants are deliberately indifferent to their substantial risk of COVID-19 infection.  Under those circumstances, Defendants' statement that it intends to transfer, for unknown reasons, two class members from BCHOC to another facility that is highly vulnerable to COVID-19, at a minimum demands further scrutiny, if not an immediate stay.

Alternatively, the Court may admit both of these class members to bail.  Both of them have fully-briefed applications for bail that are currently under consideration by the Court.  ECF 81, Ex. 9 (Dodieu), ECF 92, Ex. 9 (Doe).  It is Plaintiffs' understanding that both are currently being tested for COVID-19, such that release could be conditioned on a negative result.[4]  In light of the individualized information provided in their prior briefings and the circumstances surrounding their intended transfer, Plaintiffs respectfully submit that Mr. Doe and Mr. Dodieu should both be admitted to bail.

---

[4] Per the Court's May 11, 2020 order: "No individual shall be moved until the testing for Covid-19 has been performed and the Court informed of the results." ECF 172.  The Court's bail authority would remain even post-transfer. As the Court has correctly stated, "it is clear, these are habeas petitions -- petitioners, their habeas petitions are alive -- are viable even though physically they have been moved outside the district, that is to say this Court remains empowered both to grant the writ of habeas corpus, should it be appropriate, or to admit people to bail, should that be appropriate, or to deny the writ. The cases are alive wherever the people are." *See* Hearing Transcript (April 9, 2020) at 38:10-17.

7

### III. A Regular Mechanism Should Be Established For Defendants To Report On Testing, So That The Process Is Transparent And Any Issues Can Be Resolved.

Given the critical importance of the testing that the Court has ordered for all class members and staff at BCHOC, Plaintiffs believe that Defendants should be required to report on a daily basis on progress towards meeting that requirement. Presumably Defendants will be tracking the pertinent information themselves – *e.g.*, numbers of class members and staff tested, dates tested, test results, quarantines imposed and lifted. That information should be shared with the Court and Plaintiffs, to ensure both transparency and smooth implementation of the Preliminary Injunction.

The Court first ordered Defendants to report to the Court on COVID-19 testing at BCHOC back on April 24, 2020, *see* ECF 132, yet to date Defendants have submitted no such reports. Now that universal testing will be getting underway, the need for regular reporting is even more critical, particularly since class members appear to be receiving limited and in some cases, conflicting information from BCHOC staff about testing protocol. Class members must have accurate and timely information about testing, and a regular reporting mechanism would facilitate that. Moreover, to the extent that any issues arise about testing or testing protocols, a regular reporting mechanism will allow those to be addressed quickly and effectively.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants be required to provide additional information on the intended transfer of Mr. Doe and Mr. Dodieu, or alternatively that these class members be admitted to bail. Plaintiffs also respectfully request that the Court order regular and ongoing reporting from Defendants on the COVID-19 testing that is required by the Preliminary Injunction.

May 13, 2020

Respectfully Submitted,
    /s/ Oren Sellstrom
Oren Nimni (BBO #691821)
Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Ivan Espinoza-Madrigal†
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 988-0606
onimni@lawyersforcivilrights.org

Grace Choi, Law Student Intern[*]
Kayla Crowell, Law Student Intern[*]
Laura Kokotailo, Law Student Intern[*]
Aseem Mehta, Law Student Intern[*]
Alden Pinkham, Law Student Intern[*]
Bianca Rey, Law Student Intern[*]
Megan Yan, Law Student Intern[*]
Reena Parikh†
Michael Wishnie (BBO# 568654)
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
michael.wishnie@ylsclinics.org

Lisa Pirozzolo
John Butts
Vinita Ferrera
Felicia Ellsworth
Nicole M.F. Dooley
Annaleigh Curtis
Michael Brown
Rama Attreya
Gary Howell-Walton
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 021009
Lisa.Pirozzolo@wilmerhale.com

---

† Admitted *pro hac vice*.
* Motion for law student appearances pending.

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on May 13, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.


Date:   May 13, 2020

   /s/ Oren Sellstrom
Oren Sellstrom (BBO #569045)