UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO, JULIO CESAR MEDEIROS NEVES, and all those similarly situated,<br><br>                    Plaintiffs-Petitioners,<br><br>                    v.<br><br>STEVEN J. SOUZA, Superintendent of Bristol County House of Correction in his official capacity,<br><br>                    Defendant-Respondent. | Case No. 1:20-cv-10617 WGY |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL RESPONSES TO DISCOVERY**

Defendant's motion to compel challenges the responses of Plaintiffs Maria Savino and Julio Neves (together "Plaintiffs") to a number of discovery requests based on flawed arguments and conclusory assertions that the information Defendant seeks is "clearly relevant" when it is not. It is telling of the weakness in their legal position that Defendant devotes the first half of their brief to an inaccurate narrative that extolls their supposed virtue in responding to Plaintiffs' discovery requests and makes hollow accusations that Plaintiffs have engaged in "gamesmanship."

The real issue in this motion is that the lion's share of Defendant's discovery requests fall well outside the bounds of permissible discovery. The requests seek a litany of information about the conditions in which class members placed on bail are now living, or the conditions in which class members who are still detained would live if they were to be released on bail. According to Defendant, that information is necessary because "a fundamental premise of

1

Plaintiffs' case is that being released is much safer than being confined at BCHOC." *See* Def.'s Br. at 6. This is not an accurate statement of Plaintiffs' case, however. Plaintiffs' case has always been squarely focused on the unreasonably unsafe conditions at the Bristol County House of Correction ("BCHOC"), not on comparative living conditions.

As the Court has stated, "[t]he Constitution dictates that the government reasonably safeguard those in its custody, for the power to incarcerate implies the duty to protect." Mem. of Decision, ECF No. 175 at 1. That duty to protect applies to everyone equally. A class member who would enjoy more spacious living conditions outside BCHOC is not entitled to greater constitutional protection in detainment than a class member who would live in less spacious conditions outside BCHOC. Accordingly, the mass of information that Defendant seeks to make individualized comparisons of living conditions is not relevant to any claim or defense, and therefore, is outside the permitted scope of discovery.

Defendant's discovery requests at issue here are improper for other reasons as well. First, Defendant's requests far exceed the permissible 25-interrogatory limit set by the Federal Rules in that they seek detailed individualized information about nearly 130 absent class members. Moreover, they seek this information from the two class representatives, Maria Savino and Julio Neves, who are not in possession, custody, or control of this information.[1]

For all of these reasons, Defendant's motion to compel should be denied.

---

[1] In addition to these substantive reasons, Defendant's motion fails on procedural grounds too. Defendant did not reach out to Plaintiffs' counsel to meet and confer in advance of filing its motion, contrary to the requirements of Local Rule 37.1(a). This failure alone is sufficient reason to deny this motion. Local Rule 37.1(a) requires counsel for the moving party to "arrange" for meet and confer "[b]efore filing any discovery motion"; contrary to Defendant's suggestion, this is not an obligation of the objecting party. Defendant made no effort to comply, as is evident from their failure to certify compliance with the local rule, which is a requirement of Local Rule 37.1(b).

**ARGUMENT**

Discovery is limited to matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering" such factors as "the importance of the issues at stake in the action," "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). With respect to interrogatories in particular, Fed. R. Civ. P. 33(a)(1) limits each party to "no more than 25 written interrogatories, including all discrete subparts."

As the moving party, Defendant bears the burden to show that the requested information is relevant to the issues of the litigation, and it cannot carry that burden with only conclusory assertions. *See, e.g., Whittingham v. Amherst Coll.,* 164 F.R.D. 124, 127 (D. Mass. 1995) (denying motion to compel in part where the moving party had not met burden and "offer[ed] only the conclusory assertion that the files [were] relevant" and "made no real showing . . . of [] relevance"); *Cutter v. HealthMarkets, Inc.*, 2011 WL 613703, at *2-3 (D. Mass. Feb. 10, 2011) (denying motion to compel because defendants failed to prove that documents were relevant to either party's claim or defense).

**I.      Discovery Requests**

Defendant challenges Plaintiffs' responses to nine interrogatories and one document request. Defendant's discovery requests are improper for a variety of reasons, including that they are overbroad, unduly burdensome, seek information that is not relevant to any party's claim or defense, and not proportional to the needs of the case. Properly counted, Defendants interrogatories also far exceed the 25-interrogatory limit.

      **A.      Interrogatory No. 1**

Interrogatory No. 1 seeks twelve categories of individualized information about the current living conditions of each of the 48 class members the Court has released on bail:

    a. The type of dwelling they are living in (i.e., apartment, single family home, etc.);

    b. Whether they have a bedroom of their own;

    c. If they do not have their own bedroom, how many others sleep in the same room, the size of the room, the number of beds in it, the size of the beds, and how many sleep in each bed;

    d. The number of rooms in the dwelling;

    e. A listing of all persons living in the dwelling (if it is an apartment, in the apartment);

    f. The approximate age of each resident;

    g. Whether each resident is working or not, and, if so, the location of that work and the schedule;

    h. The occupation of the detainee;

    i. The name and address of the detainee's last place of employment;

    j. All sources of income the detainee has to support him/herself;

    k. What medical insurance is available to the detainee; and

    l. The medications required by the detainee and the expected source of medications.

*See* Appendix A. Plaintiffs properly objected on a number of grounds including relevance, burden, and that when properly counted, this interrogatory alone exceeds Fed. R. Civ. P. 33(a)(1)'s 25-interrogatory limit. *See id.*

Relevance: The only argument Defendant makes about the supposed relevance of this information is that "a fundamental premise of Plaintiffs' case is that being released is much safer than being confined at BCHOC." *See* Def.'s Br. at 6. However, this mischaracterizes Plaintiffs'

case. As the Court has correctly stated, "[t]he gravamen of [Plaintiffs'] complaint [is] that the facility [is] simply too crowded to practice social distancing in accordance with ubiquitous medical advice … and that the conditions [are] otherwise unhygienic . . . ." Mem. of Decision, ECF No. 175 at 4; *see also id.* at 20 ("The Detainees' claim on the merits is that the conditions of their confinement violate the Due Process Clause of the Fifth Amendment."). In other words, the focus of Plaintiffs' case is squarely on the conditions of confinement *at BCHOC*. Defendant's postulating of a "comparative risk" theory of the case, without any basis in law, does not render its extraneous discovery requests relevant.

As this Court has found, the relevant issue in a Fifth Amendment analysis is whether the government has fulfilled its "duty to protect" and "reasonably safeguard those in its custody." *Id.* at 1. That analysis focuses on the government's actions and inactions while the individual is detained; the detained individual's non-custodial life is not relevant to this analysis. Thus, when the U.S. Supreme Court considered whether prison officials had been deliberately indifferent to a plaintiff's safety by placing her (a preoperative transsexual woman) in the prison's general population, the Court did not inquire what her risk of assault would have been had she not been imprisoned. *See Farmer v. Brennan*, 511 U.S. 825, 842-47 (1994) (evaluating deliberate indifference standard in terms of prison officials' custodial conduct without consideration of petitioner's non-custodial life). Rather, the sole focus was whether she was "incarcerated under conditions posing a substantial risk of serious harm" to which defendants were deliberately indifferent. *Id.* at 834. Similarly, when analyzing whether prison officials had adequately treated a plaintiff's back injury, the Supreme Court did not inquire what kind of treatment he would have received had he not been incarcerated. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976) (discussing deliberate indifference standard and duties of prison officials without

reference to inmates' non-custodial lives). Rather, the focus was squarely on the conduct of prison officials and whether their conduct constituted "deliberate indifference to serious medical needs." *Id.* at 104.

So, too, here the question is whether conditions *at BCHOC* pose "a substantial risk of serious harm to [detainees'] health arising from their conditions of confinement amidst the COVID-19 outbreak." Mem. of Decision, ECF No. 175 at 21. The degree of constitutional protection to which the class members who are still detained are entitled has nothing to do with whether those who have been released on bail live in an apartment or single family home, live in a home with four rooms or ten rooms, or live with three family members or five family members. To argue otherwise would be to assert that constitutional rights are a function of wealth. For all of these reasons, Defendant's Interrogatory No. 1 is beyond the bounds of permissible discovery.

<u>Interrogatory No. 1 Exceeds The 25 Interrogatory Limit</u>: Fed. R. Civ. P. 33(a)(1) limits each party to "no more than 25 written interrogatories, including all discrete subparts." As the Advisory Committee Notes to the 1993 amendment explain, "[p]arties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016).

Defendant has far exceeded that limit. First, the interrogatory asks for numerous different types of information. Although Defendant claims that its interrogatories "have subparts which seek only additional particularized information with respect to the basic interrogatory," in fact there is no "basic interrogatory" to begin with. *See* Appendix A. Interrogatory No. 1 asks for such disparate information as the type of dwelling where the class member lives, whether the class member has a bedroom of his/her own, "how many others sleep in the same room, the size

of the room, the number of beds in it, the size of the beds, and how many sleep in each bed." *Id.* And it extends far beyond that, going on to ask about all persons living in the dwelling, their ages, "[w]hether each resident is working or not, and, if so, the location of that work and the schedule," the occupation and name and address of the last place of occupation of the class member, medical insurance information, and "expected source of medications." *Id.*; *cf. Erfindergemeinschaft*, 315 F.R.D. at 194 ("[W]here the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it]." (quoting *FTC v. Think All Pub. L.L.C.*, 2008 WL 687455, at *1 (E.D. Tex. Mar. 11, 2008)).

Moreover, Request No. 1 seeks all of this information about 48 different people. Thus, this is not a situation, as Defendant argues, where they are seeking only "additional particularized information with respect to [a] basic interrogatory." Def.'s Br. at 6. None of the cases Defendant cites come close to supporting any argument that a series of questions that apply separately to each of 48 people count as a single interrogatory. In fact, most of the cases they cite are wholly inapposite. One, *W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, 293 F.R.D. 68, 74 (D.P.R. 2013), concerned whether separately represented defendants should have to serve a common set of interrogatories on the plaintiff even through Rule 33 permits each party to serve up to 25 interrogatories. The rest of Defendant's cases relate to whether subparts of an interrogatory were sufficiently related to constitute a single interrogatory. *See, e.g.*, *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010) (multi-part interrogatory seeking information about plaintiff, e.g., hire date, salary, and supervisors, must be treated as a separate interrogatory from subpart asking about others' salaries); *see also In re Netbank, Inc. Sec. Litig.* 259 F.R.D. 656, 677-79 (N.D. Ga. 2009) (addressing whether subparts of interrogatories were

sufficiently related to count as a single interrogatory); *Trevino v. ACB American*, 232 F.R.D. 612, 614-15 (N.D. Cal. 2006) (same).

<u>Undue and Disproportional Burden</u>:  Even if Interrogatory No. 1 were relevant, it would still be inappropriate for a number of other reasons.  First, this is a class action with two named plaintiff representatives, Ms. Savino and Mr. Neves, and numerous unnamed class members. *See* Mem. & Order, ECF No. 64 at 29.  Yet Interrogatory No. 1 asks for detailed information about the 48 class members who have been released on bail.  The litany of information Defendant requests about those peoples' individual living circumstances is not within the possession, custody, or control of Ms. Savino or Mr. Neves.  *See DL v. District of Columbia*, 251 F.R.D. 38, 50 (D.D.C. 2008) (denying motion to compel request for documents related to absent class members because information was not in the possession, custody, or control of class representatives); *see also Siegmund v. County of Orange,* 2009 WL 10674369, at *3 (C.D. Cal. Aug. 25, 2009) (in FLSA collective action only named plaintiffs would have to respond to interrogatories seeking information about 600 opt-in plaintiffs, and their responses would be subject to limits of information in named plaintiffs' possession, custody, or control).  Under Fed. R. Civ. P. 33(b)(3), interrogatories must be answered under oath.  Ms. Savino and Mr. Neves cannot reasonably be expected to attest to the litany of information Defendant requested that relates to 48 people over whom they have no control.[2]

   **B.**   **Interrogatory No. 2**

---

[2] Even if a duty were imposed on class plaintiffs, this interrogatory would be improper because it would impose a burden that is disproportional to the needs of the case given the irrelevance of this discovery in resolving this matter and that the burden of collecting this information for 48 class members would far outweigh its likely benefit.  *See DL*, 251 F.R.D at 50 (denying motion to compel where class representatives had no further information to produce regarding absent class members).  Moreover, as the Court pointed out at the May 11, 2020 hearing, Defendant has access to much of the information about releasees' living conditions already, since the released individuals are all still under strict monitoring and control by ICE.

Interrogatory No. 2 seeks the dimensions of all rooms in the dwellings in which 48 class members that have been released on bail are now living, along with a description of each room's function. *See* Appendix A. Plaintiffs properly objected on a number of grounds including relevance, burden, and that properly counted, this interrogatory exceeds the Fed. R. Civ. P. 33(a)(1)'s 25-interrogatory limit. *See id.*

Defendant's motion to compel a response to this interrogatory should be denied for the same reasons their motion should be denied with respect to Interrogatory No. 1.

### C.  Interrogatory No. 3

Interrogatory No. 3 seeks for the 81 class members who have not been released on bail the same long list of information that Defendant requested of released class members in Interrogatory No. 1.[3] *See* Appendix A. Plaintiffs responded by identifying documents that are already in the record and thus equally available to Defendant (*i.e.*, class members' individual bail applications), which contain information concerning where each currently detained class member will live if he or she is placed on bail. *See id.* Plaintiffs objected, however, to the remainder of this interrogatory on a number of grounds including relevance, burden, and that when properly counted, this interrogatory exceeds the Fed. R. Civ. P. 33(a)(1)'s 25-interrogatory limit. *See id.*

Defendant's motion to compel a response to this interrogatory should be denied for the same reasons their motion should be denied with respect to Interrogatory No. 1.

### D.  Interrogatory No. 4

---

[3] Defendant points out that there are currently 81 detained class members, not 100. The difference between Defendant's representation and Plaintiffs' estimate when they served their objections is academic. All of Plaintiffs' stated objections, including burden, apply regardless of whether Interrogatory No. 3 seeks information about 81 people or 100 people.

Interrogatory No. 4 follows a similar pattern.  It seeks for the 81 class members who have not been released on bail the same type of information Defendant requested in Interrogatory No. 2, *i.e.*, the dimensions of all rooms in the dwellings in which these individuals would live if they are released along with a description of the room's functions.  *See* Appendix A.  Plaintiffs objected to this interrogatory on a number of grounds including relevance, burden, and that when properly counted, this interrogatory exceeds the Fed. R. Civ. P. 33(a)(1)'s 25-interrogatory limit.  *See id*.

Defendant's arguments about this interrogatory fail for the reasons stated above.

### E.      Interrogatory No. 5

Interrogatory No. 5 asks Plaintiffs to identify "all communications written by any Class member" regarding the conditions at BCHOC regarding COVID-19, excluding documents written to or received from counsel.  *See* Appendix A.  Plaintiffs responded by identifying all responsive written communications of which they are aware, all of which have been filed as exhibits or declarations in this case already.[4]   The one other document is a letter that is included as a link in a publicly available news article.  It is therefore a document to which all parties have equal access.  *See id.*

It is not clear from Defendant's motion why they consider Plaintiffs' response inadequate.  Plaintiffs identified all responsive documents that were in their possession, custody or control.

### F.      Interrogatory No. 6

---

[4] For example, class members wrote letters concerning conditions at BCHOC that were attached to the Complaint. *See* Appendix A (referring Defendant to Dkt. Nos. 1-4, 1-5).  Similarly, numerous class members have written declarations about conditions at BCHOC that have been filed in this litigation.  *See id.* (referring Defendant to Dkt. Nos. 12-4, 12-5, 12-8, 12-9, 33-2, 91-1, 91-2, 91-3, for class member declarations); ECF Nos. 152-163 (class member declarations filed in support of supplemental briefing for preliminary injunction).

Interrogatory No. 6 requests a description of criminal charges or convictions for class members still in BCHOC's custody that have not already been presented to the Court. *See* Appendix A. Plaintiffs made an objection for the record based on the fact that Defendant has exceeded the 25-interrogatory limit, but also stated that they are not in possession, custody, or control of any information responsive to Interrogatory No. 6. *See id.*

It is again not clear why Defendant considers this response inadequate. But in any event, Plaintiffs are not withholding any responsive information.

### G.     Interrogatory No. 7

Interrogatory No. 7 seeks information regarding whether any of the 48 class members released on bail have experienced COVID-19 symptoms, whether they have sought medical care for these symptoms, and whether they have been tested for the virus including test results. *See* Appendix A. Plaintiffs objected to this interrogatory for a variety of reasons including relevance and that Defendant has exceeded the 25-interrogatory limit. *See id.*

Defendant has made no particularized showing of relevance. Nor could they. Whether class members who have been released from BCHOC on bail have experienced COVID-19 like symptoms says nothing about whether Defendant has acted with deliberate indifference to a known safety risk inside BCHOC. Moreover, this information is outside the possession, custody, or control of Ms. Savino and Mr. Neves. Even if a duty of inquiry could be imposed, it would impose an undue and disproportionate burden. In addition, this interrogatory exceeds the numerical limit of Fed. R. Civ. P. 33(a)(1) insofar as it seeks differentiated information about 48 separate people.

### H.     Interrogatory No. 8

This interrogatory seeks the same information as No. 7, but as to third parties. It asks for COVID-19 related medical information for everyone "with whom [any class member on bail] is living" as well as anyone with whom the class member has "been in contact with" over some unspecified period of time. *See* Appendix A. Defendant's motion to compel a response to this interrogatory should be denied for the same reasons their motion should be denied with respect to Interrogatory Nos. 1 and 7.

In fact, the reasons to deny Defendant's motion with respect to this request are even more compelling. To begin with, the requested information is not relevant to whether Defendant has acted with deliberate indifference to a known safety risk inside BCHOC, and Defendant makes no effort to show otherwise. In addition, Interrogatory No. 8 seeks protected medical information from third parties, who should not be subjected to an invasion of their privacy, annoyance, or a mandated disclosure of their personal medical information. This interrogatory is also woefully vague insofar as it sweeps in an ill-defined category of people made up of anyone with whom class members have had some form of contact with over some unspecified period of time.

### I.     Interrogatory No. 9

Defendant's final interrogatory requests the same information as Interrogatory No. 8, but for the 81 people with whom a currently detained class member might live if he or she is released on bail. *See* Appendix A. It is inappropriate for the same reasons that Interrogatory Nos. 1, 7, and 8 are inappropriate.

### J.     Document Request No. 2

Defendant challenges Plaintiffs' response to only one document request: Request No. 2. That request seeks "all documents authored by any Class member, including, but not limited to,

any document sent to, or received from the media and any document sent or delivered by one Class member to another." *See* Appendix B. Plaintiffs objected to this request on the grounds that it is overbroad and not proportional to the needs of the case, particularly insofar as it requests "all documents authored by any Class member" without any limits on time or subject matter. *See id.*

Defendant concedes, as it must, that Plaintiffs' objection is "well-founded." Def.'s Br. at 14. Contrary to Defendant's suggestion, Plaintiffs have no obligation to guess what Defendant might have meant by this Request, nor to ask them to fix it. Moreover, to the extent the request was simply a repeat of the information Plaintiffs described in response to Interrogatory No. 5, Defendant is in possession of all those documents, as those have already been filed in this matter.

## II. Defendant Mischaracterizes the Circumstances Leading Up to this Motion

Although it is not relevant to any of the issues that are properly before the Court, Plaintiffs feel compelled to respond to Defendant's misleading characterizations of the parties' course of dealings. At bottom, Defendant's accusations that Plaintiffs have been obstructive and engaged in "gamesmanship" are baseless.

At the hearing on April 24, 2020, the Court stated that it would allow the parties to pursue expedited discovery in advance of the Preliminary Injunction hearing. Defendant waited five days to propound their discovery requests.[5] They served an initial set of interrogatories on the night of April 29, and followed up with a supplemental set on April 30.

On Friday, May 1, at about 2:41 pm, Defendant's counsel emailed to ask Plaintiffs to acknowledge receipt of the discovery requests and to provide a time when Plaintiffs expected to

---

[5] Plaintiffs served their discovery requests before the next business day after the hearing on April 24.

respond. Contrary to Defendant's assertion, Plaintiffs' counsel responded approximately two hours later, stating, among other things:

> As to your email about the interrogatories, we did receive them. I would have to look back, but as I recall you set a three business day response time. At the moment, I anticipate that we will respond within that time frame, subject to any objections and potentially with a need to supplement. If that changes, we will let you know. Please feel free to respond back (or call at [personal cell phone number]) if anything needs clarifying or there is a need for further discussion. Thank you for your ongoing cooperation in working out these issues.

Defendant's counsel did not reply to this invitation.[6] On Monday evening, Plaintiffs responded to Defendant's discovery requests as they said they would.

Plaintiffs objected to the discovery requests that they found were objectionable and provided responses to those that were not. Defendant's statement of the "facts" is thus inaccurate in significant respects, particularly in omitting the above-quoted email. Defendant states, for example, that Plaintiffs "had still not responded to AUSA Kanwit's repeated requests for a timetable" by Sunday. Def.'s Br. at 4. In fact, Plaintiffs had responded with a timetable two days prior. Defendant also states that Plaintiffs did not give "the slightest hint" that they planned to object to any of Defendant's discovery. *Id.* In fact, Plaintiffs specifically stated, the day after receiving the discovery, that they would "respond within [the requested] time frame, subject to any objections." Plaintiffs' counsel went on to give Defendant's counsel his personal cell phone number and invited him "to respond back (or call []) if anything needs clarifying or there is a need for further discussion."

In sum, Plaintiffs responded to each of Defendant's inquiries within hours of receiving them, specifically raised the issue of objections, and offered to discuss any issues or provide

---

[6] On Sunday May 3, Defendant's counsel sent another email asking when Plaintiffs expected to serve responses. Within approximately 3 hours, Plaintiffs stated that they still expected to within the 3 business day deadline which they calculated as Monday evening.

further clarifications if Defendant wished.  Whatever the reason that Defendant's counsel chose not to respond to this offer, Defendant cannot now place blame at Plaintiffs' feet.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion.

May 15, 2020

Respectfully Submitted,<br>
   /s/ John J. Butts<br>
Oren Nimni (BBO #691821)<br>
Oren Sellstrom (BBO #569045)<br>
Lauren Sampson (BBO #704319)<br>
Ivan Espinoza-Madrigal†<br>
Lawyers for Civil Rights<br>
61 Batterymarch Street, 5th Floor<br>
Boston, MA 02110<br>
(617) 988-0606<br>
onimni@lawyersforcivilrights.org<br>
<br>
Grace Choi, Law Student Intern*<br>
Kayla Crowell, Law Student Intern*<br>
Laura Kokotailo, Law Student Intern*<br>
Aseem Mehta, Law Student Intern*<br>
Alden Pinkham, Law Student Intern*<br>
Bianca Rey, Law Student Intern*<br>
Megan Yan, Law Student Intern*<br>
Muneer I. Ahmad†<br>
Reena Parikh†<br>
Michael Wishnie (BBO# 568654)<br>
Jerome N. Frank Legal Services Organization<br>
P.O. Box 209090<br>
New Haven, CT 06520<br>
Phone: (203) 432-4800<br>
michael.wishnie@ylsclinics.org

---

† Admitted *pro hac vice*.
* Motion for law student appearances pending.

Lisa Pirozzolo (BBO #561922)<br>
John J. Butts (BBO #643201)<br>
Vinita Ferrera (BBO #631190)<br>
Felicia Ellsworth (BBO #665232)<br>
Nicole M.F. Dooley (BBO #690539)<br>
Annaleigh Curtis (BBO #696165)<br>
Michael Brown (BBO #695276)<br>
Rama Attreya (BBO #699395)<br>
Gary Howell-Walton (BBO #705470)<br>
Wilmer Cutler Pickering Hale and Dorr LLP<br>
60 State Street<br>
Boston, MA 021009<br>
Lisa.Pirozzolo@wilmerhale.com

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

Date:   May 15, 2020

/s/ John J. Butts
John J. Butts (BBO #643201)