UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
MARIA ALEJANDRA CELIMEN SAVINO              )
and JULIO CESAR MEDEIROS NEVES,             )
                                            )
Petitioners-Plaintiffs,                     )
                                            )      20-cv-10617 WGY
    v.                                      )
                                            )
THOMAS HODGSON, et al.,                     )
                                            )
    Respondents-Defendants.                 )
_____ )

**DEFENDANT'S RESPONSE TO PLAINTIFFS' FURTHER BRIEFING REGARDING CLASS MEMBERS TO BE IMMINENTLY TRANSFERRED**

This case started with a Petition that sought to protect a putative class of immigration detainees housed at the Bristol County House of Corrections ("BCHOC") from the spread of the COVID-19 virus as a result of conditions *at that facility*. *See generally* Petition, Docket Entry No. 1. Plaintiffs requested that this Court issue an order releasing all immigration detainees (148 in total) from BCHOC, as well as bar the U.S. Immigration and Customs Enforcement agency ("ICE") from placing any detainees *at that facility* for the indefinite future.

Plaintiffs now seek to involve this Court in the micro-management of ICE by requiring ICE to provide a reason for every transfer out of BCHOC, a certification that the destination facility is "less crowded," regular reporting of testing and extensive information regarding the conditions at the target facility.

In the course of this litigation, this Court reviewed the status and background for each detainee at BCHOC and determined that a number of them would be released to the community subject to stringent conditions imposed by this Court and ICE. Additional detainees were

released or transferred from BCHOC by Defendants and through orders of Immigration Judges. This Court also issued an affirmative mandatory injunction requiring all BCHOC staff, as well as the remaining immigration detainees *at the facility,* to undergo COVID-19 testing within a reasonable period of time, and prohibited ICE from placing any future detainees at BCHOC until further notice of the Court. *See* Docket Entry No. 175.

At a hearing on May 11, 2020, this Court modified its preliminary injunction in response to ICE's Notice to the Court of its intent to transfer two detainees from BCHOC to the Wyatt Detention facility in Rhode Island;[1] that is, the Court ordered that these two detainees first must be given a COVID-19 test and test negative before transfer. Should the detainees refuse transfer, they would be deemed positive for COVID-19 purposes, but ICE could still transfer them so long as it complied with present health protocols.[2] *See* Docket Entry No. 175. At that hearing, the Court noted that it had limited jurisdiction to stop any transfer by ICE of detainees at BCHOC, regardless of the reason for said transfer as long as the notice requirements issued by the Court had been satisfied.[3]

Undeterred, Plaintiffs have filed a "Further Brief" on the issue of transfer and not only

---

[1] It should be noted that ICE has decided not to transfer the two detainees to Wyatt.

[2] Although this provision of the order was stated to disincentivize refusals to be tested, the transfer of a detainee who is, under the other terms of the preliminary injunction, deemed to be positive for the virus does not appear consistent.

[3] The Court has previously said that ICE could take any number of steps, including transferring detainees out of BCHOC, in order to reduce the detainee population there. *See* dkt. #64 at 23 ("Nor does it matter how the density of Detainees is reduced. Transfer to less crowded facility, deportation, release on bond, or simply declining to contest lawful residence -- any of these methods would effectively minimize the concentration of people in the facility.")

maintain that the Court has substantial jurisdiction to stay transfers *out of* BCHOC, but that it should essentially review the make-up of every institution in the nation to which ICE may transfer a detainee before any such transfer may be effectuated. In other words, what started out as an action intent on reviewing the conditions *at BCHOC* has mushroomed into one challenging ICE's authority to transfer ICE detainees from BCHOC and a review of the conditions of the various facilities ICE may choose to place a BCHOC detainee throughout this country. Indeed, Plaintiffs assert that before any transfer of a detainee from BCHOC, this Court must review the capacity of the proposed facility and ensure it is "less crowded" than BCHOC- whatever that term means, whether there have been any COVID-19 positive detainees at that facility, whether the BCHOC detainee will be housed in a single cell or a congregate cell, and what are the underlying reasons for the transfer in the first place- as if that has any relevance to this action. In essence, Plaintiffs want to impose the restrictions placed by this Court on BCHOC on every detention facility throughout this country should ICE decide to place a detainee of BCHOC at a different detention facility.[4]

    Needless to say, Defendants view Plaintiffs' requests as inappropriate and unworkable. While it is doubtful that this Court has jurisdiction, at least in this case as framed by the Petition and complaint, to restrict ICE's right to place detainees where it deems appropriate, the biggest concern here is the interference with ICE's daily operations and the burden of Plaintiffs' requests. Essentially, Plaintiffs seek a new evidentiary hearing for every institution as to which

---

[4] In support of the claim for broad supervisory power by the Court, Plaintiffs cite their "Fifth Amendment right to reasonable safety." Further Brief at 1. This is not what the Fifth Amendment formulation is, however. *See, e.g.,* Docket # 175 *passim.*

ICE determines it needs to transfer a detainee.

As a general matter, Congress has vested powers in the Attorney General within the immigration context, including, the right "to arrange for appropriate places of detention for aliens pending removal or a decision on removal." *See* 8 U.S.C. §1231(g). These discretionary decisions regarding placement are typically insulated from review by the Court. *See* 8 U.S.C. §1252(a)(2)(B)(ii).

ICE's statutory right to make transfers and placements of immigration detainees has withstood many challenges in the courts. *See, e.g., Calla-Collado v. Attorney Gen. of U.S.,* 663 F.3d 680, 685 (3d Cir. 2011)(court does not have authority to dictate where DHS places detainees, stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings ... and therefore, to transfer aliens from one detention center to another' ") (quotation and citation omitted). *See also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1), the court noted that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit") (citing *Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); footnote and other citation omitted)). *Lopez Canas v. Whitaker*, No. 6:19-CV-06031-MAT, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019)(Court concluded that it does not have the authority to dictate to DHS where Petitioner should be housed; *Lway Mu v. Whitaker*, No. 6:18-CV-06924-MAT, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019); *Adejola v. Barr*, No. 19-CV-00241 EAW, 2019 WL 4893801, at *3 (W.D.N.Y. Oct. 4, 2019)(A court lacks jurisdiction to

review decisions of the Attorney General where the authority is derived from subchapter II of Chapter 12 of Title 8. 8 U.S.C. § 1252(a)(2)(B)(ii), without a showing that a transfer would infringe on Salazar's constitutional rights); *Zheng v. Decker,* No. 14 Civ. 4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (denying petitioner's request that the court order ICE not to transfer him to another jurisdiction); *Salazar v. Dubois*, No. 17-CV-2186 (RLE), 2017 WL 4045304, at *1 (S.D.N.Y. Sept. 11, 2017)(same).

It is true that the *Van Dinh* decision was rejected by the First Circuit in *Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007). That case is restricted in two important ways, however. First, the Appeals Court limited its holding to claims challenging decisions about the detention and transfer of aliens on family integrity grounds. *Id.*, at 21.[5] It is by no means clear that the First Circuit would find a transfer for security reasons, for example, where a detainee was causing disciplinary issues at a particular facility, to be appropriate for judicial second-guessing. Even if *Aguilar* is not limited to those narrow grounds, it does not support the Petitioners' motion.

It should be recognized that the First Circuit in *Aguilar* affirmed the district court's decision *dismissing* the action for failure to state a claim. The Circuit Court noted that when

---

[5] Plaintiffs omit this limitation from their quote of *Aguilar*, and also give an impression that *Hernández v. Gonzales,* 424 F.3d 42, 42 (1st Cir.2005) stands for a broader proposition than it does. In *Hernandez*, the Court of Appeals quoted the legislative history of the REAL ID Act for the principle that "those provisions were not intended to preclude habeas review over challenges to detention **that are** independent of challenges to removal orders." *Hernandez v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005)(emphasis supplied). This is not the same as "detention claims **are** independent of removal proceedings and therefore not barred by section 1252(b)(9)." Further Brief at 4.

challenging executive action on substantive due process grounds, the threshold question is whether the behavior of the governmental officer is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." 510 F. 3d at 21. The Circuit Court added, "Indeed, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Id*. Applying this standard, the Circuit Court concluded "the petitioners claim in essence that their immediate detention and swift transfer to distant DROs wreaked havoc with their right to make decisions about the care, custody, and control of their minor children, leaving many minors unattended. *Id.* at 22.

The Plaintiffs' present motion does not assert that the scheduled transfer of two detainees is not authorized by law, or that it is somehow an "extreme, egregious, or outrageously offensive" action. The Plaintiffs do not articulate a Fifth Amendment due process claim in connection with the transfer (other than the "right to reasonable safety," see note 4 *supra*); as stated, the only claim made in this case regards conditions *at BCHOC*. Coupled with the aforementioned legal precedent is the fact that affirmative mandatory injunctions are disfavored and should not be issued except in exceptional circumstances. *See Lewis v. General Electric,* 37 F. Supp. 2d 55, 62 (D. Mass. 1999) (mandatory injunctions disturb the status quo, thus, they should not be granted except when exigencies of the situation demand relief); *Northeastern University v. BAE Systems Information and Electronic Systems,* Civil Action No. 13-12497-NMG, 2013 WL 6210646, at * 7 (D. Mass. Nov. 27, 2013) (courts are disinclined to grant mandatory injunctions unless the facts and law clearly favor the moving party); *Tierney v. Gaudrault,* Civil Action No. 17-30125-MGM, 2019 WL 653786, at *6 (D. Mass. Jan. 25, 2019) (same).

Bearing the above in mind, Plaintiffs not only ask this Court to stay transfers of the two

named detainees until ICE provides this Court with certain information (Plaintiffs' Brief, p. 5), but they essentially ask this Court to impose its mandatory injunctive relief on any transfer to a new detention facility where ICE has authority to transfer detainees throughout the country (*id.*, p. 6). This is borne out by Plaintiffs' request that ICE provide this Court with a plethora of indicia concerning the new placement facility before any transfer is to take place. Such a request flies in the face of ICE's general discretionary authority to place detainees where it deems appropriate, and the law disfavoring mandatory injunctions, especially where the request would have national implications and reach.[6]

It is not as though a transferred detainee would be without rights to file a habeas petition or to join an already-existing class action at the new facility, should the detainee believe his or her rights are still being violated.[7] Moreover, Plaintiffs have been seeking the reduction of the

---

[6] In support of their request for extensive reporting, Plaintiffs make two inaccurate statements. First, Plaintiffs claim that no information on detainees transferred for removal has ever been provided. Further Brief at p. 5. In a Supplemental Briefing filed under seal on April 24, 2020, and served on Plaintiffs that day, Defendants provided information on *all* persons that had been transferred out of BCHOC for removal. As regards testing, Defendants provided timely notice to the Court by letter dated May 5, 2020 of the first positive detainee (which, as it turns out, was likely a false positive as the individual tested negative two days later along with those housed with him who agreed to testing). An earlier letter notified the Court of the first staff member that tested positive and the contact tracing that had been done for that nurse. Additionally, a spreadsheet with information regarding every staff member who had been tested was provided to Plaintiffs and the Court in advance of the preliminary injunction hearing. Plaintiffs' false accusations are concerning, especially as they are not the first of their kind. With regard to the May 5, 2020 letter to the Court, Plaintiffs falsely claimed that the report of the positive detainee test was buried in a footnote, when it was plainly stated in the text. Plaintiffs have never corrected this error nor apologized for its falsity and misplaced accusation of bad faith.

[7] Many of the other institutions in the region which ICE uses to house detainees are subject to similar COVID-19-based litigation. *See, e.g., Yanes, et al. v. Martin, et al.*, (D.R.I. 2020), case number 1:20-cv-00216-MSM-PAS (concerning Wyatt); *Gomes v. Wolf*, 20-cv-

civil detainee population at BCHOC, and the proposed transfer would further that goal. For these reasons, the Court should reject Plaintiffs ever-expanding claims that extend well beyond the BCHOC, the only facility at issue in this lawsuit.

                              Respectfully submitted,

                              ANDREW E. LELLING,
                              United States Attorney

                      By:  */s/ Thomas E. Kanwit*
                              Thomas E. Kanwit
                              Michael Sady
                              Assistant U.S. Attorneys
                              U.S. Attorney's Office
                              John J. Moakley U.S. Courthouse
                              1 Courthouse Way, Suite 9200
                              Boston, MA  02210
                              (617) 748-3100
                              thomas.kanwit@usdoj.gov
May 17, 2020                    michael.sady@usdoj.gov

### CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                    */s/ Thomas E. Kanwit*

Dated:   May 17, 2020

---

00453-LM (D.N.H. 4/17/20)(concerning Strafford).  Defendants do *not* agree that this Court retains jurisdiction over a class member who has been transferred out of the district, *see* Further Brief at n. 4; *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), but that issue need not be resolved for purposes of Plaintiffs' motion.