UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO;<br>JULIO CESAR MEDEIROS NEVES; and<br>ALL THOSE SIMILARLY SITUATED,<br><br>Petitioners,<br><br>v.<br><br>STEVEN J. SOUZA,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 20-10617-WGY |

## FOURTH  DECLARATION OF STEVEN SOUZA

I, Steven Souza, do hereby depose under oath and with personal knowledge, and from information provided to me by individuals with personal knowledge, the following:

1.  I been apprised of the Court's decision rendered orally on May 7, 2020.

2.  One portion of the Court's order requires that all "staff from Sheriff Hodgson on down are to be offered COVID testing and that if anyone refuses a test 'they are presumed to be positive for the virus."

3.  Under the CDC guidelines, DPH guidelines and our own medical guidelines (which comport with state and federal guidelines),  a presumed positive test means that correctional and other staff who had a confirmed positive COVID-19 test but never showed symptoms must stay out of work for between 7 and 14 days, depending on the advice of their physician, assuming  the individual has had no subsequent illness.

4.   I have been informed that  many correction officers and staff members have said that they will not agree to be tested if they are not symptomatic because  they

consider the testing procedure to be extremely invasive and uncomfortable.

5.     Any officers and staff that refuse to be tested and are presumed, by the Court's
order, to be infected  despite the absence of actual symptoms and without any
actual positive test results, will be required by CDC and BCHOC guidelines to not
work for 14 days.

6.     Any officers and staff that agree to be tested will have to remain out of work until
such time as the results of the tests are reported, under CDC and BCHOC
guidelines.  Moreover, current BCHOC Medical Guidance indicates that persons
tested cannot return to work until cleared by their medical doctor.

7.     Neither the BCHOC nor any correctional facility in Massachusetts to my
knowledge has access to any rapid testing equipment and all of the tests
performed at the BCHOC have to be individually transported to Tufts Medical
Center and the Department of Public Health in Boston to be analyzed.  The results
typically take up to 3 days to become available.

8.     Moreover, I am informed by CPS, our contracted health provider, that the "so-
called" rapid test currently used in hospitals is not terribly accurate with between
15%-40% error rates being reported.  I note that the one ICE Detainee who tested
positive at the hospital on May 1st was re-tested on May 6th and the re-test was
negative raising the suspicion that the first test may have well been a "false
positive."

9.     If a significant number of officers and staff refuse testing and have to be absent
for 14 days, the BCHOC cannot be adequately staffed.  This would have
widespread impacts on facility security, maintenance and cleaning including

2

sanitization, medical care, food preparation, food delivery – in short, every aspect of BCHOC's operation will be impacted.  This will negatively impact the  care and custody responsibilities for inmates and detainees.

10.    I have relayed the substance of the Court's May 7th order to CPS, our health care provider.  A senior CPS staff member  has questioned the practicality of the Court's order due to the fact that even if a staff member agrees to be tested on a particular day, they could be exposed to the virus while awaiting the results or within the seven day isolation protocol period.  So a negative test result will not assure that the individual is still uninfected when they return to work.

11.    CPS is not under a contractual obligation to provide medical services for BCHOC staff.  CPS is an independent contractor.  Even if the contract issues could be worked out, CPS has also informed me that the testing is not simple.  CPS typically has 10 nurses on duty during the first shift,  10 on the second shift, and 5 on the third shift.  This is for the entire facility.  In addition, from Monday through Saturday from 8 a.m. to 4 p.m., there are three nurse practitioners on duty.  In order for the medical staff to do their normal medical care of the detainees and inmates, it will be very difficult to take samples from approximately 613 staff members and 80 detainees.  Each sample procedure will take at least ten to fifteen minutes from start to finish.  For certain detainees there will also be additional time in getting the detainees from their units to the medical unit.  Other detainees can be tested in their housing units if they do not report symptoms.  Even without the transport time, testing everyone the Court has ordered tested will take approximately 175 hours.  It cannot be done in a non-stop, back-to-back

manner because different staff work on different days and shifts, there is detainee

transport from their units to the medical unit and back, and the medical staff will

have their normal work load to handle as well.  It could easily take a month to get

everyone tested.  By the time the testing is complete, the tests for those tested at

the outset will be outdated and unreliable.  Even if CPS agreed to test BCHOC

personnel, and if these personnel agree to be tested, there is no assurance that

these personnel will agree to allow CPS to perform the testing as opposed to

seeking outside medical care.

12.     Moreover, the CPS representative indicated that testing asymptomatic persons,

staff or prisoners, has never been required by the CDC and is not being done in

any correctional facility that they are aware of.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS TWELFTH___
DAY OF MAY, 2020.


                              */s/ Steven Souza*
                              STEVEN SOUZA,
                              Superintendent Bristol County
                              House of Corrections


                              _____