## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

MARIA ALEJANDRA CELIMEN SAVINO,
JULIO CESAR MEDEIROS NEVES, and all
those similarly situated,

               Petitioners-Plaintiffs,

          v.

STEVEN J. SOUZA,

Respondent-Defendant.

Case No. 1:20-cv-10617 WGY

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR REVOCATION OF BAIL AND MODIFICATION OF TERMS AND CONDITIONS OF RELEASE

## INTRODUCTION

Plaintiffs take the Court's orders with the utmost seriousness.  All of the individuals for whom Defendant now seeks to revoke bail are committed to complying with the Court's bail conditions.  As set forth below and in the accompanying declarations and exhibits, they have all demonstrated both a willingness and a desire to meet the conditions imposed upon them, so that they can remain safe and at home.  To the extent that there has been any non-compliance with any of the Court's bail conditions, such non-compliance has not in any way been willful, nor intended to disrespect the Court.  Importantly, all of these class members have been in regular contact with ICE and its agents, who never gave them any indication that they were not in compliance with any release conditions, and in fact in many instances gave oral and written representations about conditions of release that contradicted the terms of the Court's order.  As such, any past non-compliance should not be taken as any indication that these individuals will not fully comply with the Court's conditions in the future.

Each of the class members for whom Defendant seeks to revoke bail has been subject to close supervision by ICE and its compliance contractors (ISAP) since release from Bristol County House of Correction.  Each has electronic monitoring, meaning that ICE knows, and has known, where these class members are at all times.  There are no allegations that any of the individuals has attempted to evade supervision, has tampered with their monitoring device, or has failed to participate in any scheduled check-ins.  To the contrary, all have been in regular contact with ICE and/or its compliance contractor—typically on a weekly basis.

Neither ICE nor ISAP has ever spoken to any of these individuals about any violations, or warned them, or told them they were non-compliant in any manner.  Indeed, ICE and its compliance contractor have advised these individuals of what they can and cannot do to remain

compliant, and class members have relied on that advice.  Unfortunately, ICE's advisals, delivered both orally and in writing, have often been inaccurate and in many cases contradictory to the Court's order.  For example, ICE and/or ISAP have affirmatively told individuals that they may leave the house so long as they are home on specific days, or that they can leave the state so long as they provide advance notice.

The inaccurate information provided by ICE and its contractor is not an excuse for any non-compliance that the Court may find has occurred; the Court's conditions, as set forth in its bail orders, were clear when imposed and should have been followed.  But it is an explanation. There is no indication that these individuals, whom the Court saw fit to admit to bail in the first place, had any intention of disobeying the Court's orders, nor is there any indication that they will not be fully compliant in the future, particularly now that those orders have been forcefully re-emphasized to them through this proceeding.  While it may have been error for class members to assume that ICE and its compliance contractor had the authority to determine the conditions of their release, and were giving them accurate information, it is understandable error that does not indicate disregard for the Court or its orders.  Accordingly, Defendant's motion to revoke bail should be denied for each of these individuals.

Defendant's second request – to be given unilateral control over findings of compliance with the Court's bail orders – should also be denied.  Such a change would remove this Court's necessary oversight and improperly place the Court's authority in ICE's hands instead. Defendant puts forth no good reason for removing these important decisions from the Court's purview.

**LEGAL STANDARD**

The Court's orders on bail state that ICE's arrest of a releasee for alleged bail condition violations shall be based on probable cause and pursuant to a warrant issued by a United States Magistrate Judge or U.S. District Judge.  *See* ECF 44 at 2.  The Court's orders do not specify what standard should govern a subsequent bail revocation proceeding, such as this one. Plaintiffs submit that the most analogous standard can be found in the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq*., which applies to individuals awaiting trial.

Under the Bail Reform Act, after a hearing, a judicial officer may revoke an order of release if the officer finds:

> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that--
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id*. § 3148(b).

Although Plaintiffs agree with Defendants that Title 18 does not apply to civil detention, the criminal pre-trial and civil habeas contexts share many similarities. *See Savino v. Souza*, ___ F.Supp.3d ___, 2020 WL 2404923 (D. Mass. May 12, 2020) at *7 (civil immigration detainees' Fifth Amendment rights are comparable to criminal pre-trial detainees').  In particular, the provisions of the Bail Reform Act cited above that focus beyond whether there have been violations of release conditions, and look to whether the person is likely to abide by conditions of release in the future, are particularly salient here.

## ARGUMENT

## I.     Bail Should Not Be Revoked For Any Of The Named Individuals.

As set forth in detail in the accompanying declarations and exhibits, the individuals whose bail Defendant asks this Court to revoke have not been intentionally disregarding the Court's orders. To the contrary, the declarations show individuals with a strong desire to do everything possible to remain compliant and free on bail.  For most, if not all, of the individuals in question, the primary issue that has arisen is that ICE and its compliance contractor have given them contradictory and inaccurate information regarding their conditions of bail.  Where Plaintiffs' counsel have become aware of such information, counsel have taken prompt steps to reiterate the Court's orders to class members, and to emphasize the importance of strict compliance.[1]  However, counsel have not always been aware of these instances, and the flow of misinformation has not always been stemmed completely.  Thus, for example, ICE's compliance contractor told many of these individuals that they were free to leave their homes following the quarantine period.  Some were informed by ICE, in written instructions, simply to stay within Massachusetts and neighboring states.  Others were informed only that they had to be home on certain days of the week, for a weekly ICE check-in.

Notably, this is not a case where ICE has provided warnings over a period of weeks or months, or made ongoing findings of non-compliance.  *Cf. United States v. De Castro-Font*, 587 F. Supp. 2d 364, 368 (D.P.R. 2008) (bail revoked because pre-trial defendant "repeatedly violated condition [prohibiting contact with potential witnesses] after he was warned by the Court to refrain from such conduct.").  The individuals who are the subject of this Motion had no inkling – until this Motion was filed – that ICE believed they were not compliant with their

---

[1] *See* ECF 185 (Declaration of Oren Sellstrom In Support of Opposition To Defendant's Motion To Reconsider).

conditions of release.  That is because they were regularly checking in with ICE and ISAP, whose specific job is to help ensure compliance.  Indeed, all of them are wearing electronic monitors that they know, and that ICE knows, allow them to be tracked at all times.

What this demonstrates is that, contrary to Defendant's characterization of them as scofflaws who are flouting the Court's orders, these are individuals, many of whom are not sophisticated and/or facing language barriers, who are trying hard to do what is required of them to remain safe and out of detention.  These are not individuals who, in the language of the Bail Reform Act, are "unlikely to abide by any condition or combination of conditions of release." *See supra* at 2.  To the contrary, they are individuals who relied to their detriment on inaccurate statements from ICE and its compliance contractor, but who have otherwise shown themselves willing and committed to abide by any conditions of release.[2]

### A.  Nine Individuals Ordered Released By The Court

**Gabino Del Angel Moran** – Mr. Moran quarantined for 14 days following release from BCHOC.  Since then, he has spoken on a weekly basis with Ms. Obiedo, who is on staff at ISAP, ICE's compliance contractor.  Ms. Obiedo informed Mr. Moran that he could leave his residence, as long as he is home Wednesdays from 8:00 a.m. to 4:00 p.m.  She told him he could visit three states in addition to Massachusetts.  Never during any of his weekly conversations with Ms. Obiedo has she stated that he is violating any conditions of release.  He wears a GPS ankle monitor, so ICE knows where he is at all times.

**Carlos Gutierrez-Deleon** – Mr. Gutierrez-Deleon quarantined for 14 days at his family home in New Bedford.  When he had to attend a medical appointment, he asked an ICE officer in

---

[2] Notably, Defendant has not claimed that any of the individuals whose release on bail it seeks to revoke violated any of ICE or ISAP's conditions.  In fact, those released have acted precisely on the basis of ICE and ISAP's advisals.

advance, who told him that he could leave his home to get food or to go to medical appointments.  He subsequently went to the market next to his home and got food.  His time outside the house other than that has been limited, and he has reiterated that he now knows that he should not leave the house other than the limited exceptions outlined in the Court's bail order.

**Cesar Vargas** – ICE fitted Mr. Vargas with a GPS bracelet upon release.  ISAP gave him written instructions related to the GPS that state: "Participant cannot leave outside 1. Massachusetts 2. New Hampshire 3. Rhode Island 4. Connecticut without immigration authorization."  Mr. Vargas is in regular contact with a staff person at ISAP named Samantha, who informed him that he could leave the house after the 14-day quarantine period and who has reiterated this to him on multiple occasions.  In reliance on this advice, he has left the house to perform errands and care for his mother.  Neither Samantha nor anyone else at ICE or ISAP has ever told him that he was out of compliance with his bail conditions.

**Kavon Mahadeo** – Mr. Mahadeo was told by three ICE agents that he could leave his residence after 14 days.  After he completed his quarantine, he spoke with someone from ISAP who similarly told him that he could move about freely outside his residence, as long as he was home every Tuesday between 8AM and 5PM because that was when ISAP would either conduct a home visit or call him.  ISAP staff told him "that [he] could leave Connecticut and go to New York, New Hampshire, Boston, New Jersey, or Vermont as long as [he] gave her notice."

**Desmond Joseph** – Upon release from BCHOC, Mr. Joseph was taken to Burlington, MA, where he was fitted with a GPS monitor.  The ICE officer who put the monitor on him told him that "he was in charge of monitoring [Mr. Joseph]" during his release, and that he could leave his residence after the 14-day quarantine period.  Mr. Joseph subsequently self-quarantined at his residence.  Before the period ended, he was contacted by ISAP staff, who also told him

that he had to stay home for the quarantine period, "and that [he] was otherwise allowed to leave home." She told him to be at his residence on Monday between 8:00 AM and 5:00 PM and that he could only travel within Massachusetts and six other states. She informed him "it was ICE's responsibility to monitor [his] release and explain to [him] what [he] was and was not allowed to do."

**Pamlar Ferreira** – Ms. Ferreira was fitted for an electronic ankle monitor immediately after release from BCHOC. The ICE officer doing so told her she "was to quarantine for fourteen days and that after those fourteen days, as long as [she] stayed in Brooklyn, [she was] in compliance with [her] conditions of release." The officer told her she would need to wear the monitor for one to two months. Ms. Ferreira subsequently self-quarantined at her residence for 14 days. After that, relying on what ICE had told her, she left her apartment to go to the grocery store, pick up prescriptions, and take her husband to the hospital when he was experiencing neck pain. Ms. Ferreira is 57 years old and suffers from a variety of medical conditions.

**Lucas Valentim** – Mr. Valentim was released on bail on April 22, 2020 and wears an electronic ankle monitor. An ICE officer at the Burlington, VT office explained the 14-day quarantine period to him but said nothing about house arrest. The release paperwork that he has from ICE does not state the Court's bail conditions. He and his wife moved one day before the quarantine period ended, on May 5, 2020. They informed ICE of this and were told that was fine, and they would mark it in his file. ISAP started contacting him on May 17, 2020 and typically call late at night or early in the morning. He has not missed any check-ins with them. He has had problems with his ankle monitor malfunctioning, and went to the Warwick RI office earlier this month to get it fixed. No one at ISAP or ICE has ever told him that he was violating any bail conditions.

8

**Ranferi Ramirez-Maldanado** – Mr. Ramirez-Maldanado was released on bail on April 10, 2020 and has been living in Somerville, MA.  He has regular weekly calls with an ISAP staff person named Samantha, who calls every Tuesday.  ICE has fitted him with a GPS monitor.  On one of his weekly calls with Samantha in early May, he asked her the limits of his GPS, to make sure he was not violating the conditions of his release by going out on his front steps.  She informed him that he could leave his house entirely, as long as he did not leave the state without informing her.  He has continued weekly calls with her, and she has continued to state that he can leave his residence.  Neither she nor anyone else at ISAP or ICE has ever told him that he is in violation of any of the conditions of his release.  His GPS monitor malfunctions, and he has gone to the Burlington ICE office twice to have it fixed.

**Marvin Arreaga** – Mr. Arreaga has been living with his mother in Chelsea, MA.  During the 14-day quarantine period, he left their apartment only to take out the trash.  After that period, he contacted ICE, as he had been told to do.  The ICE officer told him in a voicemail that he could leave the apartment to work.  He subsequently spoke to someone from ISAP and told her that he was leaving his residence to take his mother to medical appointments and volunteer at the Salvation Army.  She "commended [him] for [his] service and encouraged [him] to continue." He was at all times diligent about informing ICE and ISAP of his activities.

### B. One Individual Voluntarily Released By ICE.

**Kokou Aziabo** – Mr. Aziabo, as distinct from all of the other individuals for whom Defendant asks the Court to revoke bail, was not ordered released by the Court and so is not subject to the Court's bail conditions.  Mr. Aziabo was released voluntarily by Defendant on April 3, 2020, as subsequently noted in the Court's order of April 4, 2020.  ECF 44 ("Upon release by respondent of … Kokou Aziabo …, the petition with respect [to] these individuals is

**MOOT**.")  Accordingly, Mr. Aziabo is not subject to the Court's bail conditions.  As shown in the exhibit attached to his declaration, Defendant did apparently put a 14-day quarantine provision in Mr. Aziabo's release papers, but not a house arrest provision.  Since his release, Mr. Aziabo has been in regular contact with ICE and has been available for all check-ins.  He has never been notified by ICE that he is not in compliance with his conditions of release.

In sum, none of these individuals that Defendant wants to re-incarcerate has acted in a manner that indicates any evasion or willful non-compliance with the Court's bail conditions. They have all consistently made themselves available to ICE and its compliance contractor, have been reassured by ICE and its agents that they are doing everything right, and have never been warned or notified that they were in violation of their bail conditions.  They want to remain on bail and are committed to complying with the Court's conditions of release.  In addition, keeping them on bail benefits the class members who are still detained at BCHOC as it avoids increasing the risk of COVID-19 transmission within BCHOC by not adding to the facility's density. Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion as to each of them.[3]

---

[3] Even if this Court were to find any non-compliance, bail revocation would be an extreme remedy.  *Cf*. Bail Reform Act 18 U.S.C. § 3148(b)(2) (unless probable cause of a crime exists, bail revocation only permitted upon a finding that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or "the person is unlikely to abide by any condition or combination of conditions of release.").  To the extent the Court thought necessary, it could impose additional conditions, such as regular ICE check-ins, to ensure compliance.  *Cf. id.* (allowing amendment of conditions to ensure compliance).

**II.     Defendant's Request To Modify The Court's Conditions To Allow ICE To Re-Arrest And Detain Class Members Without Court Permission Should Be Denied.**

Defendant's request to modify the Court's conditions to allow ICE to re-arrest and detain class members without court permission should also be denied.  As this Motion demonstrates, there is a strong need for oversight of such matters from this Court.  This Court knows well the circumstances of release and the individual situations of class members.  Giving ICE *carte blanche* to begin re-arresting released class members without any judicial oversight would be immensely problematic.

Defendant provides no good reason why any such change should occur, citing only the regulatory framework that allows ICE to re-arrest individuals that they themselves have released.  This situation is strikingly different as the Court has ordered the release of those on bail, not ICE, and Defendant does not even attempt to make an argument as to why this Court should be stripped of its authority to make these determinations.  Under the analogous scenario of bail revocation for an alleged violation of a release condition under the Bail Reform Act, individuals are entitled to a hearing before a judicial officer who must find that the violation was proven by the state by clear and convincing evidence and that there is no condition or combination of conditions by which the person is likely to aide.  18 U.S.C. § 3148(b).  The minimal due process protections that are afforded under ICE's regulations are insufficient for the task.  This Court should remain in control of any such bail decisions.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

June 5, 2020

Respectfully Submitted,

/s/ Oren Sellstrom
Oren Nimni (BBO #691821)
Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Ivan Espinoza-Madrigal†

Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 988-0606
onimni@lawyersforcivilrights.org

Grace Choi, Law Student Intern[*]
Kayla Crowell, Law Student Intern[*]
Aseem Mehta, Law Graduate[*]
Alden Pinkham, Law Graduate[*]
Daniel Phillips, Law Graduate[*]
Fernando Quiroz, Law Student Intern[*]
Bianca Rey, Law Student Intern[*]
Megan Yan, Law Graduate[*]
Reena Parikh[†]
Muneer Ahmad[†]
Michael Wishnie (BBO# 568654)

Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
michael.wishnie@ylsclinics.org

Lisa Pirozzolo
John Butts
Vinita Ferrera
Felicia Ellsworth
Nicole M.F. Dooley
Annaleigh Curtis
Michael Brown
Rama Attreya
Gary Howell-Walton
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 021009
Lisa.Pirozzolo@wilmerhale.com

## CERTIFICATE OF SERVICE

---

[†] Admitted *pro hac vice*.
[*] Motion for law student appearances pending.

I hereby certify that, on June 5, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

Date:   June 5, 2020

__/s/ Oren Sellstrom_____
Oren Sellstrom (BBO #569045)