SUPPLEMENTAL DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR IMMACULATA GUARNA-ARMSTRONG

Pursuant to the authority of 28 U.S.C. § 1746, I, Immaculata Guarna-Armstrong the Assistant Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am an Assistant Field Office Director ("AFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO Boston").
2. I have served as an AFOD for approximately nine (9) years. Prior to holding my current position, I served as Supervisory Detention and Deportation Officer four (4) years.
3. Included in my official duties as an AFOD for ICE ERO Boston is the responsibility for managing and monitoring the ICE ERO Boston's roster of aliens on ICE's non-detained docket, including those who are subject to ICE's Alternatives to Detention ("ATD") program. I am familiar with ICE policies and procedures for releasing individuals from ICE custody and providing them with Orders of Recognizance or Orders of Supervision to set forth the terms and conditions of their release from custody.
4. I have experience utilizing ICE systems to obtain information regarding specific aliens subject to ICE's ATD Program. ICE maintains electronic records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this supplemental declaration, I have examined ICE official records, including the Enforce Alien Removal Module ("EARM").

EARM is the ICE electronic database utilized by ERO to maintain information regarding the custody and removal status of aliens. I have also examined the Total Access System. Total Access is an electronic database that allows Deportation Officers and designated contractors to monitor the cases that have been released under the ATD Program. Total Access allows users to monitor participant locations and provides information to determine if violations of the conditions set in the release documentation have occurred.

5. These databases are the electronic records ordinarily relied upon to ascertain an alien's compliance with the ATD program.

6. ICE contracts Behavioral Interventions ("BI") to assist in the monitoring of all ATD participants. BI conducts home visits for ATD participants and schedules meetings with ATD participants at the BI office located at 11 Ray Avenue in Burlington, MA. Currently the BI office is not open to the public and BI specialists are not conducting home visits.

7. In the course of preparing this supplemental declaration, I have examined the official records available to me regarding aliens' compliance with Judge Young's release orders issued in the case of Savino v. Hodgson, 1:20-cv-10617-WGY (D. Mass. 3/27/20).

8. For each alien ordered released by Judge Young, ICE provided such alien with an Order of Recognizance or an Order of Supervision setting forth the terms and conditions of such release, to include the Court ordered terms and conditions.

9. The Orders of Recognizance and Supervision provided to the aliens ordered released by Judge Young included Judge Young's standard bail order that mandated compliance with all conditions deemed appropriate and imposed by ICE and also required that the releasees be fully quarantined for 14 days from date leaving facility to the residence and that during and after the 14-day quarantine, releasees will remain under house arrest and

shall not leave the residence for any reason save to attend immigration proceedings or attend to their own medical needs should those needs be so severe that they have to go to a doctor's' office or hospital (in which case they shall notify ICE as soon as practicable of their medical necessity).

10. ICE ERO Boston officers explained the contents of the Order of Recognizance or Order of Supervision to the aliens ordered released by Judge Young prior to release. ICE also received signatures for such aliens on the Order of Recognizance or Order of Supervision to reflect understanding of the terms and conditions contained within such Orders.
11. The Order of Recognizance or Order of Supervision provides the consequence of a violation of such Order to include revocation of release and re-arrest by ICE.
12. As previously stated, I have directed a number of reports to be run to determine whether the aliens released by the Court have complied with the Court order to fully quarantine for 14 days and to remain under house arrest thereafter. Since my last declaration, I have directed that two additional reports run. The most recent report is current through June 9, 2020.

**New Violator**

13. An additional detainee ordered released by the Court on April 10, 2020, **Jose Alejandro Beltran-Araujo**, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Violations continued after April 26, 2020 with a total of more than 250 violations until on June 10, 2020, when it appears that he severed the strap of his GPS unit and absconded.

14. According to an emergency report from BI, the contractor that monitors the GPS units for ICE, a Tracker Strap Tamper alert for Mr. Beltran-Araujo was generated on June 9, 2020. A Tracker Low battery alert was generated later in the evening on June 9, 2020. BI attempted to contact Mr. Beltran-Araujo via phone but he did not answer. BI left a message with Mr. Beltran-Araujo to contact their office. BI contacted two personal contacts provided by Mr. Beltran-Araujo but both stated they did not know where he was.

15. On June 10, 2020, ICE ERO Hartford contacted the Stamford, CT Police Department to suggest a wellness check at Mr. Beltran-Araujo's last known address due to his recent arrest for violating a protection order, as set forth in detail below. Stamford Police Department officers contacted ICE ERO Hartford to report they had spoken to the landlord at Mr. Beltran-Araujo's last known address and reported that he was not there.

16. ICE ERO Hartford tried to contact Mr. Beltran-Araujo on June 10, 2020 at 8:53AM and the call when straight to voicemail. ICE ERO Hartford contacted Mr. Beltran-Araujo again at 9:02AM and left a message for him in Spanish to contact the BI office immediately.

17. ICE ERO Hartford and BI have not yet recovered Mr. Beltran-Araujo's GPS unit as of June 11, 2020. The last known "hits" as to the location of the GPS are the front yard of his last known address. The battery on the GPS unit is now dead. ICE ERO Hartford confirmed on June 11, 2020 that BI has not had any contact with Mr. Beltran-Araujo as he has not responded to the multiple voice messages left for him.

18. Additionally, Mr. Beltran-Araujo was arrested by the Stamford Police Department on June 8, 2020 and charged with violation of a protective order. According to the police report, officers responded to 18 E. Walnut Street for a report of a female that was "struck

in the past." Officers met with Mr. Beltran-Araujo and the alleged victim. Mr. Beltran-Araujo stated that there was a family gathering in the backyard at 18 E. Walnut Street and he admitted to consuming alcoholic beverages while at the gathering. He denied having a verbal or physical altercation with the alleged victim.

19. The Officers noted that the alleged victim "kept concealing the left side of her face with her long hair [and] appeared nervous." The alleged victim would not admit to any physical abuse by Mr. Beltran-Araujo, but the officer asked her to pull her hair away from her face, and when she did, the officer "observed that her left eye was swollen and she had a visible dark red bruise around her eye like a black eye." She eventually told the officers that "she hit her eye against a door."

20. The valid protection order between Mr. Beltran-Araujo and the victim was issued in September of 2019 after he was arrested and charged with 3 counts of risk of injury to a child and one count of 2nd degree assault and remains active. Nonetheless, Mr. Beltran-Araujo was living with the victim at 18 E. Walnut Street.

21. On September 15, 2019, the Stamford Police Department arrested Mr. Beltran-Araujo for 3 counts of risk of injury to a child and one count of 2nd degree assault. According to the police report, Beltran-Araujo's girlfriend sought medical treatment at Stamford Hospital after he struck her in the head with a glass bottle, causing her to lose consciousness. She stated that he was jealous of her and that this was not the first time he has hit her. She stated that "out of nowhere" he struck her in the head with a bottle from behind. The police report notes that the officers observed a bump on her head, scratches on her face, and a swollen bottom lip. Beltran-Araujo admitted striking the victim in the head with a glass beer bottle in the police report. Additional statements in the police report from

witnesses indicate Beltran-Araujo continued to hit the victim and had to be physically restrained. The victim's three minor children were present during this attack.

22. ICE has no current indication of the whereabouts of Mr. Beltran-Araujo.

**Updates on Previous Violators**

23. As to the other releasees previously identified as violating the Court's release orders, I offer the following updates:

24. As set forth below, violations of the Court's order regarding home confinement continue for a number of releasees over the past three weeks.

25. **Gabino Del Angel Moran** was released on April 10, 2020. As previously stated, he repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Such violations include nineteen separate violations from April 11, 2020 to April 24, 2020, and between nine and seventeen times each day from April 25, 2020 to May 8, 2020. Additionally, violations continued between May 9, 2020 and May 22, 2020 with one hundred twenty-nine additional (129) violations, and up to fifteen violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional one hundred and eighty-one times (181) with more than 20 violations on one day. From June 4, 2020 to June 9, 2020 he continued to violate the Court's order an additional one hundred four (104) times.

26. In regard to **Carlos Gutierrez-Deleon**, released on April 10, 2020, as previously stated, Deleon's ATD compliance report shows repeated violations of the quarantine and house arrest order between April 10, 2020 and May 8, 2020. An updated report shows violations continued between May 9, 2020 and May 22, 2020 with twenty-seven

additional violations and as many as seven violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional twenty-seven times with as many as five violations occurring on one day.

27. As to Mr. Gutierrez-Deleon's claim that an ICE officer advised that he could leave his home for food, ICE is unable to substantiate such claim. There is no "Officer Souza" at the ICE ERO Burlington office. ICE records do indicate that Mr. Gutierrez-Deleon did call on May 1, 2020 to inform that he was going to the hospital, and the ICE records indicate that the ICE officer informed him that he could go to the hospital.

28. From June 4, 2020 to June 9, 2020, he continued to violate the Court's order an additional eleven times.

29. ICE officers have captured the below pictures of him on June 6, 2020 leaving and returning to his residence, and also observed him on June 6, 2020 while outside of America's Market located at 1502 Acushnet Avenue, New Bedford, MA.





30. **Cesar Vargas**, released on April 10, 2020, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Between April 11 and April 25, 2020, there were eight such violations during the quarantine period. Between April 26 to May 8, 2020, there were forty additional violations, with violations occurring each day. Additionally, violations continued between May 9, 2020 and May 22, 2020 with forty-five subsequent violations and as many as eight violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional thirty-eight times with up to seven violations per day on three occasions. Between June 4, 2020 and June 9, 2020 there were **no violations** of the Court's order recorded.

31. **Kavon Mahadeo**, released on April 10, 2020, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Between April 11 and April 25, 2020, there were one hundred and five (105) such violations during the quarantine period. Between April 26 to May 8, 2020, there were between four and nineteen violations every day. Violations continued between May 9, 2020 and May 22, 2020 with one hundred twenty-nine (129) subsequent violations and as many as fifteen violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional seventy-three times with up to ten violations per day on three occasions. Between June 4, 2020 and June 9, 2020, he continued to violate the Court's order an additional thirty-five times.

32. I have reviewed and disagree with his claim that prior to his release a male ICE "agent told us that we *could* leave the house after 14 days." As noted below, I have confirmed

with the ICE ERO Officers that have been in contact with the releasees that such Officers, if ever asked about release conditions or home confinement, directed the releasees to comply with the Court's order of release.

33. Further, I note that Mr. Mahadeo's release paperwork is signed by two female ICE officers, Supervisory Detention and Deportation Officer Yolanda Marfissi and Deportation Officer Jennifer Saravia.

34. **Desmond Joseph**, released on April 10, 2020, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Such violations included twelve violations between April 11 and April 25, 2020 during the quarantine period, and daily violations of between six and twelve times each day from April 26 to May 8, 2020. Additionally, violations continued between May 9, 2020 and May 22, 2020 with seventy-one additional violations and as many as ten violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional forty-four times with up to eight violations on one day. Between June 4, 2020 and June 8, 2020, he continued to violate the Court's order an additional five times.

35. I have reviewed and disagree with his claim that a male ICE officer told him that he "could leave my house after the 14-day quarantine period, despite the conditions stated on my release paperwork." As noted below, I have confirmed with the ICE ERO Officers that have been in contact with the releasees that such Officers, if ever asked about release conditions or home confinement, directed the releasees to comply with the Court's order of release.

36. Further, I do note that Mr. Joseph's release paperwork is signed by two female ICE officers, Supervisory Detention and Deportation Officer Yolanda Marfissi and Deportation Officer Jennifer Saravia.

37. **Pamlar Ferreira,** released on April 10, 2020, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Such violations included twenty-two violations between April 11 and April 25, 2020 during the quarantine period, and twenty-five violations from April 26 to May 8, 2020. Violations continued between May 9, 2020 and May 22, 2020 with thirty-five subsequent violations, and up to five violations occurring on one day. Between May 23, 2020 and June 3, 2020, she violated the Court's order and additional fifty-four times with more than five violations per day on six days. Between June 4, 2020 and June 9, 2020 there were **no violations** of the Court's order recorded.

38. I have reviewed and disagree with Ms. Ferreira's claim that a male ICE officer told her that she could leave her residence after 14 days. As noted below, I have confirmed with the ICE ERO Officers that have been in contact with the releasees that such Officers, if ever asked about release conditions or home confinement, directed the releasees to comply with the Court's order of release.

39. Further, I do note that Ms. Ferreira's release paperwork is signed by two female ICE officers, Supervisory Detention and Deportation Officer Yolanda Marfissi and Deportation Officer Erin Waters.

40. **Lucas Valentim**, released on April 22, 2020, violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to

remain under house arrest thereafter. Such violations included eleven violations on May 5 and May 6, 2020. Violations continued between May 9, 2020 and May 22, 2020 with thirty additional violations, and up to seven violations occurring on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order twenty times with up to six violations on one day.

41. On June 8, 2020, he violated the Court's order an additional eight times. On this date, Mr. Valentim called BI to ask if he could leave his house to be tested for COVID-19. The BI specialist authorized his absence from his house for a medical visit. Beginning at 2:53 PM, GPS tracking points noted that he travelled to Norwood, MA, Burlington, MA (two different addresses), Attleboro, MA, and Pawtucket, RI (four different addresses not identified as his residence). It should also be noted that none of the addresses were medical facilities or pharmacies where medical testing is typically conducted.

42. I am also aware that Mr. Valentim claims that ICE did not provide him with any written notification of the Court's order that he remain in his house. Mr. Valentim provided 3 pages of his Order of Recognizance to support this claim. However, his Order of Recognizance consisted of five pages, including page five which included the Court's order as set forth below:

U.S. Department of Homeland Security — Continuation Page for Form I-220A

| Alien's Name | File Number | Date |
| --- | --- | --- |
| VALENTIM, LUCAS | 216 305 198<br>Event No: PRO2003000083 | 04/22/2020 |

ADDITIONAL CONDITIONS

--------------------

(1)

Releasee will be taken from the facility to the place of residence previously identified to ICE;

(2)

Releasees are to be fully quarantined for 14 days from date leaving facility to the residence;

(3)

During and after the 14-day quarantine, releasees will remain under house arrest and shall not leave the residence for any reason [illegible] to attend immigration proceedings or attend to their own medical needs should those needs be so severe that they have to go to a doctor's office or hospital (in which case they shall notify ICE as soon as practicable of their medical necessity).

(4)

Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) Program as designated by the Department of Homeland Security. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew. Failure to comply with the requirements of the ATD program may result in a redetermination of your release conditions or your arrest and detention. If fitted with a GPS tracking ankle bracelet, do not tamper with or remove the device. Tampering with or damaging the device may result in your arrest, detention, and prosecution under 18 U.S.C. 1361.

43. **Ranferi Ramirez-Maldonado**, released on April 10, 2020, violated the Court's bail order by failing to remain under house arrest after the quarantine period. Such violations include seven separate occasions between April 27, 2020 and May 6, 2020. Violations continued between May 8, 2020 and May 22, 2020 with twenty-four subsequent violations. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional ten times. On June 8, 2020, he violated the Court's order an additional two times.

44. **Marvin Arreaga**, released on April 10, 2020, repeatedly violated the Court's bail order by failing to remain quarantined for the 14-day period immediately following release and by failing to remain under house arrest thereafter. Such violations included twelve violations between April 11 and April 25, 2020 during the quarantine period, and forty-eight violations from April 26 to May 6, 2020. Violations continued between May 7, 2020 and May 22, 2020 with seventy additional violations, and up to nine violations on one day. Between May 23, 2020 and June 3, 2020, he violated the Court's order an additional sixty-one times with more than five violations per day on ten days.

45. ICE does have an electronic record of receiving a call from Mr. Arreaga at which time he asked if he could throw the trash away at his residence. However, ICE does not have any electronic record of receiving a call from him in which he asked if he could leave his house for work.

46. Between June 4, 2020 and June 8, 2020, he continued to violate the Court's order an additional twenty-one times.

47. On June 6, 2020, ICE officers captured the below photo of him at a workplace located at 473-479 Quincy Avenue in Quincy, MA.



48. As noted above, I have confirmed with the ICE ERO Officers that have been in contact with the releasees that such Officers, if ever asked about release conditions or home confinement, directed the releasees to comply with the Court's order of release.

49. I have also contacted the BI offices that provide assistance to ICE in monitoring the ATD program. Based upon this contact, I have learned that BI contractors may have provided information contrary to the Court's order of home confinement if asked by a number of the below releasees.

50. Attached to this declaration is a spreadsheet containing information regarding the violations.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the 12th day of June, 2020

Immaculata Guarna-Armstrong
Assistant Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts