UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
MARIA ALEJANDRA CELIMEN SAVINO      )
and JULIO CESAR MEDEIROS NEVES,     )
                                    )
Petitioners-Plaintiffs,             )
                                    )     20-cv-10617 WGY
    v.                              )
                                    )
THOMAS HODGSON, et al.,             )
                                    )
    Respondents-Defendants.         )
_____ )

The Court has asked why Plaintiffs count 33 detainees with significant medical conditions and Defendants only count ten. There are several reasons, but two stand out: first, Defendants took the class members at their word when they told the medical staff at the Bristol County House of Corrections ("BCHOC") what their medical history was. And, for many of the 23 counted by Plaintiffs but not by Defendants, the detainees reported no significant medical issues. Defendants are not in a position to second guess detainees who deny medical issues and, as many have done, who refuse a physical examination.

Second, Plaintiffs stretch to find a medical issue for every detainee in their ongoing pursuit of universal release. As they have from the outset of the litigation, Plaintiffs continue to claim that every detainee suffers from some medical condition which makes them particularly susceptible to COVID-19. For example, the stress of being detained is a sufficient ground for their release, according to Plaintiffs. Neither the CDC, nor many other courts, have supported such a broad approach and neither should this Court.

Plaintiffs claim that the mere fact of detention, without anything else, is a sufficient stressor that will lead to profound mental and physical health impacts. *See* Plaintiffs' Briefing Regarding Medically Vulnerable Class Members, June 10, 2020, dkt. # , at p. 4 (hereinafter,

Case 1:20-cv-10617-WGY   Document 235   Filed 06/24/20   Page 2 of 16

"Plaintiff's Medical Brf."). Under this approach, no one could, or should, be detained or incarcerated ever. Plaintiffs, and particularly Dr. Keller, prove too much. Suffice it to say that neither society nor the courts are prepared for the wholesale release of all detainees and inmates that Dr. Keller's opinion requires.[1]

> Medical experts have emphasized that the CDC high-risk category of immunodeficiency can be caused by a number of different factors. In addition to the conditions listed above, profound stress, mental illness, and/or past history of drug or alcohol abuse are all known to suppress the immune system, thus increasing the likelihood that individuals with these conditions will fall into that CDC high-risk category. For instance, as a result of profound stress and helplessness, immigrant detainees are at risk of having suppressed immune systems putting them at higher risk than the general population of contracting and potentially having more serious infections. Stress and its link to immunosuppression are well documented in the medical literature.

Plaintiff's Medical Brf. at   .

One of the subtle twists that Plaintiffs seek to impose on the discussion is the omission of a critical phrase from the CDC's definition of conditions which put people at a higher risk from COVID-19. The CDC lists a number of conditions that may put a person at a higher risk

---

[1] Plaintiffs cannot limit the broad implications of Dr. Keller's speculative and overreaching declaration (dkt. 12-1) by saying he was addressing immigrant detainees only. His core argument is that detention is so stressful that it will (not might) produce profound psychological and physical harm applies equally to criminal inmates. While it is certainly true that having one's liberty is restricted is stressful, the remainder of his syllogism is more controversial and, in any event, such stress and its effects appear to be a necessary cost in the calculation made by our lawmakers. The lawmakers look not only at the individuals detained, but the greater societal interests which mandate such detention. It is not simply whether every detained or incarcerated person would be happier if they were released, although Dr. Keller's and Plaintiffs' approach comes very close to such a simplistic reduction – particularly given that *none* of the detainees have COVID-19 and the virus has been kept out of the detainee population for almost four months.

**under a heading specifying** *if the condition is uncontrolled*.  Thus, diabetes, liver disease or asthma each may be a risk factor, but only if they are uncontrolled (more on asthma below).

Asthma puts a person at a higher risk for COVID-19 *only* if the asthma is not well controlled, according to the CDC (as cited in Plaintiffs' Declaration of Dr. Carrie Redlich, ¶ 2.  It appears that Dr. Redlich is suggesting that moderate to severe asthma, without regard to how well controlled it is, puts a person at higher risk.  That is inconsistent with the CDC website that she cites.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed 6/16/20).  In this vein, Dr. Redlich's statement that the severity of a person's asthma should be measured "without medication" is the exact opposite of what the cited source says.  Dr. Redlich says: "According to the NAEPP, the severity of the class of asthma is based on the most severe category in which any of the components occur and asthma symptoms should be assessed when based on when one is not using an inhaler or other asthma medication." Declaration of Dr. Carrie Redlich, ¶ 7.  Apart from the tortured syntax in Dr. Redlich's statement, what NAEPP actually says in the notes to the table cited is:  "For population-based evaluations, clinical research, or characterization of a patient's overall asthma severity *after* control is achieved."  National Heart, Lung, and Blood Institute, Expert Panel Report 3: Guidelines for the Diagnosis and Management of Asthma, (August 28, 2007).  https://www.ncbi.nlm.nih.gov/ books/ NBK7232/), figure 3-4c (emphasis supplied).  This is the opposite of Dr. Carrie Redlich's statement, which is absurd, because it is medically and ethically impermissible to withhold medications to determine how bad a patient's asthma would be without the medications.  But more importantly, that is simply not what the expert source she cites says.

3

Moreover, her declaration is filled with speculation. For example, she says "Incarceration can exacerbate asthma, as well, due to multiple factors in prisons, including poor ventilation, crowding, temperature extremes, and dilapidated buildings." *Id.,* at ¶ 13. But there is zero evidence that any of those factors are at play at BCHOC. Once again, we have another expert who not only is totally unfamiliar with the physical setting at BCHOC, she is also unfamiliar with the care being provided by CPS at BCHOC and she knows nothing about any individual detainee. She says "If the individual's asthma interferes with some limitation with their ability to maintain normal activities (including exercise and other physical activity and attendance at work or school), this is an indicator that the individual experiences at least moderate asthma." *Id.* at ¶ 11. The topic at hand is civil detainees, and all Dr. Redlich offers is speculation about if they have some limitations of their activity such as at *work* or *school*. The Court should disregard her declaration entirely.

In sum, the difference of 23 detainees on the list from Plaintiffs and the list from Defendants is explained by Plaintiffs' expansion of the conditions which qualify as conditions of concern under CDC and ICE guidance and the class members have either withheld information from BCHOC/CPS or they are fabricating now (with clear motive to secure their release).

**SPECIFIC DETAINEES**[2]

### Oscar Alvarez-Silva

<u>What Plaintiffs claim</u>:  Mr. Silva suffers from high blood pressure and diabetes.

<u>What BCHOC knows</u>:  During his intake on 3/12/2020, Mr. Alvarez-Silva told CPS staff that he had no medical history to report and no complaints at the time. He denied taking any prescription medication.  Mr. Alvarez-Silva refused an initial physical exam on 03/25/2020. Diabetes is a condition that the facility would absolutely expect, and want, to be made aware of. In light of his denial of either diabetes or high blood pressure at intake, it is puzzling what the source of these alleged conditions is.[3]  Moreover, because he refused a physical, there was no opportunity to determine what his blood pressure is.  It is unclear why, or on what evidence, Plaintiffs claim that he has either condition.

### Segundo Armijos

<u>What Plaintiffs claim</u>: Mr. Armijos suffers from depression, anxiety, and severe headaches.

<u>What BCHOC knows</u>:  At his intake on 1/8/2020, Mr. Armijos said he had no medical history or complaints at that time. Mr. Armijos also stated that he had no history of mental health issues or complaints at the time. He refused his initial physical exam on 1/16/2020.  He submitted a single sick slip completed on 3/29/2020 complaining of a headache. He was seen by a medical care provider on 4/14/2020 for a lump on his left thigh. Mr. Armijos does not have any mental health diagnosis that BCHOC has been made aware of.  If his headaches were severe, it would be expected that he would have sought treatment on more than one occasion. His new claims of anxiety and depression do not justify his release.

---

[2] Plaintiffs have taken the recent round of briefing as an opportunity to re-argue bail considerations in addition to medical conditions.  That is not what Defendants understood the Court to be seeking, and Defendants rely on their prior statements submitted when each detainee came up for initial consideration. Suffice it to say, Defendants differ with Plaintiffs' characterizations of the risks presented by the detainees for release but, as stated multiple times, there is not a single detainee who presents sufficient risk that Plaintiffs would concede he or she should be held.

[3] Here again, we have a detainee that has violated a restraining order and Plaintiffs think that is okay because he is contesting the violation.  Plaintiff's  Medical Brf. at p. 8.

### Smith Augustin

What Plaintiffs claim: He suffers from anxiety, which places him at a higher risk of becoming severely ill if he contracts COVID-19. In addition, he had an abnormal blood test result performed by the Medical Unit with little communication about the status of his health.

What BCHOC knows: During the intake, Mr. Augustin reported no medical history or complaints. His last physical exam was on 11/21/2019. Blood work was ordered and results were received on 11/22/2019. His cholesterol was mildly elevated. He was notified of the results on 11/25/2019, and lifestyle modifications were recommended, including weight loss, exercise and care about his diet. Anxiety is an insufficient basis for a medical release on COVID-19 grounds.

### Marco Battistotti

What Plaintiffs claim: Mr. Battistotti presents a higher risk of illness from COVID-19 because of medical and mental health conditions, including asthma and PTSD.

What BCHOC knows: During his intake on 3/5/20, Mr. Battistotti reported a history of thyroid cancer in 2010 that was resolved, a right eye implant, upper and lower dental implants, and a torn meniscus in his right knee. He reported no prescription medications. During his physical exam on 3/9/20, Battistotti again reported a history of thyroid cancer in 2010, a thyroidectomy, right knee torn meniscus, a right foot fracture, and upper and lower dental implants. Mr. Battistotti has no mental health diagnosis and no diagnosis of asthma. He had blood work done on 6/16/20 and his thyroid level was normal. He has sought no medical attention for either asthma or mental health since being detained at BCHOC. It is unclear what evidence Plaintiffs have of the claimed conditions for him.

### Darwin Bonilla-Garcia

What Plaintiffs claim: Mr. Bonilla Garcia suffers from Post-Traumatic Stress Disorder (PTSD), intellectual disability, and Major Depressive Disorder, which may exacerbate illness if he were to contract COVID-19.

What BCHOC knows: Mr. Bonilla Garcia has a diagnosis of unspecified depressive disorder. As stated above, Defendants do not believe this is a sufficient basis for a medical release.

6

**Edlander Darocha**

<u>What Plaintiffs claim</u>: history of asthma and bronchitis.

<u>What BCHOC knows</u>: During his intake on 9/22/2020, this detainee reported no past medical history. Mr. Darocha had an initial physical exam on 9/29/2020 and denied any past medical history.  He has not sought medical treatment for either asthma or bronchitis while detained at BCHOC in the last nine months.

**==Woodly Dodieu==**

<u>What Plaintiffs claim</u>: He has had asthma since he was a young child.  He was also diagnosed with diabetes nearly ten years ago.  Mr. Dodieu suffers from post-traumatic stress disorder, which has worsened since his detention.

<u>What BCHOC knows</u>: Mr. Dodieu is one of the detainees as to whom the Court expressed particular interest. During his intake on 11/4/2019, Mr. Dodieu stated that he had no medical history and no complaints at the time and denied taking any prescription medication. Similarly, at his initial physical exam on 11/14/2019 the detainee reported no past medical history. Mr. Dodieu does not have a mental health diagnosis.  He has not sought medical treatment for either asthma or diabetes in the last seven months at BCHOC.

**Isaac Doe**

<u>What Plaintiffs claim</u>: breathing complications

<u>What BCHOC knows</u>:  During his intake on 9/5/2019, Mr. Doe denied any medical conditions. Similarly, at his initial physical exam on 9/12/19 he also reported no past medical history.  What his "breathing complications" are is unclear and since he neither reported them nor sought treatment in relation to them, this is insufficient to justify his release.

**Nuelson Gomes**

<u>What Plaintiffs claim</u>:  sinus problems that cause headaches and difficulty breathing.

<u>What BCHOC knows</u>:  During his initial intake on 11/7/2018, Mr. Gomes denied any medical history or complaints at the time. At his last physical exam on 3/2/2020, he again denied any past medical history. Mr. Gomes has not been prescribed any medication. Headaches and a sinus issue (as to which there is no evidence of recent occurrence) are not comorbidities under CDC guidelines. This is insufficient as a basis for release.

**Abelardo Gonzalez Victorio**

<u>What Plaintiffs claim</u>: depression.

<u>What BCHOC knows</u>: During his initial intake on 9/19/2019, Mr. Gonzalez Victorio reported no medical history and no mental health history or complaints at the time. He has no mental health diagnosis. Depression, even if it exists, is an insufficient ground for release.

**Juan Carlos Illigachi-Shigla**

<u>What Plaintiffs claim</u>: Mr. Illigachi-Shigla is a former smoker. Mr. Illicachi-Shigla also experiences severe panic attacks as a result of his profound stress. These attacks often include shortness of breath, further heightening his risk of serious respiratory illness and complications from COVID-19.

<u>What BCHOC knows</u>:  Mr. Illigachi-Shigla is no longer detained at BCHOC.

**Garang Laul**

<u>What Plaintiffs claim</u>: Mr. Laul suffers from severe asthma, which puts him at higher risk for serious illness if he contracts COVID-19. His risk is exacerbated by hypertension and mental health conditions including post-traumatic stress disorder and anxiety resulting from his traumatic childhood.

<u>What BCHOC knows</u>:  Mr. Laul has a diagnosis of asthma and PTSD.  He does not have a diagnosis for hypertension.  There is no evidence that his asthma is uncontrolled, however. Therefore he should not be given a medical release.

**Oscar Hernandez-Andino**

<u>What Plaintiffs claim</u>: difficulty breathing as a result of a chest wound.

<u>What BCHOC knows</u>: During his intake on 2/6/2020, Mr. Hernandez-Andino reported a medical history of a back injury due to a gun shot wound but reported no complaints at the time. He refused his initial physical exam on 2/18/2020.  There is insufficient evidence of any impact on his breathing to justify his release.

**Miguel Ixcana Lucas:**

<u>What Plaintiffs claim</u>: heart condition and chest pain.

<u>What BCHOC knows</u>:  During his initial physical exam on 3/09/2020, Mr. Ixcana Lucas reported that he had experienced chest pain in the past and that he was seen at a local hospital two months prior. Hospital records dated 1/14/2020 from Charlton Memorial Hospital were

8

reviewed by BCHOC medical staff and all tests were normal (EKG, head CT scan, laboratory test results).  Mr. Ixcana Lucas complained of chest pain on 5/14/2020 at BCHOC.  An EKG was performed and the results were normal. He does not appear from the evidence to have a heard condition.[4]

### German Miranda-Tapia

What Plaintiffs claim:  Miranda-Tapia has a number of medical conditions which put him at risk for serious illness or death if he contracts COVID-19, including a thyroid condition and the fact that he has only one kidney as a result of the removal of a cancerous tumor.

What BCHOC knows: During his initial physical exam on 3/9/2020, Mr. Miranda-Tapia reported a nephrectomy due to tumors 25 years prior and "thyroid issues." He reported no medications. Labs tests were ordered to check his kidney function and thyroid levels.  All results were normal.

### Alessandro Monteiro

What Plaintiffs claim: Mr. Monteiro has liver problems.

What BCHOC knows:  Mr. Monteiro is one of the detainees originally identified by Defendants as having a possible comorbidity for COVID-19 as to whom the Court expressed particular interest.  Mr. Monteiro did not report liver problems to BCHOC, but he has hepatitis C.  He is not under any current medical treatment nor in need of any that BCHOC is aware of.

### Terrano Mullings

What Plaintiffs claim: suffers from asthma, a persistent cough, and is now experiencing other health symptoms.

What BCHOC knows:  During his intake on 9/24/2019, Mr. Mullings reported no medical history or complaints. During his initial physical exam on 9/30/19, he also denied any medical issues.

### Alois Mutare:

What Plaintiffs claim: He is diabetic and has high blood pressure.

---

[4] According to Plaintiffs, it is okay that he assaulted his wife because "she suffers from mental health problems and he reports she was off her medications at the time of the incident at issue."  Plaintiff's  Medical Brf. at p. 7.

<u>What BCHOC knows</u>: Mr. Mutare is no longer at BCHOC as of June 3, 2020. Moreover, the documents attached as Exhibit B to Plaintiffs' filing for Mr. Mutare do not support their contentions. For example, his blood pressure in the medical records submitted by Plaintiffs was not high. He does appear to be diabetic. But he indicated "no" for all risk factors, denying high blood pressure and diabetes in his intake form. He was transported to the hospital on 6/2/20 due to an abnormal EKG. Due to the PI, he could not be returned to Bristol so ICE therefore transferred him to Franklin County HOC.

**Jerry Ofushene**:

<u>What Plaintiffs claim</u>: Plaintiffs claim he has asthma, was a long-time smoker, and suffers from depression. *See* Ex. C to Sellstrom declaration.

<u>What BCHOC knows</u>: Mr.Ofushene is one of the detainees originally identified by Defendants as having a possible comorbidity for COVID-19. At his initial physical exam on 05/20/2019, Mr. Ofushene denied any past medical history. During a physical exam on 4/28/2020, he reported a history of asthma. He listed only 2 pack years for smoking, denied asthma, wheezing or use of an inhaler on 4/28/20. *See* Sellstrom decl. at Ex. C. On 3/31/20, he requested to see a doctor about his asthma.

**Jhony Bonilla Ochoa**

<u>What Plaintiffs claim</u>: He has chronic severe asthma and a long history of smoking, both of which put him at higher risk for severe illness from COVID-19. Mr. Bonilla Ochoa experiences shortness of breath and has to use his inhaler multiple times per day. His asthma prevents him from exercising and makes it difficult for him to even complete his daily jobs of cleaning tables and preparing food. Approximately twice a week, Mr. Bonilla Ochoa will experience these symptoms at night, and has to get up from bed to catch his breath.

<u>What BCHOC knows</u>: During his intake on 3/3/2020, Mr. Bonilla Ochoa reported no medical history and no complaints and reported that he was never a smoker. During his initial physical exam, he denied chronic conditions and denied smoking. He has not been prescribed an inhaler. He does not appear to have a diagnosis of asthma and has never reported inhaler use, waking up out of breath or shortness of breath while working to BCHOC. .

**Mario Pillco-Morocho**

<u>What Plaintiffs claim</u>: Mr. Pillco-Morocho presents a higher risk for severe illness or death if he contracts COVID-19 because he suffers from asthma.

<u>What BCHOC knows</u>: During his intake on 12/06/19, Mr. Pillco-Morocho reported no medical history and no prescription medications. During his initial physical exam on 12/10/19, he denied any past medical history or prescriptions for medications. He has a pending charge for domestic assault.

### Edwin Villalta-Cruz

What Plaintiffs claim: anxiety and stress

What BCHOC knows: BCHO reports that Mr. Villalta-Cruz no longer at this facility since June 9, 2020.

### Amaury Vladimir Reyes-Batista

What Plaintiffs claim: They claim that Mr. Reyes-Batista is immunocompromised and has suffered from tuberculosis from a young age. Mr. Reyes-Batista also suffers from a heart arrythmia. Our records show only mild hypertension controlled by medication.

What BCHOC knows: Mr. Reyes-Batista is one of the detainees originally identified by Defendants as having a possible comorbidity for COVID-19 as to whom the Court expressed particular interest. During his intake on 11/26/19, Mr. Reyes-Batista reported no medical history other than treatment for tuberculosis in 2015, and no prescription medications. A chest x-ray performed on 11/29/19 showed "no evidence of active tuberculosis." He refused an initial physical exam on 12/9/19. During a physical exam on 4/28/20, Mr. Reyes-Batista reported history of heart disease with an irregular rhythm, although this was not mentioned in his initial reporting at intake. EKGs performed on 4/7/20 and 4/22/20 were described as "non-conclusive," i.e., no issues noted. Detainee has a diagnosis of hypertension.

### Juan Sanchez

What Plaintiffs claim: Mr. Sanchez suffers from depression, post-traumatic stress disorder, insomnia, and anxiety.

What BCHOC knows: Mr. Sanchez's mental health diagnosis is unspecified depressive disorder.

### Carlos Sis Duarte

What Plaintiffs claim: Mr. Sis Duarte has pulmonary issues for which he has previously been hospitalized and has taken medication. He is also a smoker.

What BCHOC knows: During his intake on 2/29/20, Mr. Sis Duarte reported that he is a former smoker and has no other medical history. During his initial physical exam on 03/12/20 he reported no past medical issues.

### Hamzah Shaban

What Plaintiffs claim: He suffers from depression and post-traumatic stress disorder

<u>What BCHOC knows</u>:  Mr. Shaban does not have a mental health diagnosis, and has not reported depression or PTSD to BCHOC.

### **Aaron Soe**

<u>What Plaintiffs claim</u>: He is at a higher risk for significant complications if he contracts the COVID-19 virus because of his current medical conditions including breathing complications

<u>What BCHOC knows</u>:  During his initial physical exam on 10/20/19, Mr. Soe reported asthma as a child with no recent attacks.  He did not report any current breathing issues.

### **Nathanael Ssekabazi**

<u>What Plaintiffs claim</u>: PTSD, Major Depressive Disorder, and Alcohol Use Disorder. He is also still facing multiple complications from a serious car accident including seizures, headaches, cognitive difficulties, and complications from a fractured pelvis.

<u>What BCHOC knows</u>:  During his intake on 11/15/19, Mr. Ssekabazi reported that he suffers from migraine headaches. At his initial physical exam on 11/27/19, he again reported headaches, a motor vehicle accident in 2017 that resulted in a brain bleed and a single seizure episode.  He denied any mental health issues, substance abuse and did not report cognitive difficulties or lasting effects from his car accident.

### **Brayan Tarax-Villeda**

<u>What Plaintiffs claim</u>: Mr. Tarax-Villeda suffers from severe asthma, which puts him at serious risk of severe illness or death if he contracts COVID-19, according to CDC guidelines.

<u>What BCHOC knows</u>:  During his intake on  3/27/20, Mr. Tarax-Villada stated he had no medical history to report.  He said the same during his initial physical exam on 4/06/20.

### **Eduardo Tejada-Alarcon**

<u>What Plaintiffs claim</u>: Mr. Tejada suffers from fear, anxiety, and stress, all of which place him at higher risk of severe illness if he contracts COVID-19. He also has had epilepsy and urinary tract infections.

<u>What BCHOC knows</u>: Mr. Tejada-Alarcon reported no medical history and no prescription medication during his intake on 3/3/20. On 03/18/20, he refused an initial physical exam.

**Rafael Perdomo Vizcaino**

<u>What Plaintiffs claim</u>: Since being detained, Mr. Perdomo Vizcaino has been suffering from a bacterial infection that compromises his immune system. Mr. Perdomo Vizcaino was treated for methicillin-resistant Staphylococcus aureus ("MRSA").  MRSA is a bacterial infection that "can permanently harm immune function."

<u>What BCHOC knows</u>: During his intake on 11/4/19, Mr. Perdomo Vizcaino reported no medical history. During his initial physical exam on 11/13/2020, he also reported no medical history. He was treated one time with antibiotics and dressing changes for lumps on his buttocks between 2/18-3/9/20.

**Lloyd Wafula**:

<u>What Plaintiffs claim</u>: claim is that he has stage 2 hypertension, a heart murmur, and symptoms suggestive of a more serious heart issue.

<u>What BCHOC knows</u>: Mr. Wafula has a mental health diagnosis as of 5/29/20 of PTSD and personality disorder, unspecified. BCHOC medical records do not support any of the claimed conditions stated by Plaintiffs, however.  He complained of chest pain on 3/6/20, was fully examined, there were no signs or symptoms of a heart attack (no shortness of breath, no radiation of pain, no nausea, no sweating).  He had multiple EKGs and they were all normal.  A cardiology consultation found no evidence of a serious condition:  "provider suspects anxiety or acid reflux."  *See* Ex. A to Sellstrom decl.

### C. RESPONSES TO COURT'S INQUIRIES

#### 1. Isolation of Staff Who Have Had Close Contact

The Court has inquired as to whether BCHOC has been complying with CDC guidance which states "[s]taff identified as close contacts of a COVID-19 case should self-quarantine at home for 14 days and may return to work if symptoms do not develop;" https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (last accessed June 24, 2020).  As stated in the attached declaration of Yvonne Murphy, this has been the practice of BCHOC since at least March of 2020.  Reporting of such close contact with a person known to be infected with COVID-19 is primarily the responsibility of the individual staff member, however, because BCSO management do not have a means of knowing what close contacts a

13

staff member has had outside its facilities. Staff have been instructed to self-quarantine if they have had a close contact, and if there has been a known close contact within the facility, staff have been sent home to self-quarantine for 14 days or until they have been tested and received a negative result. See Exhibit 1 hereto, ¶ 3.[5]

### 2. Reporting of Significant Medical Conditions to ICE

Additionally, as previously reported to the Court (*see* Declaration of Sheriff Thomas Hodgson, ¶ 6(k)), since February of this year, all inmates and detainees who have chronic illnesses which would make them immune-compromised, or who are over sixty years of age are being specially monitored by officers and health personnel for the development of any symptoms consistent with COVID-19. CPS is continually monitoring the on-site situation and developing emergency plans for cohorting high risk inmates.

BCSO promptly reports to ICE any known illnesses or underlying conditions, as defined in CDC and ICE guidance, that might make a detainee more susceptible to a COVID-19 infection or which might exacerbate the effects of such an infection. BCSO's medical contractor, CPS, does a medical evaluation of each new detainee brought into the facility to screen for a wide range of medical conditions. Both specific and open-ended questions are asked to determine whether the new detainee has any underlying medical conditions, any significant past medical history, any current complaints, concerns or medications. Additionally, each detainee is scheduled for a physical examination. Detainees can, and often do, refuse to cooperate with either the intake procedure, the physical examination, or both.

---

[5] In addition, although it is unclear if the Court was inquiring as to ICE staff, ICE policy regarding their staff who have had close contact with an infected person is attached hereto.

However, detainees are encouraged to provide complete information and they are instructed about the procedure for submitting a medical slip if they have a problem. They are also instructed to alert BCHOC staff if they have what they believe to be a medical emergency. There is medical staff at the facility 24 hours, seven days a week. We also have the ability to send a detainee to one of the local hospital emergency rooms if staff feels it is warranted. Finally, we arrange for consultation by outside doctors if a problem is not routine and/or testing and evaluation is required that cannot be done at the facility.

### 3. ICE Reviews All Detainees' Medical Conditions for Possible Release

With regard to the class members, ICE has reviewed all detainees as to whom it is aware of medical conditions which could increase the detainee's risk from COVID-19 for possible release. *See* Declaration of Alan Greenbaum, attached hereto as Exhibit 2. ICE cannot review a detainee for medical release if the detainee does not provide the necessary information to ICE or to BCHOC/CPS, however.

### 4. Plaintiffs' Claims Regarding the Conditions at BCHOC Are False

Due to time constraints, and given that the Court has not requested further briefing on the issue of the conditions at BCHOC, Defendants will not address Plaintiffs' claims at this time. They are the same claims that they have made previously and which Defendants have disputed with declarations. Defendants deny all of the claims made regarding unsanitary conditions at BCHOC.

                        Respectfully submitted,

                        ANDREW E. LELLING,
                        United States Attorney

By: */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
thomas.kanwit@usdoj.gov

June 24, 2020

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Thomas E. Kanwit*

Dated:   June 24, 2020