DECLARATION OF DEPORTATION OFFICER

<u>CASEY C. HYDE</u>

Pursuant to the authority of 28 U.S.C. § 1746, I, Casey C. Hyde, a Deportation Officer for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am a Deportation Officer ("DO") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE"). I have served as a DO for 1.5 years.

2. Included in my official duties as a DO in Burlington, Massachusetts is the responsibility for assisting the scheduling and execution of removal orders for aliens in ICE custody. I am familiar with ICE policies and procedures for detaining individuals in order to effectuate removal orders as well as releasing individuals pursuant to Orders of Recognizance or Orders of Supervision and have experience utilizing ICE record systems to obtain information regarding specific aliens.

3. I have experience utilizing ICE record systems to obtain information regarding specific aliens. ICE maintains electronic and paper records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this declaration, I have examined ICE official records, including the Enforce Alien Removal Module ("EARM"). EARM is the ICE electronic database utilized by ERO to maintain information regarding the custody and removal status of aliens.

4. In the course of preparing this declaration, I have examined the official records available to me regarding the immigration history and release orders of Desmond Lee Joseph Administrative File No. ▇▇▇▇852, Kevon Gary Mahadeo Administrative File No. ▇▇▇▇840, Gabino Del Angel Moran Administrative File No. ▇▇▇▇948, Cesar Vargas Vasquez Administrative File No. ▇▇▇▇709, Palmer Ferreira Administrative File No. ▇▇▇▇-865, Lucas Valentim Administrative File No. ▇▇▇▇198, and Carlos Gutierrez-Deleon Administrative No. ▇▇▇▇137. I have also discussed these cases internally with Officers within my office.

5. On April 9 and 10, 2020, ICE was ordered to release Mr. Joseph, Mr. Mahadeo, Mr. Del Angel Moran, Mr. Vargas Vasquez, Ms. Ferreira, Mr. Valentim, and Mr. Gutierrez-Deleon pursuant to a judicial order of bail. This Court order and its terms and conditions were conveyed to the officers physically present in the ICE office located in Burlington, MA where the releases would occur from.

6. Deportation Officer Jennifer Saravia prepared a Form I-220A, Order of Release on Recognizance ("OREC") for **Mr. Joseph** and e-mailed the form to Assistant Field Office Director ("AFOD") Alan Greenbaum for review. The OREC included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period, he was subject to house arrest. Once reviewed and signed by AFOD Greenbaum, I served the OREC on Mr. Joseph in the English language and signed the OREC for Officer Saravia as I was physically present for the release.

7. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Mr. Joseph

2

the Court's bail conditions in detail. I recall that the conditions included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period, he was subject to house arrest. I explained to Mr. Joseph that the only reason he could leave his house was for immigration proceedings or attend to his own medical needs should those needs be so severe that he must go to a doctor's office or hospital.

8. I explained to Mr. Joseph each individual condition listed on the OREC paperwork and gave him the opportunity to ask any questions or to have myself clarify any of the conditions.

9. Mr. Joseph and I signed in all the designated areas.

10. A copy of the OREC paperwork was made for Mr. Joseph and the original paperwork was placed in the administrative file.

11. At no time did I tell Mr. Joseph that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OREC that I explained in detail to him.

12. Mr. Joseph was then sent to be enrolled in in the Alternates to Detention Program.

13. Deportation Officer Jennifer Saravia prepared a Form I-220A, Order of Release on Recognizance ("OREC") for **Mr. Mahadeo** and e-mailed the form to AFOD Alan Greenbaum for review and signatures. The OREC included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period, he was subject to house arrest. Once reviewed and signed by AFOD Greenbaum, I served the OREC on Mr. Mahadeo in the

English language and signed the OREC for Officer Saravia as I was physically present in the office for the release.

14. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Mr. Mahadeo the Court's bail conditions in detail. The conditions included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period, he was subject to house arrest. I explained to Mr. Mahadeo that the only reason he could leave his house was for immigration proceedings or to attend to his own medical needs should those needs be so severe that he must go to a doctor's office or hospital.

15. I explained to Mr. Mahadeo each individual condition listed on the OREC paperwork and gave him the opportunity to ask any questions or to have myself clarify any of the conditions.

16. Mr. Mahadeo and I signed in all the designated areas.

17. A copy of the OREC paperwork was made for Mr. Mahadeo and the original paperwork was placed in the administrative file.

18. At no time did I tell Mr. Mahadeo that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OREC that I explained in detail to him.

19. Mr. Mahadeo was then sent over to the Deportation Officer that would be handling Mr. Mahadeo's enrollment in the Alternatives to Detention Program.

20. Deportation Officer Hood prepared a Form I-220A, Order of Release on Recognizance ("OREC") for **Mr. Del Angel Moran** and e-mailed the form to Supervisory detention and Deportation Officer ("SDDO") Yolanda Marfissi for review and signatures. The

OREC included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. Once reviewed by SDDO Yolanda Marfissi, I served the OREC on Mr. Del Angel Moran and signed the OREC for Officer Hood as I was physically present for the release. A Spanish interpreter was used from the Lionbridge Technologies Inc. throughout the service of the OREC in order to explain the terms and conditions of the Court order and the OREC to him.

21. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Mr. Del Angel Moran the Court's bail conditions in detail. The conditions included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. I explained to Mr. Del Angel Moran that the only reason he could leave his house was for immigration proceedings or attend to his own medical needs should those needs be so severe that he must go to a doctor's office or hospital.

22. I explained to Mr. Del Angel Moran each individual condition listed on the OREC paperwork and gave him the opportunity to ask any questions or to have myself clarify any of the conditions.

23. Mr. Del Angel Moran and I signed in all the designated areas.

24. At no time did I tell Mr. Del Angel Moran that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OREC that I explained in detail to him.

25. A copy of the OREC paperwork was made for Mr. Del Angel Moran and the original paperwork was placed in the administrative file.

26. Mr. Del Angel Moran was then sent for enrollment in the Alternates to Detention Program.

27. Deportation Officer Erin Waters prepared a Form I-220B, Order of Supervision ("OSUP") for **Mr. Vargas Vasquez** and e-mailed the form to SDDO Yolanda Marfissi for review and signatures. The OSUP included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. Once reviewed by SDDO Yolanda Marfissi, I served the OSUP on Mr. Vargas Vasquez in the English language and signed the OSUP for Officer Waters as I was physically present for the release. In addition to the OSUP form, an I-229B Warning for Failure to Comply with Terms of Supervised Release and Release Notification Letter were explained and served on Mr. Vargas Vasquez.

28. As I do for all releases I process, I explained the terms and conditions of the OSUP, which in this case, also included the Court's bail conditions. I explained to Mr. Vargas Vasquez the Court's bail conditions in detail. The conditions included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. I explained to Mr. Vargas Vasquez that the only reason he could leave his house was for immigration proceedings or to attend to his own medical needs should those needs be so severe that he must go to a doctor's office or hospital.

29. I explained to Mr. Vargas Vasquez each individual condition listed on the OSUP paperwork and gave him the opportunity to ask any questions or to have myself clarify any of the conditions.

30. Mr. Vargas Vasquez and I signed in all the designated areas.

31. At no time did I tell Mr. Vargas Vasquez that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OSUP that I explained in detail to him.

32. A copy of the OSUP paperwork was made for Mr. Vargas Vasquez and the original paperwork was placed in the administrative file.

33. Mr. Vargas Vasquez was then sent for enrollment in the Alternates to Detention Program.

34. Deportation Officer Erin Waters prepared a Form I-220A, Order of Release on Recognizance ("OREC") for **Ms. Ferreira** and e-mailed the form to SDDO Yolanda Marfissi for review and signatures. The OREC included the Court's bail conditions which included the order that she remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period, she was subject to house arrest. Once reviewed by SDDO Yolanda Marfissi, I served the OREC on Ms. Ferreira in the English language and signed the OREC for Officer Waters as I was physically present for the release.

35. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Ms. Ferreira the Court's bail conditions in detail. The conditions included the order that she remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period she was subject to house arrest. I explained to Ms. Ferreira that the only reason she

could leave her house was for immigration proceedings or attend to her own medical needs should those needs be so severe that she must go to a doctor's office or hospital.

36. I also explained to Ms. Ferreira each individual condition listed on the OREC paperwork and gave her the opportunity to ask any questions or to have myself clarify any of the conditions.

37. Ms. Ferreira and I signed in all the designated areas.

38. At no time did I tell Ms. Ferreira that she could leave her residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in her OREC that I explained in detail to her.

39. A copy of the OREC paperwork was made for Ms. Ferreira and the original paperwork was placed in the administrative file.

40. Ms. Ferreira was then sent for enrollment in the Alternates to Detention Program.

41. For **Mr. Valentim**, I prepared the OREC form. The OREC included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. I then e-mailed the form to SDDO David T. Wesling for review and signatures.

42. Once reviewed for accuracy and signed by SDDO Wesling, I personally served Mr. Valentim the OREC in the Portuguese language as I was physically present for the release. A Portuguese interpreter was used from the Lionbridge Technologies Inc. throughout the service of the OREC.

43. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Mr. Valentim each individual condition listed on the OREC paperwork and gave him the opportunity to

ask any questions or to have myself clarify any of the conditions. I recall that Mr. Valentim inquired about moving to a new address in the near future as his family was going to be relocating in the upcoming months. I instructed Mr. Valentim to not leave the house unless for immigration proceedings or to attend to medical needs as necessary. Furthermore, I instructed Mr. Valentim to inform ICE of his new address prior to moving and not to leave the new residence once he arrived.

44. Mr. Valentim and I signed in all the designated areas.

45. At no time did I tell Mr. Valentim that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OREC that I explained in detail to him.

46. A copy of the OREC paperwork was made for Mr. Valentim and the original paperwork was placed in the administrative file.

47. Mr. Valentim was then sent for enrollment in the Alternatives to Detention Program.

48. For **Mr. Gutierrez-Deleon**, I prepared the OREC form. The OREC included the Court's bail conditions which included the order that he remain fully quarantined for 14 days after leaving the facility and that after the 14-day quarantine period he was subject to house arrest. I then e-mailed the form to SDDO David T. Wesling for review and signatures.

49. Once reviewed for accuracy and signed by SDDO Wesling, I personally served Mr. Gutierrez-Deleon the OREC in the English language as I was physically present for the release.

50. As I do for all releases I process, I explained the terms and conditions of the OREC, which in this case, also included the Court's bail conditions. I explained to Mr.

Gutierrez-Deleon each individual condition listed on the OREC paperwork and gave him the opportunity to ask any questions or to have myself clarify any of the conditions. I recall that Mr. Gutierrez-Deleon inquired about what the next course of action would be regarding his voluntary departure date. I explained to him that he had the opportunity to depart via an ICE charter while in custody which he chose not to do. I instructed him to speak with his new Deportation Officer regarding a commercial departure from the United States.

51. Mr. Gutierrez-Deleon and I signed in all the designated areas.

52. At no time did I tell Mr. Gutierrez-Deleon that he could leave his residence after the 14-day quarantine period as such information would be in contradiction to the Court order included in his OREC that I explained in detail to him.

53. A copy of the OREC paperwork was made for Mr. Gutierrez-Deleon and the original paperwork was placed in the administrative file.

54. Mr. Gutierrez-Deleon was then sent for enrollment in the Alternatives to Detention Program.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the Twenty-Third day of June, 2020

_____

Casey C. Hyde

Deportation Officer

U.S. Department of Homeland Security

United States Immigration and Customs Enforcement

Burlington, Massachusetts