## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO, JULIO CESAR MEDEIROS NEVES, and all those similarly situated,<br><br>        Petitioners-Plaintiffs,<br><br>        v.<br><br>STEVEN J. SOUZA,<br><br>        Respondent-Defendant. | Case No. 1:20-cv-10617 WGY |

## **PLAINTIFFS' MOTION TO MODIFY BAIL CONDITIONS**

By this motion, Plaintiffs respectfully request that the Court modify the house arrest condition under which class members have been admitted to bail, to allow released individuals to leave their residences during limited hours and for limited purposes. All released class members would still be within the custody and control of ICE, and subject to supervision by ICE and by the Court.

The quarantine and house arrest provisions in the Court's original bail orders have limited class members' potential for exposure to COVID-19 and furthered public health. Now, over four months since the first class members were ordered released, Plaintiffs believe that it is appropriate for the Court to consider modification of the house arrest provisions to allow individuals to leave their residences to conduct such activities as grocery shopping, medical appointments, sobriety meetings, religious activities, physical exercise, and work, within such parameters as the Court deems appropriate. As detailed further below, such a modification

1

would serve the purposes of the Court's original orders, account for the practical realities of the current situation, and be in the interests of justice.

## BACKGROUND

On April 3, 2020, the Court ordered the first releases in this matter. ECF 44. The Court imposed certain conditions on bail, as follows:

> The Court grants bail to Henry Urbina Rivas, Robson Maria-De Oliveira, and Jervis Vernon pending resolution of the habeas corpus petition, upon all bail conditions deemed appropriate and imposed by ICE, and the following additional terms and conditions as to each of them: (a) release only to an acceptable custodian; (b) such custodian will pick the releasee up outside the facility by car; (c) releasee will be taken from the facility to the place of residence previously identified to ICE (ICE shall notify the state and local law enforcement authorities about their presence and the[ ] details of their bail status); (d) releasees are to be fully quarantined for 14 days from date leaving facility to the residence; (e) <u>during and after the 14-day quarantine, releasees will remain under house arrest, without electronic monitoring, and shall not ... leave the residence for any reason save to attend immigration proceedings or attend to their own medical needs should those needs be so severe that they have to go to a doctor's office or hospital (in which case they shall notify ICE as soon as practicable of their medical necessity)</u>; (f) releasees are not to be arrested by ICE officers unless: (i) upon probable cause a warrant is issued by a United States Magistrate Judge or United States District Judge that they have violated any terms of their bail, or (ii) there is a final order of removal making them presently removable from the United States within two weeks. The Court may, <u>sua</u> <u>sponte</u> or on motion of the parties, modify or revoke the bail provided herein.

*Id*. (emphasis supplied). Subsequently, the Court modified the bail conditions to give ICE discretion for electronic monitoring. ECF 73. On June 25, 2020, the Court modified the bail conditions further to allow released class members to travel outside the home for attendance at required probation or criminal proceedings.[1]

The house arrest provisions are not currently limited by time of day (*i.e*., they require class members to be at home 24 hours/day). Other than the exceptions for urgent medical

---

[1] The Court orally granted this unopposed motion (ECF 118) on June 25, 2020. The Court has not yet placed this modification on the docket.

2

appointments or attendance at immigration or criminal proceedings, they do not allow individuals to leave their residences for any other reason, such as grocery shopping, non-urgent medical appointments and family medical emergencies, exercise, religious services, or work. Moreover, based on Defendant's prior allegations of violations of the house arrest condition for certain class members, it appears that Defendant's agents' electronic monitoring registers non-compliance even for class members who go to their backyards or out front to their mailboxes.

Since the time that the Court first issued its release orders, the Commonwealth of Massachusetts has developed a comprehensive public health plan governing how individuals must conduct themselves in public, at businesses, and in various other venues, to combat the spread of COVID-19.  *See generally* COMMONWEALTH OF MASSACHUSETTS, *Reopening Massachusetts*, May 18, 2020, *available at* https://www.mass.gov/doc/reopening-massachusetts-may-18-2020/download.   For example, all individuals are now required to wear masks and/or socially distance in public places, with further specific rules in place for businesses, houses of worship, and other venues.  *Id.*  Like other states, the Commonwealth has created an advisory panel of public health experts, government officials, and others to determine the appropriate restrictions that must be in place, as the pandemic evolves and based on current scientific research.  *Id.*

## ARGUMENT

### I. Modification Of The House Arrest Provisions Would Serve The Purposes Of The Court's Original Orders While Accounting For The Practical Realities Of The Current Situation.

Plaintiffs have understood the Court's bail conditions to be based primarily on limiting class members' exposure to COVID-19, while also ensuring that the Court's determination that individuals are not flight risks or a danger to their community continues to be warranted.  Four

months into release, Plaintiffs believe that these goals have been met and could continue to be met with the modifications discussed herein. All released class members were subject to an initial 14-day quarantine period, which has now passed for all of them. Released class members are closely monitored by ICE and its contractor BI, through various combinations of electronic monitoring, phone check-ins, and other means, all of which are common methods of supervision and could continue under Plaintiffs' proposed modification.

### A. "House Incarceration," The Strictest Form Of House Arrest Is Typically Time-Limited.

House arrest or home confinement can take on many different forms. As the Federal Judicial Center (FJC) has explained, "[h]ome confinement can range from nighttime curfew conditions, to detention during all nonworking hours, to continuous twenty-four-hour-a-day incarceration."[2] A leading overview of the Federal Home Confinement Program distinguishes between three different levels of house arrest: a) "curfew," in which individuals must be home during specified hours; b) "home detention," in which individuals "remain at home unless the court permits them to leave for employment, education, treatment, or other specified reasons, such as to purchase food or for medical emergencies," and c) "home incarceration," where the participant must remain at home at all times, except for religious services or urgent medical care.[3]

Even in the criminal justice context, where flight risk and danger to community may be significantly higher, the strictest form of house arrest ("house incarceration") is relatively rare, particularly for long periods. For sentences of house incarceration, the FJC has found that "most

---

[2] THE FEDERAL JUDICIAL CENTER, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System*, at 5, *available at* https://www.ncjrs.gov/pdffiles1/Digitization/108466NCJRS.pdf (hereafter "*Home Confinement*").

[3] D. Gowen, FEDERAL PROBATION (Dec. 2000), *Overview of the Federal Home Confinement Program 1988-1996*, at 12, *available at* https://www.uscourts.gov/sites/default/files/64_2_2_0.pdf (hereafter "*Overview*").

have been for six months or less." *Home Confinement*, *supra*, at 28.  The FJC noted that, in interviews with probation officers, "[s]ome feel that this is ordinarily the maximum tolerable length even for home detention.  They note the difficulty of serving such a sentence is underestimated when the isolation is not taken into account." *Id.* at 19; *see also id.* ("the self-control required is beyond the capacity even of many law-abiding citizens"); *see also Overview*, *supra*, at 14 ("the monitoring duration for most participants in the home confinement program in the data collection did not exceed 180 days").

House arrest that allows individuals to leave their residences for limited times and for limited purposes is more common, particularly when house arrest continues for a significant length of time.  *See* ASSOCIATED PRESS, *"Hard to be home": Real house arrest veterans mull isolation,"* May 6, 2020 ("'Very, very few cases are people actually confined to their home 24/7.  That really doesn't occur,' said Joseph Russo, director of the National Law Enforcement and Corrections Technology Center."), *available at* https://federalnewsnetwork.com/health-news/2020/05/hard-to-be-home-real-house-arrest-veterans-mull-isolation/.  Common exemptions to house arrest include allowing individuals to leave their homes for purposes such as:

- food shopping
- medical appointments
- exercise
- attendance at religious services or social service activities
- work

*See Overview*, *supra*, at 12.  Those exemptions may be increased over time and limited by time of day: *e.g.*, by allowing such activities but only during daytime hours.  *Id.*

## B. Class Member Experiences On House Arrest

Released class members remain immensely grateful that they are no longer in the unsafe confines of the Bristol County House of Correction. They further believe that modification of the Court's house arrest condition to allow for certain limited out-of-home activities would be both appropriate and in the interests of justice, now that significant time has elapsed since their release.

The experience of released class members mirrors the observations made by the Federal Judicial Center about why the strictest form of house arrest is typically not imposed for long durations.[4] For example, many class members report increasing difficulties accessing food. Although class members have support systems on which they relied in the days and weeks following their release, many are concerned that it is becoming increasingly difficult for friends and family to do all of their grocery shopping for an indefinite period. Class members who live only with elderly relatives experience particular difficulty on this front. Most released class members are low-income, which further limits their options. While a well-off individual might be able to have groceries delivered on a regular basis, eat take-out, or hire someone to do their grocery shopping, these options are out of reach for many *Savino* class members.

Similarly, the Court's current bail conditions have an exception allowing released individuals to go to the doctor or hospital – provided that such medical issues are "severe." While that condition has made sense to date, as time goes on, class members are experiencing medical needs that may not qualify as "severe," but yet should still be attended to.[5] Basic

---

[4] *See generally* Declaration of Oren Sellstrom In Support Of Plaintiffs' Motion For Modification Of Bail Conditions ("Sellstrom Dec").

[5] *See* Sellstrom Dec. ¶ 9 (class member statement) ("is been 3 month and 10 days that i have this ankle bracelet without violate it but i'm cristian and i need to go to church on sunday i have high blood presure, two herniated disk, siclo cell disease and i dont have no more medicine i need to go to a doctor and i cant….."); *see also* id. ¶ 10 ("I

preventative care, for example, does not appear to be currently allowed by the Court's conditions, although medical experts are increasingly concerned about public health impacts if people continually defer such care.[6]  However, particularly given that the government has sought to revoke bail for certain released class members in the past, class members are exceedingly fearful of taking any chances in this regard.

A number of released class members who are religious have family and community members who attend religious services at which masks are worn and social distancing is practiced.  However, released class members are not able to participate in these activities.  In a similar vein, a number of class members have reported wanting to attend Alcoholics Anonymous meetings – again with appropriate protective equipment and social distancing – to maintain their sobriety, but are unable to do so with the current house arrest restrictions in place.

Exercise is an increasing problem for many class members.  While a strict house arrest condition was prudent particularly in the 14-day quarantine period following release, as the weeks turn into months, the lack of exercise and recreation has and will become more of an issue for many class members.  This problem is exacerbated by the fact that most if not all of the released class members live in smaller residences.  While individuals who reside in spacious houses would have more room to move about and might, for example, be able to exercise by walking around their house (or even exercise in home gyms), *Savino* class members typically do not enjoy these comforts.  In addition, Defendant's electronic monitoring appears to register non-

---

have health problems. I am suffering from Gastroesophageal reflux disease and skin psoriasis. I have not been able to purchase medication for these illnesses.").

[6] *See* WASHINGTON POST, *Five Kinds of Health appointments you should consider keeping, despite the pandemic* (Jul 2, 2020) (citing medical expert advice regarding importance of routine medical care such as cancer screenings and dental care during the pandemic), *available at* https://www.washingtonpost.com/lifestyle/wellness/five-kinds-of-health-appointments-you-should-consider-keeping-despite-the-pandemic/2020/07/01/d04f5848-bbc4-11ea-80b9-40ece9a701dc_story.html

compliance even for class members who go to their backyards or out front to their mailboxes. While the Court has not ruled on whether this type of activity is permitted under its orders, the fact that Defendant has alleged violations on this basis has led Plaintiffs' counsel to advise class members that the safest conduct is to literally remain within the four walls of their residence, making the inability to exercise an even more significant issue.[7]

Finally, some class members are legally authorized to work and would like to do so – in many cases to be able to eat and pay rent.[8] Again, while class members' friends and family have to date been able to support those who have been released, this is becoming increasingly difficult as time passes.

## II. Modification Of The House Arrest Provisions Would Be Consistent With The Court's Original Orders And Serve The Interests Of Justice.

For all of these reasons, Plaintiffs believe that it is appropriate at this juncture for the Court to consider whether the house arrest provisions should be modified, to allow for the above activities. As demonstrated, such a modification would still accomplish the Court's goals, and could be limited as the Court saw fit. For example, a curfew requirement, mandating that such activities only occur during daytime hours, could be imposed at the same time.

Such a modification would still allow the purposes underlying the Court's original orders to be met. Released class members have demonstrated that they are neither flight risks nor a

---

[7] *See* Sellstrom Dec ¶ 9 ("i still here in house arrest and … we cant even go in the backyard of the house or the porch is been 3 month and 10 days that i have this ankle bracelet without violate it … i cant even play with my kids in the backyard….")

[8] *See id*. ¶ 8 ("The Corona Virus has affected each and every one of us greatly, some in many different ways. On my behalf it has affected me on more so a mental level than a physical one due to the fact that I have a GPS ankle monitor and restrictions…. Having the GPS ankle monitor has made me unable to work, being unable to provide for my family and myself. My girl is currently 7.5 months pregnant and due any minute now. I do not recieve nor depend on help from the state or government. I am a hard worker and like being independent…. All I want to do is get back to work to be able to provide and take care of my family…. It affects me mentally knowing that as a man I am unable to do so."); *see also id*. ¶ 10 ("I have been offered multiple jobs but I have not been able to accept these offers. I fell behind on payments and sometimes I do not have enough food to eat.").

danger to their communities.[9]  Under the modification that Plaintiffs propose here, all released class members would still be under the custody and control of ICE and subject to such other reasonable conditions ICE imposes.  Those conditions are already extensive: released class members are supervised closely by ICE and its compliance contractor, through electronic monitoring, telephone check-ins, and the like.  Other conditions that ICE either has imposed, or may impose, include requirements that released individuals:

- Appear in person at every request of the agency and every hearing
- Provide information under oath if the agency requests it
- Do not travel outside specified geographic area
- Give the agency notice of any change of residence/employment
- Do not associate with known gang members, criminal associates
- Register in a substance abuse program within 14 days
- Do not commit any crimes

*See*, *e.g*., ECF 202, Ex. 3A (listing standard ICE Order of Supervision conditions); *id.* Ex 3B (listing standard BI conditions); *id*. Ex. 6D (listing standard ICE Order of Release on Recognizance conditions).  Gradually reducing restrictions over time is typical in "house arrest" provisions, even in the criminal justice context, and appears to be what ICE's contractor normally engages in with released individuals.

Moreover, the health and wellbeing considerations that underlay the Court's original bail orders would continue to be met – and indeed would be furthered – with Plaintiffs' proposed modification.  All released class members have now long passed their initial 14-day quarantine period.  In addition, as compared to when the Court first began releasing class members on bail,

---

[9] The Court has revoked bail in instances where it has found otherwise.  *See* ECF 223.

there are now many more governmental restrictions that have been instituted in response to the pandemic.  For example, the Commonwealth has developed a comprehensive plan for combatting the spread of COVID-19, with strict rules and regulations regarding masking and social distancing, all monitored on an ongoing basis by a panel of public health experts.  *See Reopening Massachusetts*, *supra*.  Masks and/or social distancing are now required for everyone in public spaces, with specific rules for religious gatherings and businesses.  *See id.*  Allowing class members to leave their homes for the limited purposes described above would not endanger either class members or the community, as public health restrictions that were not in place when the Court first ordered release are now firmly established.

In fact, Plaintiffs' requested modification furthers public health considerations in the sense that it is beneficial to the public generally for individuals to be able to attend to their medical needs, have adequate exercise, and participate in social service and religious activities.  Allowing Plaintiffs the opportunity to access medical care with regularity, ensure their personal nutrition, and participate in physical activity is therefore consistent with both the individual and public health considerations that prompted the Court's original bail orders four months ago.

Plaintiffs have proposed herein one possible modification – to allow class members to leave their residences during daytime hours, for food shopping, medical appointments, exercise, religious and social services, and work – but recognize that any number of different modifications would also be appropriate.  Plaintiffs' goal in bringing this Motion is less to press for a specific modification than to flag the issue as one that merits the Court's attention at this juncture in the litigation.  To the extent that the Court finds that a hearing would be helpful in assessing whether and how its house arrest provisions should be modified, Plaintiffs would welcome such an opportunity.

# CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court modify the house arrest bail condition under which class members have been released, to allow released individuals to leave their residences during daytime hours, for the purposes of food shopping, medical appointments and family medical emergencies, exercise, religious and social services, and work.

August 7, 2020

Respectfully Submitted,

/s/ Oren Sellstrom
Oren Nimni (BBO #691821)
Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Ivan Espinoza-Madrigal†
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 988-0606
onimni@lawyersforcivilrights.org

Megan Yan, Law Graduate*
Muneer Ahmad†
Michael Wishnie (BBO# 568654)
Sara Zampierin±
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
michael.wishnie@ylsclinics.org

Lisa Pirozzolo
John Butts
Vinita Ferrera
Felicia Ellsworth
Nicole M.F. Dooley
Annaleigh Curtis
Michael Brown
Rama Attreya
Gary Howell-Walton
Mikayla C. Foster
Elizabeth E. Driscoll
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 021009
Lisa.Pirozzolo@wilmerhale.com

---

† Admitted *pro hac vice*.
± Motion for admission *pro hac vice* pending.
* Motion for law student appearance pending.

## **CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1**

  I hereby certify that, on August 7, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.  I also certify that I contacted counsel for Defendant before filing this motion to confer and attempt in good faith to resolve or narrow the issue, but we were unable to resolve or narrow the issue.

Date:   August 7, 2020
 */s/ Oren Sellstrom*
Oren Sellstrom (BBO #569045)