**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

---

MARIA ALEJANDRA CELIMEN SAVINO,
JULIO CESAR MEDEIROS NEVES, and all
those similarly situated,

          Petitioners-Plaintiffs,

    v.

STEVEN J. SOUZA,

          Respondent-Defendant.

Case No. 1:20-cv-10617 WGY

---

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY BAIL CONDITIONS
### (Leave To File Granted August 25, 2020, ECF No. 227)

As the Court has stated on a number of occasions, the COVID-19 pandemic requires a flexible approach that accounts for evolving circumstances.  More than four months after the first bail orders in this case were issued, Plaintiffs believe that it is appropriate for the Court to review and modify the house arrest provision of the Court's standard bail order.  As explained in Plaintiffs' motion, such a modification would further the individual and public health interests that have undergirded the Court's orders throughout this case.

Rather than grapple with these evolving on-the-ground realities, Defendant's Opposition feigns disbelief at the hardships that released class members are experiencing and adopts a punitive stance that is at odds with the purposes behind the bail orders.  The challenges that class members are experiencing are not merely "tiresome," as Defendant states, *see* Defendant's Opposition Brief ("Def. Opp.") at 8; rather, they are creating substantial adverse impacts on class

1

members' health and well-being in ways that do not serve a valid purpose.  Defendant's Opposition reads at times as if it welcomes this prospect – based on its view that class members made a supposed "deal" that they must now live with.  Such a punitive stance, however, is both unsupported by the facts and contrary to the approach that the Court has taken since the inception of this case.

Particularly where, as here, there are no countervailing benefits to outweigh the real human costs that class members are experiencing, modification of the baseline house arrest provision is appropriate.  Following such a modification, Defendant (either unilaterally or with Court approval) could be allowed to make further adjustments on a case-by-case basis.  But the standard house arrest provision, which applies uniformly to all released class members, should be modified first, to allow for some or all of the activities set forth in Plaintiffs' original motion, under such further conditions as the Court may impose.

## ARGUMENT

### I.     The Hardships Experienced By Class Members Are Real.

Despite the incredulous tone of Defendant's Opposition, it is not difficult to understand how literal confinement to the home for months at a time, particularly for those who live in small apartments as many *Savino* class members do, causes substantial hardship.  Prolonged lack of exercise, inability to participate in religious services or attend to all but the most severe medical needs, and difficulty accessing food are all significantly detrimental to both individual and public health.

Contrary to Defendant's Opposition, there is nothing inconsistent about class members having support networks and yet pointing out to the Court that such networks are becoming

increasingly strained as the months go on.  This would be expected even in normal times; in these extraordinary times, as many households face myriad challenges due to the pandemic, it is even more unsurprising.

Nor is there anything inconsistent in highlighting these difficulties while emphasizing that bail under the current conditions is still exponentially better than being detained in the cramped, densely-packed conditions that existed at BCHOC at the beginning of this litigation. Defendant seems incapable of grasping the fundamental point that has driven this lawsuit from the outset: namely, that it was (and is) BCHOC's conditions – and in particular its population density – that heightened the risk of COVID-19 infection to an unconstitutionally unacceptable degree.  Although Defendant writes it sarcastically, it is in fact the case that "the risk that loomed so large before has magically disappeared now that [released class members] are out." Def. Opp. at 8.  To be sure, COVID-19 itself is still a risk, but the Court's bail orders have dramatically increased the safety of those class members who have been released – as the contrast between infection levels in BCHOC's immigration wing (under this Court's scrutiny) and its criminal wing (under no such scrutiny) continues to demonstrate.  *See* Amended Special Master's Weekly Report (Aug. 24, 2020), *CPCS v. Chief Justice of the Trial Court*, SJC 12926, *available at* https://www.mass.gov/doc/sjc-12926-amended-special-masters-weekly-report-8242020/download (documenting 92 confirmed COVID-19 cases among inmates and staff at Bristol County facilities).[1]

---

[1] The revisionist history that Defendant weaves throughout its brief (*e.g.,* that it had "a comprehensive plan" for dealing with COVID-19 months ago, *see* Def. Opp. at 3), has already been definitively rejected by the Court on a number of different occasions.  *See, e.g.*, ECF 225 (Reconsideration Order).  Defendant plays fast-and-loose with the facts in other ways as well: incidents of purported conduct by class members that Defendant previously recognized were mere allegations, *see, e.g.*, ECF 218 at 2, are now presented to the Court as fact.  The positive COVID-19 test in BCHOC's immigration wing is elided, *see* May 5, 2020 Letter from Defendant's Counsel to Court, and the extremely high number of cases among inmates and staff in the criminal wing is just ignored.  *See* Amended Special Master's Weekly Report, *supra*.

The issue of what bail conditions should attach is a separate question.  If individual and public safety concerns can continue to be met with modifications – as Plaintiffs have demonstrated – then there is no reason not to allow them.  Defendant's rationale for opposing modification is largely punitive – a "you made your bed, now lie in it" approach that makes little sense in the context of this case.[2]  To begin with, Defendant's repeated reference to a "deal" that released class members supposedly made is puzzling.  As the Court has pointed out, Defendant steadfastly refused to agree to releases, *see* ECF 175, so any imagined "deal" was certainly not with Defendant.  Nor has the Court ever indicated that it views class members' constitutional rights as a bargaining chip to be negotiated.  Rather, release on bail was necessary to preserve the health and safety of both those in and those out of the facility; house arrest that served a function at the outset can now be re-visited.  Moreover, civil detention is not meant to be punitive, making it inappropriate for Defendant to approach bail conditions in that manner.[3]

Nor have Plaintiffs argued that released class members should be allowed to "go wherever they want whenever they want," as Defendant puts it.  Def. Opp. at 5.  Rather, Plaintiffs have specifically proposed that allowed activities be strictly limited, and have suggested that the Court could impose time-of-day limitations as well.  All of these restrictions would be in addition to the many standard conditions that ICE already has discretion to place on individuals, including electronic monitoring.[4]

---

[2] *See, e.g.*, Def. Opp. at 6 (arguing that because class members had meals and medical care (however inadequate) at BCHOC, it would serve them right if they cannot now access these necessities of life).

[3] *See Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982).  Defendant's "stalking horse" argument similarly finds no support in anything that has transpired in this case.  The gravamen of Plaintiffs' Complaint – that the appalling conditions at BCHOC create an unconstitutionally unsafe risk of COVID-19 infection and that release from confinement is the appropriate remedy – has been consistently stated since the day the lawsuit was filed.

[4] Nor have Plaintiffs ever argued that GPS monitoring is "meaningless."  Def. Opp. at 5.  What Plaintiffs have taken issue with is Defendant self-selecting a handful of supposed "violations" out of literally thousands of GPS data points and using those to try to revoke bail for individual class members.  *See* Section III, *infra*.

4

## II.   Defendant's Proposal Is Unworkable And Seeks To Re-Hash Arguments The Court Has Already Rejected.

Seemingly conceding that modification of the house arrest provision may be appropriate in at least some cases, Defendant suggests an unworkable proposal that tacks on unrelated provisions that this Court has already considered and rejected.  By contrast, Plaintiffs' approach is practical: that the Court start by re-setting the baseline condition for all released class members and then, if particular class members are faced with unique circumstances that require further modification, handle those situations on a case-by-case basis.  In that way, Plaintiffs' proposal is akin to the recent modification of the Preliminary Injunction to allow class members to return to BCHOC following medical appointments.[5]

The Court appropriately set standard across-the-board bail conditions at the outset.  For the reasons stated above, a modification of that standard bail order as it pertains to house arrest is now appropriate.  Such a modification could also give discretion to Defendant to make further allowances in individual cases (or recommend further changes to the Court), but that case-by-case approach should come after the baseline condition is re-set.  Defendant's further attempt to re-hash issues that the Court has already decided should be rejected.  While Defendant chafes at the idea that class members subject to detention under 8 U.S.C. § 1226(c) have been among those released on bail, this is an issue that the Court has already definitively put to bed.  Similarly, although Defendant has repeatedly asked that it be allowed to unilaterally re-arrest class members without Court oversight, the Court has already rejected this proposal – for good

---

[5] Under that modification, return is allowed unless Plaintiffs object, in which case the matter is referred to the Court. ECF 249.  Defendant's Opposition repeatedly references one occasion on which Plaintiffs objected to a class member's return, in light of a recent MRSA outbreak at the facility (a return which the Court ultimately allowed). Defendant does not mention that for the vast majority of the dozen or more medical appointments over the last month or so, Plaintiffs have interposed no objections.

reason.  ECF 207.  There is no reason to re-visit either of these sound rulings in this unrelated

context.

### III.     Defendant's Newly-Submitted Declaration Proves Plaintiffs' Point About The Misuse Of GPS Data.

Finally, Defendant submits a declaration regarding GPS technology – not actually

relevant to the current motion, but apparently meant to buttress Defendant's arguments that GPS

technology is unassailable.  The declaration, from Ric Miller of BI, Incorporated, raises many

more issues than it puts to rest.  Notably, it is not from an independent expert, but rather from an

engineer at ICE's own contractor.  Mr. Miller's statements about the accuracy of his company's

technology accordingly must be taken with a grain of salt.  *See Den Norske Bank AS v. First

National Bank of Boston*, 75 F.3d 49, 58 (1st Cir. 1996) (fact that self-serving expert statements

are from a party's own employees "may bear heavily on witness credibility, bias, and the weight

of the evidence").

Even so, the hedge words and caveats in the declaration are striking.  For example, Mr.

Miller notes that:

> o   "Obstructions such as buildings, parking decks and mountains that impair or
>      block the signals from the satellites will reduce the accuracy of the location
>      positions computed by the receiver."  Miller Dec. ¶ 4.
>
> o   "[M]ulti-story, reinforced concrete or steel buildings present[] a more
>      challenging environment for the reception of signals, which can result in more
>      errant positions."  *Id.*
>
> o   Other, non-GPS, tracking methods that BI uses are even more inaccurate.  *Id.*
>      ¶ 5 (WiFi Access Points); ¶ 6 (cell towers).

6

- o BI's GPS accuracy measures are based on an "open field test" – in other
  words, conditions entirely unlike where class members actually live.  *See*
  Miller Dec., Attachment ("This test is performed an open field, outdoor
  location without nearby structures that could interfere with GPS signal.").

- o Even in this highly artificial setting, 5% of all GPS signals do not register
  accurately within a range of 5 feet.  *Id.*

In the case of *Savino* class members released on bail, there have been literally tens of
thousands (if not hundreds of thousands) of GPS data points over the course of the last 4+
months, as these are generated on an ongoing basis.  The fact that 5% of those are inaccurate to
the degree even ICE's own contractor concedes – under "open field" conditions that bear no
actual relation to class members' living conditions – strongly supports Plaintiffs' position that
Defendant's cherry-picking of isolated instances of supposed "violations" is highly problematic.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Modify Bail Conditions should be
granted.

August 26, 2020

Respectfully Submitted,

*/s/ Oren Sellstrom*
Oren Nimni (BBO #691821)
Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Ivan Espinoza-Madrigal†
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor

Boston, MA 02110
(617) 988-0606
onimni@lawyersforcivilrights.org

Muneer Ahmad[†]
Michael Wishnie (BBO# 568654)
Sara Zampierin[±]
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
michael.wishnie@ylsclinics.org

Lisa Pirozzolo
John Butts
Vinita Ferrera
Felicia Ellsworth
Nicole M.F. Dooley
Annaleigh Curtis
Michael Brown
Rama Attreya
Gary Howell-Walton
Mikayla C. Foster
Elizabeth E. Driscoll
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 021009
Lisa.Pirozzolo@wilmerhale.com

---

[†] Admitted *pro hac vice*.
[±] Motion for admission *pro hac vice* pending.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 26, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

Date:   August 26, 2020

__*/s/ Oren Sellstrom*_____
Oren Sellstrom (BBO #569045)

9