## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

MARIA ALEJANDRA CELIMEN SAVINO,
JULIO CESAR MEDEIROS NEVES, and all
those similarly situated,

            Petitioners-Plaintiffs,

    v.

STEVEN J. SOUZA,

            Respondent-Defendant.

Case No. 1:20-cv-10617 WGY

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL COMPLIANCE WITH RULE 34 NOTICE OF INSPECTION

Plaintiffs respectfully request that the Court compel Defendant to permit a site inspection of the Bristol County House of Correction ("BCHOC") facilities that are at the center of this case. Plaintiffs requested the site inspection pursuant to Federal Rule of Civil Procedure 34 in mid-July, but Defendant has stonewalled the inspection on specious grounds, taking the untenable position that the conditions in which detainees are currently living are not relevant.

Perhaps recognizing the futility of that position, Defendant has also raised purported safety and security concerns as a backstop. In response, Plaintiffs have, on multiple occasions, offered to negotiate and discuss protocols and conditions to ensure health, security, and safety during the inspection. However, in keeping with his unbending approach to this litigation, Defendant has refused to engage on these topics. Defendant's inflexibility is at odds with the pragmatic approach to Rule 34 inspections taken by litigants and courts in similar cases around the country. Even during the current pandemic, courts have recognized the need for, and are routinely permitting inspections of detention facilities. *See, e.g.*, *Chunn v. Edge*, No. 20-cv-1590

1

(RPK), Order, ECF No. 45 (E.D.N.Y. Apr. 15, 2020) (attached as Ex. A); *Braggs v. Dunn,* No. 2:14-cv-00601 (MHT), Order, ECF No. 3000 (M. D. Ala. Oct. 1, 2020) (attached as Ex. B).[1]  In fact, ICE's own policies allow for continued inspections during this time.  Far from endangering health and safety, these inspections advance public health by allowing independent oversight conducted pursuant to pre-determined conditions that ensure the health and safety of all involved.

For these reasons, and as explained in further detail below, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv) that the Court compel Defendant to allow their Rule 34 site inspection.

## BACKGROUND

The inspection would encompass the congregate living conditions that are at the heart of this litigation.  These conditions are at the forefront of Plaintiffs' complaint, were a primary focus of the parties' briefing in connection with Plaintiffs' successful motion for a preliminary injunction, and have been central to the Court's key orders in this case.[2]

Following the conclusion of the preliminary injunction proceedings, the parties began formal discovery.  On July 14, 2020, Plaintiffs served the Request for Inspection.  *See* Pls.' Requests for Inspection (Ex. C).  It seeks to enable Plaintiffs to inspect areas of the BCHOC

---

[1] References to Exhibits herein refer to the Exhibits attached to the attorney Declaration of Andy O'Laughlin accompanying this Memorandum.

[2] *See, e.g.*, Mem. & Order, ECF No. 64, at 4-5 (class certification order) (detailing physical layout of facility and noting "challenge of social distancing in BCHOC"); *id.* at 21 (noting "a common question of law and fact in this case is whether the government must modify the conditions of confinement – or, failing that, release a critical mass of Detainees – such that social distancing will be possible …."); Mem. of Decision, ECF No. 175, at 4 (preliminary injunction order) (noting that "the gravamen of the complaint was that the facility was simply too crowded to practice social distancing … and that the conditions were otherwise unhygienic…."); *id.* at 22 ("Were it not for the Court's bail orders and preliminary relief – all of which expire upon a ruling on the merits, and thus cannot decide the merits – the Detainees would be packed together in close quarters where social distancing is impossible.").

facility to which detained class members have access and to which staff members who come into contact with detained class members have access.

On July 23, 2020, Defendant's counsel emailed Plaintiffs' counsel stating that Defendant had unspecified "issues/objections" with the request and inquiring what Plaintiffs expected to accomplish with the inspection. *See* Ex. D.  Plaintiffs' counsel explained that an inspection of the facility was "fundamental to [their] claims" as it would allow them to "see and document the conditions and layout" in which detained class members are being held. *Id.*  The information Plaintiffs have received to date regarding the actual on-the-ground conditions at BCHOC has been entirely secondhand, coming either through representations by Defendant or piecemeal via the accounts of individual class members.  Plaintiffs need to conduct an inspection so they can get a complete view of the facility conditions and record photographic and video evidence to allow the Court to do the same.

Defendant's response to the Rule 34 Requests for Inspection was due on August 13, 2020 but the deadline passed without reply.  On August 19, 2020, Defendant contacted Plaintiffs to request that the deadline be extended.  Plaintiffs agreed to extend the deadline to August 21, 2020, but again, no response was received on that date.  Later that month, the parties spoke by phone and Defendant expressed concern that the inspection may raise security as well as health and safety concerns.  Plaintiffs made clear that they were willing to consider reasonable limitations to mitigate any such concerns and invited Defendant to propose potential conditions.

On September 4, 2020, Defendant served objections to Plaintiffs' requests, which amounted to a wholesale denial of Plaintiffs' request.  *See* Def.'s Response to Requests for Inspection, attached as Ex. E ("Defendant's Response to Inspection").  In the cover email, Defendant's counsel acknowledged that Plaintiffs were "open to limiting the time, number of

people and (maybe) the areas to be inspected . . . ."  *See* Ex. F.  Nonetheless, Defendant's

counsel stated that he did not believe there were any set of limitations or conditions that

Defendant would be willing to accept as an inspection would be "an enormous intrusion" that

would impose "many risks and burdens."  *Id.*  Defendant's formal response followed suit,

asserting that an inspection would "impinge facility security" and "could be used to facilitate a

jail break or escape."  Defendant's Response to Inspection, at 1, 2 (Ex. E).

Plaintiffs responded via email reiterating their offer to negotiate protocols for their visit

that would address Defendant's concerns and mitigate any risks.  *See* Ex. F.  In subsequent

discussions over the phone, Defendant declined Plaintiffs' standing offer to negotiate conditions

and instead stated that he would seek a Protective Order to block the inspection.  Defendant has

not filed a motion seeking a Protective Order nor has he relented in his refusal to permit an

inspection, leaving Plaintiffs no choice but to file this motion to compel.

## ARGUMENT

**A.      Plaintiffs Should Be Allowed To Conduct A Rule 34 Site Inspection Accompanied By Appropriate Health And Safety Protocols**

The scope of discovery under Federal Rule of Civil Procedure 26 is broad.  "Parties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case."  *In re Intuniv Antitrust Litig.*, No. 16-cv-

12396-ADB, 2018 WL 6590616, at *2 (D. Mass. Dec. 14, 2018) (quoting Fed. R. Civ. P.

26(b)(1)).  Unless limited by the court, any document or thing that is relevant to the claim or

defense of any party may be inspected pursuant to Rule 34 except where privileged or not

proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34(a)(2); *see*

*also Chunn v. Edge*, ECF No. 45, at 2 (Ex. A) ("[A]ny document or thing that is relevant to the

claim or defense of any party may be inspected pursuant to Rule 34 unless it is privileged, or it

has been prepared in anticipation of litigation or for trial, or it reveals facts known and opinions held by experts, or there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden.") (citing Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2206 (3d ed. 2020)).

Rule 34 specifically permits entry onto designated land or other property possessed or controlled by the responding party to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Where the opposing party fails to give the requested access, the moving party may seek an order compelling such access. Fed. R. Civ. P. 37(a)(3)(B)(iv) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection . . . [if opposing party] fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.").

"The party seeking to compel an inspection under Rule 34 has the initial burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1). Following that showing (or if relevance is plain from the face of the request), the party who resists discovery then has the burden to show that discovery should not be allowed, and carries the 'heavy burden of clarifying, explaining, and supporting its objections.'" *Safeco Ins. Co. of Am. v. Monroe*, No. EDCV 15-1471-RGK, 2016 WL 7486611, at *2 (C.D. Cal. Jan. 11, 2016) (internal citation omitted). *See also Lenard v. Sherwin-Williams Co.*, No. 2:13-CV-2548 KJM AC, 2015 WL 854752, at *1 (E.D. Cal. Feb. 26, 2015) (same).

If access for inspection is granted, the parties (or the court) may decide the terms and conditions under which the inspection must take place. *See, e.g., McConnell v. Canadian Pac.*

*Realty Co.*, 280 F.R.D. 188, 192–96 (M.D. Pa. 2011) (considering the scope of discovery in granting an inspection of property).

    *1.*    *The BCHOC Immigration Facilities Are Relevant To This Action*

    There can be no question that the BCHOC facilities are relevant to this litigation. As the Court has observed, "[t]he gravamen of [Plaintiffs'] complaint [is] that the facility [is] simply too crowded to practice social distancing in accordance with ubiquitous medical advice, [Complaint] ¶¶ 67-68, and that the conditions [are] otherwise unhygienic, *id.* ¶ 70." Mem. of Decision, ECF No. 175, at 4.[3] The physical layout of BCHOC, the density of the population, and the inability to socially distance have all been central to the Court's key rulings in this case, *see supra* at n. 1, and will necessarily be front-and-center in the upcoming trial.

    Despite all of that, Defendant perplexingly argues that an inspection of the BCHOC facilities is not relevant because this lawsuit is "not about conditions of confinement." *See* Defendant's Response to Inspection, at 2 (Ex. E). The Court has already definitively rejected this position. When Defendant made the same argument in opposing Plaintiffs' preliminary injunction motion, the Court noted differing First Circuit authority on whether habeas actions are limited to the fact or duration of confinement, but went on to hold:

> Even were habeas actions so limited, the Detainees have styled their action as <u>both</u> a habeas petition under 28 U.S.C. § 2241 <u>and</u> a complaint seeking declaratory and injunctive relief. Pet. 1. That being so, a cause of action for equitable relief relating to their conditions of confinement is available wholly apart from habeas.

Mem. of Decision, ECF No. 175, at 8 (emphasis in original) (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-33 (10th Cir. 2005)).[4]

---

[3] Indeed, the first paragraph of Plaintiffs' complaint describes their action as "a request for immediate relief on behalf of…civil immigration detainees…who are at imminent risk of contracting COVID-19…[due to] *the unsafe, congregate conditions in which [they] are being held.*" Compl., ECF No. 1, ¶ 1 (emphasis added).

[4] Although this Court therefore did not specifically rule as to the scope of challenges in habeas proceedings, the Court has previously agreed with Plaintiffs' position that "although a habeas petition is typically suitable only to challenge the 'fact or duration' of incarceration, some conditions of confinement

This case is therefore squarely focused on the health and safety hazards posed by Plaintiffs' confinement in the congregate living quarters at BCHOC during the COVID-19 pandemic. An inspection is necessary to allow Plaintiffs to assess these conditions, including Defendant's purported health and safety measures as the case heads towards trial. Plaintiffs need to be able to assess, among other things, class members' ability to practice social distancing within the facility, sanitation and cleaning practices at the facility as they pertain to minimizing the risk of transmission of COVID-19, and the risk that the virus will spread from one area of BCHOC to another as staff members cross into the immigration facilities. The Court has made clear that these will all be central issues at trial. *See* Mem. of Decision, ECF No. 175, at 21 ("There is little doubt that the Detainees would likely demonstrate at trial a substantial risk of serious harm to their health arising from their conditions of confinement amidst the COVID-19 outbreak."). This more than satisfies the relevance requirements of Rule 26(b)(1).

Defendant claims that a site visit is unnecessary as it has already provided "extensive diagrams, photographs, video and measurements of the immigration detention facilities." Defendant's Response to Inspection, at 1 (Ex. E). However, the discovery provided to date is limited, selective, and outdated. At earlier stages in these proceedings, the parties each relied on drawings of the facility to help assess detainees' ability to social distance. *See* Exhibits. B, C, D to Shin Decl., ECF No. 91-6; *see also* Def.'s Memo in Supp. of Their Motion to Stay Further Release, ECF No. 83-3. While such limited evidence may have been sufficient given the

---

claims are appropriately brought as habeas petitions." *See Fox v. Lappin*, 441 F. Supp. 2d 203, 205 (citing *Kane v. Winn*, 319 F. Supp. 2d 162, 214 (D. Mass. 2004) ("Looking at both state and federal prisoner cases, there are many indications that habeas will in fact lie for certain conditions of confinement claims.")).

exigencies at the time, it is plain that more formal discovery of the type expressly contemplated by the Federal Rules is now necessary as the case proceeds to trial.

The best way to evaluate the current on the ground reality of class members' detention is to be on the ground. As such, an onsite inspection of BCHOC facility conditions is not only directly relevant to Plaintiffs' claims, it is necessary to effectively litigate their challenge to the unsafe and unhygienic conditions of class members' continued confinement at BCHOC.[5]

2.    *Defendant's Safety and Security Objections Can Be Effectively Addressed*

Given the clear relevance of a site inspection to Plaintiffs' claims, Defendant "has the burden to show that discovery should not be allowed, and carries the 'heavy burden of clarifying, explaining, and supporting its objections.'" *Lenard*, 2015 WL 854752, at *1. Defendant cannot shoulder this heavy burden. Defendant points to purported safety and security objections but has not provided any fulsome explanation or support for his position. Moreover, Defendant's concerns can be addressed via an appropriately drawn order limiting the time, scope, and manner of Plaintiffs' site visit. None of these concerns justify Defendant's wholesale refusal to meaningfully engage with, let alone facilitate, Plaintiffs' request to exercise their discovery rights under Rule 34.

Defendant's position that there are no possible conditions that would enable a safe and productive site visit is untenable and flies in the face of (a) longstanding precedent allowing inspections of prison facilities and conditions of detention under Rule 34; (b) recent court orders granting plaintiffs access to evaluate conditions at detention facilities during the COVID-19

---

[5] In fact, Defendant has previously argued that Plaintiffs' expert opinions should be discounted in instances when the experts did not have access to current conditions at the facility. *See, e.g.*, Def.'s Mem. Regarding the Appropriate Level Of Detainee Population, ECF No. 214, at 4 (criticizing "the general opinion of doctors, who either had never been to BCHOC or not been there recently"). Defendant cannot attempt to undermine Plaintiffs in this manner while simultaneously denying Plaintiffs' right to inspect the facilities.

pandemic using negotiated safety protocols; and (c) ICE's own internal policies, which continue to allow site visits during the pandemic by prison overseers.  These precedents provide a rubric for how the Defendant could allow Plaintiffs the access they seek without compromising public health, security, or safety.

Defendant's hyperbolic claim that a site visit would "impinge facility security" and that there "is too great a risk that the information could be used to facilitate a jail break or escape" amount to a black and white argument that would effectively rewrite Rule 34 to forever exclude inspections of detainment facilities.  Defendant's Response to Inspection, at 1, 2 (Ex. E). Nothing in the rule or caselaw supports such overreach.  Indeed, Rule 34 inspections of prison facilities are regularly allowed.  *See, e.g.*, *United States v. Erie Cty., NY*, No. 09-CV-849S, 2010 WL 986505, at *2 (W.D.N.Y. Mar. 17, 2010) (allowing inspection of a holding center and stating that "Rule 34, like all federal discovery rules, is to be liberally construed"); *Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2007 WL 3231706, at *1 (E.D. Cal. Oct. 30, 2007) (broadly construing  Rule 34 to allow plaintiffs' experts to confer with prison staff during inspection).

Far from giving the government carte blanche to close prison doors to outside overseers, the global COVID-19 pandemic makes the need for outside visibility into the on the ground reality at detention facilities all the more important.  Accordingly, district courts have continued to grant access to detention facilities for inspections during the pandemic, including in cases like this, where parties have challenged immigration detention in light of the health and safety risks posed by COVID-19.  For example, in *Chunn v. Edge*, plaintiffs brought a constitutional challenge to the conditions of confinement at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  *See Chunn v. Edge*, ECF No. 45, at 1 (Ex. A).  Rejecting objections

similar to those raised by the Defendant here, Judge Kovner concluded that visiting the facility would be "the best way for [petitioners] to gain an accurate understanding of the conditions there." *Id*. at 2.

Judge Kovner acknowledged respondent's concerns for safety but noted that "site inspections [had] been conducted . . . on at least several occasions in recent years, without any evident disruption of operations." *Id*. at 2-3.  She further ruled that, "firsthand observation of conditions at the MDC is likely to yield information that could not be readily obtained through secondhand accounts." *Id*. at 4.  Additionally, the court explained that (as Plaintiffs argue here) "[i]nstead of prohibiting petitioners from performing an inspection, the parties (or the Court, if necessary) should adopt limits on the inspection that minimize its burden on the facility." *Id*. at 3.

The middle district of Alabama recently reached a similar conclusion.  In *Braggs v. Dunn*, Judge Myron Thompson agreed with experts *for both* plaintiffs and defendants that "site visits are an essential part of assessing the provision of medical and mental-health care in prisons." *Braggs v. Dunn,* No. 2:14-cv-00601 (MHT), ECF No. 3000, at 3 (Ex. B).  Judge Thompson further concluded that, in light of the precautions the inspectors planned to take, the "minimal risk of transmission of COVID-19 to the staff and prisoners" was "greatly outweighed by the plaintiff prisoners' need to gather evidence . . ." and that "document review is not a viable substitute for site inspections, as one must determine whether the documents reflect reality." *Id*. at 4-6.

The logic underlying the rulings in *Chunn* and *Braggs* has been applied in other COVID-19 detention cases in which the parties have submitted joint documents setting forth protocols for inspection. *See, e.g.*, *Coreas v. Bounds*, No. 20-cv-00780-TDC, Order Regarding Health

Inspection Mandate and Visiting Protocol, ECF No. 159 (D. Md. July 30, 2020) (attached as Ex. G); *see also Garcia v. Wolf*, No. 20-cv-00821, Agreed Inspection Protocol, ECF No. 58 (E.D. Va. Aug. 18, 2020) (attached as Ex. H).

In addition to being at odds with a number of recent district court decisions and joint stipulations around the country, Defendant's objection to allowing Plaintiffs any sort of onsite inspection flies in the face of ICE's own internal policies, which throughout the COVID-19 pandemic have allowed for external oversight of facilities in which immigration detainees are held. *See* U.S. Immigration and Custom Enforcement, *ICE Guidance on COVID-19*, *Visitation at Detention Facilities*, https://www.ice.gov/coronavirus (last visited Oct. 21. 2020) ("Members of Congress, Congressional Member Delegations (CODELs), and Congressional Staff Delegations (STAFFDELs) [] will not be prevented from accessing facilities for the purpose of conducting oversight."). Indeed, ICE has already developed and is currently using protocols that facilitate continued external access to its facilities during the pandemic while still protecting health and safety. *See id.* ("To safeguard visitors, detainees, ICE and facility staff, congressional visitors may be subject to special screening procedures congruent with staff facility entry screening. Congressional visitors should be advised of standard hygiene practices to help prevent the spread of disease (*i.e.*, washing hands, avoiding close contact) and should be made aware of available hand washing stations within the facility."). Moreover, other inspections of BCHOC facilities by outside parties have continued despite the pandemic. *See, e.g.*, Letter from the Massachusetts Department of Public Heath to Steven Souza, dated July 8, 2020 (attached as Exhibit I) (detailing findings of on-site investigation conducted during the COVID-19 pandemic).

Given Defendant's unwillingness to compromise and engage on the topic despite the great weight of authority outlined above, Plaintiffs are attaching herewith a draft site inspection order for the Court's consideration that includes a set of proposed health and safety precautions (Plaintiffs' "Proposed Order").

As this Court has previously admonished, "[t]he exigencies of the moment demand flexibility." *See* Mem. of Decision, ECF No. 175, at 24.  Plaintiffs stand ready to be flexible in designing a site visit consistent with protocols outlined in ICE's own policies and other orders granting similar facility inspection requests in suits around the country.  Yet, Defendant continues its unwillingness to come to the table, opting instead to take uncompromising positions, "[w]here elasticity is vital, they are rigid." *Id*. at 25.  In the face of this inflexibility and for the reasons stated above, Plaintiffs ask that the Court issue an order compelling Defendant to allow a Rule 34 inspection to be conducted in accordance with the set of health and safety precautions laid out in Plaintiffs' Proposed Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), that the court enter their Proposed Order to facilitate a Rule 34 inspection of the BCHOC facilities.

October 23, 2020

Respectfully Submitted,

-/s/ Andy O'Laughlin                                 -
Oren Sellstrom (BBO #569045)
Oren Nimni (BBO #691821)
Lauren Sampson (BBO #704319)
Ivan Espinoza-Madrigal†
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor

Boston, MA 02110
(617) 988-0606
onimni@lawyersforcivilrights.org

Michael Wishnie (BBO #568654)
Muneer I. Ahmad†
Sarah Zampierin†
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
michael.wishnie@ylsclinics.org

Lisa Pirozzolo (BBO #561922)
John J. Butts (BBO #643201)
Vinita Ferrera (BBO #631190)
Felicia Ellsworth (BBO #665232)
Nicole M.F. Dooley (BBO #690539)
Andy O'Laughlin (BBO # 691836)
Annaleigh Curtis (BBO #696165)
Michael Brown (BBO #695276)
Rama Attreya (BBO #699395)
Gary Howell-Walton (BBO #705470)
Elizabeth Driscoll (BBO # 705302)
Mikayla Foster (BBO # 705360)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 021009
lisa.pirozzolo@wilmerhale.com

† Admitted *pro hac vice*

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. CIV. P. 37(a)(1) AND LOCAL RULES 7.1 AND 37.1

I, Andy O'Laughlin, hereby certify pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rules

7.1(a)(2) and 37.1(b) that counsel in this matter have held discovery conferences by telephone

and email exchange over an extended period of time from July 14, 2020 through October 23,

2020, in order to determine whether the disputed issues, as articulated in the above Memorandum

of Law, could be resolved, but no agreement was reached.

October 23, 2020                                  -/s/ Andy O'Laughlin                -
                                                   Andy O'Laughlin

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on October 23, 2020 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of this court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

October 23, 2020                                           -/s/  *Andy O'Laughlin*            -
                                                                   Andy O'Laughlin