UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

HASSAN CHUNN; NEHEMIAH McBRIDE;
AYMAN RABADI by his Next Friend Migdaliz
Quinones; and JUSTIN RODRIGUEZ, by his
Next Friend Jacklyn Romanoff, individually
and on behalf of all others similarly situated,

        Petitioners,

   -against-                                      ORDER
                                                        20-cv-1590 (RPK)

WARDEN DEREK EDGE,

        Respondent.

------------------------------------------------------------X

RACHEL P. KOVNER, United States District Judge:

        Petitioners, who have brought a constitutional challenge to the conditions of confinement at the Metropolitan Detention Center ("MDC") during the COVID-19 epidemic, seek to have an expert witness inspect the facility. They served on respondent a notice of entry on land requesting authorization for their expert (accompanied by two attorneys) to "inspect the conditions" of parts of the facility, to review certain "logbooks and posted orders," and to speak to inmates and staff about the conditions there. Notice of Entry on Land, Dkt. No. 40. Respondent objects. Respondent's Letter of April 13, 2020 ("Resp. Ltr.") at 6-11, Dkt. No. 42. I overrule respondent's objections to petitioners' performing any site inspection, and I direct the parties to meet and confer regarding the conditions for such an inspection. The parties shall report back on any disagreement on the conditions of an inspection by April 16, 2020.

1

1. **Objections to Any Inspection of the MDC**

Federal Rule of Civil Procedure 34(a)(2) permits one party to serve on another a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect . . . the property." As a general matter, "[a]ny document or thing that is relevant to the claim or defense of any party may be inspected pursuant to Rule 34 unless it is privileged, or it has been prepared in anticipation of litigation or for trial, or it reveals facts known and opinions held by experts, or there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden." Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2206 (3d ed. 2020); *see* Fed. R. Civ. P. 26(b)(1). An inspection may be denied as unduly burdensome if "the burdens and dangers created by the inspection" outweigh "the degree to which the proposed inspection will aid in the search for truth." *New York State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956, 961 (2d Cir. 1983) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978)); *see, e.g.*, *Curry v. Allan S. Goodman, Inc.*, No. Civ. 3:02CV1149 (PCD), 2003 WL 22305161 (D. Conn. May 22, 2003).

Applying this rule, I conclude that petitioners should be permitted to perform an inspection. Visiting the MDC is the best way for petitioners' expert to gain an accurate understanding of the conditions there. And petitioners' expert can be expected to produce a report and testimony that is more useful to the Court if the expert observes conditions at the facility firsthand. I do not see burdens or dangers that outweigh an inspection's benefits. An inspection of a detention facility does impose some unique burdens, because the MDC is "an administrative security facility" in which movement "is heavily controlled and restricted to ensure the safety and security of inmates and employees at the facility." Resp. Ltr. 10. But site

2

inspections have been conducted at the MDC on at least several occasions in recent years, without any evident disruption of operations. And while respondent notes that "operations at MDC are significantly modified to cope with the current pandemic," *ibid.*, respondent has not identified aspects of the facility's COVID-19 protocols that make an inspection impracticable. Instead of prohibiting petitioners from performing an inspection, the parties (or the Court, if necessary) should adopt limits on the inspection that minimize its burden on the facility.

I am unpersuaded by respondent's arguments that an inspection should be entirely prohibited. Respondent suggests that a site inspection will have little or no value because petitioners' proffered expert—Dr. Homer Venters—and others have already expressed views relating to best practices and the likely spread of COVID-19 within the facility. Resp. Ltr. 6-8. But an expert may express views at the temporary restraining order ("TRO") stage based on the facts he knows, and later refine his views and offer additional analysis after he learns new facts. It would be particularly strange for me to conclude that an inspection by Dr. Venters would be of little use, because Dr. Venters has not previously offered an analysis of conditions at the MDC and the safety measures respondent has taken there. His declaration at the TRO stage focused on best practices generally and on epidemiological expectations regarding the virus's spread. *See* Venters Decl., Dkt. 26-4. Respondent also suggests that an inspection "would have limited utility" because conditions at the MDC are "fluid" and "constantly changing." Resp. Ltr. 10. But *some* conditions at MDC are likely to remain constant during the duration of this (rather expedited) litigation. I cannot conclude that a site inspection will be of little value simply because some conditions may change in the future. Finally, respondent suggests that a site inspection is not necessary because two of the named petitioners are housed at the MDC and can therefore describe the conditions at the facility to their expert. As noted above, however, I

3

believe firsthand observation of conditions at the MDC is likely to yield information that could not be readily obtained through secondhand accounts. I conclude that an inspection of the MDC is appropriate.

**2. Objections to the Manner of Inspection**

Respondent raises several narrower objections. He argues that Dr. Venters and petitioners' counsel should not interview MDC staff during an inspection because petitioners have not gone through the required approval processes for questioning of Department of Justice ("DOJ") employees, Resp. Ltr. 9-10, and because "interviews of BOP staff during work hours at the MDC" would be "unduly disruptive to [staff members'] normal duties safeguarding and protecting inmates," *id.* at 10. I agree that Dr. Venters and petitioners' counsel should not solicit interviews of MDC staff while conducting the inspection. Petitioners have not persuasively explained how such interviews would be consistent with regulations that generally require DOJ approval before a DOJ employee may disclose information that the employee obtained during the employee's performance of official duties. *See* 28 C.F.R. §§ 16.21-16.29; *United States ex. rel. Touhy v. Ragen,* 340 U.S. 462, 468 (1951). In any event, attempts to interview the MDC staff who are on duty during petitioners' inspection would risk unduly burdening MDC operations during a crisis.

I direct the parties to confer regarding the additional objections that respondent has raised to the manner of the proposed inspection. Respondent objects "to the request by Dr. Venters and two attorneys to talk to 'incarcerated individuals (confidentially)'" on that ground that permitting petitioners to conduct such interviews "without any limitations" would "violate[] the privacy rights and interests of inmates housed at the MDC who are not parties to this action." Resp. Ltr. 8. Respondent also suggests that such interviews may be inappropriate because such inmates

4

"likely have had, or still have, counsel with respect to their criminal cases." *Id.* at 9. During a teleconference in this case on Monday, the Attorney-in-Charge of the Federal Defenders for the Eastern District of New York stated that she consented to interviews of Federal Defenders' clients regarding conditions of confinement at the MDC. Petitioners' counsel also gave additional guidance concerning a proposed protocol for interviews. The parties are directed to discuss whether agreement is possible on any protocol governing such conversations.

Similarly, the parties are directed to discuss respondent's objections that petitioners' notice of inspection is not appropriately limited "to any specific or reasonable duration" or sufficiently confined "in scope or nature," Resp. Ltr. 8; that an inspection should not extend to "the entire MDC"; that "[p]etitioners have not stated what method they will use to record their observations," *id.* at 10; and that certain information would be more appropriately obtained through alternative mechanisms, *id.* at 11. At the teleconference in this case on Monday, petitioners expressed willingness to further limit the areas of MDC that they would inspect. The Court expects the parties to negotiate in good faith regarding the parameters of an inspection to permit petitioners to obtain relevant information while minimizing the burden on respondent.

The parties are directed to advise the Court on April 16, 2020, whether they have reached an agreement on the parameters of an inspection. If areas of disagreement remain, the parties shall explain their positions on the disputed issues.

SO ORDERED.

      /s/ Rachel Kovner  
      RACHEL P. KOVNER  
      United States District Judge

Dated: Brooklyn, New York  
      April 15, 2020