IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| EDWARD BRAGGS, et al.,    )<br>                           )<br>    Plaintiffs,          )<br>                           )<br>    v.                     )<br>                           )<br>JEFFERSON S. DUNN, in his  )<br>official capacity as       )<br>Commissioner of            )<br>the Alabama Department of  )<br>Corrections, et al.,       )<br>                           )<br>    Defendants.            ) | CIVIL ACTION NO.<br>   2:14cv601-MHT<br>       (WO) |

**ORDER GRANTING MOTION FOR ON-SITE PRISON INSPECTIONS**

This case is before the court on the plaintiffs' motion for on-site prison inspections to allow them to prepare for the October 19, 2020, evidentiary hearing on the defendants' motion to terminate the court's remedial orders. The court held an evidentiary hearing on the inspection motion on September 30, 2020. The motion will be granted for the reasons and to the extent set forth below.

- On the eve of a trial on several other issues, the defendants moved to terminate numerous remedial orders entered by the court pursuant to the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(b).[1]  The defendants' motion is set for an evidentiary hearing on October 19, 2020, in an effort to resolve the motion before the automatic-stay provisions of the statute take effect.  *See* 18 U.S.C. § 3626(e).  To prevent termination of the remedial orders, the plaintiffs have the burden of proving that "prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."  18 U.S.C.

---

1. The defendants have at times indicated that they are moving to terminate all remedial orders.  The court still is unsure of exactly what they seek to terminate.  *See Braggs v. Dunn*, No. 2:14CV601-MHT, 2020 WL 5735086 (M.D. Ala. Sept. 24, 2020) (discussing this issue in more detail).

2

§ 3626(b)(3). As a result, the plaintiffs have the heavy burden of gathering a substantial amount of evidence in an extremely compressed timeframe.

- As experts for both the plaintiffs and the defendants testified, site visits are an essential part of assessing the provision of medical and mental-health care in prisons. The main area of disagreement was on the length of visits that should be allowed.[2]

- The court recognizes that the coronavirus pandemic is most serious and that it is impossible to eliminate all risks of COVID-19 transmission from the proposed site visits. However, also before the court is the grave issue of the provision of mental-health care in the Alabama prison system. *See Braggs v. Dunn*, 257 F. Supp. 3d 1171 (M.D.

---

2. The court gives minimal weight to the declaration of Dr. Anne C. Spaulding because her declaration is generalized, and she was not subject to cross-examination. The defendants asked to be allowed to present her testimony live later, but the pending motion needs to be resolved now. If they still want to present her testimony, they can ask for immediate reconsideration.

3

Ala. 2017); see also Braggs v. Dunn, 367 F. Supp. 3d 1340 (M.D. Ala. 2019). Based on the credible testimony of plaintiffs' expert Dr. Kathryn Burns about the safety precautions she will take during the inspections and of plaintiffs' expert Dr. Homer Venters about the inspections he has conducted in jails and prisons across the country during the pandemic and the minimal risk of the proposed inspections here given the proposed safety measures, the court finds that the inspections following the safety measures proposed by Dr. Burns pose a minimal risk of transmission of COVID-19 to the staff and prisoners.[3] The court further finds that this minimal risk is greatly outweighed by the plaintiff prisoners' need to

---

3. The defendants aggressively challenged Dr. Venters's credibility based on his admission to relying on falsified data around 1999-2001. While this is cause for concern, the court found his testimony credible based on his demeanor, knowledge, and relevant experience in the almost 20 years since the incident.

4

gather evidence to respond to the defendants' termination motion.

- **The court finds that defendants' expert Dr. Carl Keldie's testimony that the plaintiffs' expert should be able to complete a site visit of a prison in two hours is not credible or reliable. His election of two hours as the necessary length of the inspection was arbitrary. As he admitted, the length of the visit would depend on the particularities of a given facility. Furthermore, Dr. Keldie's testimony revealed that he was not sufficiently aware of the specific purpose and goals of the plaintiffs' expert's proposed inspection, or what she would need to determine during the course of the inspection. However, the court finds that each day of inspections should be completed as quickly as possible to minimize risk.**

- **The plaintiffs' expert, Dr. Burns, credibly testified, and the court finds, that the requested inspections of Donaldson, Bullock, Kilby, and**

5

> Tutwiler prisons are necessary in order to assess the existence of a current and ongoing violation of the Constitution in the defendants' provision of mental-health care to prisoners and to determine whether the challenged remedial orders remain necessary and narrowly tailored. The court recognizes that inspections of additional prisons would be preferable, and may even be necessary to give the plaintiffs a fair opportunity to respond to the defendants' motion, but agrees that the inspection of these four facilities is the bare minimum necessary for the plaintiffs to have a fair opportunity to respond to the motion to terminate.

- As Dr. Burns credibly opined, and as the court finds based on her testimony and the court's experience in this litigation, document review is not a viable substitute for site inspections, as one must determine whether the documents reflect reality. Indeed, whether documents reflect reality has been a critical issue in this

6

- litigation.  The court further finds that the telemedicine interviews of prisoners proposed by defendants' expert are not an adequate substitute for the confidential interviews of prisoners proposed by Dr. Burns, as the defendants presented no evidence that the prisoners could be assured of confidentiality with the telemedicine option.
- While the defendants surely were entitled under the PLRA the bring their motion when they did, they elected to do so in the midst of the coronavirus pandemic (thereby triggering the compressed PLRA deadlines now confronting the parties and the court), rather than later.  Should they wish to postpone the inspections, they have the option of withdrawing their termination motion and refiling it later, or agreeing to postpone the implementation of the automatic stay.

***

Accordingly, it is ORDERED that the plaintiffs' motion to require onsite prison inspections (doc. no. 2986) is granted as set forth below.

7

(1) The plaintiffs' expert, Dr. Kathryn Burns, accompanied by an attorney for the plaintiffs, shall be allowed to conduct up to two days of inspections at each of the following prisons: Donaldson, Bullock, Kilby, and Tutwiler. These shall begin on October 2, 2020, or as soon as Dr. Burns is ready to proceed, and shall proceed on consecutive days until complete, unless she, in her discretion, chooses to skip weekends or a particular day.

(2) Dr. Burns shall be allowed to bring with her a camera, tablet/laptop, writing implements, and any other equipment required to conduct the inspection.

(3) Dr. Burns and plaintiffs' counsel shall continuously wear a N-95 mask, face shield, and gloves during the inspections, and any additional protective equipment provided by the Alabama Department of Corrections (ADOC), and shall follow the Centers for Disease Control's social distancing guidelines during the inspections. The ADOC shall provide the protective gear for plaintiffs' expert and counsel, which will provide the ADOC with the ability to ensure the highest level of protection for staff and prisoners, as they rightly wish to do.

8

(4) Dr. Burns and plaintiffs' counsel shall be tested for COVID-19 daily if ADOC and vendor staff so request and provide the tests.

(5) Dr. Burns and plaintiffs' counsel will not be permitted to enter any place being used to quarantine prisoners exposed to or infected with COVID-19.  Subject to that exception, Dr. Burns and plaintiffs' counsel shall be permitted to walk through, observe, and photograph the facilities, including: intake and screening areas, a sample of general population housing, all segregation units, all crisis cells, mental-health inpatient housing (including the Stabilization Units and Residential Treatment Units), mental-health diversionary housing (Structured Living Units), and any treatment space utilized for the provision of any mental health care service (including individual counseling, group therapy, and telepsychiatry).

(6) Dr. Burns shall be permitted to speak to prisoners in confidence and outside the presence of ADOC staff or defense counsel.  Dr. Burns will be permitted cell-front access to prisoners in segregation for brief conversations.

Dr. Burns will maintain an appropriate social distance during those exchanges.

(7) On the first day of a facility visit, Dr. Burns will walk through the facilities and speak to prisoners at an appropriate location. On the second day of a facility visit, Dr. Burns will conduct medical record review and individual interviews with prisoners selected for voluntary interviews on the first day. ADOC will provide prisoners selected for interviews with adequate personal protective equipment, including an N95 mask, face shield, and gloves.

DONE, this the 1st day of October, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE