IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COREAS, *et al.*, <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> BOUNDS, *et al.*, <br><br> *Respondents-Defendants*. | Civil Action No.: 8:20-cv-00780-TDC |

## ORDER REGARDING HEALTH INSPECTION MANDATE AND VISITING PROTOCOL

The Court hereby orders the following visiting protocols and mandate for the Court-ordered onsite inspection to be conducted by Dr. Fred Rottnek at the Howard County Detention Center ("HCDC") on August 1, 2020 and the Worcester County Detention Center ("WCDC") on July 31, 2020:

A) **Visiting Protocol**

1. **Dr. Rottnek will have full access to inspect the following areas and items in the Howard County Detention Center and the Worcester County Detention Center (collectively, the "Maryland Facilities"):**

    a. Places
        i. All buildings housing detainees
        ii. All lobbies, including public and inmate
        iii. Intake or booking facilities
        iv. Holding cells
        v. Infirmary or medical units
        vi. Medical clinic
        vii. Negative pressure isolation rooms, if available
        viii. Pods/Housing
            1. General population housing detainees
            2. Housing units of all the plaintiffs
            3. Any special COVID-19+ housing or cohorting units
            4. Quarantine units
            5. Sinks/Showers/Toilets
            6. Telephones
            7. Common areas

1

      ix. Segregation/solitary confinement units
      x. Dining areas and kitchen
      xi. Laundry and clothing storage facilities
      xii. Visitation areas
      xiii. Recreation yards
      xiv. Any other common areas, including chapels, multi-purpose rooms, gymnasiums, and libraries
      xv. Staff break rooms; staff locker rooms; bathrooms; or any other area where staff may congregate
      xvi. Courtrooms or legal presentation areas
      xvii. Transportation vehicles, driveways, and entryways to facilities

  b. PPE (and education materials), inventory, availability, education regarding use, and processes for
      i. Detainees and inmates
      ii. Correctional staff
      iii. Medical staff
      iv. Others (vendors, visitors, etc.)

  c. Cleaning supplies (as well as signage and education materials)
      i. Availability in the areas above
      ii. Supplies/inventories
      iii. Cleaning instructions and schedules

  d. HVAC
      i. Observation of ventilation in all the areas above
      ii. Any negative pressure isolation rooms
      iii. Movement of air in high traffic areas

  e. Observation of behaviors (and education materials about signs and symptoms of COVID-19, social distancing, use of PPE, use of cleaning and hygiene supplies)
      i. Adequate physical distancing
      ii. Correct use of PPE and cloth masks
      iii. Cleaning in high use areas (phones, common areas)
      iv. Cleaning in individual cells or bed areas
      v. Processes and compliance for entering and leaving building
      vi. Processes and compliance for moving around in building

2. **Dr. Rottnek will have full access to view the following records to the extent they exist:**

  a. Facility records
      i. Policies and processes that have been developed to respond to the current COVID-19 pandemic, including
          1. Treatment, housing, and management of inmates
          2. Quarantine practices
          3. Housing policies of COVID-19+ detainees and inmates
          4. Housing and monitoring of high-risk detainees and inmates for COVID-19, as defined by CDC,

2

                              https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/

5. Testing policies of inmates, staff, vendors, and any other people entering the Maryland facilities
6. Guidance for social distancing, use of PPE and cloth masks, cleaning, and hygiene for inmates, staff, vendors, and any other people entering the Maryland facilities
7. Updates in communication with medical staff regarding provision of healthcare, management of sick call, and housing of inmates in quarantine and those who test positive for COVID-19
8. Reentry guidance for detainees and inmates upon release
9. Contingency plans for employee/staff shortages

ii. Grievance records, or any inmate/detainee complaints (informal or formal) filed since 2/1/2020, and facility/ICE response
iii. Detainee and inmate rosters, including by housing unit, since 2/1/2020
iv. Signage and education materials that are currently posted in the facility
v. Absentee and attendance logs of correctional and or medical staff since 2/1/2020
vi. Employment rosters and supervisory charts for all employees, medical staff, and contractors at facilities
vii. Records of training, certification, and licensing status and shifts of medical staff
viii. Records of all employees, staff, and contractors who have tested positive for COVID-19, or who have been suspected of COVID-19 infection
ix. Records related to screening of all employees, staff, and contractors for COVID-19 prior to entry to facility
x. Schematic drawings that describe the physical layout of the facility;
xi. Facilities' detainee and inmate daily census since 2/1/2020
xii. Emergency medical transportation (number of run and reason for each run since 2/1/2020)
xiii. COVID-19 tests administered
    1. Reported by tests administered to detainees and inmates, correctional staff, and medical staff
    2. Reported by viral vs. antibody tests
    3. Surveillance testing: has a program been initiated?
xiv. Minutes of meetings between correctional staff and medical staff
xv. Minutes or records of meetings or communications between correctional staff and ICE/DHS regarding COVID-19;
xvi. Contracts and/or communications with infectious disease and/or sanitations specialists to address recommendation and applications to facilities

xvii. Floor plans of housing units
xviii. Communications between facilities and ICE/DHS regarding adherence to COVID-19 protocols, guidance, or requirements issued by ICE or the CDC
b. Medical records
   i. Mortality reviews of inmates who have died since 2/1/2020
   ii. Registry or rosters and medical records of inmates and detainees vulnerable for COVID-19 infection, including but not limited to the following conditions:
      1. Asthma
      2. Chronic kidney disease being treated with dialysis
      3. Chronic lung disease, such as emphysema and COPD
      4. Diabetes
      5. Hemoglobin Disorders, including sickle cell anemia
      6. Immunocompromised persons, including those with HIV/AIDS
      7. Liver disease, including hepatitis
      8. People aged 65 years and older
      9. Serious heart conditions, including past myocardial infarctions, and congestive heart failure
      10. Severe obesity
      11. Neurological conditions, such as epilepsy
      12. Serious mental illness (those that severely impact daily functioning), such as schizophrenia, bipolar affective disorder, major depression
   iii. Registry of inmates enrolled in chronic care clinics (part of NCCHC accreditation)
   iv. Any changes in protocols, e.g., chronic care clinics, medication passes, sick calls, due to COVID-19
   v. Sick call and sick call responses since 2/1/2020
   vi. Daily infirmary/medical unit census since 2/1/2020
   vii. Daily infirmary new admissions since 2/1/2020
   viii. Records of all inmates and detainees with confirmed or suspected cases of COVID-19
   ix. Records of all inmates or detainees who have been referred to offsite medical treatment or hospitalization since 2/1/2020
   x. Records related to screening of inmates and detainees for COVID-19.

3. **Confidential Communications with Detainees and Interpretation Services**

Dr. Rottnek shall be provided the opportunity to speak with any detainees, with their consent, in a private and confidential area provided by Respondents. Detainees will not face any retaliation for communicating with Dr. Rottnek. In order to enable Dr. Rottnek to interview

4

detainees who are not English-speaking, Dr. Rottnek shall have access to telephonic interpretation services as follows:

- Ms. Victoria Dopazo, a Spanish interpreter agreed to by the parties, will be available to Dr. Rottnek to provide Spanish interpretation by telephone;

- Legal Language Services, a third party on-demand telephonic interpretation service agreed to by the parties, will be available to Dr. Rottnek should he need interpretation for any languages other than Spanish.

The Maryland Facilities shall provide an unmonitored, unrecorded phone line for Dr. Rottnek to use while interviewing any detainee or inmate for the purposes of any necessary interpretation services.

4. **Access to the Record**

Dr. Rottnek shall have full access to the record in this case should he choose to view any previously filed documents.

5. **Electronic records at the Maryland Facilities**

The Maryland Facilities shall have staff available to facilitate the retrieval of electronic records requested by Dr. Rottnek during the course of his site inspections.

6. **Use of videoconferencing or livestreaming prohibited**

No videoconferencing or livestreaming will be allowed during any part of Dr. Rottnek's inspection of the Maryland Facilities.

7. **Photos or videos taken during the inspection**

Dr. Rottnek shall be allowed to bring with him a cell phone, camera, writing implement, and any other equipment he may need to conduct his site visit. These items will all be subject to routine inspection by the facility. He will be allowed to take photographs and video as he deems

necessary. Any photos or videos taken during Dr. Rottnek's inspection of the Maryland Facilities will be subject to the terms and conditions of the Stipulated Order of Confidentiality filed by the parties on July 29, 2020 at ECF 156.

**8.  Dr. Rottnek's final report**

Dr. Rottnek's final report shall be provided to the Court and the parties upon completion. Before any part of the final report is made public, counsel for the parties shall have four (4) business days to advise the Court of any aspects of the report that a party views as confidential or privileged information that should be redacted prior to the report being made public.

**9.  Stipulated order to protect confidentiality**

The Stipulated Order of Confidentiality filed by the parties on July 29, 2020 at ECF 156, shall govern materials provided by the Maryland Facilities, site inspections and the final expert report concerning the production of confidential, for official use only, law enforcement sensitive, and/or private information.

**10.  Both parties available by phone during the inspection of the Maryland Facilities**

Counsel for the parties shall be remotely available by telephone to discuss any issues that may arise during the inspection of the Maryland Facilities. If Dr. Rottnek is required to contact counsel to resolve a dispute, he will first call Petitioners' counsel Sirine Shebaya who, without discussing the substance of Dr. Rottnek's call, will then immediately initiate a conference call with Respondents' counsel Vince Vaccarella or Vickie LeDuc so that both parties can hear any questions Dr. Rottnek may have. The parties will then discuss the issue outside the presence of Dr. Rottnek and attempt to reach an agreement. No photos or videos taken by Dr. Rottnek shall be used to assist in resolving a dispute unless deemed necessary by both parties. If the parties are unable to resolve the dispute, the authorities at each respective facility will resolve the

dispute and Dr. Rottnek shall provide a detailed explanation of all circumstances surrounding said dispute in his report to the Court.

### B) Mandate

Dr. Rottnek's expert report shall answer the following questions:

**Testing and Screening**

1. Are the Maryland Facilities accepting new detainees? How many are received each month and are there any limitations on the number of new detainees that can be accepted?

2. What COVID-19 testing, screening, or quarantine procedures are used on new arrivals and are they adequate?

3. What COVID-19 testing, screening, or quarantine procedures are used on correctional staff entering and exiting the Maryland Facilities and are they adequate?

4. Are visitors permitted and under what circumstances? What COVID-19 testing or screening procedures are used on visitors entering and exiting the Maryland Facilities and are they adequate?

5. Are detainees allowed to leave and return to the Maryland facilities for court appearances? If so, what COVID-19 testing, screening, or quarantine procedures are used on detainees entering and exiting the Maryland Facilities and are they adequate?

6. Are staff engaged in testing or screening provided with adequate instruction on how to use relevant equipment, such as thermometers?

7. What testing of detainees and staff has occurred to date and what were the results? How many suspected and confirmed cases of COVID-19, and hospitalizations have there been at each of the Maryland Facilities? When?

8. What policies and procedures do the Maryland Facilities have to test detainees and staff because of signs of COVID-19 exposure and are those policies and procedures adequate and adequately followed?

9. Is there a policy or procedure to regularly test detainees for COVID-19? Is it adequate to determine whether the coronavirus is present in the facility?

**II. Medical / Quarantine**

10. In addition to testing, what policies and procedures are in place to detect whether detainees may have COVID-19?

7

    a. Have the Maryland Facilities been adequately and timely identifying such detainees and responding to sick calls relating to possible cases of COVID-19?

11. What policies and procedures are in place on what to do when a detainee or staff member tests positive for COVID-19, has symptoms of COVID-19 as defined by the CDC, or is otherwise suspected of having COVID-19? Are they adequate and adequately enforced?

    a. What type of treatment or care is provided? Is it adequate?

12. What policies and procedures are in place as to when and for how long detainees or staff are quarantined or isolated if they have been exposed to COVID-19 or test positive for COVID-19? Are they adequate and adequately enforced?

13. What are the conditions for a detainee who is quarantined or isolated?

    a. Are detainees adequately monitored so they receive urgent care when needed?

    b. Do such detainees have adequate access to a clean cell or isolation unit, daily showers, clean clothing and clean linens, and legal and personal calls?

    c. How do these conditions compare to the conditions in non-quarantine housing? Do they deter residents from reporting COVID-19 symptoms?

14. How large is the medical unit, in terms of area and number of beds? Are there an adequate number of beds and adequate spacing?

15. Do either of the Maryland Facilities have negative pressure isolation rooms? How are they used? Are they necessary and are there a sufficient number?

16. How are residents in non-quarantine units able to access medical care, including reporting symptoms of COVID-19 to medical staff? Is the response adequate in timing and the provision of appropriate care?

17. How frequently do the Maryland Facilities' medical staff meet with the Maryland Facilities' staff and detainees to educate them about COVID-19 symptoms and precautions, and what information is conveyed?

### III. High-Risk Detainees

18. Are there specific policies and procedures in place to identify those who are at high risk of serious illness or death due to COVID-19? Does each facility have a record of such detainees?

19. What policies and procedures are in place to protect high-risk detainees from COVID-19? Are those procedures adequate and adequately applied?

8

## IV. Social Distancing

20. What is the capacity of each Maryland Facility and what is the current occupancy? How many residents share a cell, and what is the approximate size of the cell? Is there adequate social distancing in cells?

21. Do cells have toilets and sinks? If not, how many residents share how many toilets and sinks in common bathrooms?

22. What is the approximate size of common areas, how many residents use those common areas, and for what purpose (e.g., dining, recreation)? Is the space adequate to maintain social distancing?

23. What policies and procedures are in place for social distancing in common areas? Are they adequate? Are they being adequately enforced?

## V. Environmental Health and Hygiene

24. What policies and procedures are in place relating to the use of personal protective equipment ("PPE") and is there adequate instruction on and enforcement of those procedures, including the proper fitting and disposal of PPE?

       a. What PPE are staff and detained workers given, including in food service, and are they required to wear such equipment and instructed on how to do so?

       b. What PPE are detainees given and how and when are they required to use them?

       c. Are there sufficient quantities of PPE in the Maryland Facilities' stockpile?

25. What policies and procedures are in place for cleaning (a) detainee common areas, including food service areas, bathrooms, and showers; and (b) non-detainee common areas and hallways? Who performs the cleaning and are they adequately trained? Are those areas being adequately cleaned at the present time?

26. What policies and procedures are in place for cleaning detainee cells? Are detainees provided with adequate guidance and supplies, such as cleaning products and rags?

27. What policies and procedures are in place to direct and educate staff and detainees to maintain hygiene generally? Are residents provided with adequate personal hygiene products, including soap and access to hand sanitizer?

28. Have the Maryland Facilities retained a registered sanitarian to oversee the environmental health and safety programs? Has that sanitarian performed adequately?

29. Have the Maryland Facilities consulted with public health professionals regarding strategies to strengthen the COVID-19-related education program for both staff and detainees? If so, have the Maryland Facilities implemented those education program strategies?

## VI. Other

30. Are the Maryland Facilities providing consistent and reliable access to legal calls or visits?

31. Are the Maryland Facilities staffed so that there are sufficient personnel on duty to allow for absences due to COVID-19 infection or exposure?

32. In what ways, if any, do immigration detainees interact with, or use the same space and facilities, as criminal detainees? Do these interactions allow for COVID-19 to be transmitted from criminal detainees to immigration detainees? Has the facility taken sufficient steps to prevent such transmission?

33. In what ways, if any, do staff working with immigration detainees overlap with, interact with, or use the same space and facilities, as staff working with criminal detainees? Do these interactions allow for COVID-19 to be transmitted from criminal detainees or related staff to immigration detainees? Has the facility taken sufficient steps to prevent such transmission?

Accordingly, it is SO ORDERED this ___ day of ___July___, 2020, by the United States District Court for the District of Maryland:

/s/ THEODORE D. CHUANG
United States District Judge