# United States Court of Appeals
## For the First Circuit

No. 20-2117

IN RE: AIRES DA GRACA; CONROY LEWIS; CYRIL OKOLI; DARLIN ALBERTO GUILLERMO; DIMITAR DASKALOV; EDSON MARTINS; EMMANUEL LOPEZ; FLAVIO PRADO JUNIOR; FRED KAYITARE; GABRIEL DE LA PAZ; JOAO AMADO; KEITH WILLIAMS,

Petitioners,

v.

STEVEN J. SOUZA, in his official capacity as Superintendent of the Bristol County House of Correction,

Respondent,

TAE D. JOHNSON, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement;* ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security;** IMMIGRATION CUSTOMS ENFORCEMENT; TODD M. LYONS, in his official capacity as Acting Director of the Boston Field Office of Immigration and Customs Enforcement; THOMAS M. HODGSON, in his official capacity as Bristol County Sherriff,

Respondents.

PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Acting Director for U.S. Immigration and Customs Enforcement Tae D. Johnson has been substituted for former Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement Matthew T. Albence as respondent.

\*\* Pursuant to Fed. R. App. P. 43(c)(2), Secretary of the U.S. Department of Homeland Security Alejandro Mayorkas has been substituted for former Acting Secretary of the U.S. Department of Homeland Security Chad F. Wolf as respondent.

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Sameer Ahmed, with whom the Harvard Law School Crimmigration Clinic was on brief, for petitioners.
Christina Parascandola, Senior Litigation Counsel, Office of Immigration Litigation, with whom Jeffrey Bossert Clark, Acting Assistant Attorney General, William C. Peachey, Director, Office of Immigration Litigation, Jeffrey S. Robins, Deputy Director, Office of Immigration Litigation, William C. Silvis, Assistant Director, Office of Immigration Litigation, Michelle M. Ramus, Trial Attorney, Office of Immigration Litigation, Thomas E. Kanwit, Assistant United States Attorney, and Michael Fitzgerald, Assistant United States Attorney, were on brief, for respondents.

March 17, 2021

**LYNCH**, <u>Circuit Judge</u>.  Petitioners are immigration detainees primarily held at the Bristol County House of Correction ("BCHOC").  Respondents include state correction officials and federal U.S. Immigration and Customs Enforcement ("ICE") officials who secured petitioners' detention after they were picked up, usually after commission of criminal felony offenses, and found not to be legally in the United States.  Claiming that the district court erred in denying their bail applications despite the ongoing COVID-19 pandemic, the detainees petition for a writ of mandamus. We deny the petition.

## I. Facts and Procedural History

Petitioners are class members in a habeas class action filed against ICE and certain government officials on March 27, 2020.  The habeas petition requested relief for immigration detainees held at BCHOC who were "at imminent risk of contracting COVID-19, the lethal virus that is sweeping the globe and that feeds on precisely the unsafe, congregate conditions in which Plaintiffs are being held."  When the habeas petition was filed, there were approximately 148 detainees held at BCHOC.  See <u>Savino</u> v. <u>Souza</u>, 453 F. Supp. 3d 441, 443 (D. Mass. 2020).

The habeas petition stated that the immigration detention facilities were overcrowded, housed a high proportion of people especially vulnerable to COVID-19, offered detainees limited access to hygiene products, and did not allow for social

distancing. It alleged that the defendants violated the petitioners' Fifth Amendment rights to due process by exposing them to an "imminent risk of physical, emotional and mental harm" and violated § 504 of the Rehabilitation Act, see 29 U.S.C. § 794(a), by exposing petitioners with underlying medical conditions to COVID-19 and thus preventing them from participating in the removal process by reason of their disability. Among other things, the habeas petition sought immediate release of the petitioners to the population at large or "placement in community-based alternatives to detention." Petitioners also moved for a temporary restraining order and class certification.

On April 2, 2020, the district court held a hearing, grouped detainees into five subclasses based on their criminal histories and medical conditions, and provisionally certified these subclasses. See Savino, 453 F. Supp. 3d at 448 & n.8. The next day, it held another hearing at which it requested that the parties submit a list of fifty detainees applying for bail by April 4, 2020, and a list of ten bail applications per day starting on April 7, 2020. The parties did not agree on a list of fifty detainees by April 4, 2020, so the court created its own list and set hearing dates beginning on April 7, 2020.

On April 8, 2020, the district court issued a memorandum and order holding that the petitioners had standing to bring their claims and certified the petitioners' proposed class of "[a]ll

- 4 -

civil immigration detainees who are now held . . . at [BCHOC]."¹ Id. at 454. It said it would "follow[] the light of reason and the expert advice of the [Centers for Disease Control and Prevention] in aiming to reduce the population in the detention facilities so that all those who remain (including staff) may be better protected," id. at 454, and that it would use its "inherent authority" to "order bail for several Detainees and to consider bail applications for others," id. at 453. In considering bail applications, the court said it would prioritize releasing non-violent detainees and in fact did so. See id. at 454.

The district court conducted hearings on many detainees' bail applications throughout April. By April 28, 2020, it had granted bail to forty-two detainees and denied bail to nineteen. By May 5, 2020, eighty-two detainees remained at BCHOC, about a 45% reduction from the original 148 detainees.

On May 7, 2020, the district court granted the class's motion for a preliminary injunction. It ordered that no new immigration detainees be admitted to BCHOC, that all current detainees be tested for COVID-19, and that all staff who come into contact with BCHOC detainees also be tested. On May 12, 2020, the

---

¹ The petitioners had originally proposed a broader class encompassing "[a]ll civil immigration detainees who are now or will be held" at BCHOC. Savino, 453 F. Supp. 3d at 448. The district court "certif[ied] the general class as proposed by the Detainees, albeit excluding those not yet in custody." Id.

- 5 -

court issued a memorandum of decision providing its reasoning for its issuance of the preliminary injunction. See Savino v. Souza, 459 F. Supp. 3d 317, 320-21 (D. Mass. 2020).

On November 5, 2020, the class moved for reconsideration of the court's denial of bail to some of the petitioners. The district court denied this motion on December 18, 2020.

The five remaining detainees who continue to pursue a writ of mandamus before this court -- Aires Da Graca, Flavio Prado Junior, Conroy Lewis, Joao Amado, and Fred Kayitare -- filed their petition on November 25, 2020.[2] They had been denied bail in April 2020.[3] The district court did not explicitly state reasons for denying bail to these detainees, but all of them have criminal histories showing that they were convicted of committing violent crimes.[4]

---

[2] In parallel with this mandamus petition, the petitioners also filed a notice of appeal. The two proceedings were consolidated in this court for oral argument. Their appeal will be disposed of in a separate and subsequent opinion.

[3] There were originally twelve petitioners for a writ of mandamus. Seven are no longer in immigration detention and the petition before us is moot as to them. Prado is no longer at BCHOC but is detained at another facility in Massachusetts.

[4] Da Graca has been convicted of carjacking, domestic violence offenses, drug possession, and trespassing. Prado has an outstanding arrest warrant in Brazil, where he was convicted of rape. He had escaped from Brazilian prison before coming to the United States. An immigration judge rejected his claim that his rape conviction was tainted and found that he was a danger to the community. Lewis has been convicted of carrying a dangerous weapon, reckless endangerment, criminal trespass, and possession with intent to sell a controlled substance. Among other things,

**II. Analysis**

The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The writ of mandamus has "stringent requirements," In re Tsarnaev, 780 F.3d 14, 16 (1st Cir. 2015), and is "generally thought an inappropriate prism through which to inspect exercises of judicial discretion," id. at 18 (quoting In re Bushkin Assocs., Inc., 864 F.2d 241, 245 (1st Cir. 1989)). "'[O]nly exceptional circumstances amounting to a judicial "usurpation of power,"' or a 'clear abuse of discretion,' 'will justify the invocation of this extraordinary remedy.'" Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380 (2004) (citations omitted) (first quoting Will v. United States, 389 U.S. 90, 95 (1967); then quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383 (1953); and then quoting Will, 389 U.S. at 95). Before mandamus can be granted, petitioners must show that there is no other adequate means to attain their desired relief and that they have a "clear and indisputable" right to issuance of the writ. Id. at 380-81 (quoting Kerr v. U.S. Dist. Ct. for N. Dist. of Cal., 426 U.S. 394, 403 (1976)); see In re Fin. Oversight & Mgmt. Bd.

---

Amado has been convicted of felony armed robbery, aggravated assault with a firearm, felony burglary, and, most recently, carrying a firearm without a license. Kayitare has been convicted of two counts of assault and one count of unlawful sexual touching.

- 7 -

for P.R., 985 F.3d 122, 127 (1st Cir. 2021). Further, the court issuing the writ, acting within its discretion, "must be satisfied that the writ is appropriate under the circumstances." Cheney, 542 U.S. at 381.

Mandamus comes in two varieties: supervisory mandamus and advisory mandamus. In re Grand Jury Subpoena, 909 F.3d 26, 28 (1st Cir. 2018). The petitioners argue for both types.

A. Supervisory Mandamus

Supervisory mandamus "is available when 'the issuance (or nonissuance) of [a district court] order presents a question about the limits of judicial power, poses some special risk of irreparable harm to the [party seeking mandamus], and is palpably erroneous.'" Id. (alterations in original) (quoting United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994)). At least one of the necessary conditions for supervisory mandamus is not met here, so we do not discuss the others.

Petitioners have made no showing that the district court "palpably" erred. The harm that the petitioners originally complained of was "unconstitutional overcrowding" during the height of the COVID-19 pandemic. Savino, 453 F. Supp. 3d at 447. Remedying overcrowding does not require releasing every detainee on bail. Indeed, the court stated that "effectively minimiz[ing] the concentration of people in [BCHOC]" would "protect everyone from the impending threat of mass contagion" and therefore started

- 8 -

granting bail to some detainees. Id. at 452. It properly recognized that granting bail under these circumstances "requires individualized determinations, on an expedited basis, and . . . should focus first on those who are detained pretrial who have not been charged with committing violent crimes." Id. at 454 (quoting Comm. for Pub. Counsel Servs. v. Chief Just. of Trial Ct., 142 N.E.3d 525, 537 (Mass. 2020), aff'd as modified, 143 N.E.3d 408 (Mass. 2020)); cf. United States v. Zimny, 857 F.3d 97, 99 (1st Cir. 2017) (discussing that, in the criminal context, the district court makes an individualized determination as to whether the defendant is a flight risk or danger to the community).

The district court followed this standard and the petitioners have not shown that the district court violated this standard. Each of the petitioners here, as the district court knew, had committed serious, violent crimes, many of which were felonies. Based on their criminal histories, it was reasonable to deny bail to these petitioners because they each posed dangers to the community and/or were flight risks. See Savino, 453 F. Supp. 3d at 451 ("Detainees with a serious criminal background might have a tougher time demonstrating that the government could 'have easily prevented that harm' by releasing them on bond . . . ." (quoting Leite v. Bergeron, 911 F.3d 47, 53 (1st Cir. 2018))). The court chose to grant other detainees bail, but not the petitioners remaining here, after individualized determinations as

- 9 -

to each bail petition. Doing so, it succeeded in decreasing the population of detainees at BCHOC by about 45% by the beginning of May 2020, reducing the risk of any potential harm to the detainees remaining at BCHOC. See id. ("[A] common question . . . is whether the government must modify the conditions of confinement . . . or . . . release a critical mass of Detainees . . . such that . . . those held in the facility will not face a constitutionally violative 'substantial risk of serious harm.'" (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994))). There is no basis for supervisory mandamus relief.

B. Advisory Mandamus

Advisory mandamus is available in rare cases where the standard for supervisory mandamus is not met. It is appropriate only where there is an unsettled issue of law "of substantial public importance," where the issue is "likely to recur," and where "deferral of review would potentially impair the opportunity for effective review or relief later on." United States v. Pleau, 680 F.3d 1, 4 (1st Cir. 2012) (en banc) (citing Horn, 29 F.3d at 769-70); see also In re Justs. of Superior Ct. Dep't of Mass. Trial Ct., 218 F.3d 11, 15 (1st Cir. 2000). These standards were not met here.

The petitioners argue that they present two unsettled questions of law of substantial importance warranting advisory mandamus: (1) whether the COVID-19 pandemic is a per se exceptional

- 10 -

circumstance warranting bail for all detainees regardless of individual circumstances and (2) the bail standard applicable for a habeas petitioner. Advisory mandamus is not warranted to decide either question.

First, issuing a writ of advisory mandamus to determine whether the pandemic is an exceptional circumstance is inappropriate because the question is a factual one, not a legal one. See Sampson v. United States, 832 F.3d 37, 42 (1st Cir. 2016) ("We typically exercise [advisory mandamus] to settle substantial questions of law when doing so would give needed guidance to lawyers, litigants, and lower courts." (alteration in original) (emphasis added) (quoting Sampson v. United States, 724 F.3d 150, 159 (1st Cir. 2013))). Many contextual factors -- including, for example, rapidly evolving scientific knowledge about COVID-19 and how it spreads, the population density at BCHOC, and the availability of treatments and vaccines for the virus -- affect whether COVID-19 constitutes an exceptional circumstance warranting bail for BCHOC detainees at any given point in time.

Next, petitioners argue that a writ of advisory mandamus is necessary to clarify that "bail is appropriate either where a habeas petitioner has shown likelihood of success on the merits or where there are exceptional circumstances." But regardless of whether the district court misspoke in its articulation of the proper bail standard, the issue is irrelevant here for the reasons

discussed earlier. It was reasonable for the district court to conclude that these petitioners were unlikely to succeed on their habeas petitions because of their criminal histories. And the court properly recognized that reducing the detainee population at BCHOC by granting bail to some detainees would mitigate whatever exceptional circumstances existed due to the COVID-19 pandemic for the remaining detainees. Petitioners would not have been admitted to bail even under the standard they say the court should have used, and there is no reason to exercise our discretion to grant a petition for advisory mandamus here.

### III. Conclusion

The petition for a writ of mandamus is <u>denied</u> as without merit.