UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA ALEJANDRA CELIMEN SAVINO, JULIO CESAR MEDEIROS NEVES, and all those similarly situated,<br><br>        Petitioners-Plaintiffs,<br><br>        v.<br><br>STEVEN J. SOUZA,<br><br>        Respondent-Defendant. | Case No. 1:20-cv-10617 WGY |

**DEFENDANT'S RESPONSE TO OBJECTIONS TO SETTLEMENT AGREEMENT**

Defendant respectfully submits this memorandum in further support of the proposed class action settlement and in response to the objections filed by class members Liban Abdi Ali (ECF No. 408), Janito DeCarvalho (ECF No. 409), and Aires DaGraca (ECF No. 410). The objecting class members appear to advance two primary arguments in opposition to the settlement, neither of which has merit. First, they argue that the class claims are strong and therefore should not be settled at all. But that position wholly fails to account for the substantial risk that the class may not ultimately prevail in this matter—an outcome made even more likely by Defendant's vast reduction in detainee population and its offer and efforts to vaccinate all remaining detainees. Second, the objecting class members appear to contend that their release from detention is the *only* form of "adequate" relief available and that anything less will not suffice. The proposed settlement, however, clearly offered these class members meaningful relief in the form of an option to transfer, which would have squarely addressed the conditions of confinement that they alleged—even if it was not the *form* of relief that they might have preferred. Accordingly, for the

reasons explained more fully below, the Court should overrule the objections and grant final approval.

I.  **BACKGROUND**

The objecting class members are removable noncitizens currently detained at Bristol County House of Correction ("Bristol") pending their removal from the United States. Like the other members of the certified class in this case, they sought injunctive relief—i.e., release from Bristol—based on allegations that their continued custody amounts to a deliberate indifference to a substantial risk of serious harm to their health. *See* Complaint (ECF No. 1). According to the complaint, the class members faced a serious and exacerbated risk of contracting COVID-19 given the "confined settings and crowded environments" inherent in a detention center. *Id.* ¶ 66. In May 2020, this Court assessed the situation as of that time and entered a preliminary injunction ordering Bristol to, among other things, provide COVID-19 testing for all immigration detainees and cease admissions of new immigration detainees. *See Savino v. Souza*, 459 F. Supp. 3d 317, 332 (D. Mass. 2020).

Since the complaint was filed, Defendant has produced extensive information to the class in response to its discovery requests, much of it through expedited discovery before the preliminary injunction hearing, which took place on May 7, 2020. ECF No. 168. The class took the depositions of six individuals affiliated with Bristol. Defendant also provided extensive information and briefing as part of a process through which the Court assessed each individual class member's application for release on bail. Through this bail process—and in combination with releases, transfers, and removals executed by ICE in the ordinary course—the detainee population at Bristol has decreased from 148 at the outset of the litigation to 7 today. *See* Order at 2 (ECF No. 352) (observing "the fairly dramatic reduction in the number of detainees presently being held at

[Bristol]"). The Court initially took Mr. DeCarvalho's bail application under advisement on April 15, 2020, denied Mr. Ali's bail application on April 17, 2020 (ECF No. 96), and denied Mr. DaGraca's bail application on April 21, 2020. *See* Electronic Orders (ECF Nos. 86, 96, 107). The Court subsequently denied Mr. Ali's and Mr. DaGraca's motion for reconsideration and Mr. DeCarvalho's renewed motion for bail on December 18, 2020. *See* Order (ECF No. 352).[1] Moreover, Bristol began offering the Moderna COVID-19 vaccine to detainees in January 2021, and it continues to offer the vaccine for any detainee who wishes to receive it. *See* Declaration of Judy Borges (attached hereto as Exhibit A). An infectious-disease physician and interns from Harvard gave an in-person presentation to the immigration detainees at Bristol and provided a question-and-answer period. *Id.* ¶ 4. Any detainee at Bristol who declined the vaccine and later changes his mind may obtain the vaccine upon request. *Id.* ¶ 6.

Earlier this month, following months of negotiations, the parties reached an agreement on the terms of a proposed settlement to resolve the claims alleged in the complaint. *See* Settlement Agreement (ECF No. 398). This settlement generally provides each beneficiary one of three forms of relief—namely, (i) the relaxation of monitoring conditions for detainees who had already been released on bail, (ii) the release of certain, additional detainees who continued to be held at Bristol, and (iii) the right to transfer to another facility for the remaining detainees. *Id.* § IV; *see* Mem. of

---

[1] One of the objectors, Mr. DaGraca, and several others whom the Court denied bail in April and May 2020, petitioned the First Circuit to order this Court to reverse its bail denials. The First Circuit denied the request. *DaGraca v. Souza*, 991 F.3d 60 (1st Cir. 2021). DaGraca and the other mandamus petitioners have sought rehearing and rehearing en banc of the First Circuit's decision. Those petitions are pending. They also appealed from the Court's bail denials. *DaGraca v. Souza*, Case No. 20-1626 (1st Cir.). The parties have stipulated to dismissal of the appeal, as agreed upon in the Settlement Agreement in this matter, without prejudice to reinstating the appeal if this Court does not approve the settlement. *See* Settlement Agreement (ECF No. 398) § VI. Messrs. Ali and DeCarvalho have not sought further review of this Court's bail denials.

Points & Authorities in Support of Mot. for Final Approval at 4-5 (ECF No. 412) (describing relief).[2]  Following execution of the settlement agreement and pursuant to its terms, Defendant provided the transfer option to the remaining detainees, each of whom declined to transfer.  The Court preliminarily approved this settlement on April 7, 2021, and scheduled a fairness hearing to be held on May 13, 2021.  *See* Order (ECF No. 413); Order Granting Preliminary Approval (ECF No. 402).  On April 21, 2021, class members Ali, DeCarvalho, and DaGraca—who are part of the group that were offered a transfer but will remain detained under the terms of the proposed settlement—each filed an objection.  *See* Ali Objection (ECF No. 408); DeCarvalho Objection (ECF No. 409); DaGraca Objection (ECF No. 410).

## II.     STANDARD

Federal Rule of Civil Procedure 23 permits "[a]ny class member" to object to a proposed settlement.  Fed. R. Civ. P. 23(e).  Upon considering such objections, a district court may still approve the proposed settlement "after a hearing" and a "finding that it is fair, reasonable, and adequate."  *Id.*  In making that determination, the court must consider whether "the relief provided for the class is adequate," "taking into account" a defined list of factors including "the costs, risks, and delay of trial and appeal."  *Id.*  That said, "the First Circuit has not established a formal protocol for assessing the fairness of a settlement."  *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005); *see also, e.g.*, *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("This fairness determination is not based on a single inflexible litmus test but,

---

[2] The proposed settlement also provides Mr. DeCarvalho with *additional*, individualized relief beyond the transfer option.  Subject to final approval of the settlement, ICE has agreed to send a letter to the Salem Probate Court regarding Mr. DeCarvalho's motion to reopen his case in that court, and further agreed to make him available for hearings in that matter if it is reopened and if he remains detained in ICE custody.  *See* ECF No. 398 § IV.

instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation."). Instead, the ultimate decision calls for "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015).

### III.   ARGUMENT

### A.   The nature of the class's allegations does not undermine the fairness of the proposed settlement.

*First*, the objecting class members appear to argue that their claims should not be settled because they involve alleged increased health risks. *See, e.g.*, Ali Objection at 1 (ECF No. 408) (arguing that "[e]ven after the preliminary injunction was ordered," Bristol still "failed to keep [the detainees] safe"); DeCarvalho Objection at 2 (ECF No. 409) (arguing that he has been exposed to COVID-19 through "deliberate indifference"); DaGraca Objection at 1 (ECF No. 410) (detailing alleged medical issues "[w]hile being detain[ed] in Bristol"). The objectors, however, fail to acknowledge—let alone address—the risk inherent in any litigation that they will not prevail on those claims. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005) (approving settlement because, inter alia, "a significant element of risk adheres to any litigation"); *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (approving settlement and emphasizing that "[b]ecause the case raises complex and unresolved issues . . . it is difficult to predict the outcome of this case"). In considering the fairness of a class action settlement, courts must consider not only the nature of the claims, but also the "risks" of trying them. Fed. R. Civ. P. 23(e)(2)(C)(i).

Here, even beyond the general uncertainty posed by litigation, there is a substantial risk that the class would not be able to establish liability in this case. The class achieved early success

5

in securing a preliminary injunction and multiple bail orders. But that does not guarantee that the remaining class members would ultimately prevail, especially considering that the risk of detainees contracting COVID-19 from involuntary exposure has changed since the start of this litigation. Importantly, the class's claims are not about whether detainees face a risk of contracting COVID-19, but instead whether Bristol is "deliberately indifferent" about that risk. It thus bears emphasizing that Bristol has now offered—and continues to offer—the Moderna COVID-19 vaccine to every detainee at the facility. *See* Decl. of J. Borges ¶ 3 (Exhibit A). Those laudable efforts cast serious doubt on the class's ability to show that Bristol is acting indifferently toward their health, much less deliberately so. *See, e.g.*, *Coreas v. Bounds*, No. 20-cv-0780, 2021 WL 252718, at *8 (D. Md. Jan. 26, 2021) ("[T]he recent added measure of providing vaccinations to detainees who want them, including ICE detainees, is a highly significant new development that undermines the claim of impermissible punishment."); *United States v. Anderson*, No. 213CR00361KJDGWF, 2021 WL 244928, at *3 (D. Nev. Jan. 25, 2021) (finding that Bureau of Prisons' efforts toward vaccinating both staff and inmates undermines any claim of deliberate indifference to inmate's health).[3]

By focusing on the nature of their allegations, the objecting class members neglect the significant hurdles that they would face in ultimately proving them. These objections therefore shed little light on the overall fairness of the proposed settlement and should not prevent the Court

---

[3] The objectors similarly fail to account for the substantial risk that the class would be decertified if this litigation moved forward, given its dwindling size and Defendant's pending motion for decertification. *See Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *7 (D. Mass. Sept. 30, 2016) (granting settlement approval given the "risk of successfully maintaining the class action through trial"). Indeed, the Court has expressly observed that "the fairly dramatic reduction in the number of detainees presently being held at [Bristol] calls into question the continued propriety of treating this matter as a class action." Order at 2 (ECF No. 352).

Case 1:20-cv-10617-WGY   Document 415   Filed 04/26/21   Page 7 of 10

from approving it. *See, e.g.*, *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *9 (D. Mass. Jan. 8, 2015) ("[T]he risks of establishing liability . . . and the risk of the Plaintiffs successfully defeating motions for summary judgment favor the approval of the Settlement."); *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. 12-cv-11280-DJC, 2017 WL 5177610, at *3 (D. Mass. Nov. 8, 2017) (overruling objections to adequacy of proposed relief "given the uncertainty that Plaintiffs faced of no recovery whatsoever if the parties had not settled and had continued to litigate"); *In re TelexFree Sec. Litig.*, 475 F. Supp. 3d 15, 17 (D. Mass. 2020) (finding that "the relief provided" was "adequate," after "taking into account the costs, risks, and delay of trial and appeal").

**B.     The proposed settlement is "fair, reasonable, and adequate" even though it does not contemplate releasing all the remaining detainees.**

*Second*, the objecting class members argue that *any* form of relief—other than release from Bristol—is inadequate. *See, e.g.*, Ali Objection at 1 (ECF No. 408) ("I would like to propose the option of 24hr home confinement."); DeCarvalho Objection at 2 (ECF No. 409) (arguing that the proposed settlement "is pointless" and seeking order directing ICE "[t]o release him from detention"); DaGraca Objection at 1 (ECF No. 410) ("The reason [for] this objection is because I feel I should be release[d]."). Respectfully, that stance misconstrues how to measure the adequacy of a settlement under Rule 23. In determining whether the contemplated relief is "adequate," courts naturally do not ask whether the proposed settlement achieves the *full extent* of relief sought by the complaint. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 72 (D. Mass. 1997) ("The issue is whether the relief that the settlement does provide is adequate and reasonable" and so "[t]he fact that some might have preferred more . . . does not control that question."). Class action settlements are rarely, if ever, complete victories for the class; were it otherwise, the defendant would have little incentive to settle instead of proceeding with litigation. After all, the

fundamental nature of a settlement "is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Lupron*, 228 F.R.D. at 98; *see also Duhaime*, 177 F.R.D. at 72 ("A settlement is, after all, not full relief but an acceptable compromise.").

As explained in the parties' motion for final approval, the proposed settlement provided certain of the remaining detainees—including these objecting class members—with the option to transfer from Bristol to another facility within the Boston Area of Responsibility.[4]  That transfer option supplied these individuals with meaningful relief that would have squarely addressed the wrongful conduct that they have alleged (i.e., Bristol's alleged deliberate indifference).  Not only that, the proposed settlement achieves yet another reduction in the detainee population at Bristol—further reducing the population density at the facility while vaccination efforts continue, and thereby addressing the overcrowding concerns alleged in the complaint. *See* Complaint ¶ 66 (ECF No. 1) ("Infectious diseases . . . are more likely to spread in these confined settings and crowded environments."); *id.* ¶ 67 ("Immigration detention facilities have even greater risk of infectious spread because of overcrowding.").  Accordingly, the fact that the proposed settlement does not provide for the release of the objecting class members does not render it inadequate.  And whatever force the class's "release-only" approach might have had at the outset of litigation, there is no denying that the settlement's transfer option provided meaningful relief to the remaining detainees.[5]

---

[4] This is not the only relief offered to the detained class members, however. *See supra* at 4 n.2.

[5] Mr. DeCarvalho also argues that the transfer option is "pointless" now that the damage has "alrea[dy] been done," given that he was denied a transfer "before [the] pandemic" and subsequently "contract[ed] Covid-19" during this litigation. DeCarvalho Objection at 1 (ECF No. 409). But the fact that he was denied a transfer before this litigation, even if factually accurate, does not undermine the value of the transfer option, which would have resolved his claim that

## C. The objecting class members' requests for release on bail are improper.

Finally, the Court need not consider these objections insofar as they seek merely to re-litigate their bail applications or obtain other forms of affirmative relief.[6] *See, e.g.*, Ali Objection at 1 (ECF No. 408) ("I would like to propose the option of 24hr home confinement."); DeCarvalho Objection at 2 (ECF No. 409) (requesting that the Court order Defendant "[t]o release him from detention"); DaGraca Objection at 1 (ECF No. 410) ("I feel I should be release[d] on [b]ail."). Such arguments are not appropriate objections bearing on whether the proposed settlement passes muster under Rule 23. Moreover, the Court has already considered their bail applications and denied their motion for reconsideration. *See* Order at 1 (ECF No. 352) ("Bail in habeas cases is, and ought be, rare."). At this stage, the relevant inquiry is whether the settlement will fairly resolve the class's claims—not whether those claims justify bail or other relief. *See Bacchi*, 2017 WL 5177610, at *3 (overruling objections that did "not bear great weight as to whether this specific settlement is fair, reasonable and adequate"). The objecting class members may seek to have the Court reject the proposed settlement in total, eliminating the relief that the agreement would have

---

officials *at Bristol* are acting with deliberate indifference. Moreover, his contention that the damage has "alrea[dy] been done" does not bear on the adequacy of the settlement of the claims *in this case*, which seek injunctive relief (i.e., release) to prevent predicted harms—not to compensate past ones. *Cf. Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) ("The fact that changes in future [conduct] will not remedy past harm to [class members] does not make such relief meaningless to those [class members]."). Indeed, the fact that Mr. DeCarvalho contracted COVID-19 further undermines his claim that he must be released in order to avoid contracting the virus in the future, especially since Bristol has offered him the vaccine.

[6] Mr. DeCarvalho's objection also advances new allegations that are not the subject of this litigation and asks the Court to enter an order on the merits. *See* DeCarvalho Objection at 3–8 (ECF No. 409) (alleging assault and battery, negligent medical care, and false imprisonment). This lawsuit does not involve tort claims, and so his allegations about past harm are irrelevant to this matter. To be clear, the proposed settlement does not preclude him from raising new claims that were not alleged in the instant complaint. However, these arguments are not the proper subject of *this* case—much less the Rule 23 fairness hearing.

9

otherwise provided, however, they cannot seek to *rewrite* the proposed settlement in a way that would provide them with different or additional relief.

## IV.     CONCLUSION

The Court should overrule the objections and grant final approval of the proposed settlement.

Respectfully submitted,

NATHANIEL R. MENDELL,
Acting United States Attorney

April 26, 2021          By:     */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Michael L. Fitzgerald
Assistant U.S. Attorneys
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
thomas.kanwit@usdoj.gov
michael.fitzgerald2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Thomas E. Kanwit
THOMAS E. KANWIT
Assistant U.S. Attorney

Dated:  April 26, 2021